**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(MIAMI DIVISION)**

**JANE DOE,**                                    CASE NO: 1:25-cv-20757-JB/Torres

      Plaintiff,

v.

**STEVEN BONNELL II**,

      Defendant.

_____/


## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**SANCHEZ-MEDINA, GONZALEZ, QUESADA,**
**LAGE, GOMEZ & MACHADO, LLP**
CARLOS A. GARCIA PEREZ
Florida Bar No. 106895
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel.: (305) 377-1000
Primary E-Mail: cgarciaperez@smgqlaw.com
Secondary E-Mail: angie@smgqlaw.com

JSP LAW, LLC
Joan Schlump Peters (admitted *pro hac vice*)
4819 W. Blvd. Ct.
Naples, Florida 34103
Tel.: 305-299-4759
Email: petersjoan@bellsouth.net

Counsel for Plaintiff

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 2

## **TABLE OF CONTENTS**

Page(s)

INTRODUCTION………………………………………………………………     6

STATEMENT OF FACTS………………………………………………………     6-14

LEGAL STANDARD……………………………………………………………     14-15

ARGUMENT ……………………………………………………………………     15

I.      PLAINTIFF IS ENTITLED TO INJUNCTIVE
        RELIEF……………………….....................................................................     15

        A.  Plaintiff is Likely to Prevail on the Merits of Her Claims……….     15-19

        B.  Plaintiff Will Be Irreparably Harmed if Defendant's
            Conduct is Not Enjoined……………………………………………     19-21

        C.  The Balance of Equities Weighs Decisively in Favor of
            Injunctive Relief……………………………………………………     21-22

        D.  The Public Interest is Served by a Preliminary Injunction……….     23

II.     THE COURT SHOULD REQUIRE MINIMAL OR NO SECURITY……….     23-24

CONCLUSION ……………………………………………………………………     24-25

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 3

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                           **Page(s)**

*BellSouth News Serv. V. Forman,* 606 F. Supp. 3d 1200, 1227
(N.D. Fla. 2022) ……………………………………………………….            23

*BellSouth Telecomms., Inc. v. MCImetro Access Transmission
Servs.*, 425 F.3d 964, 970-71 (11th Cir. 2005)…………………………            23, 24

*Brecka*, 2024 U.S. Dist. LEXIS 52864, at *8…………………………            22, 23

*Broadrick v. Gilroy*, No. 24-1772, 2024 U.S. Dist. LEXIS
204455, *2-3………………………………………………………………..            20

*Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377
(Fla. 1989)……………………………………………………………….            18

*Conradis v. Buonocore*, 2021 U.S. Dist. LEXIS 177241, at *16………            17, 21, 22

*Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200, 1227
(N.D. Fla. 2022)…………………………………………………………            23

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328,
338 (5th Cir. 1981)………………………………………………………            20

*Diaz v. Hernandez*, No. 24-CV-81151-AMC, 2024 U.S. Dist.
LEXIS 238107, *3-4, (S.D. Fla. Oct. 29, 2024)………………………            14, 15

*Diaz*, 2024 U.S. Dist. LEXIS 238107, at *2…………………………..            19

*Diaz*, 2024 U.S. Dist. LEXIS 238107, at *7…………………………..            16

*Diaz*, 2024 U.S. Dist. LEXIS 238107, at *8…………………………..            20, 22

*Diaz*, 2024 U.S. Dist. LEXIS 238107, at *9…………………………..            23

*Doe v. Alame*, No. 3:25-CV-0329-B, 2025 U.S. Dist. LEXIS
40559, at *12 (N.D. Tex. Feb. 24, 2025)………………………………            24

*Doe v. Constant*, No. 24-554, 2024 U.S. Dist. LEXIS 130253,
*10 (W.D. La. 2024)……………………………………………………..            20

*Doe v. Sultan*, No. 3:23-cv-00667-FDW-DCK, 2023 U.S. Dist.

LEXIS 191853 (W.D.N.C. Oct. 25, 2023)……………………………….    21

*Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024
U.S. Dist. LEXIS 21835 (D. Ariz. Feb. 7, 2024)…………………….    20, 21

*Doe*, 2024 U.S. Dist. LEXIS 130253, *9 (finding likelihood
of irreparable harm and granting preliminary injunction)…………..    21

*Gegas v. St. Matthew's Univ. Sch. of Med.*, 2023 U.S. Dist.
LEXIS 176970, at *10 (M.D. Fla. Sep. 4, 2023)…………………….    15, 23

*Harms v. Miami Daily News, Inc.*, 127 So. 2d 715, 718
(Fla. 3d DCA 1961)…………………………………………………..    18

*Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1277
(11th Cir. 2024)……………………………………………………….    14

*Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d
410, 415 (5th Cir. 1958)……………………………………………..    15

*Molekule Grp., Inc. v. Aura Smart Air, Ltd.*, No. 23-81291-CIV-CAN,
2023 U.S. Dist. LEXIS 232486, *13 (S.D. Fla. Oct. 11, 2023)………    15

*Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*,
896 F.2d 1283, 1284, 1285 (11th Cir. 1990)…………………………    15, 20

*Roadget Bus. PTE. Ltd. v. Individuals, P'ship & Unincorporated
Ass'ns,* No. 24-cv-21516-(Williams/Goodman), 2024 U.S. Dist.
LEXIS 165144, at *6 (S.D. Fla. June 28, 2024)………………………    15, 19

*Roadget*, 2024 U.S. Dist. LEXIS 165144, at *7………………………    22

*Sapphire Consulting Servs. LLC v. Anderson*, 2021 U.S. Dist.
LEXIS 54101, at *16-17 (M.D. Fla. Feb. 12, 2021)………………….    24

*Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223, 1225-26
(11th Cir. 2005)……………………………………………………….    14, 15

*Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000)……………..    19

*Smith v. Volusia Cty.*, No. 6:11-cv-35-Orl-28GJK, 2011
U.S. Dist. LEXIS 46479, 2011 WL 1598741, at *6
(M.D. Fla. Apr. 28, 2011)……………………………………………..    18

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 5

*Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*, 204
F. Supp. 2d 1338, 1344 (M.D. Fla. 2002) (quoting Cape
Publications, Inc. v. Hitchner, 549 So. 2d 1374, 1377
(Fla. 1989))……………………………………………………………  18

*Winter v. NRDC, Inc*., 555 U.S. 7, 24 (2008)…………………………  22

*Zabriskie v. City of Kissimmee*, No. 6:10-cv-70-Orl-19KRS,
2010 U.S. Dist. LEXIS 105603, 2010 WL 3927658,
at *3 (M.D. Fla. Oct. 4, 2010)………………………………………..  17

**STATUTES:**

CARDII, 15 U.S.C. §6851(b)(1)(A)……………………………………  16, 23

CARDII, 15 U.S.C. §6851(b)(3)(A)……………………………………  23

CARDII, 15 U.S.C. §6851(3)(A)(ii)……………………………………  16, 20

Fla. Stat. § 540.08……………………………………………………..  22

Florida Statute, §784.049……………………………………………..  17

Florida Statute, §784.049(2)(c)………………………………………  17

Florida Statute, §784.049(2)(d)………………………………………  17

Florida Statute, §784.049(3)…………………………………………  17

Florida Statute, §784.049(5)…………………………………………  17

Restatement (Second) of Torts § 652D cmt. …………………………  18

**RULES:**

Fed. R. Civ. P. 65(b)…………………………………………………..  23

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 6

**TO THE HONORABLE COURT**:

COMES NOW Plaintiff Jane Doe ("Plaintiff"), by and through her undersigned counsel, and respectfully states, prays and alleges as follows:

## INTRODUCTION

Plaintiff hereby moves the Court for a temporary restraining order ("TRO") and a preliminary injunction to i) enjoin Defendant Steven Bonnell II ("Bonnell") from further sharing, distributing or publishing the intimate images/videos and/or the intimate information of Plaintiff; ii) compelling Bonnell to remove all publications of the Videos and of all messages between him and Plaintiff from all forms of public media he controls either directly or indirectly; iii) ordering Defendant to direct third parties in writing to remove all published intimate images/videos of Plaintiff and any intimate information regarding Plaintiff under their control; and iv) ordering Defendant to retrieve the messages he has deleted, to cease and desist from destroying evidence and to preserve all discoverable information relevant to this action from his phones, computers, tablets, online accounts and platforms, or any other devices, and preserve all internet routers or other hardware in their current form or image so they may be searched for information relevant to this action.

## STATEMENT OF FACTS

Defendant Bonnell, a well-known live streamer and political commentator with millions of followers, induced Plaintiff to meet him at a hotel and engage in sexual relations while being videoed (the "Videos"), and then shared at least one of the Videos, if not more, without Plaintiff's knowledge or consent. *See* Complaint, Dkt. 1, at ¶¶ 11, 12. Bonnell's screen name is Destiny. *Id*.,

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 7

¶ 8. Plaintiff, barely 20 years old, was a newcomer into the political streaming arena at the time she began communicating with Bonnell. *Id*., ¶ 10. Plaintiff's screen name is Pxie. *Id*., ¶ 9.

In February 2020, prior to meeting Bonnell at the hotel, Plaintiff expressed to him in a direct message her concerns for privacy: "[P]ublicly I'm okay with people knowing we're hanging out but if anyone asks questions about having sex or anything along those lines I rather deny and keep that private between us." *See* Plaintiff's Declaration, Exhibit 1 hereto, at ¶ 4. Plaintiff also discussed her privacy concerns regarding their relations and the Videos directly with Bonnell when they met at the hotel. *Id*., ¶ 5. And this concern was again reiterated in March of 2023, when a woman publicly alleged that Pxie had sexual relations with Destiny, whereupon Pxie messaged Destiny and asked him if he had told anyone about their relations. He denied telling anyone other than his wife. *Id*., ¶ 6. Pxie affirmed that, "No one knows either on my end (except my ex-bf)." *Id*.

*~ Bonnell's Unauthorized Sharing of the Video*

As set forth in the Complaint, Defendant disseminated through electronic means one of the Videos (the "Video") to an individual using the screen name Rose. Dkt. 1, ¶12. Rose was a random fan of Bonnell's on his Discord platform that had reached out to him on Discord. *Id*. Bonnell had never met Rose. *Id*. Despite knowing nothing about Rose, not even her real name or her real age, Bonnell intentionally and with reckless disregard for Plaintiff, shared the Video with Rose without Plaintiff's knowledge or consent. *Id*.

Approximately two years later, on November 29, 2024, the sexually explicit Video of Plaintiff that Bonnell had shared with Rose was uploaded on to the website Kiwifarms. *Id*., ¶13. The Video was also shared on multiple other pornography websites including https://notfans.com, https://thothub.cam, pornbiz.com, epawg.com, and erome.com. *Id*. The caption on the Video on

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 8

the different platforms identify both "Destiny" and "Pxie". *Id*. The Plaintiff's face is visible and identifiable in the Video. *Id*. On this same date, there were a total of twenty-five (25) intimate videos of other individuals, including the Video of Pxie, that were published on various sites. Those 25 videos included videos of Bonnell's ex-wife, Melina Goranson, who has publicly stated that she did not consent to their being shared. *See* https://www.reddit.com/r/DGGsnark/comments/1hw6g92/melina_confirms_destiny_did_not_have_consent_to/. They also included videos of another woman, Stasia, who uses the screen name curiosity killed the cacti. Stasia has come forward and confirmed that the videos were shared by Bonnell without her consent. *See* https://www.reddit.com/r/DGGsnark/comments/1ib8zl4/another_one_stasia_confirms_it_was_her_in_one_of/.

As of today's date, the Video has been viewed on the notfans.com site over 10,000 times. Compl, ¶ 15. It has been viewed on the thothub.com site over 58,000 times. *Id*. It had at least as many views on other websites, but it has since been removed. *Id*. It is still on the Kiwifarms site, but the site does not have a number tracker so the number of views is unknown but estimated to be in the tens of thousands. *Id*. On erome there were over 10,000 views, but it has since been removed. Id.

On the evening of November 29, 2024, Plaintiff sent a message to Bonnell on the Discord platform expressing her horror that he had shared the video of her. She asks him if he sent any additional pornographic Videos to anyone. He admits his guilt, responding: "Ughhhh there shouldn't be no, I'm so sorry there's literally no excuse, I'd had phone convos and stuff with this person they were fairly close to me, it's worthless to say it at this point but I'm super sorry, there's

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 9

literally no excuse." Plaintiff then asks him to delete any and all Videos that he has of her. *Id*.,

¶16. *See also* Decl. Plf., ¶¶ 8-9.

Bonnell also explicitly admitted in a direct message with a follower by the screen name

Straighterade that he "distributed [the Video] non-consensually." Bonnell goes on to say, "I don't

really care much about the legal side of it or whatever, obviously I have severely (at the very least,

psychologically) damaged [Pxie]…" *See* https://imgur.com/a/ZddOgeP, at time stamp 1:54 am

and 1:55 a.m.[1]

Although Bonnell has only explicitly admitted to sending the Video to Rose, he has

intentionally and recklessly shared the Video with others as well, without Plaintiff's knowledge

or consent, even after the Video was published on the pornography sites, and after his alleged

remorse. Indeed, on or about January 9, 2025, Bonnell was communicating with one of his fans,

Hannah Brooke, on the Discord platform and offered to send her the Video. *See* Decl. Brooke,

Exhibit 2 hereto. Also in January 2025, one of Plaintiff's followers informed her that Bonnell had

sent the Video to the follower's sister about two months earlier. *See* Decl. Plf., Exh. 1, at ¶ 10.

The evidence presented here of Bonnell's non-consensual sharing of the Video is quite

possibly only the tip of the iceberg. Based on the November 29 leak of 25 videos that Bonnell

---

[1] This chat thread was published by Destiny in one of his online statements about the
dissemination of the Video. *See*
https://www.reddit.com/r/Destiny/comments/1i645qz/legal_arc_beginning_in_mysterious_ways
_such_wow/ (see 8th paragraph commencing with "A few hours later, I messaged a mutual friend,
Straighterade, who I knew to be particularly close to Pxie. We tried to figure out the best way
forward in terms of making things right (or as right as they could be) for Pxie. In that conversation
we spoke about things I could do to alleviate the toll on Pxie's mental health." The word
"conversation" is the link to the chat thread, part of which is set forth above.

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 10

had shared non-consensually, as well as his history of non-consensual sharing, *infra*, there is a strong likelihood that he shared the Videos with other people.

*~ Bonnell's Publication of Plaintiff's Private Messages*

Before Plaintiff and Bonnell met in person for the first time, they exchanged extensive direct messages with each other, many of a sexual intimate nature. *See* Decl. Plf., ¶ 12.  On or about, February 19, 2025, Destiny live-streamed to his tens of thousands of followers on his Youtube platform his "statement" about the events concerning the dissemination of the Video. *See*       https://drive.google.com/file/d/1eyDdBE1AWdSSg4ury6Bomk1Mxyrh2uhF/view. Commencing at minute 53 of the recording, Bonnell tells his followers intimate sexual details about Plaintiff that she had shared with him through the private messages ("Private Messages"). He even posts screen shots of different message threads with the Private Messages between him and Plaintiff containing explicit sexual details. Plaintiff had an expectation of privacy in her Private Messages with Bonnell about her sexual experiences, that were never intended to be shared with anyone else, let alone tens of thousands of people. *See* Decl. Plf., ¶ 12.

*~ Plaintiff's Severe Emotional Distress*

The Defendant's sharing of the Video and publication of the Private Messages has caused Plaintiff extreme emotional distress. *See* Plf. Decl., Exh. 1, at ¶¶ 14-15. Plaintiff has suffered from depression, suicidal ideation, recurring nightmares, humiliation and anxiety. *Id*. The humiliation is enduring because the Video and the Private Messages have been and still are available to the public. Plaintiff believes that their existence and accessibility have, and will continue to, tarnish her reputation, both personal and professional. *Id*. She lives in constant fear that people she encounters have seen the Video of her, and consequently she has become very reclusive. *Id*. She is also highly fearful that Destiny still has the Videos and will continue to share them. *Id*. This

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 11

emotional distress is solely attributable to Destiny's non-consensual sharing of the Video and the

Private Messages.

*~ Bonnell's Pattern of Behavior of Recklessly Sharing
Intimate Images Without Authorization*

In or around the end of January, 2025, approximately fifteen women reached out to

Plaintiff to tell her that they had received sexually explicit images from Bonnell of other women

without the other women's consent. *See* Plff's Decl., Exh. 1, ¶ 16. Numerous women, including

Bonnell's ex-wife Melina Göransson, and Stasia (screen name; aka "curiosity killed the cacti"),

have recently come forward and publicly alleged that Bonnell has shared sexually explicit videos

of            them            without            their            consent.            *Id*.            *See*,            *e.g.*,

https://www.reddit.com/r/DGGsnark/comments/1hw6g92/melina_confirms_destiny_did_not_ha

ve_consent_to/;   https://ghostarchive.org/archive/vr6sJ.       These images were then posted on

different pornography websites without their consent. *See* Plf's Decl., ¶ 16.

On January 20, 2025, a woman with the screen name Chaeiry, posted on X that she had

just found out that Bonnell had secretly made an unauthorized audio recording of their sexual

interaction, and then had shared it with other people without her knowledge or consent. *See*

*https://x.com/itschaeiry/status/1881506268445327740.*   On January 22, 2025, Chaeiry posted on

X that she filed a police complaint about Bonnell's unauthorized recording and sharing and that

she is very worried about harassment. *See https://x.com/itschaeiry/status/1882285334236475678*

On or about January 24, 2025, a political streamer by the screen name of Denims speaks

on her forum about Bonnell's sharing of the Video. She informs her followers that

Destiny/Bonnell had recorded a sexually intimate conversation with her without her knowledge

or consent. She alleges that after their personal relationship deteriorated, he became publicly

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 12

hostile towards her. And then later he posted to his followers that he has the recording and that

he "could" publish it. *See* https://rustlesearch.dev/surrounds?channel=Destinygg&date=2025-01-
27T01%3A15%3A56.141Z&username=destiny.

*~ Bonnell's Retaliation Against Plaintiff and Other Women Who Dare to
Go Public About His Illicit and Unauthorized Sharing of Intimate Images*

Bonnell has publicly retaliated against Plaintiff for going public about his unauthorized

sharing of the Videos. On or about January 23, 2025, Bonnell begins a smear campaign against

Plaintiff and tells his followers that Plaintiff is only interested in getting money from him. Bonnell

posts in one of his "DGG" community group chats, involving multiple people, that Plaintiff/Pxie

is just after his money. *See* Decl. Plf., ¶ 11.   Bonnell also posts on his website,

https://www.destiny.gg, and in his "DGG Chat," that "Pxie and the people behind her just want

money, so there's no point in going after the hacker, he's probably some broke loser anyway, so

they aren't even mentioning him." *Id*. Over 1,000 people have potentially viewed this defamatory

post.

On or about February 8, 2025, Bonnell posts on X that he agrees with another post that

claims that Plaintiff is "extorting" him. *Id*. On or about February 9, 2025, Bonnell makes another

defamatory post on X again telling his followers that Plaintiff only cares about getting money

from him. He also informs all of his followers that the Video can still be seen on Kiwifarms. *Id*.

The   post   has   over   one   million   views   as   of   this   date.   *See*

https://x.com/TheOmniLiberal/status/1888633852253401563.   Thus,   on   February   9,   2025,

Bonnell once again shared the Video, this time with all of his followers.

On February 21, 2025, Bonnell tells his entire Discord community that Pxie was dating

her supervisor at her prior job and that the supervisor was "like 25 years older than her." *See*

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 13

https://rustlesearch.dev/surrounds?channel=Destinygg&date=2025-02-21T19%3A29%3A01.151Z&username=destiny. This was a deliberate untruth meant only to harass Plaintiff and retaliate against her for initiating this action. Plaintiff had told Bonnell that she dated this man briefly but it had ended prior to his starting work at the company. There was no reason for Bonnell to believe that the man was ever her supervisor or that he was 25 years older than her, because he was not. *See* Decl. Plf, ¶ 13.

Bonnell has retaliated against Chaeiry by publicly posting his private messages with her during a time when she was suffering a mental health crisis. *See* Compl., ¶ 31. And on February 9, 2025, Bonnell retaliated against Denims by posting private sexual text messages between them to his community chat group.

*~ Bonnell's Wanton Destruction of Evidence*

On January 23, 2025, counsel for Plaintiff sent a letter via messenger to Bonnell advising him of the impending legal action and demanding that he preserve all evidence, including electronically stored information (ESI) in compliance with the law. *See* Letter, Exhibit 3. Instead of preserving evidence however, Bonnell has been systematically deleting and destroying evidence. Indeed, on January 30, 2025, Destiny/Bonnell admits that he has been actively deleting evidence of his wrongdoing, specifically his messages with multiple women who have claimed that he shared sex videos with them without the participant's consent. *See* https://rustlesearch.dev/surrounds?channel=Destinygg&date=2025-01-30T21%3A33%3A27.826Z&username=destiny.

And as early as January 21, 2025, aware of the impending lawsuit and potential criminal investigation, Bonnell starts destroying evidence, including deleting messages between him and Plaintiff. *See* Decl. Plf., ¶ 17. *See also*, https://imgur.com/9U81Pfg.   This is a link to a chat

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 14

thread on X between Pxie and Destiny on December 12, 2024 where it shows Pxie's messages and instead of Destiny's responses it now shows "Original message was deleted."

Bonnell deleted his messages with Hannah Brooke in early February 2025 in an attempt to cover up his offer to Brooke to send her the Video. *See* Decl. Brooke, Exh. 2. Almost all of the women who informed Plaintiff in late January that they had received sexually explicit images from Bonnell of other women without the other women's consent (see above), also tell Plaintiff that Bonnell deleted their chat threads after January 23, 2025. *See* Decl. Plf., ¶ 18.

A streamer by the name of Ahsoka Bun-o messaged Plaintiff recently and informed her that Bonnell had deleted all messages between them regarding his non-consensual sharing of videos: "I had messaged destiny in the past and was sent videos of him with women. I didn't recognize any of the people in the videos bar one that seems to have included Melina [Destiny's ex-wife], but I assumed it was consensual. I don't know if it helps at all but some proof I did converse with him and that now there's no messages." *Id.,*¶19. *See also* https://imgur.com/CtBX1Oi. In February, Bonnell also deleted all of his direct messages with a follower by the screen name of psykodynamic, with whom he had shared videos of other women without their consent. *See* https://imgur.com/lZcLl0E.

## LEGAL STANDARD

A court may enter a preliminary injunction or a TRO. Fed. R. Civ. P. 65(b). The same four factors govern whether to grant either order. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Those factors are "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 15

relief would serve the public interest." *Id. See also, Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024).

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Diaz v. Hernandez*, No. 24-CV-81151-AMC, 2024 U.S. Dist. LEXIS 238107, *3-4, (S.D. Fla. Oct. 29, 2024) (quoting *Ne. Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). A preliminary injunction, however, becomes a mandatory or affirmative injunction when it goes beyond preservation of the status quo and seeks to force one party to act. Id. at *4. "When a plaintiff applies for a mandatory preliminary injunction, such relief 'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.'" *Id*. (quoting *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958)).

## ARGUMENT

### I .   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

As further detailed below, Plaintiff meets all four conditions for injunctive relief and is thus entitled to have a temporary restraining order entered pending the issuance of a preliminary injunction.

### A.   Plaintiff is Likely to Prevail on the Merits of Her Claims.

Substantial likelihood of success on the merits can be established by making a prima facie showing of the elements of one or more of the movant's substantive claims, *Roadget Bus. PTE. Ltd. v. Individuals*, 2024 U.S. Dist. LEXIS 165144, at *6 (S.D. Fla. June 28, 2024), and "requires a showing of only likely or probable, rather than certain success." *See Molekule Grp., Inc. v. Aura Smart Air, Ltd.*, No. 23-81291- CIV-CAN, 2023 U.S. Dist. LEXIS 232486, *13 (S.D. Fla. Oct. 11, 2023) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)).

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 16

The "plaintiff need only demonstrate the likelihood of prevailing on one cause of action." *Gegas v. St. Matthew's Univ. Sch. of Med*., 2023 U.S. Dist. LEXIS 176970, at *10 (M.D. Fla. Sep. 4, 2023). Likelihood of success on the merits "'generally is the most important' of the four" factors. *See Molekule Grp., Inc*., 2023 U.S. Dist. LEXIS 232486, *13 (quoting Schiavo, 403 F.3d at 1232).

### ~ *Plaintiff has Made a Prima Facie Showing of the Elements of 15 U.S.C. § 6851*

Federal law provides Plaintiff significant relief against Defendant for his non-consensual sharing of her intimate images. Pursuant to the Civil Action Relating to the Disclosure of Intimate Images ("CARDII"), 15 U.S.C. §6851(b)(1)(A) the elements of a claim are: (1) an intimate visual depiction, (2) disclosure in interstate or foreign commerce, (3) nonconsensual disclosure, and (4) disclosure by the defendant. 15 U.S.C. § 6851(b)(1)(A). Further, 15 U.S.C. § 6851(3)(A)(ii) expressly authorizes the Court to enter a "temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction."

Here, as detailed above, Defendant has expressly admitted in writing that he shared the Video with Rose without Plaintiff's consent, and that "there's literally no excuse." Dkt. 1, ¶ 16. There is also evidence that he recently offered to share the Video with Hannah Brookes, and that he recently informed all of his followers that they could watch the Video on the Kiwifarms site. *See ante*. The Video was also disclosed in interstate commerce on various pornographic platforms. The sexually explicit Video identifies Plaintiff by showing her face and using her screen name.[2] Thus this is an undisputed violation of 15 U.S.C. § 6851(b)(1)(A), and Plaintiff is more than likely to succeed on the merits of her CARDII claim. *See Diaz*, No. 24-CV-81151-

---

[2] Counsel can provide the Video to the Court under seal upon request.

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 17

AMC, 2024 U.S. Dist. LEXIS 238107, *7 (granting motion for preliminary injunction where plaintiff showed a substantial likelihood of success on her CARDII claim since "the record evidence strongly suggests that Defendant knew, or at least recklessly disregarded, that Plaintiff did not consent to the publication of the video…").

*~ Plaintiff has Made a Prima Facie Showing of the Elements of*
*Florida Statute § 784.049*

Section 784.049 of Florida Statutes criminalizes "sexual cyberharassment." Fla. Stat. § 784.049(3). It also provides victims a private right of action against the person who violated the statute. Id. § 784.049(5). Sexual cyberharassment is defined as:

> Publish[ing] to an Internet website or disseminate through electronic means to another person a sexually explicit image of a person that contains or conveys the personal identification information of the depicted person without the depicted person's consent, contrary to the depicted person's reasonable expectation that the image would remain private, for no legitimate purpose, with the intent of causing substantial emotional distress to the depicted person.

Fla. Stat. § 784.049(2)(c). A sexually explicit image includes any image depicting nudity or a person engaging in sexual conduct. Id. § 784.049(2)(d). There is no question that the Video is a sexually explicit image that was disseminated by Bonnell through electronic means and then published to the internet without Plaintiffs' consent and in violation of her expectation that the Video would remain private, and for no legitimate purpose. Accordingly, Plaintiff is more than likely to succeed on the merits of her claim for violation of Florida Statute §784.049.

*~ Plaintiff has Made a Prima Facie Showing of the Elements of*
*Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress ("IIED") under Florida law, a plaintiff must allege "(1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing emotional distress; (3) severe emotional distress suffered

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 18

by the plaintiff; and (4) proof that the conduct caused the severe emotional distress." *Zabriskie v. City of Kissimmee*, No. 6:10-cv-70-Orl-19KRS, 2010 U.S. Dist. LEXIS 105603, 2010 WL 3927658, at *3 (M.D. Fla. Oct. 4, 2010) (citations omitted). *See also Conradis v. Buonocore*, No. 6:18-cv-1486-EJK, 2021 U.S. Dist. LEXIS 177241, at *11-14 (M.D. Fla. Sep. 17, 2021).

Bonnell's non-consensual sharing of the Video, which he continued to share even after its November 2024 publication on the internet and despite his awareness and acknowledgement of Plaintiff's extreme emotional distress, constitutes extreme and outrageous conduct. Bonnell intentionally shared the Video with a reckless disregard of the likelihood that he would cause Plaintiff emotional distress. Plaintiff's Declaration, Exhibit 1, details the extreme emotional distress she has suffered as a direct result of Bonnell's outrageous conduct. Moreover, Bonnell specifically admitted that he caused Plaintiff extreme emotional distress. *See* https://imgur.com/a/ZddOgeP, at time stamp 1:54 am and 1:55 a.m, and FN. 1, *ante*. Thus, Plaintiff has demonstrated a likelihood of success on the merits of her IIED claim.

*~ Plaintiff has Made a Prima Facie Showing of the Elements of Invasion of Privacy*

To state a claim for invasion of privacy by publication, *i.e.*, "disclosure of private facts," Plaintiff must show "(1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002) (quoting *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989)). "In determining the extent of the right of privacy, the standard by which the right is measured is based upon a concept of the man of reasonable sensibility." *Harms v. Miami Daily News, Inc*., 127 So. 2d 715, 718 (Fla. 3d DCA 1961). "The 'offensiveness' element is satisfied if 'the publicity given to [the plaintiff] is such that a reasonable person would feel justified in feeling seriously aggrieved by it.'" *Smith v. Volusia Cty*., No. 6:11-cv-35-Orl-28GJK, 2011 U.S. Dist.

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 19

LEXIS 46479, 2011 WL 1598741, at *6 (M.D. Fla. Apr. 28, 2011)(quoting Restatement (Second)

of Torts § 652D cmt. c (1977)) (brackets in original).

It is shocking to the conscience that Defendant disseminated the Video and the Private

Messages, and such conduct is not tolerated by a decent society. Defendant knew that the Video

and the Private Messages were no one else's business and meant to remain private. Plaintiff has

shown that i) Bonnell disseminated the Video to at least one person, offered to share it with

another, and informed all of his followers where they could watch it; ii) the Video was published

on the internet and seen by tens of thousands; iii) the Video is sexually explicit and thus offensive;

iv) Bonnell published to all of his followers on Youtube the Private Messages between him and

Plaintiff containing facts of an intimate nature; v) the Videos, and the Private Messages, were

taken/exchanged with the intention for private use and not for dissemination; and vi) the Videos

and Private Messages are not a matter of public concern and are offensive.

Certainly a reasonable person would not expect images and messages of this nature to be

callously disseminated and distributed on the internet. Thus, they do amount to private facts.

Moreover, a reasonable person would be justified in feeling aggrieved by the dissemination and

publication of sexually explicit images of herself on the internet without her permission.

Accordingly, Plaintiff is likely to succeed on the merits of her claim for invasion of privacy. *See*

*Diaz*, No. 24-81151-CIV-CAN, 2024 U.S. Dist. LEXIS 238107, at *2)(granting preliminary

injunction where "the sexually explicit video severely injures Plaintiff's right to privacy").

**B.  <u>Plaintiff Will Be Irreparably Harmed if Defendant's Conduct is Not Enjoined.</u>**

Irreparable harm is established by demonstrating that the type of injury that would befall

the movant in the absence of the injunctive relief is the type which cannot be undone by monetary

remedies. See *Roadget Bus. PTE. Ltd. v. Individuals, P'ship & Unincorporated Ass'ns*, No. 24-

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 20

cv-21516-(Williams/Goodman), 2024 U.S. Dist. LEXIS 165144, at *6 (S.D. Fla. June 28, 2024).

The Eleventh Circuit has stated that an ongoing violation of the right to privacy presumptively

constitutes an irreparable injury. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000)

("The only areas of constitutional jurisprudence where we have said that an on-going violation

may be presumed to cause irreparable injury involve the right of privacy…"); *Ne. Fla. Chapter*

*of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (same);

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (finding that an

alleged ongoing violation of plaintiff's right to privacy supports a showing of irreparable harm).

Since the claims here concern the right to privacy, there is presumptively an irreparable injury,

which is further confirmed by Plaintiff's declaration.

Furthermore, the CARDII statute specifically provides that it entitles victims to injunctive

relief: "the court may, in addition to any other relief available at law, order equitable relief,

including a temporary restraining order, a preliminary injunction, or a permanent injunction

ordering the defendant to cease display or disclosure of the visual depiction." 15 U.S.C. §

6851(b)(3)(A)(ii). The risk of irreparable harm to victims of non-consensual disclosure is so great

that Congress baked injunctive relief into the CARDII statute.

Harms such as emotional distress, are harms which lack an adequate legal remedy. *See*

*Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 U.S. Dist. LEXIS 21835, at *6-7 (D.

Ariz. Feb. 7, 2024)("Plaintiffs have shown the imminent risk of further nonconsensual disclosures

of intimate visual depictions of herself and humiliation from the same"). As found in this District

Court, there is a multitude of harm suffered by a plaintiff in a 15 U.S.C. § 6851 matter, including

"public shame and humiliation, an inability to find new romantic partners, mental health effects

such as depression and anxiety, job loss or problems securing new employment, and offline

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 21

harassment and stalking.'" *Diaz*, 2024 U.S. Dist. LEXIS 238107, at *8 (quoting *Doe v. Constant*,

No. 24-554, 2024 U.S. Dist. LEXIS 130253, *10 (W.D. La. 2024)). *See also Broadrick v. Gilroy*,

No. 24-1772, 2024 U.S. Dist. LEXIS 204455, *2-3 (granting temporary restraining order on a 15

U.S.C. § 6851 claim upon finding that "without a TRO the harm that [plaintiff] is suffering and

is likely to continue suffering would not be addressed by legal remedies, and instead would be

irreparable and difficult to quantify and ascertain'); *Conradis*, 2021 U.S. Dist. LEXIS 177241, at

*16 (emotional damage from dissemination of nude photographs on the internet constituted an

irreparable harm); *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 U.S. Dist. LEXIS

21835 (D. Ariz. Feb. 7, 2024) (ex parte preliminary injunction granted under 15 U.S.C. § 6851

based on irreparable harm); *Doe v. Sultan*, No. 3:23- cv-00667-FDW-DCK, 2023 U.S. Dist.

LEXIS 191853 (W.D.N.C. Oct. 25, 2023) (preliminary injunction granted under 15 U.S.C. §

6851).

Plaintiff has demonstrated an imminent risk of further nonconsensual disclosures of

intimate images of herself by Bonnell and further humiliation from the same. To wit, there is

evidence that Bonnell offered to share the Video even after the November 29, 2024 publication,

and that Bonnell has a history of sharing intimate images non-consensually. *See* Brookes Decl.,

Exh. 2; Plf's Decl., Exh. 1. "This behavior … tends to show that Defendant poses an imminent

risk of dissemination of Plaintiff's intimate visual depictions." *Doe*, 2024 U.S. Dist. LEXIS

130253,*9 (finding likelihood of irreparable harm and granting preliminary injunction).

It is difficult to precisely value Plaintiff's right to not have pornographic Videos of her

and her Private Messages randomly disseminated and posted online. Further, it is remarkably

difficult to remove images from the internet and no amount of money can ever repay the damage

to Plaintiff's sense of privacy and trust. Indeed, the inability to ever truly scrub this content from

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 22

the internet demonstrates how this is an irreparable harm that compounds each day. As such, injunctive relief is required to prevent this irreparable harm.

**C. <u>The Balance of Equities Weighs Decisively in Favor of Injunctive Relief.</u>**

The third element requires the Court to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Roadget*, 2024 U.S. Dist. LEXIS 165144, at *7 (quoting *Winter v. NRDC, Inc*., 555 U.S. 7, 24 (2008)) (internal quotations omitted). In balancing the equities, the Court weighs the benefits and harm to each party in granting the injunctive relief. Here, it is minimally disruptive for the Defendant to refrain from violating state and federal law, including 15 U.S.C. § 6851, Fla. Stat. § 540.08, and the common law right of privacy, by disseminating the Videos and private Messages of Plaintiff without Plaintiff's authorization. The only party at risk in this matter is the Plaintiff.

If the motion is denied, Plaintiff would have to live in constant fear that Defendant would continue disseminating Plaintiff's intimate visual depictions and private information. The equities are completely one sided in this action, tipping entirely in favor of Plaintiff. *See Diaz*, 2024 U.S. Dist. LEXIS 238107, at *8 ("Plaintiff continues to suffer these consequences each day, while Defendant faces no discernable burden from an order prohibiting publication of sexually explicit videos of Plaintiff.").

If a TRO is granted, Plaintiff would receive warranted and necessary protection of her privacy, safety, dignity, and images for the pendency of this proceeding. *See, e.g., Conradis*, 2021 U.S. LEXIS 177241, at *16 (holding that there is no burden to enjoining defendant from posting nude images of plaintiff and so the equities weigh in favor of the plaintiff); *Brecka v. Individuals*, No. 0:24-CV-60162-WPD, 2024 U.S. Dist. LEXIS 52864, at *8 (S.D. Fla. Feb. 16, 2024) (granting preliminary injunction based on alleged violations of Fla. Stat. § 540.08 and common

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 23

law invasion of privacy). Thus, the balance of the equities strongly favors a temporary restraining

order and preliminary injunction.

### D. The Public Interest Is Served by a Preliminary Injunction.

Congress expressed a public policy against non-consensual sharing of intimate images in

enacting 15 U.S.C. § 6851(b)(1)(A), so it is clearly in the public's interest to issue the TRO

ordering Defendant not to engage in such activity. "The public has a strong interest in preventing

the nonconsensual dissemination of another's intimate visual images, 'as evidenced by Congress's

careful and explicit creation of this statutory cause of action to protect persons from this insidious

form of harassment.'" *See Diaz*, 2024 U.S. Dist. LEXIS 238107, at *9, (quoting *Doe*, 2024 U.S.

Dist. LEXIS 130253, *10-12 (finding injunction in public interest for several reasons, including

that 15 U.S.C. § 6851(b)(3)(A) "expressly contemplates the issuance of injunctive relief")). *See*

*also Brecka*, 2024 U.S. Dist. LEXIS 52864, at *8 (public interest served by preliminary injunction

based on alleged violations of Fla. Stat. § 540.08 and common law invasion of privacy).

### II. THE COURT SHOULD REQUIRE MINIMAL OR NO SECURITY

Finally, the Court should, in its discretion, require Plaintiff to post a *de minimis* security

in connection with the issuance of a TRO and preliminary injunction, or waive security entirely.

Fed. R. Civ. P. 65(c) states that a preliminary injunction or temporary restraining order requires

the movant to give security "in an amount that the court considers proper to pay the costs and

damages sustained by any party found to have been wrongfully enjoined or restrained." However,

courts have discretion to waive this requirement in appropriate cases. *See BellSouth Telecomms.,*

*Inc. v. MCImetro Access Transmission Servs., Ltd. Liab. Co.,* 425 F.3d 964, 970-71 (11th Cir.

2005). For example, "it is well-established that the amount of security required by the rule is a

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 24

matter within the discretion of the trial court and the court may elect to require no security at all."

*Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200, 1227 (N.D. Fla. 2022) (quoting

*BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs*., 425 F. 3d 964, 971 (11th

Cir. 2005). Moreover, courts may set the security at a *de minimis* value or waive it altogether

where the defendant does not provide any evidence of damages that would arise from wrongfully

granting the injunctive relief. *See Sapphire Consulting Servs. LLC v. Anderson*, 2021 U.S. Dist.

LEXIS 54101, at *16-17 (M.D. Fla. Feb. 12, 2021). *See also, Doe v. Alame*, No. 3:25-CV-0329-

B, 2025 U.S. Dist. LEXIS 40559, at *12 (N.D. Tex. Feb. 24, 2025)(granting TRO in CARDII

claim and waiving any bond  because the order "only requires that Alame abide by the law, the

risk of harm is low).

      Here, Defendant has not demonstrated and cannot demonstrate any damage that might

come to him if the injunctive relief is improperly granted. There is no monetary penalty which

might come to him because of not being allowed to disseminate the videos and Private Messages.

Accordingly, security should be set at a *de minimis* value or waived entirely.

<u>**CONCLUSION**</u>

      For the foregoing reasons, Plaintiff Jane Doe respectfully requests a temporary restraining

order pending the issuance of a preliminary injunction. Plaintiff seeks an order (1) enjoining

Defendant Bonnell from sharing, publishing, or transmitting, whether directly or indirectly, the

Videos and/or Private Messages; (2) compelling him to remove all publications of Plaintiff's

Private Messages and private information from all forms of public media he controls either

directly or indirectly; (3) ordering Defendant to cease and desist from destroying evidence, and

compelling Defendant to retrieve all messages that he deleted, and  preserve all discoverable

evidence, that is in any way related to this case, or that could prove any non-consensual

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 25

disclosures, from his phones, computers, tablets, online accounts and platforms, or any other

devices, and preserve all internet routers or other hardware in their current form or image so they

may be searched for information relevant to this action, or be at risk of an order of spoilation; (4)

compel Defendant to direct third parties, including Kiwifarms, https://notfans.com,

https://thothub.cam, pornbiz.com, epawg.com, and erome.com., and social media accounts in

writing to comply with this Order by removing any version of the video containing Plaintiff's

image and likenesses from any form of public media under their control; and (5) compelling

Defendant to attest in a declaration that he has complied with this Court's order and describe the

steps he has taken to do so.

WHEREFORE, Plaintiff's memorandum brief, exhibits, and federal statutes having been

considered, Plaintiff prays for the above requested relief to be granted, and Plaintiff further prays

for such other and general relief as the Court deems necessary and proper.

Dated: April 3, 2025.

Respectfully submitted,

**SANCHEZ-MEDINA, GONZALEZ, QUESADA,
LAGE, GOMEZ & MACHADO, LLP**
*/s/Carlos A. Garcia Perez*
CARLOS A. GARCIA PEREZ
Florida Bar No. 106895
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel.: (305) 377-1000
Primary E-Mail: cgarciaperez@smgqlaw.com
Secondary E-Mail: angie@smgqlaw.com

JSP LAW, LLC
*/s/ Joan Schlump Peters*
Joan Schlump Peters (admitted *pro hac vice*)
4819 W. Blvd. Ct.
Naples, Florida 34103
Tel.: 305-299-4759
Email: petersjoan@bellsouth.net

DOE v BONNELL II
Case No: 1:25-cv-20757-JB/Torres
Page 26

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system and copies were electronically sent to all counsel of records via the same.

By:  */s/Carlos A. Garcia Perez*
        Attorney