## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:25-cv-20757-JB/Torres

JANE DOE,

      Plaintiff,

v.

STEVEN K. BONNELL II,

      Defendant.

_____/

## DEFENDANT STEVEN K. BONNELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
ROBERT L. RASKOPF
Florida Bar No.: 1040022
PATRICIA M. PATINO
Florida Bar No.: 1007702
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593
Email: rraskopf@bilzin.com;
ppatino@bilzin.com

and

**BERK BRETTLER LLP**
ANDREW B. BRETTLER
California Bar No.: 262928
JAKE A. CAMARA
California Bar No.: 305780
9119 West Sunset Blvd.
West Hollywood, CA 90069-3106
Tel: (310) 278-2111
Email: abrettler@berkbrettler.com;
jcamara@berkbrettler.com
(admitted *pro hac vice*)

*Counsel for Steven K. Bonnell II*

## <u>TABLE OF CONTENTS</u>

Page(s)

INTRODUCTION………………………………………………………………   6-7

STATEMENT OF FACTS…………………………………………………...   8-12

LEGAL STANDARD………………………………………………………..   12-13

ARGUMENT………………………………………………………………   13

I.   PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF…………………   13

   A.   Because Plaintiff Cannot Establish a Substantial Likelihood of Success on
      the Merits, the Motion Must Be Denied…………………………………   13

     1.   The Court lacks subject matter jurisdiction…………………………..   13-15

     2.   The Court should not exercise supplemental jurisdiction over Plaintiff's
        remaining state law claims…………………………………………   15

     3.   Even if the Court retains jurisdiction over the state law claims, Plaintiff
        has not and cannot establish a substantial likelihood of success on the
        merits of those claims…………………………………………………   16-17

   B.   Plaintiff Cannot Establish Irreparable Harm in the Absence of Injunctive
      Relief…………………………………………………………………...   17

     1.   Plaintiff has not provided any evidence of imminent future harm……….   17-20

     2.   Plaintiff's own publication cannot form the basis for irreparable harm….   20-21

II.   THE REQUESTED RELIEF IS NOT NECESSARY OR WARRANTED……..   21

   A.   Requested Orders 1 and 2 Improperly Seek To Enjoin Conduct That Is Not
      Occurring…………………………………………………………………   21-22

   B.   Plaintiff's Claim of Evidence Spoliation (Requested Order No. 3) Is
      Baseless; Regardless, Such Relief Requires a Separate Motion Under Rule
      37(e)…………………………………………………………………………   22

     1.   Plaintiff Admits She Possesses No Evidence of Spoliation……………..   23

     2.   No Spoliation Occurred………………………………………………   23-24

## <u>TABLE OF CONTENTS</u>

Page(s)

3.  Judge Becerra Cast Serious Doubts on Plaintiff's Spoliation Allegations;
    Any Finding of Spoliation Would Be Premature and Unsupported……..  24-25

C.  Requested Order No. 4 Improperly Seeks To Compel Conduct That Bonnell
    Has Already Undertaken…………………………………………………….  25-26

III.    IN THE EVENT THE COURT ISSUES A PRELIMINARY INJUNCTION,
        A SUBSTANTIAL SECURITY BOND SHOULD BE REQUIRED……….  26

IV.     CONCLUSION…………………………………………………………...  26

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Ahmed v. Mayorkas*,
   No. 22-60141-CIV-DIMITROULEAS, 2022 WL 2032301 (S.D. Fla. Mar. 28, 2022) .......... 10

*Alabama v. U.S. Army Corps of Eng'rs*,
   424 F.3d 1117 (11th Cir. 2005) ...................................................................... 15, 19

*All Care Nursing Serv. v. Bethesda Mem'l Hosp.*,
   887 F.2d 1535 (11th Cir. 1989) ............................................................................ 9

*Baggett v. First Nat'l Bank of Gainesville*,
   117 F.3d 1342 (11th Cir. 1997) .......................................................................... 12

*Caloggero v. Carnival Corp.*,
   No. 23-22938-Civ-BLOOM/TORRES, 2024 WL 5375600 (S.D. Fla. Aug. 14, 2024) .......... 20

*Cape Publ'ns, Inc. v. Hitchner*,
   549 So. 2d 1374 (Fla. 1989) .............................................................................. 13

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
   68 F.3d 828 (3d Cir. 1995) ............................................................................... 17

*Carillon Imps., Ltd. v. Frank Pesce Int'l Grp.*,
   112 F.3d 1125 (11th Cir. 1997) .......................................................................... 23

*City of S. Mia. v. Governor*,
   65 F.4th 631 (11th Cir. 2023) ........................................................................... 19

*Conradis v. Buonocore*,
   No. 18-cv-1486-EJK, 2021 WL 4243720 (M.D. Fla. Sept. 17, 2021) .............................. 13, 14

*Diaz v. Hernandez*,
   No. 24-81151-CIV-CANNON, 2024 WL 5341743 (S.D. Fla. Oct. 29, 2024) ....... 10, 16, 17, 22

*Doe v. Constant*,
   No. 24-554, 2024 WL 3512136 (W.D. La. July 23, 2024) ...................................... 16

*Doe v. Unknown Party*,
   No. CV-24-00252-PHX-DLR, 2024 WL 492231 (D. Ariz. Feb. 7, 2024) ........................ 16, 17

*Easterwood v. Carnival Corp.*,
   No. 19-cv-22932-BLOOM/LOUIS, 2020 WL 6781742 (S.D. Fla. Nov. 18, 2020) ............... 21

*Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*,
   470 F.3d 1036 (11th Cir. 2006) .......................................................................... 21

*Fla. Panthers Hockey Club v. Mia. Sports & Exhib. Auth.*,
   939 F. Supp. 855 (S.D. Fla. 1996) ......................................................................... 9

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242, 1247 (11th Cir. 2002) ................................................................. 10

*Jost v. Lakeland Reg'l Med. Ctr.*,
   844 So. 2d 656 (Fla. 2d Dist. Ct. App. 2003) ..................................................... 21

*K.T. v. A Place for Rover*,
   No. 23-02858, 2024 WL 1356221 (E.D. Pa. Mar. 29, 2024) ............................... 11

*Landgraf v. USI Film Prods.*,
   511 U.S. 244, 270 (1994) ..................................................................................... 11

*Leach v. Dist. Bd. of Trs. of Palm Beach*,
   244 F. Supp. 3d 1334 (S.D. Fla. 2017) ................................................................ 14

*Lee v. Christian Coal. of Am., Inc.*,
   160 F. Supp. 2d 14 (D.D.C. 2001) ....................................................................... 17

*Living Color Enters. v. New Era Aquaculture, Ltd.*,
   No. 14-CV-62216-MARRA/MATTHEWMAN, 2016 WL 1105297 (S.D. Fla. Mar. 22, 2016)
   21

*McDonald's Corp. v. Robertson*,
   147 F.3d 1301 (11th Cir. 1998) ......................................................................... 9, 14

*Mia. Beach Fed. Sav. & Loan Ass'n v. Callander*,
   256 F.2d 410 (5th Cir. 1958) ............................................................................... 10

*Molekule Grp. v. Aura Smart Air, Ltd.*,
   No. 23-81291-CIV-CANNON, 2023 WL 9117332 (S.D. Fla. Oct. 11, 2023)......................... 10

*Murphy Bus. & Fin. Corp. v. Scivally*,
   No. 12–CV–0083–T–23AEP, 2012 WL 2048227 (M.D. Fla. May 3, 2012) ......................... 15

*Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
   896 F.2d 1283 (11th Cir. 1990) ........................................................................... 16

*TransUnion Risk & Alt. Data Sols., Inc. v. Challa*,
   676 F. App'x 822 (11th Cir. 2017) ....................................................................... 15

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ................................................................................................ 12

**<u>Statutes</u>**

15 U.S.C. § 6851 ........................................................................................................... 12

28 U.S.C. 1367(c)(3) ..................................................................................................... 14

Fla. Stat. § 784.049 ................................................................................................ 14, 15

**<u>Rules</u>**

Fed. R. Civ. P. 37 .......................................................................................................... 20

Fed. R. Civ. P. 65 .......................................................................................................... 24

## INTRODUCTION

The Court already denied Plaintiff's application for a TRO finding there was no "emergency" because Plaintiff waited too long to file. The Court should deny the remaining Motion for Preliminary Injunction because Plaintiff fails to meet the standard for an injunction and there is no conduct to enjoin. Plaintiff is asking the Court to order Defendant Bonnell to do things he has already done or is under a legal obligation to do. Moreover, Plaintiff has engaged in and continues to engage in the same conduct that she asks the Court to prevent Bonnell from doing. Plaintiff has intentionally attracted publicity for this case, including by soliciting public donations to cover her legal fees. Now, her attempt to enjoin Bonnell, while simultaneously engaging in the same conduct she wants him to stop, is fundamentally unjust. The Motion fails as a matter of law because Plaintiff cannot demonstrate, through admissible evidence, that she is entitled to the injunctive relief she requests or that such relief is necessary.

As a threshold matter, the Court lacks subject matter jurisdiction here. Count I of the Complaint, for violation of 15 U.S.C. § 6851, is the sole basis for federal question jurisdiction, yet Count I is fatally flawed because the alleged violation *preceded the effective date of the statute by nearly six months*. Because the statute is not retroactive, the Court does not have subject matter jurisdiction over Plaintiff's federal claims and should decline to exercise supplemental jurisdiction over the remaining state law claims. Because the Court has no jurisdiction to hear this case, Plaintiff cannot establish a substantial probability of success on the merits.

Critically, even if the Court had jurisdiction, it should deny the Motion because Plaintiff cannot demonstrate irreparable harm. The Complaint concerns a single transmission of one video

to one individual *over three years ago*. Indeed, at the April 4, 2025 status conference, Judge

Becerra stated succinctly:

> There is nothing that's happening today that wasn't happening
> when you filed the suit or even a month before, right? . . . . The
> order that you're seeking requires [Bonnell] to do nothing more
> than he's already required to do. . . . There is no urgent issue
> before the Court.

## STATEMENT OF FACTS

Defendant Bonnell is a live streamer and progressive political commentator, commonly

known online as "Destiny." Bonnell Decl. ¶ 3. Plaintiff also is an online streamer who uses the

screenname "Pxie." *Id.* ¶ 4. Plaintiff and Bonnell met each other online in late-2019. *Id.* ¶ 5.

Shortly after meeting online, on October 23, 2019, Plaintiff sent Bonnell a private message and

developed a friendship with him. *Id.* Eventually, Plaintiff and Bonnell began openly discussing

their sex lives with each other.  *Id.*

Notwithstanding Plaintiff's January 3, 2025 social media post in which she claimed, "*I

have never ever sent videos of other people to Steven [Bonnell] ever*," on multiple occasions,

Plaintiff offered to send Bonnell, and in fact did send him, sexually explicit videos of herself and

third parties. *Id.*¶ 5 & Ex. A. For example, on March 17, 2020, Plaintiff messaged Bonnell, "*I

took some videos with the guy I can send you later if you're interested . . . I'll send them to you

when I get them*." *Id.* In that same conversation, she encouraged Bonnell to send her similar

videos of himself with third parties: "*I'm open to anything you want to send me u know im a

super curious person*." *Id.* On March 19, 2020, Plaintiff sent Bonnell four separate sexually

explicit videos of herself engaging in sex acts with third parties. *Id.*

In another message from March 19, 2020, Plaintiff suggested that she and Bonnell meet

in person and make sexually explicit videos together: "*Would you wanna make some videos

*together?*" *Id.* ¶ 6; Ex. B. Plaintiff repeated this suggestion on September 6, 2020: "*Do you wanna take videos when we do stuff together?*" *Id.*

Six days later, on September 12, 2020, Plaintiff and Bonnell met and agreed to record their sexual encounter (the "Video"). *Id.* ¶ 7. At that time, Bonnell was engaged to be married. *Id.* Bonnell told Plaintiff that he and his then-fiancée enjoyed watching such videos of each other. *Id.* Plaintiff did not object to Bonnell showing the Video to his then-fiancée, or to anyone else. *Id.* Plaintiff's correspondence and the content she previously shared with Bonnell, demonstrated to Bonnell that she was comfortable sending explicit videos of herself with other sex partners. *Id.*

In early 2022, Bonnell was contacted on Discord by an individual who used the screen name "Rose." They quickly began an online friendship. *Id.* ¶ 8. During their friendship, Bonnell exchanged sexually explicit messages and content with Rose, including the Video that he made with Plaintiff more than a year earlier. *Id.* Plaintiff was anonymous as Bonnell never identified her by her legal name, her screen name, or otherwise. *Id.* Likewise, Rose never indicated that she recognized Plaintiff. *Id.*

Bonnell transmitted the Video to Rose the Video on April 9, 2022 and believes that she is the only person to whom he sent the Video. *Id.* ¶ 9 & Ex. C. And, since that date, Bonnell has not shared, or otherwise transmitted the Video to any other third party and *will not do so*. *Id.* ¶ 10.

Over two years later, on November 29, 2024, Bonnell learned that he was the victim of revenge pornography. *Id.* ¶ 12. A number of his communications and sexually explicit videos were published to a website called KiwiFarms. *Id.* Bonnell does not know who leaked and unlawfully published his content online, but he suspects it was someone with access (whether lawfully or not) to Rose's Discord chats. *Id.*

On the same day that Bonnell discovered the leak, Plaintiff contacted him about it. Plaintiff made it clear that she did not want to be identified in the Video and wrote that she was "*100% denying it's me . . . since it's not super clear [it's] my face or anything like that.*"  *Id.* ¶ 13 & Ex. D. Within days, and at Plaintiff's request, Bonnell took steps to have the Video removed from various websites. *Id.* ¶ 14. Among other things, Bonnell retained specialized legal counsel, with expertise in revenge pornography matters, to assist him in connection with the removal efforts. *Id.* Bonnell provided Plaintiff with updates on his progress. *Id.* ¶ 15.

Nevertheless, on December 11, 2024, Plaintiff's tone towards Bonnell turned hostile and threatening, prompting him to contact a mutual friend of his and Plaintiff to see if there was anything he could do to help further. *Id.* ¶¶ 16-17. After speaking with Plaintiff, their mutual friend advised Bonnell that he should offer money to Plaintiff. *Id.*

Then, on or about January 22, 2025, Bonnell received a document preservation demand letter from Plaintiff's attorneys. *Id.* ¶ 19. On January 31, 2025, Plaintiff's attorneys sent him a follow-up letter demanding that he pay Plaintiff $15 million for damages she allegedly incurred and take measures to prevent the further dissemination and/or distribution of the Video. *Id.* Upon receipt of the first letter, Bonnell began preserving all documents and correspondence pertaining to Plaintiff's purported claims. *Id.* ¶ 20.

Contrary to Plaintiff's accusations, Bonnell has *not* permanently deleted or destroyed *any* evidence pertaining to this lawsuit.  *Id.* ¶ 21. In an effort to comply with Plaintiff's and her lawyers' demand that Bonnell limit the spread of the Video, he deleted files and correspondence but only *after* he took adequate steps to preserve all such evidence.[1]  *Id.*

---

[1] Ironically, it is Plaintiff who engaged in spoliation. For example, on or about January 20, 2025, Plaintiff deleted a message she sent Bonnell on December 12, 2024, in which she wrote, "*I feel*

Despite claiming that at least 15 potential witnesses contacted her purporting to have evidence that Bonnell shared the Video with them, Plaintiff provided only *one* declaration from a person named Hannah Daniels Brooke purporting to state as much.  *Id.* ¶ 11. However, the statements in Brooke's declaration have nothing to do with the Video at the center of this dispute. *Id.* The "Video" to which Brooke refers in her declaration, Brooke Decl. ¶¶ 5-7, is an unrelated video featuring Bonnell and a third party. *Id.* ¶ 11.

Plaintiff played a significant role in exacerbating the harm that she allegedly suffered by posting a lengthy public statement and promoting the leaks on her Substack page. *Id.* ¶ 23. In that post, Plaintiff falsely accused Bonnell of intentionally distributing "pornographic content" and "using a proxy to widely distribute" the Video for self-promotional reasons. *Id.* Nonsense. In reality, Bonnell, was the primary target of the leaks. *Id.* Plaintiff's false accusations and public narrative not only mischaracterized the events, but also amplified the spread of the Video, thereby worsening the purported harm that Plaintiff attributes to Bonnell. *Id.*

In that Substack post, Plaintiff also indicated that she was planning to file a federal lawsuit against Bonnell.  *Id.* ¶ 24 & Ex. F. She then used her various social media accounts to advertise and promote her narrative.  For example, on X and BlueSky Social she wrote, "*I will be suing [Destiny] in federal court.  Here's my story*," and provided a link to her Substack. *Id.* Plaintiff's commentary drew significant attention online and caused innumerable people to search for and download the Video. *Id.*

Additionally, Plaintiff and her friend, Lauren Dreeben Hayden, created a GiveSendGo page to raise money to cover Plaintiff's legal fees in this lawsuit. *Id.* ¶ 26 & Ex. H. The

---

*like whatever I ask you to cover will be too high a price . . . .*"  *Id.* ¶¶ 18, 22 & Ex. E. Less than one week after Plaintiff deleted the message, her attorneys sent the $15 million demand. *Id.* ¶ 22.

fundraising page also includes a link to Plaintiff's Substack post. To date, Plaintiff has raised approximately $50,000 of her $130,000 fundraising goal. *Id.*

Plaintiff's public comments and fundraising efforts have led to more interest in the Video. *Id.* ¶ 28. In her Motion papers, Plaintiff directs the Court and the public to various websites where the Video supposedly can be found. *Id.* Without even filing her pleadings under seal, Plaintiffs identified specific websites on which the Video is available for viewing and/or download, provided URLs to those sites, and even suggested search terms. Mot. at 7-8.

## LEGAL STANDARD

A district court may grant injunctive relief only if the movant demonstrates the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "A preliminary injunction is an *extraordinary and drastic remedy* not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv. v. Bethesda Mem'l Hosp.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (emphasis added). "If the movant fails to prove one of the four elements, an injunction should not issue."[2] *Fla. Panthers Hockey Club v. Mia. Sports & Exhib. Auth.*, 939 F. Supp. 855, 858 (S.D. Fla. 1996).

Federal courts apply a heightened standard when considering mandatory injunctions, i.e. where, as here, the movant seeks to compel affirmative conduct. Such relief is extraordinary and

---

[2] This brief focuses on the first two prongs of the test, i.e., likelihood of success and irreparable injury because those issues are dispositive of the Motion.  But prongs three and four also weigh in Bonnell's favor because Plaintiff failed to demonstrate an imbalance in the equities, or show that the public interest would be served by granting the requested injunctive relief.

appropriate only in rare circumstances. *Diaz v. Hernandez*, No. 24-81151-CIV-CANNON, 2024 WL 5341743, at *1 (S.D. Fla. Oct. 29, 2024). "A mandatory injunction of this nature, especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *Mia. Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958). "When an injunction does more than preserve the status quo . . . an even stronger showing is required*." Ahmed v. Mayorkas*, No. 22-60141-CIV-DIMITROULEAS, 2022 WL 2032301, at *2 (S.D. Fla. Mar. 28, 2022).

## ARGUMENT

### I.   PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.

#### A.   Because Plaintiff Cannot Establish a Substantial Likelihood of Success on the Merits, the Motion Must Be Denied.

Plaintiff's inability to establish a substantial probability of success on the merits of her claims is fatal to her Motion. A plaintiff's probability of success on the merits "generally is the most important of the four" factors a court must consider in issuing injunctive relief. *Molekule Grp. v. Aura Smart Air, Ltd.*, No. 23-81291-CIV-CANNON, 2023 WL 9117332, *5 (S.D. Fla. Oct. 11, 2023). "If the movant is unable to establish a likelihood of success on the merits, *a Court need not consider the remaining conditions prerequisite to injunctive relief*." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (emphasis added). Plaintiff has not and cannot make the requisite showing.

#### 1.   The Court lacks subject matter jurisdiction.

Plaintiff alleges the Court has subject matter jurisdiction because her claims arise under federal law, namely, 15 U.S.C. § 6851, Civil Action Relating to Disclosure of Intimate Images Act ("CARDII"). Compl. ¶ 3. Critically, CARDII took effect on October 1, 2022. *Id.* § 6851. CARDII provides remedies for conduct occurring only *as of* the effective date of the statute. A

court must not "give retroactive effect to statutes burdening private rights unless Congress had made clear its intent." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). No such legislative intent for retroactive application exists here.

Indeed, a federal district court has held that CARDII cannot be applied retroactively to conduct predating the effective date of October 1, 2022. *K.T. v. A Place for Rover*, No. 23-02858, 2024 WL 1356221, at *5 (E.D. Pa. Mar. 29, 2024). In *K.T.*, the plaintiff sought to amend her complaint to add a claim under CARDII for conduct allegedly occurring in March and April 2022. *Id.* at *3. In opposition, defendant asserted that CARDII did not go into effect until October 2022, and that because the newly alleged conduct occurred prior to that date, plaintiff's CARDII claim cannot lie as a matter of law. *Id.* The court applied the holding in *Landgraf* and denied plaintiff's motion for leave to amend, expressly holding that:

> Since there is no clear Congressional intent to apply the statute retroactively, this leads the Court to conclude that § 6851 should not be given retroactive application.

*Id.* at *5.

Here, Bonnell's sole transmission of the Video preceded the effective date of CARDII by nearly six months. In Plaintiff's Complaint, Plaintiff alleges (albeit mistakenly) that Bonnell transmitted the Video to Rose "on or about October 4, 2022." Compl. ¶ 12. Plaintiff's mistake is understandable: In a screenshot of the transmission, the date of the communication appears as "10/04/22." *See* Bonnell Decl. ¶ 9 & Ex. C. However, the date is reflected using the European date format (day/month/year) because Rose was communicating with Bonnell from a European time zone. *Id.*

Notably absent from Plaintiff's Motion is any admissible evidence that Bonnell transmitted the Video after the effective date of the statute because Plaintiff is now aware that the

actual date of transmission was in April 2022, nearly six months before CARDII took effect.[3] Because the date of transmission precedes the effective date of the statute, there is no federal question and no basis for subject matter jurisdiction. Accordingly, Plaintiff cannot establish a likelihood of prevailing on the merits of her claims. The Motion must be denied and the lawsuit dismissed.

> ### 2. The Court should not exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

The remainder of Plaintiff's claims (Counts II-IV) are state law claims only. Federal law is clear that if the root federal claims are dismissed before trial, a court should decline to exercise supplemental jurisdiction over the remaining state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see also* 28 U.S.C. 1367(c)(3) (The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). Indeed, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

Here, Plaintiff's remaining claims raise no federal question, and no diversity jurisdiction exists between the Parties. Counts II-IV arise exclusively under Florida statutory and/or common law and should be dismissed.

---

[3] *See* Def's Evidentiary Objections, Nos. 8, 22-24.

**3.    Even if the Court retains jurisdiction over the state law claims, Plaintiff has not and cannot establish a substantial likelihood of success on the merits of those claims.**

Under Florida law, a statutory claim for Sexual Cyber Harassment (Count II) requires the transmission of sexually explicit material that (1) "contains or conveys the personal identification information of the depicted person" and (2) was transmitted "with the intent of causing substantial emotional distress to the depicted person." Fla. Stat. § 784.049. To prevail on such a claim, a plaintiff must demonstrate that the material was transmitted with "the *explicit intent* to harm plaintiff." *Conradis v. Buonocore*, No. 18-cv-1486-EJK, 2021 WL 4243720, *5 (M.D. Fla. Sept. 17, 2021) (emphasis added). Further, the material must identify the plaintiff by "name, postal or electronic mail address, telephone number, social security number, date of birth, or any unique physical representation."  Fla. Stat. § 784.049(1)(b).

Here, Plaintiff has proffered no evidence to demonstrate that Bonnell transmitted the Video with the specific intent of harming Plaintiff. Indeed, the record demonstrates just the opposite. Almost immediately upon learning of the leak, Bonnell took steps to protect Plaintiff's privacy. Bonnell Decl. ¶ 14. He engaged a specialized law firm at his own expense, sent takedown demands to numerous websites that hosted the Video, and kept Plaintiff up to date on his progress.[4] *Id.* ¶¶ 14-15.

Similarly, under Florida law, a claim for Public Disclosure of Private Facts (Count IV) requires the *publication* by the Defendant of private facts that are offensive. *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989) (emphasis added). Critically, "the publicity

---

[4] Notably, the Video did not include any of Plaintiff's "personal identification information." By Plaintiff's own admission, her face was not identifiable in the Video (Bonnell Decl. ¶ 13 & Ex. D), and the Video does not include Plaintiff's "name, postal or electronic mail address, telephone number, social security number, date of birth, or any unique physical representation." Fla. Stat. § 784.049(1)(b).

given to the private fact must be more than mere publication. The fact must be made public by communicating it *to the public at large* or to so many people that the matter must be regarded as substantially certain to become one of public knowledge." *Leach v. Dist. Bd. of Trs. of Palm Beach*, 244 F. Supp. 3d 1334, 1339 (S.D. Fla. 2017). "[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* Here, no large-scale publication by Bonnell occurred. The Video was transmitted on one occasion to one person. Bonnell Decl. ¶¶ 9-10. Such conduct does not amount to publication, as a matter of law.

Further, Plaintiff's claim for Intentional Infliction of Emotional Distress is similarly deficient. Plaintiff has not cited any authority for the proposition that a single, private transmission of a video to one individual who was unaware of the Plaintiff's identity constitutes "extreme or outrageous conduct." *See Conradis*, 2021 WL 4243720 at *5 (requiring more than mere transmission of a nude image, such as accompanying blackmail or threats to harm). On its face, the alleged conduct was neither retaliatory nor malicious. Indeed, Plaintiff met Bonnell in person for the express purpose of making a sex tape together. They previously exchanged similar content with each other. The potential for distribution of their Video, whether intentionally or not, was certainly within the realm of possibility. Plaintiff's purported outrage now is disingenuous at best.

**B.    Plaintiff Cannot Establish Irreparable Harm in the Absence of Injunctive Relief.**

**1.  Plaintiff has not provided any evidence of imminent future harm.**

To obtain a preliminary injunction, a plaintiff must establish that "irreparable injury will be suffered *unless the injunction issues*." *McDonald's Corp.*, 147 F.3d at 1306 (emphasis added). Indeed, "preventing irreparable harm in the future is the *sine qua non* of injunctive relief."

17

*Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005). Moreover, "[f]or

an injury to be irreparable, it must be 'neither remote nor speculative, but *actual and imminent*.'"

*TransUnion Risk & Alt. Data Sols., Inc. v. Challa*, 676 F. App'x 822, 825 (11th Cir. 2017)

(emphasis added). When a moving party cannot, through admissible evidence, demonstrate that

but for the court's entry of injunctive relief, the movant would suffer irreparable harm, injunctive

relief must be denied. *Murphy Bus. & Fin. Corp. v. Scivally*, No. 12–CV–0083–T–23AEP, 2012

WL 2048227, at *5 (M.D. Fla. May 3, 2012).

      At the April 4, 2025 status conference, Judge Becerra denied Plaintiff's request for a

TRO and cast serious doubt concerning the need for injunctive relief here at all. Indeed, the

alleged damage has already been done, and no evidence exists to establish any continuing

conduct by Bonnell:

> There is nothing that's happening today that wasn't happening
> when you filed the suit or even a month before, right?... I don't see
> why the request for a TRO is not stale…The order that you're
> seeking requires him to do nothing more than he's already required
> to do. . . There is no urgent issue before the Court.

Brettler Decl. ¶¶ 3-4 & Ex. A at 5:20-24, 9:10-11.

      In response to Judge Becerra, Plaintiff's counsel conceded that no imminent future harm

exists: "*I agree that most of the damage has already been done . . . . So yes, I agree with you this

is not an urgent matter.*" *Id.* Ex. A. at 6:10-12.

      As Judge Becerra determined, and as Plaintiff's counsel conceded, no imminent

irreparable harm will be avoided by the issuance of an injunction. Critically, nowhere in

Plaintiff's declaration does she assert, let alone substantiate, that the absence of injunctive relief

will result in some future irreparable harm that has not already occurred. Instead, Plaintiff asserts

that she has already suffered "extreme distress" due to the conduct alleged in the Complaint. *See*

Pl. Decl. ¶ 14. Nowhere in her declaration does Plaintiff allege, let alone substantiate, that future,

imminent harm would be prevented by the issuance of an injunction. She provides no evidence that Bonnell shared the Video on more than one occasion (he has not), no evidence that Bonnell intends to share the Video again (he does not), and no evidence that Bonnell has been or will do anything to exacerbate harm to Plaintiff. Indeed, the requested relief does not prohibit Bonnell from engaging in any conduct that he is not already prohibited by law from doing. There is no ongoing conduct to enjoin, and the absence of evidence demonstrating future irreparable harm is fatal to Plaintiff's Motion. *See Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("We need not address each element because we conclude that no showing of irreparable injury was made.").

Moreover, the case authorities on which Plaintiff relies to support a finding of irreparable harm demonstrate just the opposite. In each of the cases cited by Plaintiff, the moving party established, through admissible evidence, that the alleged conduct was *continuing or even escalating*. For example, in *Doe v. Constant*, No. 24-554, 2024 WL 3512136 (W.D. La. July 23, 2024), the defendant surreptitiously acquired nude photographs of plaintiff and distributed them on multiple occasions to her "family, friends, colleagues, and her office landlord." *Id.* at *1. The plaintiff demonstrated evidence that defendant was "continuing to attempt to engage Plaintiff without her consent" and that he "surreptitiously captured several photographs of plaintiff using his cellular phone while she was testifying in the preliminary injunction hearing." *Id.* at *3. In granting injunctive relief, the court concluded that "this behavior, along with his cyclical pattern of escalating contact with Plaintiff followed by disclosure, tends to show that Defendant poses an imminent risk of dissemination of Plaintiff's intimate visual depictions." *Id.*

Plaintiff's reliance on *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 WL 492231 (D. Ariz. Feb. 7, 2024) and *Diaz*, 2024 WL 5341743 is similarly misplaced. In *Doe*, the

Court found evidence of defendant's continued campaign to harm plaintiff, including "a pattern and practice of retaliating" against plaintiff due to an ongoing custody dispute. *Doe*, 2024 WL 492231 at *3. In *Diaz*, the defendant, Tekashi69, a well-known rap artist, publicly posted sexually explicit videos of plaintiff on multiple online platforms for commercial and promotional purposes. *Diaz*, 2024 WL 5341743 at *2. Evidence demonstrated that the defendant continued to display and market the explicit content to promote sales of his music. The court granted injunctive relief accordingly. *Id.* at *4.

Here, there is no continuing conduct, let alone escalating conduct, to be enjoined. Plaintiff has submitted no evidence that Bonnell continues to distribute the Video. Indeed, he has not. Bonnell transmitted the Video on just one occasion over three years ago. Bonnell Decl. ¶¶ 9-10. Bonnell has never posted the Video on an online platform, nor has he threatened to do so. *Id.* Bonnell has taken no steps to exacerbate the harm. In fact, he has done just the opposite. Simply put: There is no ongoing conduct to enjoin, and therefore no irreparable harm to prevent.

### 2. Plaintiff's own publication cannot form the basis for irreparable harm.

Plaintiff's claim of irreparable harm is further belied by her own conduct. If a party has "acted to permit the outcome which they find unacceptable, we must conclude that such an outcome is not an irreparable injury. If the harm complained of is self-inflicted, it does not qualify as irreparable." *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995). "The case law is well-settled that '[a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.'" *Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001).

Here, Plaintiff exacerbated her own alleged harm. Before posting online about this lawsuit and her purported claims against Bonnell, Plaintiff admitted to him that she was not

publicly identifiable in the Video. Bonnell Decl. ¶ 13 & Ex. D. But for Plaintiff's own public comments about the leak, she would have, for the most part, remained anonymous. However, on January 20, 2025, Plaintiff published a Substack post wherein she publicly identifies herself as the woman depicted in the Video (a fact previously unknown to the general public), indicated that she was planning to file a lawsuit against Bonnell, and falsely accused Bonnell of "widely distributing" the Video. *Id.* ¶ 23. Plaintiff also created a GiveSendGo page to raise money to cover her legal fees in connection with this lawsuit. *Id.* ¶ 26 & Ex. H. Further, Plaintiff used her social media accounts to advertise and promote her claims and solicit donations. *Id.* And, in some of her public statements, including in her own motion papers, Plaintiff identified specific websites on which the Video is available and provided URLs for those sites as well as search terms to use to find the Video. *Id.* ¶ 28. Accordingly, Plaintiff has not and cannot establish imminent irreparable harm in the absence of injunctive relief because any harm she allegedly suffered, was largely self-inflicted.

## II.     **THE REQUESTED RELIEF IS NOT NECESSARY OR WARRANTED.**

Plaintiff seeks four distinct orders from this Court, none of which are supported by admissible evidence or legal authority. Plaintiff requests that the Court (1) enjoin Bonnell "from further sharing, distributing, or publishing" the intimate Video of Plaintiff; (2) order Bonnell to "remove the Video" and "all messages between him and Plaintiff" from all forms of public media; (3) order Bonnell to cease and desist from spoliating or destroying evidence; and (4) order Bonnell "to direct third parties in writing to remove all published intimate images/video of Plaintiff" (the "Requested Orders"). *See* Mot. at 6.

### A.     **Requested Orders 1 and 2 Improperly Seek To Enjoin Conduct That Is Not Occurring.**

Requested Orders Nos. 1 and 2 seek to enjoin conduct that is not occurring. Critically,

"[P]ast occurrences of unlawful conduct do not establish standing to enjoin the threat of future unlawful conduct." *City of S. Mia. v. Governor*, 65 F.4th 631, 637 (11th Cir. 2023). "[A]n injunction is limited to prospective relief . . . . Thus, a preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law." *Alabama*, 424 F.3d at 1133.

Here, Bonnell has never published the Video to any public forum. Bonnell Decl. ¶ 10. Since April 9, 2022, *over three years ago*, Bonnell has not shared or otherwise transmitted the Video to any other third party. *Id.* Plaintiff has not provided any admissible evidence to establish otherwise.[5] Pursuant to well-established federal law, a single past instance of transmission (one that occurred over three years ago, no less) cannot form the basis for injunctive relief. *See, e.g.*, *City of S. Mia.*, 65 F.4th at 637; *Alabama*, 424 F.3d at 1133.

Further, despite Plaintiff's numerous public comments about this suit and her allegations against Bonnell, she seeks to enjoin him from defending himself in the same online community. Specifically, Plaintiff attempts to prevent Bonnell from using or publicizing her prior messages with him, many of which cast serious doubt on Plaintiff's purported claims. Plaintiff's request is particularly unwarranted given that she was the first to publicize the parties' private communications. For example, in her January 20, 2025 Substack post, Plaintiff published a self-described "Evidence Log" wherein she links to three private communications between Plaintiff and Bonnell. Bonnell Decl. ¶ 23. Plaintiff's attempt to muzzle Bonnell, while maintaining her ability to speak freely about the case, is fundamentally unjust. Requested Orders Nos. 1 and 2 should be denied accordingly.

**B.**    **Plaintiff's Claim of Evidence Spoliation (Requested Order No. 3) Is Baseless; Regardless, Such Relief Requires a Separate Motion Under Rule 37(e).**

---

[5] *See* Def's Evidentiary Objections, Nos. 8, 22-24.

### 1.   Plaintiff Admits She Possesses No Evidence of Spoliation.

Plaintiff's assertion that Bonnell has been "systematically deleting and destroying evidence," Mot. at 13, is particularly absurd given the procedural posture of this case. As an initial matter, the proper channel to seek sanctions for alleged evidence spoliation is by noticed motion pursuant to Rule 37(e) of the Federal Rules of Civil Procedure. Notably, at the April 4, 2025 status conference, Judge Becerra told Plaintiff's counsel just that. Brettler Decl., Ex. A at 12:9-10. Plaintiff's counsel argued that Plaintiff has been "*trying to compile enough evidence to file a motion for spoliation*" and that she was "*waiting for a specific piece of evidence.*" *Id.* at 6:3-9. By Plaintiff's own admission, her allegations of evidence spoliation fail.

Critically, Plaintiff has not yet served Bonnell with *any* document requests in this action. Brettler Decl. ¶ 6. "Spoliation is a discovery offense, so issues surrounding alleged spoliation should be resolved during discovery." *Caloggero v. Carnival Corp.*, No. 23-22938-Civ-BLOOM/TORRES, 2024 WL 5375600, *3 (S.D. Fla. Aug. 14, 2024). Due to Plaintiff's failure to serve document demands, she has no basis to assert—let alone evidence to support—her contention that evidentiary material has been destroyed or otherwise lost. No such evidence of spoliation exists, and for good reason: Bonnell has preserved all evidentiary material consistent with his legal obligations. Bonnell Decl. ¶¶ 20-21.

### 2.   No Spoliation Occurred.

To make a finding of evidence spoliation, "the Court must ensure that the four requirements are met: (1) the information sought constitutes Electronically Stored Information; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Easterwood v. Carnival Corp.*, No. 19-cv-22932-

BLOOM/LOUIS, 2020 WL 6781742, at *4 (S.D. Fla. Nov. 18, 2020). Critically, "Rule 37(e) precludes any sanctions or curative measures if the ESI can be restored or replaced through additional discovery." *Living Color Enters. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216-MARRA/MATTHEWMAN, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016).

Further, concealment of evidence from the *general public* does not, by itself, constitute evidence spoliation. *See Jost v. Lakeland Reg'l Med. Ctr.*, 844 So. 2d 656, 658 (Fla. 2d Dist. Ct. App. 2003) ("Concealment of evidence . . . does not form a basis for a claim of spoliation" under Florida law); *see also Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*, 470 F.3d 1036, 1043 (11th Cir. 2006) ("plaintiff must allege the destruction of evidence as opposed to the concealment of evidence to state a claim for spoliation of evidence under Florida law").

Here, Bonnell's concealment of purported evidence from the *general public*, which was done at Plaintiff's request, does not constitute spoliation as a matter of law. As Plaintiff confirms in her declaration, she herself requested that Bonnell "delete" the Video and "any and all" content related to her, wherever it may exist. Her lawyers made a similar demand and Bonnell complied. Doe Decl. ¶ 9; Bonnell Decl. ¶ 13. Specifically, upon receipt of Plaintiff's first demand letter, Bonnell took steps to preserve all documents and correspondence pertaining to Plaintiff's purported claims. *Id.* at ¶ 19.

### 3. Judge Becerra Cast Serious Doubts on Plaintiff's Spoliation Allegations; Any Finding of Spoliation Would Be Premature and Unsupported.

At the April 4, 2025 status conference, Judge Becerra cast significant doubt concerning Plaintiff's allegations of evidence spoliation. In addition to warning Plaintiff's counsel that any allegation of evidence spoliation should be addressed by a separate noticed motion, Judge Becerra remarked:

> And I will tell you that even as you've pled it so far, we'll see what the defense says, but if I got sued for distributing the materials

> about a woman and I may have done that with other women, then I might say to myself 'Maybe I shouldn't do that anymore. Let me delete that. Let me take that back. Let me not do these things I'm being alleged that I'm doing because maybe these are bad things I shouldn't be doing.' That may be one of the things that's going on. *That's not spoliation* . . . . Some of the stuff that's in this motion, I'm not finding on its face what the connection is to this case.

Brettler Decl., Ex. A at 7:9-18 (emphasis added).

Moreover, in denying Plaintiff's request for a TRO, Judge Becerra expressed further doubt over the need for injunctive relief pertaining to alleged spoliation of evidence:

> I don't even think that's [spoliation] subject to the TRO, and I'll tell you why . . .  he can't destroy evidence now, right? You can't destroy evidence after you're on notice of the suit and the preservation letter has been sent; so if he is in fact destroying evidence, he can't do that. If he doesn't think it's destroying evidence for some reason, well that will all play out . . . in a motion for spoliation.

*Id.* at 9:1-16.

Plaintiff has not and cannot proffer any evidence of evidence spoliation, and the requested injunctive relief on that basis is both premature and unsupportable.

**C.    Requested Order No. 4 Improperly Seeks To Compel Conduct That Bonnell Has Already Undertaken.**

Plaintiff requests Bonnell be compelled "to direct third parties in writing to remove all published intimate images/video of Plaintiff." Mot. at 6. Plaintiff has already done that. Bonnell Decl. ¶ 14. Aside from the fact that a court may grant affirmative injunctive relief in only the rarest of circumstances, *Diaz*, 2024 WL 5341743 at *1, almost immediately after Bonnell was informed of the leak, he retained specialized legal counsel, with expertise in revenge pornography matters, to assist him in removing the sexually explicit content Internet, including the Video. *Id.* While the publication of the leaked content on third-party platforms is not within Bonnell's control, some websites complied with Bonnell's requests to remove the content.

Plaintiff's requested relief has already been exhausted, and Requested Order No. 4 should be denied accordingly.[6]

## III. IN THE EVENT THE COURT ISSUES A PRELIMINARY INJUNCTION, A SUBSTANTIAL SECURITY BOND SHOULD BE REQUIRED.

The Federal Rules of Civil Procedure mandate that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Whether to require a bond in any particular case—and the amount of any such bond demanded—is within the discretion of the trial judge. *See Carillon Imps., Ltd. v. Frank Pesce Int'l Grp.*, 112 F.3d 1125, 1127 (11th Cir. 1997).

Here, as a direct result of Plaintiff's false allegations and public smear campaign, Bonnell has lost over $300,000 in revenue from streaming platforms. Bonnell Decl. ¶ 29. To the extent a preliminary injunction is entered against Bonnell which restricts his ability to defend himself online, Bonnell will lose significantly more revenue, in addition to substantial out-of-pocket costs and fees that he will be forced to incur in connection with attempted compliance. *Id.* To that end, Plaintiff should be required to post security in an amount no less than $500,000, in the event the Court grants her Motion.

## IV. CONCLUSION

For the reasons stated herein, Bonnell respectfully requests that the Court deny Plaintiff's Motion in its entirety. In the event that the Court grants Plaintiff's Motion, Bonnell respectfully requests that Plaintiff be ordered to post a security in the amount of $500,000.

---

[6] Plaintiff, too, has the ability and legal right to seek removal of the Video from the online platforms on which it was hosted, although Bonnell is not aware of any efforts Plaintiff has made in that regard. Bonnell Decl. ¶ 15.

Dated: April 25, 2025

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

By: /s/ *Robert L. Raskopf*
Robert L. Raskopf, Esq.
Florida Bar No.: 1040022
rraskopf@bilzin.com
Patricia M. Patino, Esq.
Florida Bar No.: 1007702
ppatino@bilzin.com

and

**BERK BRETTLER LLP**
9119 West Sunset Blvd.
West Hollywood, CA 90069-3106
Tel: (310) 278-2111

By: /s/ *Andrew B. Brettler*
Andrew Brad Brettler, Esq.
California Bar No.: 262928
abrettler@berkbrettler.com
Jake A. Camara, Esq.
California Bar No.: 305780
jcamara@berkbrettler.com
(admitted *pro hac vice*)

*Counsel for Steven K. Bonnell I*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 25, 2025, a true and correct copy of the foregoing was served on all parties via transmission of Notices of Electronic Filing generated by CM/ECF and via electronic transmission to counsel of record for these parties.

By:      /s/ *Robert L. Raskopf*
Attorney