# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:25-cv-20757-JB/Torres

JANE DOE, Plaintiff,

v.

STEVEN K. BONNELL II,

Defendant.

_____/

### PLAINTIFF JANE DOE'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**SANCHEZ-MEDINA, GONZALEZ, QUESADA,**
**LAGE, GOMEZ & MACHADO, LLP**
CARLOS A. GARCIA PEREZ
Florida Bar No. 106895
GUSTAVO D. LAGE
Florida Bar No. 972551
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel.: (305) 377-1000
Primary E-Mail: cgarciaperez@smgqlaw.com
Secondary E-Mail: angie@smgqlaw.com

JSP LAW, LLC
Joan Schlump Peters (admitted *pro hac vice*)
4819 W. Blvd. Ct.
Naples, Florida 34103
Tel.: 305-299-4759
Email: petersjoan@bellsouth.net

Counsel for Plaintiff

## TABLE OF CONTENTS

| | Page(s) |
|---|---|
| TABLE OF CONTENTS …………………………………………… | 2 |
| TABLE OF AUTHORITIES …………………………………………….. | 3 |
| INTRODUCTION ……………………………………………………….. | 4, 5 |
|     OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS AND EXHIBITS ……………………………………… | 5, 6, 7 |
| ARGUMENT ……………………………………………………………….. | 7 |
|   I.   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF……. | 7 |
|       A.  PLAINTIFF'S CLAIMS HAVE A LIKELIHOOD OF SUCCESS ON THE MERITS……………………….. | 7 |
|           1. The Court Has Subject Matter Jurisdiction and Thus the CARDII Claim is Likely to Succeed …. | 7 |
|           2. Plaintiff Has Established a Likelihood of Success on Her State Law Claims ……………………………. | 7, 8, 9 |
|       B.  PLAINTIFF HAS ESTABLISHED IRREPARABLE HARM REQUIRING INJUNCTIVE RELIEF …………... | 9, 10, 11 |
|           1. The Harm to Plaintiff is Not Self-Inflicted………..... | 11, 12, 13 |
|   II.  THE REQUESTED RELIEF IS NECESSARY AND WARRANTED ……………………………………………… | 13 |
|       A. Requested Orders 1 and 2 Should Be Granted …………….. | 13, 14 |
|       B. Requested Order 3 Should Be Granted …………………….. | 14, 15, 16 |
|       C. Requested Orders 4 and 5 Should be Granted …………….. | 17 |
|   III.  DEFENDANT'S DEMAND FOR A $500,000 SECURITY BOND IS UNWARRANTED ……………………. | 17 |
| CONCLUSION …………………………………………………………. | 18 |
| CERTIFICATE OF SERVICE ………………………………………….. | 19 |

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Diaz v. Hernandez*, No. 24-CV-81151-AMC, 2024
U.S. Dist. LEXIS 238107, *8, (S.D. Fla. Oct. 29, 2024) ……………………     11

*Doe v. Constant*, No. 24-554, 2024 U.S. Dist. LEXIS
130253, *9 (W.D. La. 2024) ……………………………………………………     10

*Gegas v. St. Matthew's Univ. Sch. of Med.*, 2023 U.S. Dist.
LEXIS 176970, at *10 (M.D. Fla. Sep. 4, 2023) …………………………….     7

*Leach v. Dis. Bd. of Trs. Of Palm Beach*,
244 F. Supp. 3d 1334, 1339 (S.D. Fla. 2017) …………………………………..     9

*Molekule Grp., Inc. v. Aura Smart Air, Ltd.*, No. 23-81291-
CIV-CAN, 2023 U.S. Dist. LEXIS 232486, *13 (S.D. Fla. Oct. 11, 2023) ….     18

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232
(11th Cir. 2005) ……………………………………………………………………     18

*Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) …………………….     10, 11

**Federal Statutes**

15 U.S.C. §6851 ………………………………………………………………     5

15 U.S.C. § 6851(b)(3)(A)(ii) ………………………………………………...     11

**Rules**

Rule 401 of the Federal Rules of Evidence …………………………………..     5

Rule 403 of the Federal Rules of Evidence …………………………………..     5

## INTRODUCTION

This case is about Defendant Steven K. Bonnell, II's ("Bonnell" or "Destiny") nonconsensual sharing of a sexually explicit Video[1] of Plaintiff Jane Doe ("Plaintiff" or "Pxie"), who in the Defendant's own words was "young and kind of new" at the time the Video was taken. Dkt. 42-4. The Defendant has expressly admitted that he i) later shared the Video to a third party with the screen name Rose (*id.*), ii) without Plaintiff's consent (Dkt. 21, pp. 8-9) and iii) that he "obviously…severely (at the very least psychologically) damaged [Plaintiff]." *Id.*, p. 9. These are the relevant facts that support Plaintiff's Motion for a Preliminary Injunction ("Motion")(Dkt. 21). Despite being unable to dispute these admitted facts, Defendant filed an Opposition to the Motion (Dkt. 42) ("Opposition") that is replete with completely irrelevant, deliberately inflammatory allegations that are solely intended to further harass and humiliate Plaintiff.

Defendant also relies on false and misleading statements in his attempts to undermine the clear grounds which support the requested injunctive relief. The Opposition audaciously strives to portray *the Defendant* as "the victim of revenge pornography," despite the fact that i) Defendant admits he has no idea who published the Video or the other videos from his seemingly vast library of intimate images (Dkt. 42-1, ¶12), and ii) Defendant is the ***sole*** person responsible for the non-consensual sharing of his trove of intimate images. He is by no means the victim, but rather the perpetrator, and should face the consequences for his shameful and unlawful conduct.

To convince this Court that there is no likelihood of success on the merits because it lacks subject matter jurisdiction, Defendant provides a statement under oath that he has not shared the Video with anyone other than Rose (*id.* at 9), but the evidence clearly shows otherwise. <u>Plaintiff has obtained evidence that Defendant shared the Video not only with Rose, but with another</u>

---

[1] All capitalized terms herein have the meaning ascribed in the Complaint, Dkt. 1, and the Motion for a Preliminary Injunction, Dkt. 21.

woman in November 2023, well past the effective date of the federal statute, 15 U.S.C. § 6851 ("CARDII"), and thus this Court indeed has subject matter jurisdiction.

Additionally, as will be shown below, Plaintiff has demonstrated a likelihood of success on the three state law claims. Plaintiff has also demonstrated irreparable harm because the Video, and the Private Messages is still accessible to the public causing ongoing emotional distress to Plaintiff. The relief requested herein is more than warranted.

## OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS AND EXHIBITS

Defendant's purported "Statement of Facts" is more accurately entitled a "Misstatement of Facts." These misleading misstatements, set forth below, should be stricken. Defendant also includes statements and exhibits that are not relevant and have *no bearing on the issues before the Court*. It is an uncontested fact that Bonnell shared the Video without Plaintiff's consent, see *ante*. The only issue contested by Defendant is the date that the share occurred. Plaintiff has never alleged that the taking of the videos was non-consensual – only Bonnell's sharing of the videos— the issue of consent for the taking of the videos is not before the Court. Thus, these statements and exhibits (specifically Dkts. 42-2, 42-3) are gratuitous and were included for the sole purpose of embarrassing, harassing and prejudicing the Plaintiff. Pursuant to Rules 401 and 403 of the Federal Rules of Evidence, Plaintiff objects to these statements and the exhibits at dockets 42-2 and 42-3 and they should be stricken.

- "Plaintiff offered to send Bonnell, and in fact did send him, sexually explicit videos of herself and third parties." Opp. p. 8, citing Bonnell's declaration at Dkt. 42-1 and exhibit at Dkt. 42-2. This paragraph goes on to repeatedly refer to "third parties." Bonnell is fully aware that the videos that Plaintiff sent him were only of herself and one person-- her boyfriend (he had consented to the sharing), not of multiple third-parties. This is not only

misleading, it is also irrelevant and prejudicial. The statement and the supporting exhibit at Dkt. 42-2 should be stricken.

- "In that same conversation, she encouraged Bonnell to send her similar videos of himself with third parties…" Opp. p. 8. Same objection as above.

- "In another message from March 19, 2020, Plaintiff suggested that she and Bonnell meet in person to make sexually explicit videos together…" Opp. pp. 8-9, and Dkt. 42-3. This statement, and the exhibit, are not relevant to any issue before the Court, and are inflammatory and prejudicial. Bonnell is taking advantage of this forum to intentionally cause Plaintiff further humiliation by publishing her private sexual information. Indeed, sanctions on Defendant and his counsel are warranted. These private messages were never intended to be made public, as Bonnell is well aware. At the very least, the statement and Docket 42-3 should be stricken since they serve no legitimate purpose in these proceedings.

- "Despite claiming that at least 15 potential witnesses contacted her purporting to have evidence that Bonnell shared the Video with them, Plaintiff provided only one declaration from a person named Hannah Daniels Brooke purporting to state as much." Opp. p. 11, citing 42-1, ¶11. This statement is simply false. Plaintiff has *never* claimed that 15 people told her that Bonnell shared the Video with them. The Motion, p. 11, and supporting exhibit, states: "In or around the end of January 2025, approximately fifteen women reached out to Plaintiff to tell her that they had received sexually explicit images from Bonnell *of other women without the other women's consent*. See Plf's Decl., Exh. 1, ¶ 16." (Emphasis supplied).

There are multiple other misstatements and distortions of the facts in Defendant's Opposition and in his declaration. These will be addressed directly in the arguments below and in Plaintiff's Declaration in support of this Reply, Exhibit 1 hereto.

## ARGUMENT

I. **PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF**

   A. **PLAINTIFF'S CLAIMS HAVE A LIKELIHOOD OF SUCCESS ON THE MERITS**

Although Plaintiff only needs to show a likelihood of success on the merits of one of her four claims in order to prevail, Plaintiff has, and can, show a likelihood of success on all four claims. *Gegas v. St. Matthew's Univ. Sch. of Med.*, 2023 U.S. Dist. LEXIS 176970, at *10 (M.D. Fla. Sep. 4, 2023)( "plaintiff need only demonstrate the likelihood of prevailing on one cause of action").

   1. **The Court Has Subject Matter Jurisdiction and Thus the CARDII Claim is Likely to Succeed.**

Defendant's sole argument for lack of success of the CARDII claim is that he shared the Video with Rose *prior* to the October 1, 2022 effective date of the statute, and thus there is no subject matter jurisdiction. Opp., pp. 13-14. *This argument fails outright because Defendant shared the Video with another woman with the screen name Abbymc in November 2023—after the statute's effective date. See* Exhibit 2 hereto, Declaration of Abbymc. Thus, the Court has subject matter jurisdiction and Plaintiff has demonstrated a likelihood of success on the merits of her CARDII claim.

   2. **Plaintiff Has Established a Likelihood of Success on Her State Law Claims**

Defendant has not, and cannot, demonstrate that Plaintiff does not have a likelihood of success on the merits of the three state law claims. These claims will be addressed *seriatim*.

Count II, Sexual Cyber Harassment: Defendant blithely contends that Plaintiff has not shown the requisite intent to harm the Plaintiff purportedly because he belatedly hired an attorney after being put on notice of Plaintiff's claims and made some attempts to remove the Video from the numerous websites. Opp., p. 16. But Defendant also claims he is the victim here, since not only the Video but multiple videos and sexual content of his was published online. Clearly, he hired an attorney to remove his own content because it was harming his career as a streamer. Regardless of Defendant's claims, the undisputed facts are that he intentionally and non-consensually shared the Video with at least two, and most likely many more, women, knowing full well that Plaintiff would be, and was, severely harmed by such disclosures. Furthermore, it was readily foreseeable by Defendant that his unauthorized sharing of the Video could lead to its further dissemination to others.

Count III, Intentional Infliction of Emotional Distress ("IIED"): Defendant's only argument to this claim is that the "single, private transmission of a video to one individual" does not rise to the level of extreme conduct. Opp., p. 17. But it was clearly not just one transmission. *See* Exh. 2, Decl. Abbymc. The evidence at this early stage of the proceedings, before discovery has even commenced, shows that Bonnell intentionally and recklessly shared the Video with at least two women. Defendant's claim that he only shared the Video once with Rose has no credibility not only because he shared it with Abbymc, but also because he made the same claim to another individual. Witness B's sexually explicit video with Defendant was also leaked in the November 29, 2024 leak of Plaintiff's Video. After the leak, Defendant also told Witness B that he had only shared her video with Rose. But shortly thereafter multiple women informed Witness B that Defendant had shared her videos with them. *See* Exhibit 5 hereto, Declaration of Witness B.

Moreover, the IIED claim is not just about Bonnell's reckless sharing of Plaintiff's intimate images, but adding insult to injury, it is also about his subsequent publication of her Private Messages, and his subsequent and on-going harassment, belittlement and bullying of Plaintiff on his public forums. Decl. Jane Doe, Dkt. 21-1, ¶¶ 11-13.

Count IV, Public Disclosure of Private Facts: Here again Defendant relies on his false statement that he only shared the Video with one person in an attempt to undermine Plaintiff's likelihood of success on this claim. But the evidence shows that not only did he share it with at least two women, but that when he shared it with Abbymc he shared it on Discord via a **live google drive link**. Exh. 2. In fact, Defendant has admitted that he uploaded his trove of intimate images onto Google drive links and then would share a link to the drive to his random followers. Dkt. 42-2, exhibit to Decl. Bonnell. The Discord user with the screen name solotinyleaks who published the Video and other videos on November 29, 2024, stated that he obtained the videos from Bonnell's Google drive link. *See* Exh. 1, Decl. Jane Doe. Moreover, there is evidence from another individual that Destiny shared with her sexually explicit videos of him with other women via a google drive link. *See* Exhibit 4 hereto, Declaration of Witness A. Thus, because Destiny used google drive links to share his pornographic content on Discord, those links remain live and accessible to anyone with a Discord account. In this case the links remained live for years which is why solotinyleaks was able to access them, and which is the reason that the Video and other content "was substantially certain to become one of public knowledge," *Leach v. Dis. Bd. of Trs. Of Palm Beach*, 244 F. Supp. 3d 1334, 1339 (S.D. Fla. 2017), which alone defeats Defendant's assertions regarding the merits of this claim.

### B. PLAINTIFF HAS ESTABLISHED IRREPARABLE HARM REQUIRING INJUNCTIVE RELIEF

Defendant contends that the harm to Plaintiff has already been done, and there is no on-going or further imminent irreparable harm to Plaintiff. This contention is directly contradicted by the fact that the Video is *still* accessible to the public on multiple websites causing on-going harm to Plaintiff. Defendant's empty and self-serving assertion in his declaration that he made efforts to try to remove the Video (Dkt. 42-1, ¶15) is not supported by an iota of evidence, despite submitting over 12 supporting exhibits. Nor did Defendant's counsel Mr. Brettler's declaration (Dkt. 42-11) make any assertions or provide any evidence of any efforts made to remove the Video.

Defendant has the temerity to suggest that the onus should be on Plaintiff to have the Video removed, falsely stating that he is "not aware of any efforts that Plaintiff made to have the Video removed from any site, including KiwiFarms." Dkt. 42-1, ¶15. First—this is yet another of Bonnell's knowingly false statements. On December 5, 2024, Plaintiff exchanged direct messages with Bonnell asking him for his help in removing the Video and informing him of her efforts and the steps she was taking. Exh 1, Decl. Jane Doe. The onus for such action should be squarely on the perpetrator, not the victim. Moreover, Plaintiff hired the undersigned counsel in January 2025 to attempt to get the Video removed from KiwiFarms and the multiple other sites, at her own expense, and significant efforts were undertaken. *See* Declaration of Joan Schlump Peters, Exhibit 3.

Moreover, in addition to the Video, the Private Messages published by Defendant are still accessible to the public on social media sites under his own control, and cause on-going harm to Plaintiff.

Since learning of the nonconsensual sharing of the Video, Plaintiff has suffered extreme emotional distress and *continues* to suffer precisely because the Video and the Private Messages are still available for the public to view. Additionally, Plaintiff has demonstrated an imminent risk

of further nonconsensual disclosures of intimate images of herself, as well as further publication of her private sexual information, by Bonnell. *See* Brookes Decl., Dkt. 21-2 (Bonnell offered to share the Video even after the November 29, 2024 publication). See also Plf's Decl., Dkt. 21-1 (Bonnell's history of sharing intimate images non-consensually, ¶16 )(Bonnell's February 21,2025 post disparaging Plaintiff and sharing her private sexual information, ¶13). "This behavior … tends to show that Defendant poses an imminent risk of dissemination of Plaintiff's intimate visual depictions." *Doe v. Constant*, No. 24-554, 2024 U.S. Dist. LEXIS 130253, *9 (W.D. La. 2024) (finding likelihood of irreparable harm and granting preliminary injunction).

Furthermore, as fully set forth in Plaintiff's Motion (p.20) an ongoing violation of the right to privacy **presumptively constitutes an irreparable injury**. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000). And CARDII specifically provides that victims are entitled to a preliminary injunction. 15 U.S.C. § 6851(b)(3)(A)(ii). Defendant failed to even respond to these arguments in his Opposition, presumably because the holdings are incontrovertible.

Instead, Defendant asserts that Plaintiff "provides no evidence that Bonnell shared the Video on more than one occasion (he has not), no evidence that Bonnell intends to share the Video again (he does not), and no evidence that Bonnell has been or will do anything to exacerbate harm to Plaintiff." Opp., p. 19. Each of these assertions is false: i) the declaration of Abbymc proves Bonnell has shared it with at least one other person; ii) the declaration of Brookes proves Bonnell is still offering to share the Video; and iii) Bonnell continues to speak disparagingly about Plaintiff and her pursuit of justice on his platforms on a regular basis, thus continuing to harm her and driving traffic to the site where the Video is posted. *See, e.g.*, https://www.youtube.com/watch?v=6bQIDqpmexw&t=2s.

In short, the fact that the Video and the Private Messages are still accessible to the public is sufficient to constitute irreparable harm warranting injunctive relief. In a case that is directly on point, involving the non-consensual disclosure of intimate images, **the court found irreparable harm warranting affirmative injunctive relief precisely because the sexually explicit "video remains visible to the public."** *Diaz v. Hernandez*, No. 24-CV-81151-AMC, 2024 U.S. Dist. LEXIS 238107, *8, (S.D. Fla. Oct. 29, 2024). Similarly here, without a preliminary injunction from this Court, this irreparable harm to Plaintiff will continue.

### 1.     The Harm to Plaintiff is Not Self-Inflicted

In a shameful attempt to minimize his own responsibility for his unlawful conduct, the Defendant now has the audacity to claim that the harm experienced by Plaintiff is self-inflicted. This claim is based on a fabrication of the facts. Bonnell falsely claims that "[b]ut for Plaintiff's own public comments about the leak, she would have, for the most part, remained anonymous." Opp., p. 21. Although it is not clear what Defendant means by remaining anonymous "for the most part," *the fact is that well before Plaintiff published her Substack on January 20, 2025, the streaming world was fully aware that Pxie was the woman in the Video.* First, her face and hair are easily recognizable. *See* Decl. Abbymc. Second, shortly after the Video was published on November 29, 2024, and well before Pxie posted her Substack, she began receiving hundreds of harassing messages related to the Video. *See* Exh. 1, Decl. Jane Doe, ¶ 27, and exhibit J thereto. Individuals were constantly making hateful comments on her posts, all based on their knowledge that she was the woman in the Video. *Id.* Comments such as "You got exposed lmao I have it downloaded,"; "Destiny guzzler," amongst other lewd, nasty and demeaning remarks. *Id.*

Sizeable content creators that had tens of thousands, to hundreds of thousands, of followers were also making public comments stating that it was Pxie in the Video with Destiny. *Id.* Finally,

Pxie felt that she had no choice but to go public and defend herself when two defamatory videos were posted, including her private messages, claiming that she took hush money and that she didn't care about other victims. Id. at ¶28. These videos were rapidly gaining tens of thousands of views. Id. In an attempt to protect herself from further damage to her reputation, Pxie was left with no choice but to post her Substack so that she could tell the truth. Id. Pxie also had no choice but to start a fundraising campaign in order to finance this suit against the Defendant, who has substantial financial resources at his disposal. Id.

Bonnell also makes baseless claims that Plaintiff "promoted" the Video. Opp., p. 21. There is no evidence to support that statement. In fact, the evidence the Defendant has submitted supports the exact opposite conclusion – the Video's popularity from the day it was uploaded was due to the immediate identification of both Pxie and Destiny. Dkt. 42-8. In fact, on November 30th after the initial posting in Kiwifarms, the website crashed repeatedly as a result of the large number of viewers. See Decl. Jane Doe, Exh. 1, ¶ 21, and exhibit I thereto, including screenshot of a November 30, 2024, post by the KiwiFarms administrator: "The surge of traffic to the KiwiFarms related to Destiny's blowjob video has caused a fatal database error and I will need to do a rollback to a recent backup." This was around two months prior to Plaintiff announcing her lawsuit. There is no evidence indicating the website crashed after she posted her Substack, or anything of the sort. Id. Thus, Defendant's knowingly false assertion that it was not until Plaintiff published her Substack that she was identified, or that she promoted it, is directly contradicted by the evidence.

It shocks the conscience that Defendant, who intentionally and repeatedly disseminated a sexually explicit Video of Plaintiff without her consent, and as a result this Video was published for untold thousands of people to see, causing the Plaintiff severe emotional harm, with the Video still publicly available, could have the temerity to claim that her harm was "largely self-inflicted"

because she tried to defend herself. Not only is injunctive relief fully warranted, punitive damages will be necessary to punish this Defendant for his outrageous conduct.

## II.   THE REQUESTED RELIEF IS NECESSARY AND WARRANTED

### A. Requested Orders 1 and 2 Should Be Granted

Defendant's gaslighting and distortion of the facts continues. Plaintiff's Motion requested "an order (1) enjoining Defendant Bonnell from sharing, publishing, or transmitting, whether directly or indirectly, the Videos and/or Private Messages; (2) compelling him to remove all publications of Plaintiff's Private Messages and private information from all forms of public media he controls either directly or indirectly." Mot. at p. 24. Bonnell completely distorts and rephrases the second request as ordering him to "'remove the Video' and 'all messages between him and Plaintiff' from all forms of public media." Opp., p. 21. (Bonnell's inclusion of quotation marks is particularly disturbing and misleading). The second request unambiguously and specifically requests only that Bonnell remove the Private Messages from social media **under his control**. The majority of Bonnell's argument is based on his distortion of the requests and thus should be stricken or disregarded by the Court.

Bonnell contends that the requested order is not necessary because the conduct is no longer occurring. In support of this argument, Bonnell falsely alleges that he "has not shared or otherwise transmitted the Video to any other third party" since April 2022. Opp., p. 22. This claim lacks credibility given that in November 2023 Bonnell shared the Video, and in January 2025 he again offered to share the Video. *See* Exh. 2, Decl. Abbymc; Decl. Brooke, Dkt. 21-2. Bonnell also falsely told Witness B that he only shared her videos once with Rose, but Witness B then found out he shared them with multiple women. *See* Exh. 5.  Moreover, if as Bonnell claims, the conduct

is no longer occurring, and he has no intention of sharing the Video in the future, then logically, Bonnell should have no objection to the requested relief.

### B. Requested Order 3 Should Be Granted

Once again Defendant completely distorts the request and thus the majority of his argument should be stricken or disregarded by the Court. *Plaintiff did NOT request an order of spoilation*. Rather, Plaintiff requested the Court order "Defendant to cease and desist from destroying evidence, and compelling Defendant to retrieve all messages that he deleted, and preserve all discoverable evidence, that is in any way related to this case, or that could prove any non-consensual disclosures, from his phones, computers, tablets, online accounts and platforms, or any other devices, and preserve all internet routers or other hardware in their current form or image so they may be searched for information relevant to this action, *or be at risk of an order of spoilation.*" Mot. at pp. 24-25. The request was made for the very purpose of ensuring that evidence would not be destroyed so that Plaintiff could avoid having to make a motion regarding spoilation.

Defendant should have no objection to this request because he is required by law to preserve evidence. The reason the request was made is clear from the evidence presented in the Motion—multiple individuals informed Plaintiff that Bonnell deleted all of the messages he sent to them, including the sexually explicit videos he sent, and Bonnell also deleted his messages with Plaintiff. Based on this pattern of evidence being deleted, a request for an order to preserve is only logical and indeed, necessary to prevent the risk of further spoilation.

Defendant's own exhibits to his Opposition show evidence of his spoilation. The Defendant provides two different screenshots of the same message thread. Dkt. 42-4. One containing the link to the video, the other without the link as a result of the Defendant deleting the message –directly evidencing he has been deleting evidence of that nature.

Defendant claims in his declaration that he has preserved evidence, but only asserts without elaboration that he used the Discord Log Exporter for messages on Discord. Dkt. 42-1, ¶ 20. No mention is made of preserving evidence on other social media platforms. Moreover, Discord Log Exporter is a third-party app not verified or approved by Discord. It does NOT save relevant metadata from the messages, nor can the authenticity of the message be verified using the Log Exporter. It converts messages into HTML files, but there is no way to verify if the Defendant has truly archived/exported all of his messages or selectively left out certain ranges in an effort to conceal data. Any evidence he may have "preserved" is still subject to tampering. And the Defendant could have deleted certain messages, and then archived the chats.

The proper procedure for the Defendant *before* mass deleting, would have been to request from Discord a data package. This package would be verified by Discord and include all messages and images the Defendant has sent. Due to the reckless deletion, even if Defendant requested a data package now, the damage could be permanent. Alternatively (prior to the deletion) the defendant could have used Relativity or a trusted eDiscovery platform to preserve evidence. The Defendant did none of these actions, which certainly casts doubt on his intent and the veracity of his preservation.

In short, a self-created export is not a substitute for original server-stored messages. The Plaintiff cannot independently verify: i) whether all relevant messages were captured; ii) whether messages were deleted before export, or iii) whether timestamps, edits, deletions, or context were altered.

In addition to Discord logs being deleted, Destiny apparently deleted his google drive as well. Destiny has admitted to this Court that he has a google drive where he puts pornographic material and then shares the link with individuals. Dkt. 42-2. The individual who leaked the videos

in the initial kiwifarm leaks, solotinyleaks, confirmed they were from Destiny's google drive that he shared with Rose. *See* Exh. 1, Decl. Jane Doe, ¶ 19, and exhibit G thereto. And the Video of Pxie sent by Bonnell in November 2023 was in a google drive link. Exh. 2 Decl. Abbymc. *See also* Exh. 4 (Witness A received videos from Bonnell through a google drive link that was active up until January 21, 2025, when he deleted it). Multiple women can confirm that the google drive was active within the past year, and that videos were being sent through it. Plaintiff has a right to verify said google drive and ensure that none of her materials were uploaded there.

Furthermore, Mr. Brettler's declaration, Dkt. 42-11, ¶7, asserts that he informed the undersigned counsel "of the steps defendant has taken to preserve evidence." This is incorrect. Mr. Brettler simply insisted that Defendant was preserving evidence. When pressed repeatedly as to how he was preserving evidence, the answer was only that he preserved evidence in JSON files, but no other specifics were provided. *See* Decl. Schlump Peters, Exh. 3. Mr. Brettler's declaration makes no mention of the JSON files or any specifics. Bonnell's statement as to preservation does not mention JSON files—only HTML files-- -- raising further suspicions. In short, based on the clear evidence submitted of Defendant's spoilation of evidence, an order requiring him to preserve all evidence in its original format is warranted and Defendant should have no objection to the same.

### C. **Requested Orders 4 and 5 Should be Granted**

Plaintiff's fourth and fifth requests are for an order to compel Defendant to direct third parties to comply with the Court's Order by removing any version of the video containing Plaintiff's image and likenesses from any form of public media under their control; and compelling Defendant to attest in a declaration that he has complied with this Court's order while describing the steps he has taken to do so. Defendant's only argument in opposition in opposition to the

requested relief is that he has already done so. However, since the Video is still publicly available on numerous sites, and since the Court never issued any such order with which third parties should comply, Defendant has obviously *not* done so. There are multiple sites, such as KiwiFarms, that won't comply with any requests from Plaintiff's counsel to remove content absent a Court order. Since Defendant claims he is a "victim of revenge porn" it is surprising that he would object to this request and not join in the request that the Court order the removal of the Video.

### III. DEFENDANT'S DEMAND FOR A $500,000 SECURITY BOND IS UNWARRANTED

Defendant's further gaslighting and claims of victimhood extends to his demand of a $500,000 security bond. The request is beyond absurd. Not one of the injunctive relief requests made by Plaintiff would "restrict his ability to defend himself online," as claimed by Defendant. Opp., p. 26. It is not even clear from who or what Defendant is purportedly defending himself online. Even more absurd is his claim that he will incur substantial out of pocket costs and fees in connections with attempted compliance – it costs no money to stop the non-consensual sharing of intimate images, remove private messages from social media under his control, preserve evidence (which he allegedly has already done despite not providing any concrete evidence of the same), or send a letter to third parties. Plaintiff's requests for injunctive relief should be granted without requiring any security, or in the alternative, the bond should be nominal at best.

### CONCLUSION

Plaintiff has demonstrated a likelihood of success on not just one, but on all four of her claims. Likelihood of success on the merits "'generally is the most important' of the four" factors. *Molekule Grp., Inc. v. Aura Smart Air, Ltd.*, No. 23-81291- CIV-CAN, 2023 U.S. Dist. LEXIS 232486, *13 (S.D. Fla. Oct. 11, 2023) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)). Plaintiff has also demonstrated the requisite irreparable harm

because the Video and the Private Messages are still accessible to the public and the harm to Plaintiff is on-going and must be stopped. Defendant's Opposition did not even address the remaining two factors for injunctive relief—the balance of equities or the public interest—and thus these two factors have been conceded. Accordingly, Plaintiff has met all four criteria for the award of injunctive relief, and the Motion should be granted.

WHEREFORE, Plaintiff's Motion, Reply, exhibits, and federal statutes having been considered, Plaintiff prays for the above requested relief to be granted, and Plaintiff further prays for such other and general relief as the Court deems necessary and proper.

Dated: May 2, 2025.

Respectfully submitted,

**SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, GOMEZ & MACHADO, LLP**
*/s/Carlos A. Garcia Perez*
CARLOS A. GARCIA PEREZ
Florida Bar No. 106895
GUSTAVO D. LAGE
Florida Bar No. 972551
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel.: (305) 377-1000
Primary E-Mail: cgarciaperez@smgqlaw.com
Secondary E-Mail: angie@smgqlaw.com

JSP LAW, LLC
*/s/ Joan Schlump Peters*
Joan Schlump Peters (admitted *pro hac vice*)
4819 W. Blvd. Ct.
Naples, Florida 34103
Tel.: 305-299-4759
Email: petersjoan@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system and copies were electronically sent to all counsel of records via the same.

By: /s/*Carlos A. Garcia Perez*
Attorney