UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:25-cv-20757-JB/Torres

JANE DOE,

    Plaintiff,

v.

STEVEN K. BONNELL II,

    Defendant.

_____/

**DEFENDANT STEVEN K. BONNELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER GOVERNING PUBLIC COMMENTARY BY TRIAL PARTICIPANTS**

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
ROBERT L. RASKOPF
Florida Bar No.: 1040022
PATRICIA M. PATINO
Florida Bar No.: 1007702
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

Email: rraskopf@bilzin.com;
ppatino@bilzin.com

-and-

**BERK BRETTLER LLP**

ANDREW B. BRETTLER
California Bar No.: 262928
JAKE A. CAMARA
California Bar No.: 305780
9119 West Sunset Blvd.
West Hollywood, CA 90069-3106
Tel: (310) 278-2111
Email: abrettler@berkbrettler.com;
jcamara@berkbrettler.com
(admitted *pro hac vice*)

*Counsel for Steven K. Bonnell II*

**I.       INTRODUCTION**

In the latest flurry of motions Plaintiff filed, she now improperly seeks to silence Bonnell and prevent him from publicly defending himself or even talking about the lawsuit. While seeking the extraordinary relief of prior restraint of Bonnell's First Amendment rights, Plaintiff herself continues to attack and malign Bonnell online, including through her Substack posts, social media updates, pleas for additional witnesses to come forward, and solicitations for donations to her legal fund, all of which have been viewed collectively more than 1.5 million times. Rather than preserve fairness, as Plaintiff claims to be her goal, her proposed order would ensure just the opposite. In short, Plaintiff seeks to draw and benefit from public assistance, while pursuing her lawsuit anonymously and muzzling the defendant at the same time. Such extraordinary relief is neither warranted nor supported by law. Plaintiff's Motion should be denied.

**II.      FACTUAL BACKGROUND**

Plaintiff's online smear campaign began even before she filed her lawsuit and continues to this day. On January 20, 2025, Plaintiff published an article on Substack, titled *I will be suing Steven Kenneth Bonnell II*, wherein she falsely accused Bonnell of intentionally distributing "pornographic content" featuring Plaintiff and "using a proxy to widely distribute" that content. (Bonnell Decl., Apr. 25, 2025 [ECF No. 42-1] ¶ 23.) Plaintiff's Substack post is still active. (*Id.*) Plaintiff also used her social media accounts to advertise and promote her Substack post, including on X and BlueSky Social in which she wrote, "I will be suing [Destiny] in federal court. Here's my story," and provided a link to her Substack post. (*Id.* ¶ 24 & Ex. F.) Shortly thereafter, Plaintiff and her friend, Lauren Dreeben Hayden, created a GiveSendGo page (similar to a GoFundMe page) to raise money to cover Plaintiff's legal fees in this case. (*Id.* ¶ 26.) The GiveSendGo page includes a link to Plaintiff's Substack post. (*Id.* at Ex. H.)

1

In addition to her Substack and GiveSendGo pages, Plaintiff has posted and continues to post messages online, including on X (using the handle @pxielove), about Bonnell, the undersigned attorneys, and the allegations in her lawsuit. (*Id.* ¶ 27 & Ex. I.) Her public statements include vitriolic attacks on Bonnell and his attorneys, regular updates concerning the rulings of this Court, repeated pleas for money to fund her litigation, as well as renewed pleas for additional witnesses to come forward and testify against Bonnell. For months, Plaintiff has repeatedly and publicly accused Bonnell of "twisting the narrative," has encouraged potential witnesses to come forward and testify against Bonnell with a promise of anonymity, and has continuously solicited monetary donations for her purported legal fund. For example, on May 19, 2025, Plaintiff posted on X, "Please don't hesitate to contact me if you believe you might be a witness or another victim." (Brettler Decl. ¶ 3 & Ex. A.)

Then, just a few weeks ago, Plaintiff posted the following on X:

> COURT UPDATE: Good news, despite opposition from Destiny's council [sic], the court has granted us the ability to keep witnesses [sic] identity under seal. *If you have any information regarding the case, we can file to keep your name out of public and protected by the court* . . . Please don't hesitate to contact me if you believe you might be a witness or another victim . . . Also please help and donate if you can to help keep this case going. Every dollar counts.

(*Id.*, ¶ 4 & Ex. B (emphasis added).)

Plaintiff further attacked Bonnell for allegedly "playing into the humiliation/defamation/public harassment campaign that's being used to scare other victims into silence." (*Id.* at ¶ 5 & Ex. C.) Further, on May 20, 2025, Plaintiff published Bonnell's legal filings on X, publicly rebuked him, and commented on the legal issues before the Court: "I suggest you re-read the objection your legal counsel filed. . . . Destiny is claiming his only issue was not having access to the redacted documents. This is extremely interesting . . . Destiny and his attorneys were told repeatedly that they would have access to the unredacted versions . . . giving him access to

2

the names before the court could protect them would defeat the purpose of the seal." (*Id.* at ¶ 6 & Ex. D.)

### III. PLAINTIFF SEEKS AN UNCONSTITUTIONAL PRIOR RESTRAINT OF BONNELL'S FIRST AMENDMENT RIGHTS.

Prior restraints constitute "one of the most extraordinary remedies known to our jurisprudence" and are universally recognized to be "the most serious and least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also CBS, Inc. v. U.S. Dist. Ct.*, 729 F.2d 1174, 1177 (9th Cir. 1984) ("The first amendment informs us that the damage resulting from a prior restraint—even a prior restraint of the shortest duration—is extraordinarily grave").

While courts have adopted varying standards to evaluate restrictions on extrajudicial statements, ranging from "reasonable likelihood" to "clear and present danger," the Eleventh Circuit has not yet established a definitive standard for evaluating restraints on trial participant speech. *See News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515 & n. 18 (11th Cir. 1991) (acknowledging split among circuits and declining to resolve the issue); *see also ParkerVision, Inc. v. Qualcomm Inc.*, No. 14-cv-687-PGB-LHP, 2025 WL 436768, at *2 (M.D. Fla. Feb. 7, 2025) (surveying split and noting that the Eleventh Circuit "has not formulated a standard of review").

Nonetheless, Florida federal courts have consistently applied the standard endorsed in *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991), requiring a "substantial likelihood of material prejudice" that cannot be addressed by less restrictive means. *See, e.g.*, *United States v. Hernandez*, No. 98-0721-CR, 2001 WL 37126807, at *5-6 (S.D. Fla. Feb. 20, 2001) (applying *Gentile* and following *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), in holding that a gag order must be the "least restrictive means" and justified by specific findings of a substantial likelihood of prejudice). Courts must be "convinced, not merely suspect," that extrajudicial statements will

materially prejudice the case. *See Gentile*, 501 U.S. at 1075; *see also United States v. Scarfo*, 263 F.3d 80, 94 (3d Cir. 2001) (vacating gag order where no showing of substantial likelihood of material prejudice and criticizing vague justifications as insufficient to justify restricting speech).

To obtain the extraordinary relief of prior restraint of Bonnell's First Amendment rights, Plaintiff bears the burden of showing that (1) Bonnell's speech poses a substantial likelihood of material prejudice to these proceedings, and (2) no less restrictive alternatives would suffice. *Hernandez*, 2001 WL 37126807 at *5. Plaintiff has not and cannot meet her burden.

      A.      **<u>No Substantial Likelihood of Material Prejudice Exists</u>.**

Where litigation remains in its early, pre-discovery posture, as here, courts are markedly reluctant to curtail speech. "[L]imiting speech by parties and witnesses, particularly in a civil case and [at such an early stage], is not to be lightly undertaken." *Constand v. Cosby*, 229 F.R.D. 472, 475 (E.D. Pa. 2005); *see also Calhoun v. Invention Submission Corp.*, No. 18-CV-01022-CB-PLD, 2020 WL 620174, at *2–3 (W.D. Pa. Feb. 10, 2020) (rejecting claims that early-stage commentary created a likelihood of material prejudice and denying request for sanctions or restraint where no discovery had begun and no trial date had been set).

Prior restraints are permissible only in the most exceptional circumstances—where speech "imperils other rights, such as the right to a fair trial." *Hunters Run Prop. Owners Ass'n v. Centerline Real Estate, LLC*, No. 18-80407-CIV-REINHART, 2019 WL 13064761, *1 (S.D. Fla. Nov. 1, 2019). The movant must demonstrate *actual conduct* that threatens to interfere with the judicial process—not speculative harm or generalized discomfort. *See id.; see also S.E.C. v. Lauer*, No. 04-80211-CIV, 2004 WL 2931398, at *1-2 (S.D. Fla. Nov. 18, 2004) (denying gag order where movant failed to show evidence of prejudice or causal link between media coverage and harm to proceedings and emphasizing the "heavy presumption of unconstitutionality").

4

Here, Plaintiff fails to tie her alleged harm to any specific statements or conduct attributed to Bonnell, and fails to demonstrate how those purported harms create a substantial likelihood of material prejudice to the proceedings. Courts have consistently rejected efforts to justify speech restrictions based on such general allegations. *See, e.g.*, *Constand*, 229 F.R.D. at 480 (rejecting a request for a blanket protective order where "the basis for these concerns [e.g., embarrassment, invasion of privacy, jury taint] has not been connected to any particular type of discovery" and "defendant has not shown that the private interests in this case outweigh the public interest in access to these proceedings").

Here, Plaintiff has made no attempt to identify which, if any, specific statements from Bonnell purportedly caused her harm, nor has she articulated how any of those statements pose a concrete risk to the fairness of trial proceedings. Plaintiff's motion lists a range of grievances, alleged harassment, mischaracterization of filings, speculative commentary about witnesses, but fails to connect any of those assertions to specific statements that risk "material prejudice" to these proceedings. Mere recitations of harm, without evidence or linkage to particular content, fall well short of justifying a constitutional restraint. *United States v. Noriega*, 752 F. Supp. 1045, 1054 (S.D. Fla. 1990) ("speculative harm falls well short of the showing necessary for the imposition of a prior restraint").

Plaintiff's assertion that unnamed and/or yet unidentified witnesses may be deterred due to online harassment or exposure is exactly the sort of vague, unsubstantiated claim courts reject. *See Constand*, 229 F.R.D. at 479 (rejecting "unsubstantiated," "stereotypical," and "non-specific conclusory" claims of harm to unnamed witnesses as insufficient to establish good cause under Rule 26(c)). Plaintiff's dissatisfaction with the content of Bonnell's alleged commentary online does not change that result. Plaintiff alleges that Bonnell's public commentary is "misleading" or

"misrepresentative." (Mot. [ECF No. 84] at 4, 7.) Even assuming her allegations were true, Plaintiff fails to meet the exacting constitutional standard for the imposition of a prior restraint. Indeed, even inaccurate or adverse commentary remains protected speech. *See Neb. Press Ass'n*, 427 U.S. at 554 ("[P]retrial publicity, even pervasive, adverse publicity, does not inevitably lead to an unfair trial."); *see also Town of Lantana v. Pelczynski*, 290 So. 2d 566, 569 (Fla. 4th DCA 1974) ("Freedom from prior restraint upon speech and press extends to false, as well as true statements.").

Plaintiff's allegations are speculative, her evidentiary showing is nonexistent, and her proposed restraint is constitutionally prohibited. The First Amendment does not yield to discomfort or criticism, and where traditional judicial safeguards remain fully available, silencing a litigant is neither warranted nor constitutional.

### B. The Proposed Order Is Vague and Overly Broad, and the Requested Relief Is Not the "Least Restrictive" Alternative Available.

In her Motion, Plaintiff fails to address, let alone substantiate, whether any less restrictive alternative would suffice. Indeed, Plaintiff completely ignores that traditional remedies such as voir dire, jury instructions, or existing confidentiality orders are adequate and available to address her concerns. For example, Plaintiff's attorneys would have the right to question potential jurors about what they read online or heard about the case prior to trial. Plaintiff's failure to even address these less restrictive alternatives only underscores that her request is not just unsupported, but constitutionally indefensible. *See, e.g.*, *Munoz v. City of N.Y.*, No. 11 Civ. 7402 (JMF), 2013 WL 1953180, at *1 (S.D.N.Y. May 10, 2013) (noting voir dire was sufficient to address any possible prejudice).

Further, Plaintiff's proposed order seeks to prohibit speech that is already covered by existing confidentiality protections, including by shielding Plaintiff's identity and permitting her

6

to file exhibits under seal.[1] These materials are already safeguarded by court order, and duplicating those protections within a broader gag order reflects neither necessity nor restraint. More concerning, however, is Plaintiff's request to prohibit any statements deemed "derogatory," "intimidating," or that "misrepresent or mischaracterize . . . the positions of any party or attorney in this litigation." (Mot. [ECF No. 84] at 8.) These terms are hopelessly vague, inviting arbitrary enforcement and chilling constitutionally protected speech. *See Gentile*, 501 U.S. at 1051 ("The prohibition against vague regulations of speech is based in part on the need to eliminate the impermissible risk of discriminatory enforcement."); *In re Dan Farr Prods.*, 874 F.3d 590, 596 (9th Cir. 2017) (striking gag order not narrowly tailored to prevent material prejudice); *cf. Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 764 F.2d 590, 599 (9th Cir. 1985) (noting that gag orders must be narrowly drawn and specific; "a restraining order is unconstitutionally vague if it fails to give clear guidance regarding the types of speech for which an individual may be punished").

### C. Bonnell Has a Right To Defend Himself Against Plaintiff's Allegations.

Bonnell, like any litigant, has a constitutional right to respond to public accusations. The Supreme Court in *Gentile* recognized that rebutting public allegations and defending one's reputation is not an effort to prejudice a proceeding, but a legitimate exercise of free speech. *See Gentile*, 501 U.S. at 1042-43 (rejecting the claim that an attorney's public statement was intended to prejudice proceedings). *Gentile* emphasized that the First Amendment protects the right to speak

---

[1] Plaintiff's motion to file her declaration under seal [ECF No. 85], which she filed on the same day as this Motion, should also be denied. Plaintiff's declaration purports to attach three text messages in which unidentified witnesses state that they refuse to testify absent assurance that their identities will remain confidential. The wishes of the purported witnesses are irrelevant, and Plaintiff has failed to demonstrate that any of the purported witnesses possess actual knowledge concerning the facts of this case. Witnesses' identities are not inherently confidential. *See Hubbard v. Bankatlantic Bancorp., Inc.*, No. 07-61542-CIV, 2009 WL 3856458, at *3 (S.D. Fla. Nov. 17, 2009) ("The identities of witnesses are discoverable"); *see also* Def.'s Opp'n to Mot. for Protective Order [ECF No. 92] at 3-4.

out against adverse publicity, particularly where that speech counters narratives already circulating in the public. The public also has a right to hear his side. As the Supreme Court in *Alexander v. United States* has explained, "the special vice of the prior restraint is suppression of speech . . . prior to a determination that the targeted speech is unprotected by the First Amendment." 509 U.S. 544, 574-75 (1993) (Kennedy, J., dissenting).

The court in *United States v. Carmichael*, 326 F. Supp. 2d 1267 (M.D. Ala. 2004), observed that a gag order is a prior restraint and that such restraint is "the most serious and the least tolerable infringement on First Amendment rights" and must be approached with heightened scrutiny. *Id.* at 1291. Further, courts have emphasized that litigants "do not surrender their First Amendment rights at the courthouse door." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, n. 18 (1984).

Plaintiff's Motion is nothing more than an attempt to restrict public access to this Court, and the Eleventh Circuit is clear that such an act is presumptively unconstitutional absent a compelling government interest and must be narrowly tailored to serve that interest. *See Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (applying *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982) and holding that sealing a trial record requires a compelling governmental interest and narrow tailoring; and affirming that "simply showing that the information would harm [the party's] reputation is not sufficient to overcome the strong common law presumption in favor of public access.") (citations and internal quotations omitted).

### D. **Plaintiff's Authorities Are Inapposite and Do Not Support Imposing a Gag Order.**

The authorities on which Plaintiff relies are inapposite. While *Gentile* may be instructive here, Plaintiff's reliance on the case is misplaced in that *Gentile* addressed restrictions on *attorneys*, i.e., officers of the court bound by ethical obligations and entrusted with non-public information, as opposed to restrictions on parties' speech. As the *Carmichael* court explained,

8

*Gentile's* reasoning is "inapposite" where a gag order targets a party rather than counsel, because civil litigants are not subject to the same professional responsibilities and have no privileged access to case information. 326 F. Supp. 2d at 1294. Accordingly, *Carmichael* rejected the notion that *Gentile*'s more permissive standard for restricting attorney speech could justify a similar restriction on a party, concluding that, "a lower threshold of proof is [not] appropriate under these factual circumstances." *Id.*; *see also Dan Farr Prods.*, 874 F.3d at 593 (holding that prior restraints on non-attorney participants are subject to strict scrutiny). Courts have consistently recognized that limits on attorney speech do *not* extend automatically to parties. *See Gentile*, 501 U.S. at 1071 (noting that in *In re Sawyer*, 360 U.S. 622, 79 S. Ct. 1376, 3 L. Ed. 2d 1473 (1959), the Court "observed that lawyers in pending cases were subject to ethical restrictions on speech to which an ordinary citizen would not be."); *Constand*, 229 F.R.D. at 475 (warning that "[l]imiting parties and witnesses from making extrajudicial statements during a pending civil proceeding raises constitutional questions where similar limitations upon lawyers do not").

Plaintiff's reliance on *News-Journal Corp.*, 939 F.2d at 1500, fares no better. *New-Journal Corp.* involved a sensational murder trial that drew national press, televised reenactments, and repeated leaks from trial participants. The gag order imposed there was narrowly tailored, time-limited, and grounded in specific findings that extrajudicial commentary risked prejudicing the criminal defendants' Sixth Amendment rights. No such findings—or comparable circumstances—exist here.

Likewise, Plaintiff's reliance on *In re Subpoena to Testify Before Grand Jury*, 864 F.2d 1559 (11th Cir. 1989), is misplaced. That case concerned the confidentiality of grand jury proceedings—a context governed by its own long-established secrecy rules. The Eleventh Circuit upheld a limited non-disclosure order based on a "compelling necessity" tied to preserving grand

9

jury integrity. *Id.* at 1564. Courts treat grand jury secrecy as a narrow exception to typical First Amendment standards, and *In re Subpoena* has no bearing on a civil litigant's speech in a pretrial posture.

*United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), is similarly inapplicable. That case involved a high-profile criminal prosecution of a political figure, with extensive press coverage and a pattern of deliberate media leaks by both parties—including the release of sealed recordings. The court found a "substantial likelihood" that these statements would taint jurors in one of three related trials and create a "carnival atmosphere." *Id.* at 428-29.

This case presents no such risk. It is a low-profile civil dispute in early pretrial stages with no jury impaneled, no media frenzy, and no history of sealed materials being leaked.[2] Plaintiff does not allege that Bonnell's speech has influenced, or even reached, prospective jurors. Her vague references to a "substantial likelihood of prejudice" (Mot. [ECF No. 84] at 2, 7) lacks factual support and finds no refuge in *Brown*. That precedent cannot be repurposed into a blank check to silence disfavored but constitutionally protected speech in an online dispute. Plaintiff's authorities—drawn from criminal proceedings, grand jury secrecy, and attorney-specific restrictions—do not come close to justifying the sweeping restraint she now seeks.

---

[2] Plaintiff claims Bonnell violated the Court's order protecting her identity by linking to a YouTube video in which her first name was briefly mentioned. (Mot. [ECF No. 84] at 4.) This clip was posted *before* the Jane Doe order issued, and Bonnell promptly redacted the reference of Plaintiff's first name once notified. Instead of requesting further redaction, Plaintiff filed a public brief linking to the video and flagging the exact timestamp, amplifying the very disclosure she now challenges. These actions undercut any genuine privacy concern and reflect strategic opportunism, not actual harm.

10

### IV. <u>PLAINTIFF'S ONGOING PUBLICITY CAMPAIGN UNDERMINES HER CLAIM OF PREJUDICE</u>.

Courts have emphasized that gag orders must apply evenhandedly and that a party's own public statements can undercut any claim of one-sided prejudice. *See Carmichael*, 326 F. Supp. 2d at 1294 ("The fact that the protective order in this case would burden only the defense calls for a higher threshold standard of proof."); *see also Dan Farr Prods.*, 874 F.3d at 593-96 (applying strict scrutiny standard to gag orders on non-attorney speakers, particularly where both parties engaged in public commentary).

That rationale applies with even greater force here, where Plaintiff has chosen to litigate publicly via Substack, GiveSendGo, and social media, while attempting to bar Bonnell from doing the same. Allowing one party to broadcast their message and then invoking "fairness" to silence the other undermines core First Amendment protections.

As stated herein, Plaintiff's online smear campaign began even before she filed her lawsuit and continues to this day. In addition to maintaining a Substack and GiveSendGo fundraiser, Plaintiff has posted and continues to post messages online, including on X, about Bonnell, the undersigned attorneys, and the allegations in her lawsuit. (Bonnell Decl.[ECF No. 42-1 ¶ 27 & Ex. I; Brettler Decl. ¶¶ 3-6 & Exs. A-D.) Her public statements include vitriolic attacks on Bonnell and his attorneys, regular updates concerning the rulings of this Court, repeated pleas for money to fund her litigation, as well as repeated pleas for additional witnesses to come forward and testify against Bonnell. Plaintiff cannot have it both ways. The Motion should be denied.

### V. <u>CONCLUSION</u>

For the foregoing reasons, Bonnell respectfully requests that the Court deny Plaintiff's Motion for Protective Order.

Dated: June 16, 2025

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

By: /s/ *Robert L. Raskopf*
Robert L. Raskopf, Esq.
Florida Bar No.: 1040022
rraskopf@bilzin.com
Patricia M. Patino, Esq.
Florida Bar No.: 1007702
ppatino@bilzin.com

and

**BERK BRETTLER LLP**
9119 West Sunset Blvd.
West Hollywood, CA 90069-3106
Tel: (310) 278-2111

By: /s/ *Andrew B. Brettler*
Andrew Brad Brettler, Esq.
California Bar No.: 262928
abrettler@berkbrettler.com
Jake A. Camara, Esq.
California Bar No.: 305780
jcamara@berkbrettler.com
(admitted *pro hac vice*)

*Counsel for Steven K. Bonnell I*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 16, 2025, a true and correct copy of the foregoing was served on all parties via transmission of Notices of Electronic Filing generated by CM/ECF and via electronic transmission to counsel of record for these parties.

By:   /s/ *Robert L. Raskopf*
        Attorney

12