UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

**JANE DOE**,                                                    Case No: 1:25-cv-20757-JB/Torres

    Plaintiff,

vs.

**STEVEN K. BONNELL II**,

    Defendant.
_____/

**PLAINTIFF JANE DOE'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER GOVERNING PUBLIC COMMENTARY BY TRIAL PARTICIPANTS**

COMES NOW Plaintiff Jane Doe, by and through undersigned counsel, and hereby submits her Reply in Support of her Motion for Protective Order Governing Public Commentary by Trial Participants ("Motion")(ECF 84), and respectfully states as follows:

**I. INTRODUCTION**

Defendant's Opposition to Plaintiff's Motion ("Opposition")(ECF 99) *grossly* mischaracterizes the nature of the relief sought, the applicable legal standards, and the relevant facts. Plaintiff does not seek to "muzzle" the Defendant (id., p. 2), nor does she seek to prevent him from defending himself in court. Rather, Plaintiff seeks a *narrowly tailored protective order that applies equally to all trial participants* and is only intended to curb the ongoing harassment, intimidation, and misrepresentation that threaten the integrity of these proceedings and deter witness participation (see [Proposed] Protective Order ("Protective Order"), ECF 84-5).

The record is clear: multiple potential witnesses have withdrawn their willingness to testify due to fear of retaliation and doxxing by Defendant and his followers. Defendant has made explicit threats of violence against Plaintiff's witnesses; disparaged Plaintiff, her witnesses, and her

1

attorneys in repugnant terms; disclosed the sealed identity of Plaintiff; and published private communications on platforms with hundreds of thousands of viewers. Defendant claims that Plaintiff "continues to attack and malign Bonnell online," but provides no evidentiary support (nor can he) for this false contention.[1] (Opp., p. 2). Instead, even the evidence submitted by Defendant shows that Plaintiff's limited public updates, in contrast, have been respectful, and have not disclosed confidential information, threatened any party, or deterred any participant—rather, they seek to encourage participants. (See ECF 99-1 to 99-5).

Defendant's Opposition ignores the governing standard—the "substantial likelihood of material prejudice" test set forth in *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991)—which courts in this District routinely apply. *See United States v. Hernandez*, No. 98-0721-CR, 2001 U.S. Dist. LEXIS 27679, at *11 (S.D. Fla. Feb. 16, 2001). The proposed Protective Order meets this standard and is the least restrictive means of protecting the judicial process.

## II. THE PROPOSED ORDER IS CONSTITUTIONALLY SOUND AND APPLIES EQUALLY TO ALL PARTIES

Contrary to Defendant's framing, the proposed Protective Order is *not* an asymmetric gag order. It explicitly applies to "all trial participants," including Plaintiff, and prohibits *only* that public commentary which:

- Disparages, threatens, or intimidates parties, counsel, or witnesses;
- Discloses sealed identities or confidential attorney communications;
- Misrepresents legal filings or court orders.

---

[1] Defendant's Opposition further asserts that Plaintiff's "public statements include vitriolic attacks on Bonnell and his attorneys" (Opp. p. 3), but again provides no evidentiary support (nor can he) for this false statement. Plaintiff requests that these unsupported and false statements by Defendant be stricken from the record pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Plaintiff also requests that the Court admonish Defendant's counsel for litigating in bad faith, and/or impose sanctions pursuant to Rule 11.

- Discloses sensitive personal allegations or private details of the parties or witnesses.

Such restrictions are well within constitutional bounds. *See Hernandez*, 2001 WL 37126807, at *5-6 (applying *Gentile* standard and enforcing a protective order where necessary to avoid material prejudice).

Defendant's reliance on *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) and *CBS, Inc. v. U.S. Dist. Ct.*, 729 F.2d 1174, 1177 (9th Cir. 1984) for his contention that the Proposed Order violates his First Amendment rights is misplaced. Both cases are inapposite since they involve broad restraints on the press, not on trial participants. "'The Supreme Court and other Courts of Appeals have recognized a 'distinction between participants in the litigation and strangers to it,' pursuant to which *gag orders on trial participants are evaluated under a less stringent standard than gag orders on the press.*'" *Hernandez,* 2001 U.S. Dist. LEXIS 27679, at *11 (emphasis supplied).

*Nebraska Press* is further distinguishable because the prior restraint was struck down due to the lower court's failure to consider less restrictive measures. 427 U.S. at 563. *CBS, Inc.* is also distinguishable because i) there was no evidence of actual or potential prejudice to the proceedings; and ii) it was a white-collar crime case where courts have found "a less significant danger of prejudice" compared to cases involving "lurid subject matter" which carry a more significant danger of prejudice. 729 F. 2d at 1181. In contrast, here: i) less restrictive measures would not suffice; ii) Plaintiff has presented evidence of actual and potential prejudice; and iii) the lurid subject matter of this case carries a high risk of prejudice.

### III. <u>PLAINTIFF HAS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF MATERIAL PREJUDICE</u>

Defendant contends that Plaintiff has not demonstrated a substantial likelihood of prejudice to the proceedings because i) this case is in "early, pre-discovery posture;" and ii) Plaintiff has

3

only demonstrated "speculative harm or generalized discomfort." (Opp. at p. 5). Both of these arguments fail.

First, this case is not in an early pre-discovery posture—discovery has already commenced. Written discovery requests have already been exchanged by the parties, and responses are due, however the parties agreed to await the Court's ruling on Plaintiff's Motion for a Protective Order Governing Discovery (ECF 82) before exchanging responses and documents. Moreover, the caselaw relied on by Defendant in support of this argument is inapposite. In *Calhoun v. Invention Submission Corp.*, No. 18-CV-01022-CB-PLD, 2020 U.S. Dist. LEXIS 22796 (W. Pa. Feb. 10, 2020), the defendant requested that sanctions be imposed on Plaintiff and her counsel for posting the allegations of the complaint on a website. Discovery had not yet commenced, and "no trial date is scheduled, let alone on the horizon." *Id.* at *8. Here, in contrast, i) Plaintiff has not moved for sanctions but for a protective order; ii) the Defendant has not just posted the allegations of the complaint but instead has harassed and vilified Plaintiff, witnesses and her counsel, and threatened bodily harm to witnesses; iii) discovery has commenced and a trial date has been set. Nor is *Constand v. Cosby*, 229 F.R.D. 472, 475 (E.D. Pa. 2005) helpful to Defendant since there the court entered an order imposing limits on attorney speech.

Second, Defendant's argument that Plaintiff has shown only speculative harm is clearly belied by the record. As detailed in Plaintiff's Motion and supporting Declaration (ECF 84-1), Defendant has: publicly threatened to kill potential witnesses: "I'd kill them if I could… I want someone to kill [named witnesses]" (ECF 84, p. 2); disclosed Plaintiff's legal name in violation of the Court's anonymity order (Id., p. 4); published confidential meet-and-confer communications (Id. p. 3); and engaged in a pattern of disparagement and ridicule directed at Plaintiff, her witnesses and prospective witnesses, and Plaintiff's counsel (Id. pp. 2-5). Plaintiff provided specifics

4

regarding Bonnell's vitriolic public commentary and prospective witnesses' reactions to it. See ECF 84, 84-1 to 84-4. Contrary to Defendant's blithe contention that Plaintiff failed "to tie her alleged harm to any specific statements or conduct attributed to Bonnell" (Opp. p. 6), the evidence presented shows that Defendant's actions have caused multiple prospective witnesses to refuse participation and has hindered evidence gathering, and thus prejudiced these proceedings. This is precisely the kind of conduct the *Gentile* standard was designed to address. *See also Sheppard v. Maxwell*, 384 U.S. 333 (1966).

Defendant falsely argues that Plaintiff's evidence is "vague" and "unsubstantiated," and relied on "unnamed and/or yet unidentified witnesses." Opp. p. 6. In fact, Plaintiff's declaration and supporting evidence show that she specifically identified four potential witnesses that have communicated their reluctance to participate due to their fear of Defendant's doxing and vicious attacks.[2] Moreover, the three witnesses who have agreed to testify and provided declarations would only do so under seal due to their fear of Defendant's retaliation. See ECF 49-2, 49-4, and 49-5. The harm caused by Defendant's public commentary is actual - not speculative – and directly linked to witness intimidation and the chilling of these proceedings.

Defendant's attempts to ignore or downplay the harm he is causing falls flat in the face of the overwhelming evidence presented. Defendant declared the following about two potential witnesses, "That's why people like JSTLK and Kuihman [sic] if I could I would put their fucking balls in a vice and crush them and then feed it to them and then slice their dick off and kill them." See https://www.youtube.com/watch?v=M78mCz6E_1s&t=3419s at Minute 56.42. This commentary is not merely uncomfortable or critical, as Defendant absurdly claims[3], but rather,

---

[2] The names of these witnesses were redacted in the declaration and in the evidence submitted and a motion to file under seal was submitted. See ECF 85.

[3] See Opp., p. 7, "The First Amendment does not yield to discomfort or criticism…" (No citation was provided.)

5

violent and extremely prejudicial. This commentary undeniably deters witness cooperation and undermines the fair administration of justice.

In another of Defendant's income producing streams (see FN 4), he recently accused the Plaintiff and her counsel of fabricating evidence. https://uploads.kiwifarms.st/data/video/7433/7433173275e5e414bdac3a86f22174278db76a5.mp4 Referring to Docket 84-4, Defendant tells his hundreds of thousands of followers, "I bet this is a fake message… And clearly, opposing counsel and Plaintiff are dumb enough to fake this in the stupidest way possible." Id.

Defendant has failed to refute the overwhelming evidence consisting of his vitriolic and threatening public commentary, its impact on witness participation, and its actual and on-going harm to these proceedings. To allow Defendant to continue with his unfettered public commentary will jeopardize the integrity of these proceedings and impair Plaintiff's right to present witnesses.

### IV. THE PROTECTIVE ORDER IS THE LEAST RESTRICTIVE MEANS OF PROTECTING THE INTEGRITY OF THE PROCEEDINGS

Defendant contends that voir dire, jury instructions or confidentiality orders are sufficient alternatives. They are not. This case is still in the pretrial phase, and voir dire does nothing to address ongoing harm to witnesses, witness intimidation, and/or the risk of future disclosures of confidential material. The proposed Order is narrowly drawn, addresses only the harmful conduct already documented, and preserves all rights to file pleadings and argue the case in court. Moreover, although protective orders governing discovery are standard in cases such as the instant one involving sensitive, personal information, not only did Defendant refuse to cooperate with Plaintiff's efforts towards a stipulated confidentiality agreement, but he has also actually opposed Plaintiff's Motion for a Protective Order Governing Discovery. See ECF 82, 92. And although that protective order would serve to protect confidential, sensitive information of the parties, it would

not prevent the Defendant from continuing his public doxing and threatening and false commentary.

### V. THE PROTECTIVE ORDER DOES NOT RESTRICT DEFENDANT'S "RIGHT TO DEFEND HIMSELF"

Defendant contends that the proposed Protective Order would somehow restrict or impact his right to defend himself. Opp. pp. 8-9. The narrowly tailored order does no such thing – unless his right to defense involves attacking and threatening Plaintiff, witnesses and counsel – it does not. The First Amendment does not protect speech that interferes with the fair administration of justice. *See Gentile*, 501 U.S. 1030 at 1075. Defendant's attempt to construe Plaintiff's Motion as "nothing more than an attempt to restrict public access to this Court" (Opp. p. 9) is nonsensical. The pleadings are available to the public, and nothing in the proposed order seeks to alter public access.

### V. THE APPLICABLE PRECEDENT SUPPORTS THE ENTRY OF THE NARROWLY TAILORED PROPOSED PROTECTIVE ORDER

Defendant fails to distinguish the controlling precedent relied on by Plaintiff in her Motion. Indeed, the Opposition fails to even address, or attempt to distinguish, the primary case relied on by Plaintiff – *Hernandez,* 2001 U.S. Dist. LEXIS 27679, in which the Southern District of Florida imposed restrictions on trial participants' speech after finding a likelihood of prejudice and no less restrictive means.

Defendant's Opposition fails to address the critical distinction between constitutionally protected public commentary and targeted speech that threatens the integrity of judicial proceedings. Courts have consistently held that where there is a substantial likelihood of material prejudice, particularly through the intimidation or silencing of witnesses, restrictions on extrajudicial statements by trial participants are both lawful and necessary. *See e.g., Gentile,* 501

7

U.S. 1030 at 1075; *News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1506–07 (11th Cir. 1991) (upholding a court order restricting public statements by trial participants where fairness was at risk); *United States v. Brown*, 218 F.3d 415, 429 (5th Cir. 2000) (gag order appropriate when extrajudicial commentary risks impairing the court's ability to conduct a fair trial).

The evidence submitted—showing that Defendant has publicly threatened, disparaged, and attempted to dox potential specifically identified witnesses—demonstrates precisely the kind of conduct these authorities contemplate. As the Southern District of Florida recognized in *Hernandez*, 2001 WL 37126807, at *6, when witness participation is chilled by public attacks, courts may impose narrowly tailored speech restrictions as the least restrictive means of safeguarding the proceedings. This Motion does not seek to silence one party or prevent any valid defense; it is about protecting vulnerable witnesses from intimidation and ensuring that testimony may proceed free from fear or retaliation. *See also Sheppard*, 384 U.S. 333, 363 (urging courts to prevent prejudicial interference by trial participants, including the accused and witnesses).

Defendant misleadingly claims that this is "a low-profile civil dispute" (Opp. p. 11). It is not. There have been numerous press releases and articles about this case. See, e.g., https://www.wfla.com/news/florida/florida-streamer-destiny-sued-over-cyber-sexual-harassment-court-documents/; https://www.dexerto.com/entertainment/destiny-responds-to-accusation-of-illegally-sharing-womans-private-images-3036980/; https://www.dailymail.co.uk/news/article-14431145/youtuber-live-streamer-destiny-steven-bonnell-revenge-porn-pxie-videos.html. And hundreds of thousands of people tune in to Defendant's streaming platforms to hear his distorted version of the proceedings and allegations, and to listen to and encourage (with financial renumeration (see FN 4)) his abuse of the Plaintiff, her witnesses and her counsel. See, e.g.,

> https://www.youtube.com/watch?v=c5Jwhx3ZggE&t=2708s;
>
> https://www.youtube.com/watch?v=UHudEM-UU3Q;
>
> https://www.youtube.com/watch?v=c5Jwhx3ZggE&t=2708s;
>
> https://www.youtube.com/watch?v=6bQIDqpmexw&t=2915s;
>
> https://www.youtube.com/watch?v=cLqgOumO0AE.

This is not the run-of-the-mill civil dispute, but rather a high-profile dispute with lurid content, and a trial participant – the Defendant -- who has his own streaming platforms with almost one million followers. This scenario only exacerbates the high risk of prejudice to these proceedings due to Defendant's threatening, harassing and false commentary.

### V. PLAINTIFF'S LIMITED PUBLIC COMMENTS DO NOT WARRANT DENIAL OF THE ORDER

Defendant argues that Plaintiff's own public statements undermine her request. This is false equivalence. Plaintiff's posts consist of announcements of procedural rulings (*e.g.*, sealing of witness identities); a fundraising effort[4]; and general calls for information relevant to her case or witnesses. See ECF 99-2 to 99-5. In stark contrast with Defendant, none of Plaintiff's posts involve threats, harassment, vilification, exposure of sealed identities, or publication of confidential materials. Plaintiff has not doxxed, intimidated, or mocked any party or witness. There is no evidence that Plaintiff's limited posts have deterred witness participation or jeopardized trial fairness, while there is ample evidence that Defendant's posts have done so. See above, and ECF 84, 84-1 to 84-4.

---

[4] Defendant should certainly not object to Plaintiff's GoFundMe page since he has been profiting immensely from this case by streaming on a regular basis about it. This profit revenue is evidenced by the number of views on his videos about the case, and the number of comments and questions. For example, streamers, such as Defendant, receive revenue from their YouTube channels based on memberships, AdSense revenue (streamer gets paid based on number of users viewing ads) and superchats (the user pays to have his/her message highlighted in the live chat during a stream—the more money is paid the more likely the streamer will read the message aloud or respond to the question).

Defendant distorts the request for relief by arguing that the proposed Protective Order would allow Plaintiff to "broadcast" her message, while "silenc[ing]" the Defendant. Opp. p. 12. But it is patently clear that the requested relief would apply *equally* to both Plaintiff and Defendant, and seeks only to silence threatening, harassing, and false commentary (to which Defendant should have no objection). See ECF 84-5.

## VI. CONCLUSION

Defendant's Opposition fails to account for the real and documented harm that his ongoing public commentary has caused to this proceeding. The proposed Protective Order is neither vague nor overbroad—it is a constitutionally valid, narrowly drawn, and evenly applied measure necessary to protect and ensure witness participation and trial integrity. For these reasons, and those set forth in Plaintiff's Motion, Plaintiff respectfully requests that the Court grant her Motion and enter the proposed Protective Order governing public commentary by trial participants.

Respectfully submitted,

Dated: June 23, 2025.

| | |
|---|---|
| **JSP LAW, LLC**<br>Joan Schlump Peters<br>(admitted *pro hac vice*)<br>838 Neapolitan Way, #91<br>Naples, FL 34103<br>Tel. 305-299-4759<br>Email: petersjoan@bellsouth.net<br>Counsel for Plaintiff JANE DOE | **SANCHEZ-MEDINA GONZALEZ QUESADA LAGE GOMEZ & MACHADO, LLP**<br>CARLOS A. GARCIA PEREZ / Fla Bar 106895<br>GUSTAVO D. LAGE / Fla Bar 972551<br>201 Alhambra Circle, Suite 1205<br>Coral Gables, Florida, 33134<br>Tel. (305) 377-1000<br>Primary E-Mail: cgarciaperez@smgqlaw.com<br>Primary E-Mail: glage@smgqlaw.com<br>Counsels for Plaintiff JANE DOE |

By:_____
        CARLOS A. GARCIA PEREZ

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 23, 2025 a true and correct copy of the foregoing was served on all parties via the CM/ECF filing portal to all counsel of record.

By: _____
CARLOS A. GARCIA PEREZ
Attorney for Plaintiff