UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:25-cv-20757-JB/Torres

JANE DOE,

    Plaintiff,

v.

STEVEN K. BONNELL II,

    Defendant.

_____/

**DEFENDANT STEVEN K. BONNELL II'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
ROBERT L. RASKOPF
Florida Bar No.: 1040022
PATRICIA M. PATINO
Florida Bar No.: 1007702
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

Email: rraskopf@bilzin.com;
ppatino@bilzin.com

 -and-

**BERK BRETTLER LLP**

ANDREW B. BRETTLER
California Bar No.: 262928
JAKE A. CAMARA
California Bar No.: 305780
9119 West Sunset Blvd.
West Hollywood, CA 90069-3106
Tel: (310) 278-2111
Email: abrettler@berkbrettler.com;
jcamara@berkbrettler.com
(admitted *pro hac vice*)

## I.    INTRODUCTION

As Steven Bonnell (professionally known as "Destiny") has consistently maintained from the outset of this case, the Court lacks subject matter jurisdiction over this dispute; Plaintiff's Amended Complaint does nothing to cure that fatal defect. For that reason, in the Court's September 2, 2025 Order granting Plaintiff's Motion for Leave To File an Amended Complaint [ECF No. 119], Magistrate Judge Torres invited Bonnell to file the instant Motion To Dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Count I of the Amended Complaint, for Bonnell's alleged violation of 15 U.S.C. § 6851 ("CARDII"), provides the sole basis for federal question jurisdiction, yet Count I fails as a matter of law. Evidence inconsistent with the allegations in the Amended Complaint conclusively establishes that Bonnell transmitted the Video depicting Plaintiff, on just one occasion, to an individual, who used the screenname "Rose," in April 2022. That sole transmission of the Video preceded the effective date of the CARDII statute by nearly six months. Because the statute is not retroactive, the Court lacks subject matter jurisdiction over Plaintiff's federal claim and should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.

Conceding that Bonnell's sole transmission of the Video to Rose could not serve as the basis for subject matter jurisdiction, Plaintiff amended her Complaint on September 5, 2025 [ECF No. 120], to add an allegation that Bonnell transmitted the Video to an individual, who used the screenname "Abbymc," "sometime" after March 2023. Plaintiff's new allegation pertaining to an alleged transmission to Abbymc is not consistent with the evidence. In fact, the evidence demonstrates just the opposite—i.e., Bonnell did *not* transmit the Video to Abbymc *at any time*.

Plaintiff's new allegation concerning Abbymc relies exclusively on a declaration and exhibit purportedly from Abbymc [*see* ECF No. 86] that Plaintiff filed with the Court on the day

1

before the June 3, 2025 evidentiary hearing on Plaintiff's Motion for Preliminary Injunction—a month after that motion was fully briefed.[1] Plaintiff contends that the Abbymc declaration establishes that Bonnell transmitted the Video to Abbymc in 2023, but her declaration does no such thing. Plaintiff, whose attorneys also represent Abbymc, could have submitted proof from Abbymc of any such transmission from Bonnell, yet she has not done so (and for good reason—as explained below, the evidence demonstrates that the transmission never occurred).

Plaintiff has been on notice of Bonnell's jurisdictional challenge since he filed his Answer and Affirmative Defenses on March 14, 2025 [ECF No. 17]. Bonnell repeated the challenge in his April 25, 2025 Opposition to Plaintiff's Motion for Preliminary Injunction [ECF No. 42]. For more than *six months*, Plaintiff has had the opportunity to demonstrate, through admissible evidence, that Bonnell actually transmitted the Video to Abbymc, or to anyone else, *after* the effective date of the CARDII statute. She has failed to do so, yet makes allegations in her Amended Complaint that are wholly inconsistent with the evidence in the record. Indeed, Plaintiff failed to produce her star witness, Abbymc, to testify at the June 3, 2025 evidentiary hearing, depriving Bonnell of the opportunity to cross examine her and test the contentions in her declaration. Worse, for more than four months, Abbymc has dodged and evaded service of a valid subpoena. According to Abbymc, Plaintiff's counsel, *who is also her attorney*, advised her to continue to evade service and just to "submit[] evidence" anyway.

Plaintiff has not and cannot submit any evidence to establish that Bonnell transmitted the Video after the effective date of the statute. In fact, to date, Plaintiff has submitted no evidence apart from Abbymc's unsworn statement to demonstrate that Bonnell transmitted the Video to

---

[1] Plaintiff's reply papers were due on May 2, 2025. Plaintiff filed the Abbymc declaration (without the June 2 exhibit) on May 3, 2025 [ECF No. 49-2], which was a day late. (Brettler Decl., dated Sept. 19, 2025, ¶ 4 & Ex. B.)

Abbymc ever. Bonnell, on the other hand, has conclusively established that no such transmission occurred. The Court should dismiss Plaintiff's Amended Complaint accordingly.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

On April 3, 2025, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction against Bonnell. [ECF No. 21.] On April 25, 2025, Bonnell filed his Opposition to Plaintiff's motion. [ECF No. 42.] Among other arguments, Bonnell opposed Plaintiff's motion on the grounds that the Court lacks subject matter jurisdiction over this action because Plaintiff failed to adequately allege that Bonnell transmitted the Video after October 1, 2022, the effective date of the CARDII statute. (*Id.* at 13-15.) Specifically, Bonnell established that his sole transmission to of the Video to Rose occurred in April 2022, nearly six months prior to CARDII's effective date. (Bonnell Decl., dated Apr. 25, 2025 [ECF No. 42-1], ¶¶ 9-10.)

On April 29, 2025, counsel for Bonnell received a letter from Plaintiff's attorney, Carlos A. Garcia Perez, indicating that he and his law firm represented Abbymc "specifically pertaining to . . . Steven K. Bonnell II." (Brettler Decl., dated Sept. 19, 2025, ¶ 3 & Ex. A.) Just three days later, on May 2, 2025, Plaintiff filed her reply brief in support of her motion for Preliminary Injunction [ECF No. 45]. A day after her reply papers were due, on May 3, 2025, Plaintiff filed a declaration, purportedly from Abbymc, along with exhibits [ECF Nos. 49-1, 49-2, 49-3, 49-4, 49-5].

On May 14, 2025, counsel for Bonnell emailed Plaintiff's counsel to inquire whether they would agree to accept service of a subpoena on behalf of their client, Abbymc. (Brettler Decl. ¶ 5 & Ex. C.) Having received no response from Plaintiff's counsel, on May 16, 2025, Bonnell's attorneys provided them with notice of issuance of subpoena and a copy of the subpoena Bonnell issued to Abbymc, on May 15, 2025. (*Id.* ¶ 6 & Ex. D.) Thereafter, Bonnell's counsel arranged for

3

a process server to serve the subpoena personally on Abbymc at any of her publicly available addresses. (*Id.* at ¶ 7.) Despite multiple attempts to serve Abbymc with the subpoena, Bonnell was unable to serve her. (*Id.*)

On June 2, 2025, Plaintiff belatedly filed her Motion To File Redacted Evidence in Support of the Declaration of Abbymc. [ECF No. 86.] Plaintiff sought to submit new purported "evidence" to bolster the Abbymc declaration, namely, a November 3, 2023 text message that Abbymc supposedly sent to an unknown person stating, "I have videos of him f*cking cheiry and pxie like lmfao he just sent me another one haven't opened it." [ECF No. 86-1.] Plaintiff contends that this text message "directly corroborates" the testimony of Abbymc in her declaration. [ECF No. 86 at 2.]

On June 3, 2025, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. [ECF No. 87.] Despite that counsel for Plaintiff also represents Abbymc (*see* Brettler Decl. ¶ 3 & Ex. A), and despite that Plaintiff relies on Abbymc's critical testimony to establish subject matter jurisdiction, Plaintiff failed to produce Abbymc to testify at the hearing. Accordingly, Bonnell had no opportunity to cross-examine Abbymc or otherwise test the statements in her declaration.

On July 2, 2025, attorneys for Bonnell participated in a telephonic meet and confer conference with Plaintiff's counsel, Joan Peters. (*Id.* at ¶ 9.) During the conference, Bonnell's lawyer explained to Ms. Peters the difficulties they encountered in trying to serve her client, Abbymc, with the subpoena issued on May 15, 2025. (*Id.*) Bonnell's attorneys again inquired whether Ms. Peters and her co-counsel still represented Abbymc and whether they were authorized to accept service of the subpoena on her behalf. (*Id.*) Ms. Peters indicated that she would speak with her client and revert. (*Id.*)

4

Having received no response from Ms. Peters or her co-counsel, counsel for Bonnell emailed them a further inquiry on July 7, 2025. (*Id.* ¶ 10 & Ex. F.) On July 8, 2025, Ms. Peters responded that she and her co-counsel were "not authorized to accept service of the subpoena for Abbymc." (*Id.*) Accordingly, on July 8, 2025, counsel for Bonnell requested Abbymc's current contact information. (*Id.* ¶ 11 & Ex. G.) To date, neither Ms. Peters nor her co-counsel, Mr. Garcia Perez, have responded to that request. (*Id.* ¶ 11.)

Notwithstanding Bonnell's inability to personally serve Abbymc with the subpoena, and notwithstanding that Ms. Peters and her co-counsel continue to refuse to accept service of the subpoena on their client's behalf, Abbymc has been well-aware of the subpoena and the efforts to serve her. (*Id.* ¶ 8.) On July 24, 2025, Abbymc posted about the subpoena on her public account on the social media platform, X, noting that the subpoena had "some random address" on it and she had not yet been served. (*Id.* & Ex. E.)

Abbymc has continued to comment online and elsewhere about her knowledge of the subpoena and suggested, in at least one live-streamed interview, that her attorneys advised her to continue to evade service of process and continue to "submit[] evidence." (*Id.* ¶ 12 & Ex. H.) Specifically, on or about September 8, 2025, Abbymc participated in a livestream interview with a streamer known as "DariusIRL." (*Id.* ¶ 12.) Among other things, Abbymc stated during the livestream: (1) "I am currently being subpoenaed . . . [by] Destiny." (*Id.*, Ex. H at 00:00:45); (2) "I have seen the subpoena paperwork from my lawyers, but he [Bonnell] has not been able to officially serve me." (*Id.* at 00:03:36); and (3) "Because they send copies of it first . . . [t]heir lawyers send my lawyers the information." (*Id.* at 00:06:53). In response to a question about what her attorneys advised her to do, Abbymc explained that they advised her to "[a]void it and avoid [Bonnell] . . . [a]void everything and keep submitting evidence." (*Id.* at 00:07:21.)

5

### III. LEGAL STANDARD

Rule 12(b)(1) authorizes dismissal where the court lacks subject matter jurisdiction. Jurisdictional challenges may be facial or factual. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). A facial attack on subject matter jurisdiction accepts the allegations in the complaint as true and tests only their sufficiency. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A factual attack, by contrast, "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings,'" and permits the court to "weigh the evidence" outside the complaint, including affidavits and testimony. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)). Critically, in a factual attack on subject matter jurisdiction, "*no presumptive truthfulness attaches to plaintiff's allegations*," and the court may resolve disputed facts. *Id.* (emphasis added); *Goodman v. Sipos*, 259 F.3d 1327, 1331-32 (11th Cir. 2001) (holding that a district court may consider matters outside the pleadings when resolving a factual attack on subject matter jurisdiction, and that dismissal—not necessarily summary judgment—is the proper procedure when jurisdiction is lacking); *See also Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1170 (11th Cir. 2011) (affirming Rule 12(b)(1) dismissal on a factual attack on subject matter jurisdiction, and holding that "[w]hen a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue…. When resolving factual disputes underlying a Rule 12(b)(1) motion, a court may consider oral evidence along with written, but an evidentiary hearing is not required.").

The burden rests with the plaintiff to establish subject matter jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *see Big League Ventures, LLC v. Certain*

6

*Underwriters at Lloyd's, London*, 474 F. Supp. 3d 1279, 1281 (S.D. Fla. 2020) (dismissing the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and holding that "Plaintiff bears the burden to *prove* the facts sufficient to establish subject matter jurisdiction.") (emphasis added). Once a federal court determines jurisdiction is lacking, "the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005).

IV. **BONNELL'S SOLE TRANSMISSION OF THE VIDEO TO ROSE FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION, AS A MATTER OF LAW.**

Plaintiff alleges the Court has subject matter jurisdiction because her claims arise under the federal CARDII statute. (Am. Compl. [ECF No. 120] ¶ 3.) Critically, CARDII took effect on October 1, 2022. 15 U.S.C. § 6851. CARDII provides remedies for conduct occurring only *as of* the effective date of the statute. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (holding a court must not "give retroactive effect to statutes burdening private rights unless Congress had made clear its intent."). No such legislative intent for retroactive application exists here.

Indeed, federal district courts have held that CARDII cannot be applied retroactively to conduct predating the effective date of the statute. *K.T. v. Place for Rover*, No. 23-02858, 2024 WL 1356221, at *5 (E.D. Pa. Mar. 29, 2024). In *K.T.*, the plaintiff sought to amend her complaint to add a claim under CARDII for conduct allegedly occurring in March and April 2022. *Id.* at *3. In opposition, the defendant asserted that CARDII did not go into effect until October 1, 2022, and that because the newly alleged conduct occurred prior to that date, plaintiff's CARDII claim could not lie as a matter of law. *Id.* The court applied the holding in *Landgraf* and denied plaintiff's motion for leave to amend, expressly holding that "since there is no clear Congressional intent to apply the statute retroactively, this leads the Court to conclude that § 6851 should not be given retroactive application." *Id.* at *5; *see also Doe v. Stevenson*, No. 24-CV-02778, 2025 WL

7

1165660, at *3 (N.D. Ill. Apr. 3, 2025) (rejecting § 6851 claim where defendant "sent the text message at issue three days before § 6851's effective date," and holding that the statute "does not cover the conduct described"); *Ballou v. Wells*, No. 24-CV-23-GKF-CDL, 2024 WL 2328216, at *1 (N.D. Okla. May 22, 2024) (granting motion to dismiss because "§ 6851 does not apply retroactively before its effective date of October 1, 2022").

### A. Bonnell's Sole Transmission of the Video to Rose Preceded the Effective Date of the CARDII Statute by Nearly Six Months.

On the face of her First Amended Complaint, Plaintiff has not alleged that Bonnell transmitted the Video to Rose after CARDII went into effect. Instead, Plaintiff retreats to ambiguity. She alleges only that the Video was sent "sometime in 2022," accompanied by a footnote stating that "it cannot be conclusively determined" whether the transmission to Rose occurred after October 1, 2022. (Am. Compl. ¶ 12 n.1.) Plaintiff's contentions are demonstrably false. The evidentiary record—including leaked Discord communications, which have been long-available to Plaintiff—conclusively establishes that the Video was transmitted in April 2022, nearly six months before CARDII took effect.

The evidence shows that Rose's side of her communications with Bonnell was accessed and leaked by a third party with the screenname "SoloTinyLeaks," who, being located in Europe, downloaded the messages such that the timestamps are reflected in the standard European format of day/month/year. (Bonnell Decl., dated Sept. 19, 2025, ¶ 3.) Accordingly, the following leaked screenshot from Rose's correspondence with Bonnell reflects that he transmitted the Video to her on "10/04/22," or April 10, 2022 at 1:36 a.m. (*Id.*)

8



(*See id.* ¶ 3 & Ex. A.)

Indeed, a simple comparison of Rose's leaked screenshot to Bonnell's side of the same communication (which was not leaked) conclusively establishes that the Video was transmitted on April 9, 2022 at 8:36 p.m. EST (i.e., April 10, 2022 at 1:36 a.m. in Europe):



(*See id.* ¶ 4 & Ex. B.)

The additional leaked correspondence between Rose and Bonnell further confirms that Rose's communications are displayed in the European date format. After Bonnell transmitted the

9

Video to Rose in April 2022, the two continued to communicate on Discord, and those subsequent communications were also publicly posted online by SoloTinyLeaks. (*Id.* ¶ 5.) For example, on April 14, 2022, Bonnell texted Rose, "Just streaming," and that communication is date-stamped "14/04/2022." (*See* Bonnell Decl. ¶ 5 & Ex. C.) The timestamp can only be read as April 14, 2022, consistent with the European day/month/year format.[2]

The evidence thus confirms—and Plaintiff cannot dispute—that Bonnell transmitted the Video to Rose on a single occasion, nearly six months before CARDII took effect. Because the date of transmission to Rose precedes the effective date of the statute, that transmission provides no basis for subject matter jurisdiction.

### B. Plaintiff's Theory of "Continuous Ongoing Disclosure" Fails as a Matter of Law.

In an effort to evade the fatality of her claim based on CARDII's effective date, Plaintiff's Amended Complaint reframes Bonnell's April 2022 transmission to Rose as supposedly having occurred through a Google Drive link, and contends—without any legal or factual support—that such a transmission somehow constitutes an "ongoing dissemination," or "continuous ongoing disclosure" of the Video, thereby establishing subject matter jurisdiction. (*See* Am. Compl. at ¶¶ 13, 45.)[3] Plaintiff's theory is contradicted by the evidence and, in any event, fails as a matter of law.

As an initial matter, there is no evidence that Bonnell ever transmitted the Video to Rose, or anyone else, via Google Drive. Indeed, the leaked screenshot of the transmission itself confirms

---

[2] *See* Exhibit C attached to the Bonnell Declaration, filed concurrently herewith, for further examples.

[3] Plaintiff's allegations are contradictory. While she first alleges that Bonnell sent the Video to Rose "via a Google drive link" (*id.* at ¶ 13), she then qualifies her allegation in a footnote, alleging that instead it may have been sent "via a media attachment on Discord" (*id.* n.2).

10

that Bonnell sent the Video to Rose in a private Discord chat via a Discord media file, not via a Google Drive link. (*See* Bonnell Decl., dated Apr. 25, 2025 [ECF No. 42-1] ¶ 9; *id.* Ex. C [ECF No. 42-4]; Bonnell Decl., dated Sept. 19, 2025, ¶ 6 & Ex. D.) The screenshot of Bonnell's transmission of the Video to Rose depicts a black square, representing a media file, not a Google Drive hyperlink. (Bonnell Decl., dated Sept. 19, 2025, ¶6 & Ex. A.) Indeed, as evident from the November 29, 2024 leak on the KiwiFarms website, the original file name of the Video appears as "VID_240100707_144752_318-1.mp4," confirming that the Video file was transferred directly through Discord as an attached .mp4 file, and not transmitted via a Google drive link. (*Id.* ¶ 6 & Ex. D.)

Critically, however, even if the Video had been shared by a Google drive link, Plaintiff's legal theory fails as a matter of law. Courts have rejected the proposition that privately shared, unindexed cloud links amount to public or continuous dissemination. In *Wray v. Greenburg*, 646 F. Supp. 3d 1084, 1115 (D. Ariz. 2022), the district court considered whether private material transmitted via a Google Drive link to a third party could constitute an ongoing transmission of such material to the public. As here, the plaintiffs in *Wray* asserted that the Google Drive was configured "so that it was viewable by anyone with a link" and did not require a password. *Id.* at 1114. In rejecting plaintiffs' assertion, the court held that "[e]ven assuming the link was public and thus theoretically accessible to anyone, there are no facts that suggest the link was *in fact* widely disseminated or placed in a location where anyone could access it." *Id.* at 1115. The court continued, "Emailing a public link to a shared drive to a *single person* is unlike publicizing information in a regional magazine or newspaper." *Id.* (emphasis added).

Similarly, in the parallel case, *Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, 2022 WL 2176499, at *2 (D. Ariz. June 16, 2022), the court expanded on its reasoning, as applied to a

violation of the federal computer fraud statute, 18 U.S.C. § 1030(g). In *Greenburg*, the court rejected the assertion that materials sent via Google Drive can be considered a continuous distribution to the public:

> Plaintiff acknowledges that the portion of the Google Drive . . . was not password protected . . . . But, Plaintiff alleges that this setting did not per se render the Google Drive public, given that the URL was a string of 68 characters. What's more, the Google Drive was not indexed by any search engines . . . . Therefore, it wasn't just "anyone with a browser" who could stumble upon the Google Drive on a web search—the internet denizen wishing to access the Google Drive needed to obtain the exact URL into the browser. By the Court's eye, Plaintiff alleges that the Google Drive had limitations and thus persons attempting to access it needed authorization.

*Id.* at *2.

Here, even if Bonnell's transmission of the Video to Rose occurred via a Google Drive link (it did not), such conduct cannot constitute a continuous transmission to the public as a matter of law. Plaintiff cannot present any legal authority to the contrary. Nor is there any meaningful difference between a one-time file attachment and a one-time Google Drive link. In either case, Bonnell's sole transmission of the Video to Rose and cannot constitute a "continuous ongoing disclosure" as a matter of law.[4]

## V.  PLAINTIFF'S NEW ALLEGATIONS REGARDING ABBYMC ARE NOT CONSISTENT WITH THE EVIDENCE AND FAIL TO ESTABLISH SUBJECT MATTER JURISDICTION.

In her latest attempt to manufacture subject matter jurisdiction, Plaintiff amended her Complaint to allege that, at some unspecified time after March 2023, Bonnell sent the Video to

---

[4] Plaintiff's Amended Complaint expressly advances this argument, contending in a footnote that even if the Video was transmitted as a Discord media attachment, such attachments create a "live link" that remains continuously accessible, akin to a Google Drive link. (Am. Compl. ¶ 13 n.2.) This theory fails for the same reasons. Both Discord attachments and Google Drive links are one-time transmissions accessible only to the recipient of the URL; neither is publicly indexed nor searchable, and in either case, the disclosure is complete upon transmission. *Greenburg*, 2022 WL 2176499 at *2.

Abbymc via a "Google drive link." (Am. Compl. ¶ 14.) Plaintiff's new allegations are not only unsupported, but also directly contradicted by the evidentiary record. Moreover, Plaintiff's reliance on Abbymc's testimony to establish subject matter jurisdiction is particularly misplaced. Abbymc has evaded service of a subpoena, failed to volunteer for a deposition, and declined to appear or testify at the June 3, 2025 evidentiary hearing. Abbymc's refusal to produce evidence consistent with the allegations is fatal to Plaintiff's claims. Plaintiff cannot meet her burden to establish subject matter jurisdiction, and the Motion should be granted accordingly.

  A. **The Evidence Establishes That Bonnell Did Not Transmit the Video to Abbymc at Any Time**.

Plaintiff alleges that, at some unspecified time after March 2023, Bonnell sent the Video to Abbymc via a "Google drive link" and that Abbymc "recognized the Plaintiff in the Video by her face and hair." (*See* Am. Compl. ¶ 14-15.) The evidentiary record, however, flatly contradicts these claims and confirms that Bonnell never transmitted the Video to Abbymc; nor has Plaintiff produced any evidence to the contrary. To be clear, Plaintiff "bears the burden to *prove* the facts sufficient to establish subject matter jurisdiction." *Big League Ventures*, 474 F. Supp. 3d at 1281 (dismissing the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)) (emphasis added).

Here, Plaintiff cannot meet her burden because the evidence demonstrates just the opposite of what she alleges in her Amended Complaint. Bonnell's preserved communication logs with Abbymc conclusively establish that he never transmitted the Video to her at any time. (*See* Bonnell Decl. ¶ 7-8 & Ex. E.) These logs capture every media file Bonnell ever transmitted to Abbymc, and none contained the Video depicting Plaintiff. (*Id.* ¶ 8 & Ex. E.) The original filename of the Video, "VID_240100707_144752_318-1.mp4," was revealed when SoloTinyLeaks uploaded it to the KiwiFarms website without authorization. (*Id.* ¶ 6 & Ex. D.) By contrast, the files Bonnell sent

13

to Abbymc bear entirely different filenames, none of which correspond to the filename of Plaintiff's Video. (*See id.* ¶ 8 & Ex. E.)

Further, each of the media files Bonnell sent to Abbymc contain embedded date stamps indicating the date on which the original file was created (for example, SPOILER_PXL_**20230310**_151548695.TS.mp4). (*See id.* (emphasis added).) These date-stamped filenames confirm that each of the media files that Bonnell sent to Abbymc were created in 2023, unlike the Video depicting Plaintiff, which, by Plaintiff's own sworn testimony, was created in 2020. (*See* Doe Decl., dated Apr. 3, 2025 [ECF No. 20-1], ¶ 5.)

The evidence also establishes that Bonnell did not transmit the Video to Abbymc via Google Drive. Bonnell sent Abbymc only two Google Drive links on November 3, 2023. (*See* Bonnell Decl., dated Sept. 19, 2025, ¶ 9 & Ex. F.) The contents of those links contain videos of Bonnell with another woman who uses the screenname "Peach," and they do not depict Plaintiff. (*Id.* ¶ 9.) In fact, Peach herself confirmed that these same files, bearing the same unique Google Drive URLs that Bonnell sent to Abbymc, depicted her, and not Plaintiff, exclaiming, "Omg aww that's me!☐," in contemporaneous communications with Bonnell. (*Id.*) In those same communications, Peach consented to and even encouraged further sharing of her video. (*Id*. Ex. F ("You can also add [the video] to my resume if you have any single friends.").)

Notably, on or around September 5, 2023, Abbymc visited Bonnell at his home. (*Id.* ¶ 10.) Sometime that afternoon, Bonnell temporarily left his home and permitted Abbymc to stay there while she waited for her flight that evening. (*Id.*) Unbeknownst to Bonnell at the time, Abbymc began snooping around his house and studio, taking videos and photographs of his possessions. (*Id.*) She then sent a photograph of Bonnell's desktop computer to her friend Darius, with the message, "major leaks prob." (*Id.* ¶ 10 & Ex. G.) Without Bonnell's knowledge, Abbymc had

14

access to his computer and was able to view private files directly from his desktop. (*Id.* ¶ 10.) To the extent Abbymc claims to have seen the Video depicting Plaintiff, she could only have done so while snooping through Bonnell's computer—not because Bonnell ever transmitted the Video to her. *Id.*

### B. The Abbymc Declaration and Accompanying Exhibit Fail To Support, Let Alone Prove, Subject Matter Jurisdiction.

Plaintiff contends that the Abbymc declaration establishes that the Video was transmitted to Abbymc, but it does no such thing. Instead of providing evidence of the alleged transmission, e.g., a screenshot of a message in which Bonnell supposedly sent the Video to Abbymc, Plaintiff relies on a single, self-serving text message from Abbymc to an unknown third party, dated November 3, 2023, wherein Abbymc writes: "I have videos of him f*cking cheiry and pxie like lmfao he just sent me another one haven't opened it." [Dkt. No. 86-1.]

This unauthenticated exhibit does not come close to establishing that Bonnell transmitted the Video of Plaintiff at all, let alone that he transmitted the Video at any time after the effective date of the CARDII statute. Plaintiff could have submitted proof of such a transmission, yet she has not done so (and for good reason, it never happened).

At most, the proffered Abbymc declaration and accompanying exhibit constitutes inadmissible hearsay, i.e. an out of court statement offered to prove that Bonnell transmitted a video of Plaintiff after the CARDII statute went into effect. Fed. R. Civ. P. 801. Abbymc does not submit any actual evidence of such a transmission, but instead submits a text message that she sent wherein she claims she received a video of Plaintiff from an unknown person and at an unknown time. The Abbymc declaration and accompanying exhibit should be disregarded accordingly.

15

### C. Abbymc Refuses To Comply with a Subpoena, and Plaintiff's Counsel Refuses To Provide Contact Information for Their Star Witness.

While Plaintiff's sole remaining basis for subject matter jurisdiction relies on the uncorroborated and untested declaration of Abbymc [ECF No. 49-2], Plaintiff and her counsel allegedly have obstructed Bonnell's access to their star witness for nearly five months, depriving Bonnell of the opportunity to cross-examine Abbymc about the false statements in her declaration and other public statements she has made about Bonnell and this lawsuit. Despite that Abbymc is on notice of and in possession of the subpoena, she continues to dodge service, and failed to appear to testify at the June 3, 2025 evidentiary hearing.

As Abbymc continues to evade service, she has commented online and elsewhere about being aware of the subpoena and recently suggested—in a livestream on September 8, 2025—that her attorneys advised her to continue to evade service of process. (Brettler Decl., dated Sept. 19, 2025, ¶ 12 & Ex. H.) Specifically, on or about September 8, 2025, Abbymc participated in a livestream with the streamer, DariusIRL, wherein she stated her attorneys advised her to continue to evade service of process and continue to "submit[] evidence." *Id.*

Plaintiff and her counsel should not be rewarded for obstructing Bonnell's access to Abbymc, an individual they identified in their Rule 26(a) initial disclosures. [ECF No. 29 ¶ 11.] Counsel for Plaintiff and Abbymc have refused to accept service on behalf of Abbymc (Brettler Decl., dated Sept. 19, 2025, ¶¶ 5, 9-10), and refused to provide Abbymc's current contact information (*id.* ¶ 11 & Ex. G.), as required under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. Rule 26(a)(1)(A)(i) (a party must provide the "name, address, and telephone number of each individual likely to have discoverable information"); *id.* Rule 26(e)(1)(A) (requiring supplementation "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known"). Abbymc's uncorroborated and untested declaration should be disregarded accordingly. *See Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1141 (S.D. Fla. 2016) ("Plaintiff's failure to comply with Rule 26(a) and (e) is grounds for exclusion under Rule 37(c)").

## VI. THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS.

The remainder of Plaintiff's claims (Counts II-IV) are state law claims only. Federal law is clear that if the root federal claims are dismissed before trial, a court should decline to exercise supplemental jurisdiction over the remaining state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see also* 28 U.S.C. 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction"); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well"). Indeed, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

Here, Plaintiff's remaining claims raise no federal question, and no diversity jurisdiction exists between the Parties. Counts II-IV arise exclusively under Florida statutory and/or common law and should be dismissed accordingly.

## VII. CONCLUSION

For the reasons stated herein, Bonnell respectfully requests that this Court grant the Motion in its entirety and dismiss Plaintiff's Amended Complaint without prejudice.

### CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(2)

WE HEREBY CERTIFY that the undersigned counsel for movant made efforts via telephone on September 9, 2025, to confer with opposing counsel regarding the relief sought in this Motion but was unable to reach a resolution.

| | |
|---|---|
| Dated: September 19, 2025 | Respectfully submitted, |
| | **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**<br>1450 Brickell Avenue, Suite 2300<br>Miami, Florida 33131<br>Tel.: (305) 374-7580<br>Fax: (305) 374-7593<br><br>By: /s/ *Patricia M. Patino*<br>Florida Bar No.: 1040022<br>rraskopf@bilzin.com<br>Patricia M. Patino, Esq.<br>Florida Bar No.: 1007702<br>ppatino@bilzin.com<br><br>*and*<br><br>**BERK BRETTLER LLP**<br>9119 West Sunset Blvd.<br>West Hollywood, CA 90069-3106<br>Tel: (310) 278-2111<br><br>By: /s/ *Andrew B. Brettler*<br>Andrew B. Brettler, Esq.<br>California Bar No.: 262928<br>abrettler@berkbrettler.com<br>Jake A. Camara, Esq.<br>California Bar No.: 305780<br>jcamara@berkbrettler.com<br>(admitted *pro hac vice*)<br><br>*Counsel for Steven K. Bonnell II* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 19 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, including those listed in the below Service List, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Patricia M. Patino*
Attorney

## SERVICE LIST

*Jane Doe v. Steven K. Bonnell II*
*Case No.: 1:25-cv-20757-JB*

Carlos A. Garcia Perez, Esq. Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado, LLP 201 Alhambra Circle, Suite 1205 Coral Gables, Florida, 33134
Email: cgarciaperez@smgqlaw.com

Joan Schlump Peters, Esq. JSP LAW, LLC
4819 W. Blvd. Ct. Naples, Florida 34103
Email: petersjoan@bellsouth.net

*Counsel for Plaintiff Jane Doe*