## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### (MIAMI DIVISION)

**JANE DOE,**                                    CASE NO: 1:25-cv-20757-JB/Torres

     Plaintiff,

v.

**STEVEN K. BONNELL II,**

     Defendant.

_____/

### PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FRCP 12(B)(1)

COMES NOW Plaintiff Jane Doe, by and through the undersigned counsel, and hereby opposes Defendant's Motion to Dismiss Amended Complaint For Lack of Subject Matter Jurisdiction Pursuant to FRCP 12(b)(1) (ECF 132)("Motion"), and respectfully states as follows:

### INTRODUCTION

Defendant's Motion is nothing more than an improper attempt to short-circuit Plaintiff's core CARDII claim. The Motion rests entirely on factual disputes—whether his disclosures predated CARDII and whether he disclosed the Video to Abbymc—that go to the heart of Plaintiff's cause of action. By styling his factual defenses as a jurisdictional challenge, Defendant seeks to have the Court resolve disputed merits questions on a Rule 12(b)(1) motion. That is not the law. Under binding Eleventh Circuit precedent, when jurisdictional issues are intertwined with the merits—as they are here—the Court must assume jurisdiction and deny dismissal. At most, Defendant's arguments may be raised on summary judgment after discovery is complete. For now, the Motion should be denied outright.

1

## RELEVANT PROCEDURAL BACKGROUND

Discovery closes December 16, 2025 (see Order, ECF 23), but is still in early stages. Written discovery is on-going and depositions have not yet been conducted. Written discovery only began after the Court granted Plaintiff's protective order on September 2, 2025 (ECF 116). Plaintiff produced over 3,000 documents on September 5 (with additional productions on September 22). Defendant, however, delayed production until September 12 and provided incomplete, deficient, and forensically unsound materials. Defendant's ESI was not collected and preserved in a forensically sound manner, thus it cannot be authenticated and is not reliable. See Declaration of Jesus Peña, forensic expert, **Exhibit A** hereto, ¶ 16. Moreover, there is evidence of tampering and spoliation. Id., ¶¶ 16-22. There are multiple factual disputes pertaining to Bonnell's disclosure of the Video that require further discovery. Id. ¶¶ 7, 9.

## ARGUMENT

### I.      DEFENDANT'S FACTUAL CHALLENGE MUST BE DENIED BECAUSE JURISDICTION AND THE MERITS ARE INTERTWINED

Defendant styles his Motion as a Rule 12(b)(1) factual attack, arguing that (i) his disclosure to Rose occurred before CARDII's effective date, and (ii) he did not disclose the Video to Abbymc after the statute took effect. This argument goes to the heart of Plaintiff's substantive claim under CARDII and cannot be resolved at the pleading stage.

The Eleventh Circuit has long held that when jurisdictional facts are "intertwined with the merits," the district court must assume jurisdiction and resolve the dispute as a direct attack on the merits. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)(citations omitted). *See also Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990); *Morrison v. Amway Corp.*, 323 F.3d 920, 925–26 (11th Cir. 2003). This occurs where, as here, the

2

statute both creates the cause of action and provides the jurisdictional grant. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 734 (11th Cir. 1982). *See also Morrison, 323 F.3d 920.*

Dismissal is permitted only if the federal claim is "immaterial, insubstantial, or frivolous." *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981). Plaintiff's CARDII claim is her central claim, and plainly neither immaterial nor frivolous. See *Garcia*, 104 F.3d at 1266.

Accordingly, the Court may not resolve factual disputes or weigh competing evidence on this Rule 12(b)(1) motion. Defendant's Motion should be denied outright, or treated under Rule 56 standards—meaning it must be denied as premature, and in any event because material facts remain in dispute. See *Lawrence*, 919 F.2d at 1531("federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact.").

## II.     DEFENDANT'S FACTUAL CHALLENGE IS PREMATURE

Since Defendant's jurisdictional argument challenges the merits of Plaintiff's claim, and discovery is in its early stages, "it is prudent to deny the motion without prejudice and decide the [jurisdictional] dispute at the summary judgment stage." *Avini Health Corp. v. Biogenus LLC,* No. 22-CV-61992-RAR, 2023 U.S. Dist. LEXIS 45449, at *5-6 (S.D. Fla. Mar. 17, 2023), citing *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,* 603 F. Supp. 3d 1183, 1207 (S.D. Fla. 2022) (denying motion to dismiss for lack of subject matter jurisdiction because the defendants' "contentions [were] indirect, if not direct, attacks on the merits" of the plaintiffs' claims, and "those questions must be resolved at the summary judgment stage after both parties have had an opportunity to develop the record through discovery"). *See also Eaton,* 692 F.2d 727, 729–30.

Here, Defendant's jurisdictional challenge turns on disputed factual issues that require discovery to resolve: the timing of his disclosure of Plaintiff's Video to Rose, including whether

it remained accessible to Rose and the public after the effective date of CARDII, as well as whether or not he disclosed the image to Abbymc. Yet discovery in this matter is far from complete (see *ante*), and the evidence relied on by Defendant to support his argument is not reliable and cannot be authenticated. See Decl. J. Pena, Exh. A, ¶¶ 16- 22. Plaintiff cannot fairly be required to meet her burden of proof without the opportunity to complete discovery. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.,* 501 F.3d 1244, 1251 (11th Cir. 2007). *See also Jones v. Waffle House, Inc.,* No. 6:15-cv-1637-Orl-37DAB, 2016 U.S. Dist. LEXIS 76507, at *23-24 (M.D. Fla. June 13, 2016)(applying Rule 56 standard to a Rule 12(b)(1) motion where the jurisdictional facts are intertwined with the merits, and denying the motion "at this stage of the litigation" because discovery is not yet complete and plaintiff "is entitled to full discovery").

Because Rule 56 presumes that parties opposing summary judgment have had a fair chance to complete discovery, "converting the [Rule 12(b)(1)] Motion to Dismiss into a motion for summary judgment would be *improper* at this juncture in the litigation." *Castro v. BM Roofing LLC,* No. 24-CV-21433-Bloom/Elfenbein, 2024 U.S. Dist. LEXIS 149706, at *11 (S.D. Fla. Aug. 20, 2024)(emphasis supplied). "'The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted 'an adequate opportunity to complete discovery prior to consideration of the motion.'" *Id.* (citations omitted).

Thus here, the proper course is to deny Bonnell's Motion to Dismiss without prejudice and defer jurisdictional issues until summary judgment after discovery is complete. *See, e.g.*, *In re Mednax Servs.,* 603 F. Supp. 3d at 1206-08; *In re Blackbaud, Inc., Customer Data Breach Litigation*, No. 20-02972, 2021 U.S. Dist. LEXIS 123355, 2021 WL 2718439 (D.S.C. July 1, 2021).

### III.   ALTERNATIVELY, THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE THAT PREVENT SUMMARY JUDGMENT

Alternatively, even if the Court were to convert Bonnell's Rule 12(b)(1) Motion into a motion for summary judgment, and not defer ruling until after discovery is complete, the Motion should be denied because there are genuine issues of material fact. A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *See Battle v. Bd. of Regents for Ga.,* 468 F.3d 755, 759 (11th Cir. 2006). *See also Impossible Electronics Techniques, Inc. v. Wackenhut Protective Sys. Inc.,* 669 F.2d 1026, 1031 (5th Cir. Unit B 1982) ("Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. . . . If reasonable minds might differ on the inferences arising from disputed facts, then the court should deny summary judgment.").

### A.   DEFENDANT'S MOTION MUST BE DENIED BECAUSE IT RESTS ON TAINTED AND INADMISSIBLE EVIDENCE

At the outset, Plaintiff objects to Defendant's reliance on Exhibits B, C, D, E and F to Bonnell's declaration (ECF 132-3, 132-4, 132-5, 132-6, 132-7)) under Federal Rule of Civil Procedure 56(c)(2) because these materials "cannot be presented in a form that would be admissible in evidence." Based on all material and communications produced by the Defendant, including these exhibits, he embarked on a DIY search to preserve, authenticate and produce

5

documents, but failed to adhere to the cornerstone principle of digital forensics: *forensically sound data preservation*. Specifically, the essential step of generating cryptographic hash values *at the time of collection* was omitted. See Decl. J. Peña, Exh. A, ¶16. These hashes are unique digital identifiers that assure integrity. Without an initial hash value to compare against, any subsequent analysis or attempt to reproduce findings is based on unauthenticated and unreliable data. Id. The Defendant's mismanagement of the ESI effectively breaks the chain of custody, preventing any reliable verification that the evidence remains in its original state. Id.

Moreover, the documents bear indicia of alteration and tampering and cannot be properly authenticated under Federal Rule of Evidence 901. Id., ¶¶16-22. Such tampering constitutes spoliation and, at a minimum, creates a genuine issue of material fact as to the reliability of Defendant's submissions. Where credibility and authenticity are in dispute, summary judgment is inappropriate because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Accordingly, on this basis alone, Defendant's Motion should be denied because it rests on inadmissible, tainted evidence and raises material factual disputes that only a jury can resolve. Plaintiff reserves all rights to seek sanctions or an adverse inference instruction arising from Defendant's misconduct.

**B.    THERE ARE DISPUTED ISSUES OF FACT REGARDING BONNELL'S DISCLOSURE TO ROSE AND WHETHER IT WAS WITHIN THE AMBIT OF CARDII**

Defendant claims that the disclosure of the Video to Rose fails to establish subject matter

jurisdiction because i) it occurred prior to October 1, 2022; and ii) the continuous accessibility theory fails as a matter of law.[1]  Both of these arguments fail.

### ~*The Court Has Already Determined that Defendant's Evidence Regarding the Disclosure to Rose is "Murky at Best"*

None of the evidence presented in Defendant's Motion regarding the timing of his disclosure to Rose is new – the same evidence has been presented to the Court numerous times. See, e.g., ECF 42, 109.  Indeed, the Court has already reviewed this *same* evidence and held that: "*the evidence establishing a definitive timeline as to what Defendant did or did not do and when is murky at best.*" ECF 119, p. 8, Opinion and Order Granting Plaintiff's Motion for Leave to File Amended Complaint (emphasis supplied). The Court also noted that, "noticeably absent from Defendant's arguments, generally, regarding subject matter jurisdiction is testimony *from Rose* that would corroborate Defendant's characterization that incorporates in Exhibit C a screenshot from Rose's Discord account…"  Id. (emphasis in original). Despite this clear directive from the Court, Defendant failed to submit any corroborating evidence from Rose[2], and instead simply submitted the same evidence and arguments that the Court already rejected. Thus, there is no need for the Court to revisit this issue.  On this basis alone, the Court can deny the Motion.

### ~ *There are Disputed Issues of Fact Regarding the Date of Disclosure to Rose*

Defendant relies on a comparison of two documents (ECF 132-2, 132-3) as the sole support for his assertion that the evidence "conclusively establishes that the Video was transmitted on April

---

[1] Defendant once again argues that CARDII does not apply retroactively. Plaintiff has never contended that CARDII applies retroactively (see ECF 110) and thus will not address this argument.

[2] In fact, it is Plaintiff, not Defendant, that has made efforts to obtain evidence from Rose. Plaintiff hired a private investigator to ascertain Rose's legal identity and location and has just this week managed to serve Rose with a subpoena duces tecum and to appear at a deposition. After finally ascertaining Rose's legal identity, Plaintiff has obtained evidence that Rose's date of birth is October 30, 2004. *Thus when Bonnell was exchanging pornographic content with Rose between March of 2022 and until October 30, 2022, Rose was a **minor***. See **Exhibit B** hereto, redacted Official Certification of Department of Motor Vehicles Driving Record.

9, 2022 at 8:36 p.m. EST." (Mot., p. 9). Yet the Discord chat thread (ECF 132-2) does not show *any* transmission of the video at 8:36 p.m., and it actually *contradicts* that contention. Moreover, the chat thread shows signs of *tampering* and is thus not reliable evidence.

In the Discord chat thread (ECF 132-2), Bonnell offers to send Rose the Video at 8:28 p.m. Then at **8:33 p.m.,** Rose responds: "id love it omg," immediately followed by "That was amazing. I can't wait to blow you now." And yet, in the leaked screenshot (ECF 132-3), and according to Bonnell's declaration and the Motion, **the Video was not sent to Rose until 8:36 p.m.** Rose could not have been responding that the Video was "amazing" at 8:33 p.m. if she did not receive the Video until 8:36 p.m. This temporal and logical inconsistency is an indication of post-Discord export manipulation. See Exh. A, Decl. J. Pena, at ¶¶ 17-18. Thus, this evidence should not be considered by the Court. Moreover, it certainly does *not* "conclusively establish" that Bonnell sent the Video to Rose on April 9, 2022 at 8:36 p.m.

There are also contradictions in Bonnell's declarations submitted to the Court about the date of his disclosure to Rose. In Bonnell's April 25, 2025 declaration (ECF 4 2-1), he claimed under penalty of perjury, that the reason the leaked screenshot had a European date stamp is "because it is a screenshot from Rose's side of the conversation...and *Rose was corresponding from a time zone five hours ahead of me* in Miami, Florida." [3] (ECF  42-1, ¶ 9 (emphasis supplied)). See also, ECF 42, p. 14 ("the date is reflected using the European date format (day/month/year) because Rose was communicating with Bonnell from a European time zone").

Defendant now claims, without providing any explanation for his directly contradictory assertions, that it was *not* Rose that was in Europe at the time of the disclosure, but rather it was

---

[3] It appears, based on Defendant's production of his full chat thread with Rose, that this was a knowingly ***false*** statement to the Court because Defendant knew that in April 2022 Rose was a student living in Illinois in her parent's home, and was not in Europe. See **Exhibit C** hereto, excerpts of chat thread between Rose and Bonnell.

SoloTinyLeaks "who [was] located in Europe" at the time he accessed the Video and other material from Rose's Discord account, "such that the timestamps are reflected in the standard European format". (Mot., p. 8). Bonnell provides no evidence to support his new, contradictory assertion that SoloTinyLeaks was in Europe. Thus, Bonnell's explanation for the different timestamps is nothing other than sheer speculation.

Accordingly, there are disputed factual issues regarding the date of Bonnell's disclosure to Rose, and Defendant's Motion can be denied on this basis alone.

## ~*The Evidence and Legal Precedent Establish that Bonnell's Disclosure to Rose Made the Video Accessible After October 1, 2022*

Even assuming that Bonnell's initial disclosure of the Video to Rose occurred before October 1, 2022 (this has not been established), his disclosure made the Video accessible after October 1, 2022.  The CARDII statute provides a right of action to "an individual whose intimate visual depiction is *disclosed*…without the consent of the individual." 15 U.S.C. § 6851(b)(1)(A) (emphasis provided). CARDII defines "disclose" as "to transfer, publish, distribute, or *make accessible*." 15 U.S.C. § 6851(a)(4) (emphasis provided). This is "a broad definition". *Doe v. McCoy*, No. 1:23-cv-3169-MLB, 2024 U.S. Dist. LEXIS 33901, at *6 (N.D. Ga. Feb. 28, 2024).

Although CARDII is a relatively new statute and there is little case law interpreting it, at least one court has upheld a continuous disclosure argument. *See Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 U.S. Dist. LEXIS 21835, at *5 n.3 (D. Ariz. Feb. 7, 2024). The *Doe* court found that, although the initial disclosure of certain videos was done before the effective date of CARDII, there is "a colorable argument that [defendant] continued to 'disclose' the recordings after the statute's effective date because he allegedly continued to make these videos accessible on the internet until [after the effective date]." So even if Bonnell's initial transfer of the Video to

9

Rose took place before the effective date of CARDII as Defendant contends, because Bonnell's disclosure *made the Video accessible after the effective date* it is within the statutory definition. And here it is indisputable that the Video *was accessible* to Rose after the effective date because otherwise SoloTinyleaks would not have been able to access the Video from Rose in November 2024.

In addition to being made accessible to Rose, and SoloTinyleaks, after October 1, 2022, it was *also* made accessible to the public. As fully detailed in the declaration of Plaintiff's forensics expert, Mr. Jesus Peña, at this early stage of discovery and based on the current evidence, it appears the Video was sent to Rose via an attachment on Discord. Decl. J. Peña, Exh. A, ¶13. The Video remained stored on Discord's Content Delivery Network (CDN),[4] and *remained accessible to Rose*, until it was finally deleted by Defendant *after* the November 29, 2024 KiwiFarms post by SoloTinyleaks. Id. ¶¶ 10-13.

Moreover, the Video was also *publicly accessible* via the permanent link *and* reachable by *index engines* between April 9, 2022, through early December 2023.[5] Id. This unprotected, unrestricted accessibility of the Video is due to a significant security issue in how Discord implemented storage and access of message attachments on its CDN servers that cache Discord's attachments. Id. ¶¶9-10. Between April 22, 2021, and up until sometime in December 2023 when Discord's security issue was finally rectified, *ALL attachments sent in messages were permanently publicly accessible from the CDN servers simply by navigating to a permanent web address that pointed to the attachment.* Id. ¶ 10. Moreover, and contrary to Defendant's assertion that Discord

---

[4] A geographically distributed network of proxy servers and their data centers. The goal is to provide high-availability and high-performance by distributing the service spatially relative to end-users.

[5] *Search engine indexing* is the process by which a search engine, such as Google, crawls, analyzes, and stores a resource's URL, metadata, and content, such as text in PDFs or TXT files, captions for videos (e.g., MP4), or alt text for images (e.g., PNG, JPEG), to make them discoverable in search results.

attachments were not "publicly indexed nor searchable," (Mot., FN4) search engine indexing crawlers from Google, Bing and others, *did index* the Discord CDN servers. Decl. J. Peña, Exh. A, ¶¶13-14. It is important to note that Bonnell *could* have deleted the Video attachment at any time prior to November 29, 2024, in which case it would not have been accessible to Rose, SoloTinyleaks, or the public, but he did not do so.

Defendant's argument that the continuing accessibility theory fails as a matter of law is premised on two factual contentions: i) the Discord attachment was a "one-time file attachment," and ii) the attachment was not "publicly indexed nor searchable." (Mot., pp. 11-12, and FN4). As set forth above, and further detailed in Mr. Peña's Declaration, both of these contentions are erroneous. Because Defendant's cited caselaw hinges on these two factual contentions, they do not support his argument.[6]  Defendant's argument is devoid of merit.

### C.   WHETHER OR NOT DEFENDANT DISCLOSED THE VIDEO TO ABBYMC IS A DISPUTED ISSUE OF FACT PREVENTING SUMMARY JUDGMENT

Even assuming, *arguendo*, that the disclosure to Rose was before October 1, 2022, and that the disclosure did not make the Video continuously accessible after October 1, 2022, subject matter jurisdiction can still be found based on Bonnell's disclosure to Abbymc after October 1, 2022. Viewing the facts and evidence in the light most favorable to Plaintiff, the evidence establishes that Bonnell did transmit the Video to Abbymc, or at the very least that this is a disputed issue of fact requiring further discovery and preventing summary judgment. Moreover, the evidence

---

[6] See *Wray v. Greenburg*, 646 F. Supp. 3d 1084, 1115 (D. Ariz. 2022)("there are no facts that suggest the link…was placed in a location where anyone could access it); *Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, 2022 WL 2176499, at *2 (D. Ariz. June 16, 2022)("the Google Drive was not indexed by any search engines"). The caselaw relied on by Defendant has already been fully distinguished by Plaintiff. See ECF 110, pp. 6-9. The arguments set forth by Plaintiff in ECF 110, pp. 6-9, are fully incorporated herein.

submitted and relied on by Bonnell for his assertion that he never sent the Video to Abbymc appears to have been tampered with and thus is unreliable and inadmissible.

## ~ **Bonnell Fails to Establish that He Never Transmitted the Video to Abbymc**

Bonnell claims that his "preserved communication logs with Abbymc conclusively establish that he never transmitted the Video to her at any time." (ECF 132, p. 13). But these "preserved communication logs" are nothing other than an Excel spreadsheet, purportedly including all media files sent to Abbymc, *created by Defendant* for the purpose of his Motion, as well as a purported chat thread between him and Abbymc ("inbloom1991"). See ECF 132-6. "Preserved" logs might have consisted of a copy of his Discord exports in an HTML file, but instead this is merely evidence artificially created by Bonnell. There is no way to verify whether this list of media files sent to Abbymc is complete or accurate; therefore, the evidence should be disregarded.

The evidence presented in ECF 132-6 should also be disregarded because i) it is inconsistent and ii) there is evidence of spoliation: a comparison of the time stamps and Google Drive file identifiers in the two URLs from the chat thread *do not match* the same from the spreadsheet list the Defendant prepared of media files sent to Abbymc. See Decl. J. Peña, Exh. A, ¶19. Because of this inconsistency, the evidence does not support Defendant's argument. This inconsistency also indicates the evidence has been tampered with, and thus it cannot be considered by the Court. See id., ¶¶ 19, 21.

There is more evidence of tampering: the two Google Drive links that Bonnell purportedly sent to both Abby (ECF 132-6) and Peach (ECF 132-7) in the two chat threads are actually <u>not</u> the same links.[7] See Decl. J. Peña, ¶20 (demonstrating the myriad differences between the links). Thus,

---

[7] The only thing that can be gained from Defendant's evidence is his confirmation that he sent two videos to Abbymc on November 3, 2023. This evidence actually serves to corroborate Abbymc's declaration (ECF 49-2), and the

Defendant's contention that the videos he sent to Abbymc were the same videos he sent to Peach (and allegedly were videos of Peach and not of Plaintiff), is unsupported.

Further evidence of spoilation is Bonnell's admission on a livestream on September 8, 2025 that these "preserved communication logs" were artificially created by him: *"Information is lost! There is no original file! I'm trying to reconstruct a file! I'm artificially creating a file by reconstructing a log of stuff, that's what I'm trying to do and it's not working!"* https://www.youtube.com/watch?v=UEnB49z9l0s&t=15704s, at 4:22:38 to 4:22:48. Bonnell also admitted to using Artificial Intelligence to format data into the Excel spreadsheet file: https://youtu.be/JXFl4fBob_4?t=6937.

Additionally, Bonnell contends that because the original filename of the Video, as revealed by SoloTinyleaks (see ECF 132-5), is not the same as either of the filenames that he sent to Abbymc (see ECF 132-6), that proves that he never sent the Video to Abbymc. (Mot. pp. 13-14). But Bonnell is comparing apples to oranges, because the two "filenames" in ECF 132-6 that he purportedly sent to Abbymc on November 3, 2023 are NOT filenames. Instead, they are Google Drive links which merely point to *unknown* file names. See Decl. J. Peña, ¶22. Thus this evidence does not support Bonnell's contention that he did not send the Video to Abbymc. Accordingly, Defendant's Motion should be denied because it rests on inconsistent and tainted evidence and raises material factual issues that only a jury can resolve.[8]

---

supporting exhibit with her message to a friend dated November 3, 2023 saying that she had received a video of Pxie and a video of Chaeiry (ECF 86-1).

[8] Defendant also claims that Abbymc only saw the Video because she allegedly snooped through his computer on September 5, 2023. (Mot. pp. 14-15). This purely speculative claim is belied by Abbymc's declaration and the evidence of her conversation with her friend – attesting to the fact that she received the Video via a Google Drive link on or about November 3, 2023, two months later. Defendant's speculative claim is nothing other than an attempt to malign the witness.

**~ Abbymc's Declaration and Exhibit Should Not Be Disregarded**

Defendant again attempts to challenge Abbymc's declaration (ECF 49-2) and the screenshot exhibit (ECF 86-1), but these arguments once again fail, precisely because of Defendant's spoliation. Bonnell claims that Abbymc's declaration and the exhibit should be disregarded because she failed to provide evidence of the disclosure, *ie.* "a screenshot of a message in which Bonnell supposedly sent the Video to Abbymc." (Mot. p. 15). However, Bonnell knows that Abbymc cannot do that because *Bonnell deleted all of his direct messages to her* sometime in early 2025.  Abbymc's declaration, dated April 25, 2025, clearly states: I recently reviewed my Discord account and realized that *Destiny deleted all of his direct messages to me on the Discord platform, including the sharing of the video of Pxie*. I have retained copies of my messages to Destiny, as well as my messages to other people about his non-consensual sharing of sexually explicit videos." ECF 49-2, ¶9 (emphasis supplied).  Multiple other women who received explicit content from Bonnell have also attested to his deletion of his side of their message thread after the November 29, 2024 post by SoloTinyleaks. See, e.g., Decl. Hannah Brookes, ECF 21-2, ¶ 11; Decl. Witness A, ECF 49-4, ¶9; Decl.Witness B, ECF 49-5, ¶9. And as noted above, he has publicly acknowledged that "there is no original file;" *ie.* because he deleted it.

Bonnell also asserts that the screenshot exhibit does not establish that he disclosed the Video to Abbymc after the effective date of CARDII. (Mot. p.15). This, of course, is nonsensical because Bonnell did not even meet Abbymc (online) until March 2023, well after the effective date of CARDII. See Decl. Abbymc, ECF 49-2, ¶4. Thus, Bonnell has failed to present any valid reason to discard the Abbymc declaration or exhibit.

IV.    **DEFENDANT'S FAILURE TO SERVE ABBYMC IS NOT RELEVANT**

Defendant next argues that the Abbymc evidence should be disregarded because he has

been unable to serve her with a subpoena. This contention fails for several reasons. First, Defendant offers no evidence of any effort to locate or serve Abbymc. Second, he provides no basis to claim that Plaintiff's counsel represents Abbymc for purposes of service. To the contrary, undersigned counsel expressly advised Mr. Brettler that they did not represent Abbymc for purposes of the subpoena, that they were not authorized to accept service on her behalf, and that they had never instructed her to evade service. Third, counsel recently obtained Abbymc's last known address, and promptly provided it to Mr. Brettler upon receipt.

Defendant's position is further undermined by his own conduct: his Initial Disclosures identified eleven individuals likely to have discoverable information, including Rose, yet he has not produced contact information for any of them. Plaintiff was forced to hire a private investigator to locate Rose.

Finally, the authority Defendant cites is inapposite, as it concerns expert witness disclosures rather than lay witness contact information. *See Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1141 (S.D. Fla. 2016). Defendant's failure to serve Abbymc is therefore irrelevant to his Motion and to the admissibility of the Abbymc evidence.

## CONCLUSION

Defendant cannot use Rule 12(b)(1) to litigate the merits of Plaintiff's CARDII claim. Because jurisdiction and the merits are inseparable, and because Plaintiff's claim is neither immaterial nor frivolous, dismissal is foreclosed. At this stage, where discovery is ongoing and material factual disputes abound, the Motion must be denied—either outright or under Rule 56 standards. Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction, and allow such other relief as warranted.

Respectfully submitted,

Dated: October 3, 2025.

JSP LAW, LLC
Joan Schlump Peters
(admitted *pro hac vice*)
838 Neapolitan Way, #91
Naples, FL 34103
Tel. 305-299-4759
Email: petersjoan@bellsouth.net
Counsel for Plaintiff JANE DOE

SANCHEZ-MEDINA GONZALEZ
LAGE GOMEZ & MACHADO, LLP
CARLOS A. GARCIA PEREZ / Fla Bar 106895
GUSTAVO D. LAGE / Fla Bar 972551
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel. (305) 377-1000
Primary E-Mail: cgarciaperez@smgqlaw.com
Primary E-Mail: glage@smgqlaw.com
Counsels for Plaintiff JANE DOE

By:_____
     CARLOS A. GARCIA PEREZ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 3, 2025 a true and correct copy of the foregoing was served on all parties via the CM/ECF filing portal to all counsel of record.

By: _____
     CARLOS A. GARCIA PEREZ
     Attorney for Plaintiff

16