UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-20757-CIV-BECERRA/TORRES

JANE DOE,

    *Plaintiff*,

v.

STEVEN K. BONNELL II,

    *Defendant*.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff Jane Doe's Motion for Preliminary Injunction. [D.E. 21]. Defendant timely responded [D.E. 42], to which Plaintiff timely replied [D.E. 49]. An evidentiary hearing was held on the motion. Accordingly, Plaintiff's motion is ripe for disposition.[1] After careful review of the Motion, Response, Reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **DENIED**.

### I. BACKGROUND

This case stems from what Plaintiff alleges is Defendant's wrongful dissemination of a video of a sexual nature (the "Video") involving both Ms. Doe and

---

[1] On April 4, 2025, District Judge Jacqueline Becerra held a hearing on Plaintiff's motion [D.E. 21]. [D.E. 31]. Judge Becerra denied Plaintiff's request for a temporary restraining order ("TRO") and subsequently referred the remainder of the motion to the undersigned. [D.E. 32].

Mr. Bonnell. Both Plaintiff and Defendant are live streamers. [D.E. 42 at 8]; [D.E. 120 at 2].

Accordingly, Plaintiff and Defendant met online on or before "late-2019." [D.E. 42 at 8] (citing "late-2019" and "October 23, 2019" as key points); [D.E. 120 at 3] ("[a]pproximately two years" before September 12, 2020). Their online friendship eventually yielded discussions of a more intimate and, ultimately, sexual nature. [D.E. 42 at 8]; [D.E. 120 at 3]. These discussions included each sending the other videos of them engaging in sexual acts with others. [D.E. 42 at 8–9]; [D.E. 49-1 ¶ 6]; [D.E. 120 at 3]. The Parties then met in person on September 12, 2020, and had a sexual encounter, which was consensually recorded. [D.E. 42 at 8–9]; [D.E. 120 at 3]. It is here that the Parties' allegations as to what became of the Video steeply diverge.

In either April or October of 2022[2], Defendant transmitted the Video to a friend of his on Discord, "Rose." [D.E. 42 at 9]; [D.E. 120 at 3]. Defendant alleges that "since that date, [he] has not shared, or otherwise transmitted the video to any other third party and *will not do so*." [D.E. 42 at 9] (emphasis in original). Plaintiff alleges that Defendant has shared the Video with at least one other individual beyond Rose, Abbymc. [D.E. 120 at 4]. Plaintiff further alleges that Defendant's practice of hosting sexually explicit material on a Google Drive and sharing a link or links to that Google Drive constitutes "ongoing dissemination." *Id.*

---

[2] The Parties' arguments over whether the Video was sent to Rose in April 2022 or October 2022 are the basis for the dispute regarding the Court's subject matter jurisdiction over this case. [D.E. 119 at 1–3]. Defendant alleges that the date on the chat is displayed as it would be in Europe—with the month and the day reversed, compared to how it would appear in the United States—and thus Plaintiff misunderstood the chat as having taken place in October 2022. *Id.*

In any event, the Video was uploaded to the website Kiwi Farms on November 29, 2024. [D.E. 42 at 9]; [D.E. 120 at 4]. The Video was uploaded under the screen name Solotinyleaks. [D.E. 120 at 4]. Both parties allege that they did not consent to the uploading of the Video onto Kiwi Farms. [D.E. 42 at 9]; [D.E. 120 at 4]. Defendant, for his part, alleges that he was the "victim of revenge pornography" and "suspects it was someone with access . . . to Rose's Discord chats." [D.E. 42 at 9]. The Video was one among many involving Defendant that were uploaded to Kiwi Farms. *Id.* Further, the Video did not remain only on Kiwi Farms and has been found on other sites that similarly host material of a sexual nature. [D.E. 120 at 5]. Plaintiff and Defendant both allege that they made overtures to have the Video removed from various sites. [D.E. 21 at 10]; [D.E. 49-1 ¶ 17].

On January 22, 2025, Plaintiff's counsel sent Defendant a letter entitled "Demand for Preservation of Evidence In the Matter of [Jane Doe] v. Steven Bonnell." [D.E. 21-3 at 1]. The letter advised[3] Defendant in writing of the pendency of the present action and included the following: "You are hereby advised of your legal obligation to preserve, maintain, prevent spoliation of, and not destroy evidence which in any way relates to this matter." *Id.* Plaintiff then filed this lawsuit on February 18, 2025. [D.E. 1]. And on April 3, 2025, Plaintiff filed the motion presently before us, which requests a TRO and preliminary injunction for the following:

---

[3] The January 22, 2025, letter followed what Plaintiff characterizes as a series of YouTube videos—several from other YouTube streamers allegedly discussing private messages belonging to her and other events related to the Video, and one from Plaintiff "announc[ing] that [Defendant] shared the Videos without her consent or knowledge, and that she will be seeking legal recourse." [D.E. 1 at 5]; [D.E. 120 at 6–7].

> i) enjoin Defendant Steven Bonnell II ("Bonnell") from further sharing, distributing or publishing the intimate images/videos and/or the intimate information of Plaintiff; ii) compel[] Bonnell to remove all publications of the Videos and all messages between him and Plaintiff from all forms of public media he controls either directly or indirectly; iii) order[] Defendant to direct third parties in writing to remove all published intimate images/videos of Plaintiff and any intimate information regarding Plaintiff under their control; and iv) order[] Defendant to retrieve the messages he has deleted, to cease and desist from destroying evidence and to preserve all discoverable information relevant to this action from his phones, computers, tablets, online accounts and platforms, or any other devices, and preserve all internet routers or other hardware in their current form or image so they may be searched for information relevant to this action.

[D.E. 21 at 6].

At a subsequent hearing on April 4, 2025, Judge Becerra denied Plaintiff's request for a TRO and subsequently referred the remainder of Plaintiff's motion for preliminary injunction to the undersigned for disposition. [D.E. 31]; [D.E. 32]; [D.E. 38]. The Court held an evidentiary hearing on the motion to address the disputed issues of fact presented by the briefing on the motion.

## II. APPLICABLE PRINCIPLES AND LAW

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). To obtain a preliminary injunction, a movant must demonstrate the following: A(1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.@ *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299

F.3d 1242, 1246-47 (11th Cir. 2002); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

In the Eleventh Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the >burden of persuasion= as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1988); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Because a preliminary injunction is 'an extraordinary and drastic remedy,= its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion"). However, "[i]f the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *1-800 Contacts*, 299 F.3d at 1247 (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant=s action or refusal to act." *Id.* at 573; *see also All Care Nursing Serv., Inc. v. Bethesda Mem=l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("Preliminary injunctions are issued when drastic relief is necessary to preserve the *status quo*.").

When an injunction does more than preserve the status quo, however, an even stronger showing is required. *See, e.g.*, *Miami Beach Fed. Sav. & Loan Ass=n v.*

*Callander*, 256 F.2d 410, 415 (5th Cir. 1958) ("A mandatory injunction . . . especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party."); *United States v. Board of Educ. of Green County, Miss.*, 332 F.2d 40, 46 (5th Cir. 1965) ("[M]andatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds").

### III.  ANALYSIS

"First, a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). Thus, "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against the finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (emphasis in original).

To that end, while the movant must meet all four elements required to merit the issuance of a preliminary injunction, "[a] showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)). "[E]ven if Plaintiff[] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* (citing *Snook v. Trust Co. of Georgia Bank*

6

*of Svannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990)); *see Ne. Fla. Chapter of Ass'n of Gen. contractors of Am.*, 896 F.2d at 1285 ("The plaintiff's 'success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm.'") (citing *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983)). Such alleged irreparable injury "'must be neither remote nor speculative, but actual and imminent.'" *Id.* (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285). Accordingly, we will begin by analyzing Plaintiff's showing of irreparable harm.

As described above, Plaintiff commenced this action on February 18, 2025, and subsequently filed her motion for a TRO and preliminary injunction on April 2, 2025 [D.E. 21]. This matter, however, ultimately stems from Defendant's alleged sharing of the Video several years prior to the commencement of this action—whether only with Rose or to additional persons. *See, e.g.*, [D.E. 1 at 3]; [D.E. 120 at 3–4]. Defendant theorizes that it was a hack of Rose's Discord that led to the leak of the Video, and, thus, it subsequently being uploaded to Kiwi Farms on November 29, 2024. [D.E. 42 at 8–9]; [D.E. 120 at 4].

So, from the allegations in Plaintiff's timeline, even if we look at only the closest incident to the present—the Video being uploaded to Kiwi Farms on November 29, 2024—Plaintiff waited roughly *five months* to file her motion for preliminary injunction and provided no convincing justification[4] for the delay. That fact alone

---

[4] At the TRO hearing, Plaintiff's counsel indicated various health issues as factoring into the delay, but primarily offered the following: "[W]e have encountered we have a number of women that have come forward to us but have then backed out because they are afraid of retaliation, and that's what they've told us, and so we were not able

7

suggests that Plaintiff's alleged harm, even though it may be tangible and compensable at the conclusion of litigation, is not irreparable as that term is applied in the context of a preliminary injunction motion. *See Wreal, LLC*, 840 F.3d at 1248 (affirming denial of preliminary injunction where plaintiff "failed to offer any explanation for its five-month delay" and the record did not indicate any justification thereof). Absent compelling reasons shown otherwise, an extended delay in moving for relief to address "irreparable harm" undermines that burden in the first instance. *See Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, No. 22-14257, 2023 WL 3704912, at *3 (11th Cir. May 30, 2023) (affirming denial of preliminary injunction because "the University delayed seeking a preliminary injunction for nearly six months after it initiated this action in January 2022. And when it did eventually file its motion for preliminary injunction, it failed to offer any reason for the delay and relied almost exclusively on evidence that was available to it when it filed its complaint.") (citing *Wreal*, 840 F.3d at 1248).

Importantly, Plaintiff's request for a TRO was denied for similar reasons at the April 4, 2025, hearing. [D.E. 38 at 5:19–23]. In fact, Plaintiff's counsel even agreed that "most of the damage has already been done," *id.* at 6:3, which accords with the fact that three of the four elements of Plaintiff's requested preliminary injunction are targeted at Defendant's alleged publication and/or distribution of "intimate

---

to get these affidavits. We went with what we have now, which basically we went from 15 potential witnesses providing evidence, down to the one witness in addition to the plaintiff." [D.E. 38 at 4:15–5:7]. The Court found unavailing Plaintiff's issues as to other witnesses: "That doesn't have to do with anything. This is not a class action. You filed on behalf of one woman." *Id.* at 5:8–10].

images/videos" or related information [D.E. 21 at 6]—*i.e.*, the Video, which is the crux of Plaintiff's claims. [D.E. 120 at 10–14].

As to the fourth item of Plaintiff's requested preliminary injunction, addressing alleged spoliation of relevant evidence, Plaintiff's counsel then proceeded to explain at the April 4, 2025, hearing that, "the [ongoing] issue is that we keep receiving evidence of destruction of evidence. We are trying to compile enough evidence to file a motion for spoliation[.]" *Id.* at 6:4–6. It is now October of 2025 and there is no such motion on the docket—despite that being the then-existing "ongoing harm" Plaintiff was ostensibly seeking to stop.[5] But even putting aside for a moment Plaintiff's counsel's statements at the TRO hearing, the allegations in Plaintiff's motion as to "an imminent risk of further nonconsensual disclosures of intimate images of herself by Bonnell and further humiliation from the same," also do not convince us of ongoing harm. [D.E. 21 at 19, 21].

In her motion, Plaintiff claims that it is the "imminent risk of further nonconsensual disclosures [by Defendant]" that creates ongoing harm sufficient to

---

[5] Plaintiff's original and Amended Complaint (filed September 5, 2025) contain identical allegations regarding spoliation: "On January 1, 2025, aware of an impending lawsuit and potential criminal investigation, Bonnell starts destroying evidence, including deleting messages between him and Plaintiff. On January 23, 2025, Bonnell receives a letter from Plaintiff's counsel informing him of Plaintiff's intent to sue and demanding that he preserve all evidence." [D.E. 1 ¶ 24]; [D.E. 120 ¶ 28]. At the TRO hearing, the Court expressed doubt as to Plaintiff's characterization of the events as spoliation: "And I will tell you that even as you've pled it so far, we'll see what the defense says, but if I got sued for distributing the materials about a woman and I may have done that with other women, then I might say to myself 'Maybe I shouldn't do that any more. Let me delete that. Let me take that back. Let me not do these things I'm being alleged that I'm doing because may be these are bad things I shouldn't be doing.' That may be one of the things that's going on. That's not spoliation. I don't know." [D.E. 38 at 7:9–17].

9

merit a preliminary injunction. [D.E. 21 at 19, 21]. But albeit very distressing, the Video at the center of this dispute is online. Plaintiff acknowledges as much in her Amended Complaint—citing several websites that are currently hosting or have hosted, and then removed, the Video. [D.E. 120 at 4–5]; *see also* [D.E. 21-1 at 4] ("Despite efforts to have the Video removed from the different sites, they are still there and available to the public, so my humiliation is on-going."). And although not the focus of Plaintiff's actual claims [D.E. 120 at 10–14] or, in large part, the Parties' briefing, to the extent any communications between the Parties are publicly available (including several exhibits submitted in support of the Parties' briefing, *see, e.g.*, [D.E. 42]), those, too, are already online. And, further, *both* Plaintiff and Defendant have engaged in online commentary regarding this case, including as to their version of the events and/or purposes. *See, e.g.*, [D.E. 47, Exhibits F & I]; [D.E. 84 at 3] (discussing various statements from Defendant's YouTube streams).

We do not doubt Plaintiff's testimony that she is distraught because of these events [D.E. 21-1 at 4]. To the contrary; we find her testimony fully credible in this regard. But as her counsel stated at the TRO hearing, "the damage has already been done" as to the Video[6] and related statements [D.E. 38 at 6:3]—and was as of the time

---

[6] Plaintiff does allege that during the "only time [she] and Bonnell had sexual relations," he "recorded videos," plural. [D.E. 120 at 3]. But as to the risk of ongoing harm regarding Defendant continuing to share videographic material, the declarations to which Plaintiff cites [D.E. 21 at 21], allege only that he shared or sought to share *the Video*. [D.E. 21-1]; [D.E. 21-2]. Further, while Plaintiff's operative Complaint includes "the Videos" in her claims, the allegations regard Defendant's alleged sharing of *the Video*. [D.E. 120]. It is unclear if some references to the plural form are even intentional, as they would seem to contradict prior submitted exhibits. *Contrast* [D.E. 120 at 9] ("On or about January 26, 2025, Hannah Brooke, a follower of Bonnell, contacted Plaintiff and informs her that even *after* the

10

of the TRO hearing on April 4, 2025. There is, then, no irreparable injury—a need for "speedy and urgent action"—that would trigger the issuance of a preliminary injunction here. *See Wreal, LLC*, 840 F.3d at 1248.

Additionally, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90. There is now a Confidentiality Agreement and Protective Order that governs discovery in this case, including how to handle confidential information. [D.E. 116]. Should Plaintiff discover evidence of spoliation, she is able to file a Rule 37 motion or otherwise request relief from the Court. Plaintiff has also attested that she has made efforts to have the Video removed. *See, e.g.*, [D.E. 49-1 ¶ 17]. And Plaintiff has already filed several motions in this case seeking relief from the Court as to, among other things, the Video being hosted on a third-party site [D.E. 80]; public statements by the Parties and their

---

Video was publicized on November 29, 2024, Destiny/Bonnell offered to send **the Videos** to her.") (emphasis added) *with* [D.E. 21-2 at 1–2] ("[O]n or about November 2024, I became aware that a sexually explicit video ('Video') that included Destiny and another streamer, Pxie (the Plaintiff in this action), had been published on the internet. . . . On January 9, 2025, at 1:36 pm, Destiny offered to send me **the Video**: 'ooooof I mean I guess now that some shit has leaked lmao, if you want videos of me eating I've got 'em.'") (emphasis added). Date discrepancy aside, there is no actual indication that, even if there were an offer to send multiple videos, that they would include Plaintiff—(1) the unsworn statement specifically references "the Video," singular; and (2) per Plaintiff's own allegations, Defendant had other videos of sexual encounters not involving her. *See, e.g.*, [D.E. 120 at 4] ("The videos that Bonnell sent to Abbymc on the shared Google drive link included one of the Videos of Plaintiff. Abbymc recognized the Plaintiff in **the Video** by her face and hair.") (emphasis added).

11

counsel [D.E. 84]; and recourse for alleged sanctionable statements and actions by Defendant [D.E. 113]. We raise these motions and actions not to comment on their merits, but because by so doing, Plaintiff is actively seeking avenues of "other corrective relief" for alleged issues that track her injunction request[7]—further weighing against her claim that she is facing irreparable harm that cannot be ameliorated by any other means. *See Sampson*, 415 U.S. at 90; [D.E. 21 at 19, 21].

And to the point of compensatory relief, *Sampson*, 415 U.S. at 90, Plaintiff herself has acknowledged on social media that a primary aim of this lawsuit is inherently financial:

> I don't know what you're specifically referring to, but Steven is a multi-millionaire and I want him to lose so much money as a result of this that every time he thinks of the word "nude" he cringes at his mistake.
>
> I truly believe if the cost isn't high enough he will do this again. My goal here is not public humiliation of Steven, or even all the money in the world, it's him receiving such a financial hit/penalty that he will permanently learn his lesson.

@pxielovee, X (Jan. 20, 2025, 9:08AM), https://x.com/pxielovee/status/1881388385312329848; [DE 42-1, Exhibit H]. Thus,

---

[7] *Compare, e.g.*, [D.E. 80] (motion to compel third-party site to remove the Video) *and* [D.E. 84] (motion for protective order governing Party/counsel public commentary) *with* [D.E. 21 at 6] (item (i) of the requested preliminary injunction requires that Defendant not "further shar[e], distribut[e], or publish[] the intimate images/videos and/or the intimate information of Plaintiff; item (ii) requires Defendant to "remove all publications of the Videos and all messages between him and Plaintiff from all forms of public media he controls either directly or indirectly"; and item (iii) requires that, "Defendant to direct third parties in writing to remove all published intimate images/videos of Plaintiff and any intimate information regarding Plaintiff under their control").

12

Plaintiff's alleged injury could, by her own words, be addressed by way of a legal remedy. *Sampson*, 415 U.S. at 88.

Accordingly, and for the foregoing reasons, we do not find that Plaintiff will suffer an irreparable injury unless an injunction issues. *See Siegel*, 234 F.3d at 1176. As "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper," we are empowered to deny Plaintiff's motion solely on this finding. *Id.* (citation omitted). But as to Plaintiff's likelihood of success on the merits, we note that there is an outstanding question of whether this Court has subject matter jurisdiction over this case. *See* [D.E. 132] (Defendant's Rule 12(b)(1) motion); *see also* [D.E. 119] (Order allowing leave to amend Complaint and discussing jurisdictional complexity).

Plaintiff also adds that she has made a prima facie case as to her claim under 15 U.S.C. § 6851 [D.E. 21 at 16], but that would be mistaken if Plaintiff cannot show, in due course, that the conduct alleged is indeed covered by the statute. And were it not covered, because Plaintiff's assertion of federal question jurisdiction hinges on the applicability of 15 U.S.C. § 6851, it is possible that we do not have subject matter jurisdiction over Plaintiff's case. At this stage, we cannot agree that Plaintiff has "demonstrate[d] the likelihood of prevailing on [even] one cause of action," because (1) if 15 U.S.C. § 6851 does not cover the alleged conduct, Plaintiff necessarily cannot prevail on that claim; and (2) if we do not have subject matter jurisdiction over Plaintiff's case, we then cannot opine on whether Plaintiff would prevail on her state law claims. *See Gegas v. St. Matthew's Univ. Sch. Of Med.*, No. 6:22-2299-CIV, 2023

WL 6294410, at *4 (M.D. Fla. Sept. 4, 2023) (citing *Schiavo ex. Rel. Schindler v. Schiavo*, 403 F.3d 1289, 1289–299 (11th Cir. 2005)). Ultimately, as with irreparable harm, we would be empowered to deny Plaintiff's motion solely on this finding, as well. *1-800 Contacts*, 299 F.3d at 1247 ("If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief.").

Nonetheless, as to the final two elements of the preliminary injunction analysis, Plaintiff has not shown that she, under the circumstances, is at risk of *irreparable* harm as a result of any alleged "continue[d] disseminati[on] of [her] intimate visual depictions and private information" [D.E. 21 at 22] (or, as alleged in the hearing, the spoliation of evidence [D.E. 38]), and thus any injury would not outweigh the damage of unduly imposing an injunction. *See Siegel*, 234 F.3d at 1176. Further, as to public interest, Plaintiff argues that the Congressional intent behind 15 U.S.C. § 6851 creates "a public policy against non-consensual sharing of intimate images." [D.E. 21 at 23]. Even if true, Plaintiff's argument is inapplicable if the alleged conduct is not covered by 15 U.S.C. § 6851.

In sum, Plaintiff has not "clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp.*, 147 F.3d at 1306. Her motion for preliminary injunction is **DENIED**. [D.E. 21]. But that denial is, of course, without prejudice to the ultimate adjudication of the case, which may or may not require permanent injunctive relief if legally sound.

14

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction is **DENIED**. [D.E. 21]. The motion is adjudicated by Order as the motion is largely denied for procedural grounds and not on the ultimate merits. But injunctive relief generally is addressed by a Magistrate Judge via Report and Recommendation because a litigant would be entitled to de novo review from the District Judge if such review is sought. The entry of this Order thus does not foreclose any party from appealing this Order, which would then be treated as a Report and Recommendation by the District Judge under Local Mag.J. R. 4. The parties retain the right to de novo review if such an appeal is filed.

It is further **ORDERED** that, as to any links to images or online documents (e.g., [D.E. 21 at 9–10]) and on a going forward basis, the references linked to must be included as exhibits to filings. For security reasons, the Court will not open random links to, e.g., Imgur or Google Drive. Should a Party believe any such exhibit should be sealed, they may file a motion seeking leave of court to file it under seal, as with any other filing or exhibit.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of October, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge