UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-20757-CIV-BECERRA/TORRES

JANE DOE,

    *Plaintiff,*

v.

STEVEN K. BONNELL II,

    *Defendant.*

_____/

## ORDER ON PLAINTIFF'S MOTION TO SEAL HEARING TRANSCRIPT

This matter is before the Court on Plaintiff Jane Doe's Motion to Have June 3, 2025, Evidentiary Hearing Transcript Filed Under Seal. [D.E. 88]. Defendant timely responded [D.E. 101], to which Plaintiff timely replied [D.E. 106]. Accordingly, Plaintiff's motion is ripe for disposition. After careful review of the Motion, Response, Reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **DENIED**.

### I. BACKGROUND

One April 4, 2025, the Court held a hearing on Plaintiff's motion for a temporary restraining order ("TRO") and preliminary injunction [D.E. 21]. [D.E. 32]. At the hearing, District Judge Jacqueline Becerra denied Plaintiff's motion for TRO and referred the remainder of the motion to the undersigned for disposition. [D.E. 31]; [D.E. 32]; [D.E. 38].

Accordingly, the undersigned held a hearing on June 3, 2025, on Plaintiff's motion for preliminary injunction [D.E. 21]. [D.E. 87]. That hearing lasted approximately two-and-a-half hours and saw both Plaintiff and Defendant testify as to the issues raised by Plaintiff's motion. [D.E. 90]. Additionally, the hearing was open to the public. There was no request made to the Court either before or during the hearing to seal the courtroom in any fashion. And, accordingly, there were others in attendance beyond the undersigned, Court staff, the Parties, and their counsel.[1]

Plaintiff, however, filed a motion to seal the hearing transcript (the "Transcript"), citing the existence of "highly sensitive, private, and confidential information, including personal details with regards to the identity of Ms. Doe, details concerning Ms. Doe's harm and suffering because of Defendant's actions, and sexually explicit content." [D.E. 88 at 1]. The filing of the Transcript indeed incited much fervor—to the end of a concerned call from the Court Reporter regarding next steps. Given Plaintiff's allegations as to the potential harm resulting from the testimony; a then-lack of an existing protective order governing the Parties' actions as to, *e.g.*, a procedure for dealing with inadvertently disclosed confidential information (were there any); and a litany of then-recently-filed motions (including for a gag order tangentially related to elements of the Parties' testimony [D.E. 84]), the Court granted in part Plaintiff's motion to seal, "pending further Order of the Court." [D.E. 91].

---

[1] [D.E. 101 at 2].

In the intervening period, we have addressed several of the Parties' outstanding motions and, now being well-acquainted with the equities of the case, issue the foreshadowed "further Order of the Court."

## II. APPLICABLE PRINCIPLES AND LAW

Pursuant to the Local Rules of the Southern District of Florida, "[u]nless otherwise provided by law, Court rule, or Court order, proceedings in the United States District Court are public and Court filings are matters of public record." S.D. Fla. L. R. 5.4(a). The general public possesses a common-law right to access judicial records, and judicial records are presumed to be public documents. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Well established Eleventh Circuit caselaw protects this common-law right because "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).

## III. ANALYSIS

Based on these rules and principles, when a party orders a transcript of a hearing from the court reporter, transcripts filed on the docket are presumptively public judicial documents. As such they become part of the public record in a case and accessible to the public like any other public document. The motion here seeks to alter that rule for this filing, thus the movant has the burden to overcome this presumptive right of access to the filed transcript. Thus Plaintiff has the burden of

showing good cause why the right of access should be limited. *See, e.g., Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001); *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Thus a movant must make a specific showing of a compelling cause as opposed to relying on stereotyped or conclusory statements. *Romero*, 480 F.3d at 1247.

Plaintiff relies primarily on three cases to support her assertion that "[t]he subject matter of the [T]ranscript is traditionally considered private, not public[]"—none of which aid Plaintiff's case here (or, for that matter, are binding on us). [D.E. 106 at 3]. First, in *U.S. v. Amodeo*, a RICO action, the Second Circuit considered whether a portion of a report created by "a Court Officer appointed pursuant to a consent decree to investigate allegations of corruption in [a local union]" was improperly unsealed. 71 F.3d 1044, 1047–048. Plaintiff cites *Amodeo* for the proposition that, "[f]inancial records of a wholly owned business, family affairs, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* at 1051; [D.E. 106 at 3]. *Amodeo* ultimately concluded that the report had "only a marginal relationship to the performance of Article III functions," as it "was not filed in connection with a request for action by the district court." *Id.* at 1051–052. And, further, the privacy interest in question was the attorney-client privilege, which the clients had, in effect, waived by way of the consent decree. *Id.* at 1052.

4

But *Amodeo* is inapposite. As to the point of "embarrassing conduct with no public ramifications, and similar matters," which we assume by process of elimination is the phraseology Plaintiff was emphasizing in citing *Amodeo*, that is not what is before us here. And this conclusion is supported by the other cases Plaintiff cites. *Id.* at 1051.

Chief among those other cases is, *U.S. v. Kravetz*, 706 F.3d 47 (1st Cir. 2013). In *Kravetz*, the First Circuit considered a journalist's appeal of a motion to unseal certain records, which had been denied by the district court because "the documents in question . . . contain matters that are predominantly personal to Kravetz and[] there is not apparent justification for their general publication." *Id.* at 50, 52 (internal quotation marks omitted). As to the Defendant's medical records, the court acknowledged its sensitivity "to the fact that medical documentation . . . may contain information beyond the diagnosis and treatment information that is likely to form the basis of a plea or grant of leniency," such as a "history of drug use" or "testing for sexually transmitted diseases," and, thus, that the presence of such information may weigh more heavily against public access. *Id.* at 63 (internal citation omitted). But *Kravetz* also noted in remanding that "[s]ubjective remarks about a patient's demeanor, character, and mental state are sometimes a part of the record"[2]:

> Levitin's claim of privacy in his medical records, however, may lose some force in light of his prior publication of the information that he now seeks to protect. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 494–95[] (19750) ("[T]he interests in privacy fade when the information involved already appears on the public record."); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 506 n.17 (1st Cir. 1989) (noting that "prior publicity weighs

---

[2] *Id.* (citing U.S. Congress, Office of Technology Assessment, Protecting Privacy in Computerized Medical Information, OTA-TCT-576 (Sept. 1993)).

>    strongly against sealing"). In his public sentencing hearing, he
>    articulated not only the full panoply of ailments from which he suffers,
>    but also the dire predictions for his health should he fail to take
>    immediate steps to improve his condition.

*Kravetz*, 706 F.3d at 63–64.

Importantly, here Plaintiff's request that the Court seal the Transcript is ostensibly "to protect deeply private, sexually explicit, and mental health-related testimony from being broadcast to over one million online followers by a political streamer who has a documented pattern of weaponizing public proceedings for harassment, monetization, and spectacle." [D.E. 106 at 1]. One, as compared to *Kravetz* and to the Court's knowledge, the Transcript does not contain any discussion about Plaintiff's medical records, or anything to do with Plaintiff seeing or being treated by a physician or other mental health professional. So, the emphasis in *Kravetz* that *medical documentation* may contain sensitive information, 706 F.3d at 63, is inapplicable here. [D.E. 90 at 20] (discussing Plaintiff's friends being her support system through mental health struggles).

Second, Plaintiff has, in several public filings, been quite forthcoming about the mental health and other effects of the events surrounding the Video—and has been from the start. For instance, as to mental health, Plaintiff's original and operative Complaints both contain the same passages regarding her struggles. *Compare* [D.E. 1 ¶¶ 18 ("Plaintiff feels increasingly humiliated, mortified and depressed, and starts feeling suicidal. On or about December 11, 2024, she starts writing suicide notes. Plaintiff messages Bonnell and tells him she is 'just tired of living anymore. It's a matter of time until my family discovers what happened … I

6

feel like the best thing to do is for me to kill myself and schedule a post just detailing my feelings on what happened to try and ensure a situation like this doesn't happen again.'"), 19 ("Plaintiff tells [Defendant's close friend] about her suicidal thoughts, that she cannot bear the humiliation and harassment she is enduring, and that she wants to ensure Bonnell never does this to her or anyone else ever again."), 21 ("Plaintiff continues feeling depressed and suicidal.")] *and* [D.E. 120 ¶¶ 22 (same as [D.E. 1 ¶ 18]), 23 (same as [D.E. 1 ¶ 19]), 25 (same as [D.E. 1 ¶ 21])] *with* [D.E. 90 at 20:11–16] ("[T]he original plan was basically for me to commit suicide and schedule a note for after I died detailing what Steven had done and hoping that everybody would forever know what he did and be able to stay away from him and be able to be more wary and cautious."). The original Complaint has been live on the public docket for many months. That Plaintiff perhaps added additional characterizing details (e.g., support from her friends [D.E. 90 at 20], or more emphasis on why she experienced such thoughts, *id.* at 56) during the June 3, 2025, hearing does not change the fact that the information has already been made publicly available through Plaintiff's own filings. *See Kravetz*, 706 F.3d at 63–64 (regarding the effect of publication on privacy claims). What's more, the Transcript is one of a public hearing. So Plaintiff had not only published this information in her earlier pleadings, but was also, in the moment, speaking in a public forum. *See id.*[3]

---

[3] And as to things of a "deeply private" or "sexually explicit" nature, Plaintiff has not raised any specific elements of the Transcript in her argument. But it merits noting that she has also long publicly stated many of these allegations and/or included similar factual information in her briefing. *Compare, e.g.*, [D.E. 1 ¶ 11] (allegations regarding Plaintiff's prior relationship experience) *with* [D.E. 90 at 30:5–11] (testimony regarding Plaintiff's prior relationship experience and perception of

7

And, relatedly, another of Plaintiff's cited cases, *Prospero v. Prescott*, No. 2:20-CV-110, 2023 WL 6393180, at *1 (S.D. Ga. Oct. 2, 2023), is similarly unavailing. *Propsero* regards a motion to exclude expert testimony where defendants argued that certain of the information in the expert's testimony (including "content from a treating physician's deposition") was designated confidential under the existing protective order.[4] At the time of the hearing, there was no existing protective order, save a recently filed, unripe motion for protective order governing discovery [D.E. 82].[5] [D.E. 116] (Order granting in part motion for protective order governing discovery and detailing the apparent "breakdown in communications regarding protective order drafts between the Parties," which resulted in quite disparate drafts being submitted). But even then, none of the protective orders regarding discovery—not Plaintiff's draft, not Defendant's draft, and not the final version entered by the Court in [D.E. 116]—are designed to shield in its entirety a public court transcript. Nor should they be.

Protective orders until Federal Rule of Civil Procedure 26(c) "minimize[] abuse of the discovery process." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th

---

Defendant prior to their sexual encounter). *See also* [D.E. 21-2 at 2] (unsworn statement of Ms. Brooke recounting allegedly receiving messages of a sexual nature from Defendant).

[4] Plaintiff's last mainstay case as to the nature of the material discussed is also inapt. *In re Sealed Case*, 237 F.3d 657, 666–67 (D.C. Cir. 2001), regards a petition filed on the public docket, in contravention of two federal statutes that "plainly prohibit the FEC from disclosing information concerning ongoing investigations under any circumstances without the written consent of the subject of the investigation."

[5] Plaintiff has also filed a motion for protective order governing public commentary by trial participants, but that regards "public extrajudicial statements," so we will not address it for the purposes of deciding on Plaintiff's motion to seal the Transcript. [D.E. 84 at 1].

8

Cir. 1987) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). "Because parties often resist the exchange of confidential information, 'parties regularly agree, and courts often order, that discovery information will remain private.'" *Id.* at 356 (citing *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). This is because, while "[t]here is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents," "private 'documents collected during discovery are not "judicial records."'" *Id.* at 355 (citing *Anderson*, 799 F.2d at 1441). Thus, the "common-law right of access does not extend to information collected through discovery which is not a matter of public record." *Id.* (citing *Seattle Times Co.*, 467 U.S. at 33).

As of the June 3, 2025, hearing, the Parties had apparently "agreed to freeze discovery pending the Court's ruling on Plaintiff's Motion for a Protective Order Governing Discovery." [D.E. 107 at 3 n.1] (filed in July 2025). While there was an unripe motion on the docket, there was no entered protective order governing discovery—or any—confidential information as of the June 3, 2025, hearing. So, there was no discovery information that, at the time, could have been seen as having been designated as confidential under such an order. The Transcript also does not reflect any inadvertent references to Plaintiff's name or particular identifying information that could cause her to be personally identified, as evidenced by the fact that there are no objections or other expressed concerns to that effect. [D.E. 90 at 6] (Court allowing use of "Jane Doe" for confidentiality at hearing and clarifying for Plaintiff that she need not say her name at the hearing beyond "Jane Doe"). And,

though we disagree with Plaintiff that any of her testimony at the hearing would be considered medical or treatment-related in nature sufficient to merit a privacy claim, even that information which Plaintiff alleges was private could already, at that point, be found in briefing on the public docket.  Plus, again, the June 3, 2025, hearing was public.

Plaintiff's showing of good cause to seal the entire transcript thus falters. Though we agree that the entire case here is by its very nature sensitive, a federal judicial action has now been filed that, absent a compelling and specific showing, is now a matter of public record.  Accordingly, Plaintiff's motion to seal the entire Transcript must be denied as good cause of a compelling and specific nature has not been persuasively shown.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to seal is **DENIED**.  [D.E. 88]. The Clerk of Court is directed to unseal the hearing transcript, [D.E. 90], in its entirety.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of October, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge