## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:25-cv-20757-JB/Torres

JANE DOE,

      *Plaintiff,*

v.

STEVEN K. BONNELL II,

      *Defendant.*

_____/

### DEFENDANT STEVEN K. BONNELL II'S MOTION FOR SUMMARY JUDGEMENT

Defendant Steven K. Bonnell II respectfully moves, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 for summary judgment against Plaintiff Jane Doe on the grounds that she failed to establish subject matter jurisdiction.

### MEMORANDUM OF LAW

### I.      INTRODUCTION

As Bonnell has maintained from the outset of this case, the Court lacks subject matter jurisdiction over this dispute. In the Court's October 6, 2025 Order denying Plaintiff's Motion for Preliminary Injunction, Magistrate Judge Torres warned that "if Plaintiff cannot show in due course that the conduct alleged is indeed covered by the statute . . . it is possible that we do not have subject matter jurisdiction over Plaintiff's case." (Order [ECF No. 143] at 13.) It is now the end of January 2026 and discovery has closed. Plaintiff's opportunity to establish subject matter jurisdiction has come and gone. Since filing the Complaint in February 2025, Plaintiff has failed to produce any evidence to demonstrate that Bonnell ever transmitted the sexually explicit video she recorded with him in September 2020 (the "Video") to anyone after October 1, 2022, the date the relevant federal statute (hereinafter, "CARDII") went into effect.

At first, Plaintiff attempted to argue that Bonnell transmitted the Video to a Discord user named "Rose" in October 2022. (Compl. [ECF No. 1] ¶ 12.) Then, in her Amended Complaint, Plaintiff backtracked and alleged that Bonnell sent the Video to Rose "sometime in 2022." (Am. Compl. [ECF No. 120] ¶ 13.) But the undisputed evidence obtained during discovery establishes that the transmission to "Rose" occurred in April 2022.

Next, Plaintiff tried to argue that Bonnell more recently transmitted the Video to an individual who goes by the screenname "Abbymc." (*Id.* ¶ 14.) But neither Abbymc, nor her allegations ever materialized. Despite that Plaintiff's counsel also represents Abbymc, they refused to accept a subpoena on her behalf. They delayed providing contact information for Abbymc, and when they finally provided an address for service, it was a fake address. Ultimately Bonnell served Abbymc with a subpoena *deuces tecum*, but she failed to produce any documents in support of the claims in her declaration.

At the June 3, 2025 Preliminary Injunction hearing, Plaintiff admitted, under oath, that she possessed no evidence that Bonnell transmitted the Video to *anyone* after the effective date of the CARDII statute:

> Court:      [H]ave you seen any transmission yourself or record of a transmission as opposed to what somebody's told you that evidenced Mr. Bonnell sending a video after October of 2022? Have you seen anything?
>
> Plaintiff:   I have not.

(Brettler Decl., dated Jan. 30, 2026, Ex. M at 55:7-13.) Now, after nearly a year of litigation, Plaintiff still has failed to produce any evidence that Bonnell transmitted the Video to anyone after the effective date of statute. No such evidence exists.

On September 19, 2025 Bonnell filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Mot. To Dismiss

[ECF No. 132].) That motion is *sub judice*. In light of the summary judgment filing deadline, Bonnell hereby renews the arguments presented in his 12(b)(1) motion and submits this Motion for Summary Judgment and supporting documents (collectively, the "Motion"), to demonstrate, beyond any dispute, that he never transmitted the Video to Rose, Abbymc, or anyone else after CARDII went into effect on October 1, 2022. As a result, the Court lacks subject matter jurisdiction over this dispute and must dismiss the case, including the pendant state claims.

## II.    STATEMENT OF FACTS

### A.    Plaintiff and Bonnell Created the Video in 2020.

Bonnell is a live streamer and progressive political commentator, commonly known online as "Destiny." (Bonnell Decl., dated Apr. 25, 2025 [ECF No. 42-1] ¶ 3.) On October 23, 2019, Plaintiff sent Bonnell a private message online. (*Id.* ¶ 5.) Thereafter, they developed a friendship and began discussing their sex lives. (*Id.*) On multiple occasions, Plaintiff offered to send Bonnell, and in fact did send Bonnell, sexually explicit videos of herself and her partner(s) and encouraged Bonnell to send her similar videos of himself with sexual partners. (*Id.* & Ex. A [ECF No. 42-2].) On March 19, 2020, Plaintiff suggested that she and Bonnell meet and "make some [sex] videos together." (*Id.* ¶ 6 & Ex. B [ECF No. 42-3].) Plaintiff repeated her request on September 6, 2020. (*Id.* ¶ 6.) On or about September 12, 2020, Plaintiff and Bonnell met in person and recorded the Video. (*Id.* ¶ 7; Pl.'s Decl., dated Apr. 3, 2025 [ECF No. 20-1] ¶ 5.) Plaintiff sent the Video to her then-boyfriend, MH. (*See* Brettler Decl., dated Jan. 30, 2026, Ex. M at 13:3-8; *id.* Ex. N at 170:13-171:14.) *See also* Bonnell's Statement of Undisputed Material Facts, dated Jan. 30, 2026 (hereinafter, the "UMF") ¶¶ 1-3.

### B.    On April 9, 2022, Bonnell Sent the Video to "Solo," Who Was Masquerading as "Rose" Online.

Two years later, beginning in April 2022, Bonnell was contacted online by an individual

using the screenname "Rose." (Bonnell Decl., dated Jan. 30, 2026, ¶ 2.) Rose identified herself as a female college student, and Bonnell and Rose formed a relationship online. (*Id.*) Soon after meeting online, Bonnell and Rose shared sexually explicit messages and content with each other on the Discord platform. (*Id.*) On April 9, 2022, Bonnell transmitted the Video depicting Plaintiff to Rose via Discord. (*Id.* ¶ 3.) Bonnell did not send the Video to anyone since he sent it to Rose on April 9, 2022. (*Id.*) Over two years later, in November 2024, an individual using the screenname "Solo" (aka "SoloTinyLeaks") published portions of Bonnell's Discord communications with Rose, including the Video, on a website called KiwiFarms. (*Id.* ¶ 4.)

On or around October 3, 2025, Plaintiff claimed to have identified "Rose," and issued a subpoenaed to AH, an adult female residing in Rockford, Illinois. (*See* Pl.'s Opp'n to Mot. To Dismiss [ECF No. 139] at 7, n.2.) On October 23, 2025, Plaintiff deposed AH. AH testified that she *never* messaged or communicated with Bonnell and *never* exchanged photographs or videos with him of any kind. (*See* Brettler Decl., dated Jan. 30, 2026, Ex. L at 67:13-16 ("Q. You've never spoken to [Bonnell] ever; correct? A. No."); *id.* at 67:21-24 (Q. Have you ever corresponded electronically with [Bonnell] ever? A. I never messaged him . . . ."); *id.* at 67:25-68:2 (Q. And you never spoke with [Bonnell] on Discord ever; correct? A. Not that I can remember, no.").) AH also testified that she had no knowledge of Plaintiff's identity, that she had never seen the Video, or any explicit material depicting Plaintiff, and that Bonnell had never sent her any such material. (*Id.* at 68:3-18.)

In fact, AH confirmed at her deposition that her abusive, older ex-boyfriend, "Solo," had impersonated her online and catfished Bonnell, using the alias "Rose." (*See* Bonnell Decl., ¶ 5; Brettler Decl., Ex. L at 23:13-15 (Q. Do you know [Solo's] Discord username? A. Yeah. It was Rose . . . ."); *id.* at 24:13-18 ("Q. Do you know what [Solo's] Twitter username was? A. He made

one impersonating me called Rose."); *id.* at 68:19-21 (Q. So essentially Defendant Bonnell was catfished by your boyfriend [Solo]; correct? A. Yes.").)

Critically, AH also testified that while Solo was communicating with Bonnell online, Solo was a British citizen living in the United Kingdom. (*See id.* at 16:20-24, 17:8-17.) She further testified that the leaked screenshots of the Discord communications between Bonnell and Solo (using the alias "Rose") appeared in European date format (day/month/year) because Solo resided in the United Kingdom. (*See id.* at 18:2-7 ("Also, there is stuff online that pointed to him living in England because of in America how dates are, it's month, date, year, but in England it's different; and so screenshots between him [Solo] and Destiny [Bonnell] talking showed a different date form"); *id.* at 79:22-80:7 ("Solo was located in the United Kingdom . . . And so everything that was leaked would have had time stamps in a European format"); Bonnell Decl., dated Jan. 30, 2026, ¶¶ 6-8 & Exs. A-C.) *See also* UMF ¶¶ 4-7.

## C.   Plaintiff Amended Her Complaint To Allege a Post-CARDII Transmission of the Video to Abbymc.

In light of the fatal jurisdictional defect of the Rose transmission occurring prior to the effective date of the CARDII statute, Plaintiff amended her Complaint to allege that, at some unspecified time after March 2023, Bonnell sent the Video to an individual using the screenname "Abbymc" via a "Google drive link." (*See* Am. Compl. [ECF No. 120] ¶¶ 14-15.) To date, Plaintiff has provided no evidence of this alleged transmission. For example, Plaintiff has not even produced a screenshot of any message in which Bonnell supposedly sent the Video to Abbymc, nor has Plaintiff provided proof of the existence of the Google drive link.[1] In fact, at the

---

[1] As discussed in Section V.A., *infra*, Bonnell has produced evidence demonstrating that no such transmission occurred. Bonnell's preserved communications with Abbymc capture every media file he ever sent to her, none of which contained the Video depicting Plaintiff.

Preliminary Injunction hearing on June 3, 2025, Plaintiff admitted that she possessed no evidence of an actual transmission of the Video to Abbymc, or to anyone else. (*See* Brettler Decl., dated Jan. 30, 2026, Ex. M at 55:7-13 ("Court: [H]ave you seen any transmission yourself or record of a transmission as opposed to what somebody's told you that evidenced Mr. Bonnell sending a video after October of 2022? Have you seen anything? A: I have not.").)

Instead, Plaintiff relies solely on a declaration from Abbymc, dated May 3, 2025 [ECF No. 49-2] and an uncorroborated and unauthenticated text message purportedly from Abbymc to an unidentified third-party, wherein Abbymc wrote: "I have videos of him f*cking cheiry and pxie like lmfao he just sent me another one haven't opened it." [ECF No. 86-1.] As explained herein, the Court should not give any weight whatsoever to the Abbymc declaration or exhibit thereto.

### 1. Plaintiff's Counsel Obstructed Bonnell's Access to Abbymc.

Since May 2025, Bonnell has attempted to serve Abbymc with a subpoena in an effort to test the false claims in her declaration. However, for six months, Plaintiff's counsel stymied Bonnell's efforts to effect service of a subpoena on Abbymc. Despite that Plaintiff's counsel also represented Abbymc, they refused to accept service of the subpoena on her behalf and refused to provide Abbymc's current contact information as required pursuant to Plaintiff's initial disclosure obligations. (*See* Brettler Decl., dated Sept. 19, 2025 [ECF No. 132-9] ¶¶ 3-11.)

Notwithstanding Plaintiff's counsel's recalcitrance, Abbymc publicly acknowledged her awareness of the subpoena and her deliberate avoidance of service. She commented online about the subpoena and, during a livestream broadcast that aired on or about September 8, 2025, Abbymc stated that Plaintiff's counsel advised her to continue evading service of process while continuing to "submit[] evidence." (*See id.* ¶ 12 & Ex. H [ECF No. 132-17].)

After repeated requests from Bonnell's counsel, on October 2, 2025, Plaintiff's counsel provided Abbymc's "last known address." (Brettler Decl., dated Jan. 30, 2026, ¶ 5 & Ex. A.).

Bonnell's counsel also requested Abbymc's email address and phone number, but Plaintiff's counsel refused to provide it. (*Id.* ¶ 6 & Ex. B.)

Despite numerous attempts, Bonnell's process servers were unable to find any habitable structure at the fake address Plaintiff's counsel provided for Abbymc. (*Id.* ¶ 8.) On October 15, 2025, Bonnell's counsel sent Plaintiff's counsel another email requesting correct contact information for Abbymc. (*Id.* & Ex. D.) A week later, Plaintiff's counsel provided the "most recent telephone number" for Abbymc. (*Id.* ¶ 9 & Ex. E.). Counsel for Bonnell thereafter texted Abbymc a copy of the subpoena using the phone number that Plaintiff's counsel provided. (*Id.* ¶ 10 & Ex. F.) Counsel for Bonnell received no response. (*Id.* ¶ 10.)

On November 13, 2025, counsel for Bonnell again emailed Plaintiff's counsel requesting Abbymc's email address. (*Id.* ¶ 11.) Four days later, Plaintiff's counsel responded that they had no obligation to provide that information. (*Id.*) On November 17, 2025, Plaintiff's counsel for the first time provided a valid address for Abbymc. (*Id.* ¶ 11-12 & Exs. G-H.) *See* UMF ¶¶ 8-12.

## 2. Abbymc Failed To Produce Any Documents Responsive to the Subpoena.

Upon receiving the correct street address from Plaintiff's counsel, Bonnell immediately took steps to serve Abbymc with the subpoena at the new address. (*Id.* ¶ 13 & Ex. I.) The subpoena requesting documents evidencing Bonnell's purported transmission of the Video was served on Abbymc on November 21, 2025. (*Id.* ¶ 14 & Ex. J.) Despite receiving a reminder of her obligation to respond to the subpoena (*id.* ¶ 15 & Ex. K), to date, Abbymc failed to produce any documents or otherwise respond to the subpoena. (*Id.* ¶ 16.) *See* UMF ¶¶ 12-14. Now that the discovery deadline has passed, Plaintiff is precluded from introducing or relying upon any new documents or other purported evidence from Abbymc, and her untested declaration should be given no legal weight.

### D. **Bonnell Demonstrated That He Never Transmitted the Video to Abbymc**.

Bonnell has filed evidence with the Court identifying each and every media file he transmitted to Abbymc. (Bonnell, Decl., dated Jan. 30, 2026, ¶¶ 10-12 & Exs. E-F.) The original file name of the Video, "VID_240100707_144752_318-1.mp4" appears nowhere in Bonnell's communication log because he never sent the Video to her. (*Id.* ¶ 11 & Ex. E.) Moreover, as further reflected in Bonnell's communication logs, he sent Abbymc just two Google Drive links, neither of which contained the Video depicting Plaintiff, but instead depicted another woman who uses the screenname "Peach,". (*Id.* ¶ 12 & Exs. E-F.) *See* UMF ¶ 15-18.

## III. **LEGAL STANDARD**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" if a reasonable jury could return a verdict for the non-moving party, and a fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Id.* at 248.

Entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting *Celotex,* 477 U.S. at 323). The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient

evidence to support an essential element of the case. *See id.*; *see also Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995) (holding that the movant may satisfy his burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case") (quoting *Celotex*, 477 U.S. at 325). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

Courts in this Circuit routinely grant summary judgment for lack of subject matter jurisdiction. *See, e.g.*, *Enlow v. United States*, 161 F. App'x 837, 838-41 (11th Cir. 2006) (holding that the trial court properly dismissed the action for lack of subject matter jurisdiction under Rule 56); *Lombardi v. Lady of Am. Franchise Corp.*, No. CV7245CIV, 2002 WL 459717, at *1 (S.D. Fla. Mar. 4, 2002) (granting motion for summary judgment for lack of subject matter jurisdiction where plaintiff could not establish a genuine dispute of material fact as to the "threshold" jurisdictional showing of an employment relationship, as required to assert claims under Title VII); *Fargo Weite Reisen GmbH v. Jam. Vacations Ltd.*, 790 F. Supp. 272, 273-76 (S.D. Fla. 1992) (granting summary judgment and dismissing the complaint for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FISA"), holding that because the defendant was an agency of a foreign sovereign and none of the FSIA's jurisdictional exceptions applied, the court lacked subject matter jurisdiction necessary to adjudicate the dispute).

**IV.    THERE IS NO DISPUTE THAT BONNELL'S SOLE TRANSMISSION OF THE VIDEO TO "ROSE" PRECEDED THE EFFECTIVE DATE OF CARDII BY NEARLY SIX MONTHS.**

Count I of the Amended Complaint, for Bonnell's alleged violation of CARDII, 15 U.S.C. § 6851, provides the sole basis for federal question jurisdiction, yet the Count fails as a matter of law. The evidence obtained during discovery conclusively establishes that Bonnell transmitted the

Video depicting Plaintiff, on just one occasion, to an individual, who used the screenname "Rose," in April 2022. (Bonnell Decl. ¶¶ 3, 6-8 & Exs. A-C.) Specifically, the evidence—including the leaked Discord correspondence—establishes that Bonnell sent the Video to her nearly six months before CARDII took effect on October 1, 2022.[2] (*Id.*) Plaintiff has submitted no evidence to dispute that fact.

The Discord logs between Bonnell and Rose (who turned out to be Solo) conclusively establish that Bonnell transmitted the Video on April 9, 2022. (Bonnell Decl., dated Jan. 30, 2026, ¶ 3 & Exs. A-C.) Because Solo was located in the United Kingdom, his Discord communications with Bonnell display the date of the transmission in European format (day/month/ year). (*Id.* ¶ 6 & Ex. A; Brettler Decl. Ex. L at 18:2-7, 79:22-80:7.) Thus, the entry displaying Bonnell's transmission of the Video to Rose appears as "10/04/22," which corresponds to April 10, 2022, not October 4, 2022. (Bonnell Decl., dated Jan. 30, 2026, ¶ 3 & Exs. A-C.) By comparison, because Bonnell is located in Florida, his Discord logs with Rose display the date of transmission of the Video in conventional U.S. date format (month/day/year) as "04/09/2022" (April 9, 2022 at 8:36 p.m. EST), which would have been April 10, 2022 at 1:36 a.m. BST in the United Kingdom. (*Id.* ¶ 7 & Ex. B.)

After Bonnell sent the Video in April 2022, he continued to communicate with "Rose" on Discord. That subsequent correspondence between Solo (using the alias "Rose") and Bonnell further confirms that the communications between them are displayed in the European date format.

---

[2] Plaintiff concedes the CARDII statute is not retroactive. (*See* Pl.'s Opp'n to Mot. To Dismiss, dated Oct. 3, 2025 [ECF No. 139] at 7, n.1; Pl.'s Reply in Support of Mot. for Leave to File Am. Compl., dated July 28, 2025 [ECF No. 110] at 4.) *See also K.T. v. Place for Rover*, No. 23-02858, 2024 WL 1356221, at *5 (E.D. Pa. Mar. 29, 2024) ("since there is no clear Congressional intent to apply the statute retroactively, this leads the Court to conclude that § 6851 should not be given retroactive application.").

(*Id.* ¶ 8.) For example, on April 14, 2022, Bonnell texted Rose, "Just streaming," and that communication is date-stamped "14/04/2022." (*Id.* & Ex. C.) The timestamp can only be read as April 14, 2022, consistent with the European day/month/year format.[3]

The evidence shows that Bonnell transmitted the Video to Rose on a single occasion, nearly six months before CARDII took effect. *See* UMF ¶¶ 4-7. Because the date of transmission to "Rose" preceded the effective date of the statute, there is no federal question jurisdiction. The Court lacks subject matter jurisdiction and should dismiss the action.

## V.    NO ADMISSIBLE EVIDENCE OF A TRANSMISSION OF THE VIDEO TO ABBYMC EXISTS.

The false, uncorroborated, and untested claims in Abbymc's declaration, dated May 3, 2025 [ECF No. 49-2] are controverted by the evidence that actually exists. Plaintiff cannot identify a material issue of disputed fact by relying on anything contained in or attached to Abbymc's declaration. At summary judgment, the nonmoving party must do more than point to the existence of *some* evidence in the record. The Supreme Court has made clear that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (holding the evidence presented cannot consist merely of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial).

The Eleventh Circuit applies this principle strictly, holding that an issue of fact is not

---

[3] Notably, Plaintiff's own expert witness, Jesus Peña, concedes that Bonnell's transmission of the Video to Rose occurred on April 9, 2022. (*See* Peña Am. Decl., dated Oct. 8, 2025 [ECF No. 147-1] at ¶ 2.)

"genuine" where it is supported only by evidence that is "*merely colorable*" or "*not significantly probative.*" *Flamingo S. Beach I Condo. Ass'n v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 26-27 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249-50) (emphasis added). A defendant "is entitled to summary judgment unless the nonmoving party, in response, comes forward with *significant, probative evidence* demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (emphasis added). Where the record contains only minimal, speculative, or merely colorable evidence on a required element of a plaintiff's claim, summary judgment is appropriate as a matter of law.

### A.   Bonnell Did Not Transmit the Video to Abbymc at Any Time.

In an attempt to manufacture subject matter jurisdiction where none exists, Plaintiff amended her Complaint to allege that at some unspecified time after March 2023, Bonnell sent the Video to Abbymc via a "Google drive link." (Am. Compl. ¶ 14.) Critically, Plaintiff offers no actual evidence that Bonnell transmitted the Video to Abbymc at any time, let alone evidence that could establish a genuine dispute of material fact as to such a transmission. Indeed, Plaintiff admitted, under oath, that she possesses no such evidence of a transmission to Abbymc (or anyone else). (Brettler Decl., dated Jan. 30, 2026, Ex. M at 55:7-13.) Accordingly, Plaintiff fails to put forth any evidence to establish that Bonnell ever transmitted the Video to Abbymc, or to anyone else, after April 9, 2022.

In fact, Bonnell's communication logs establish that he never transmitted the Video to Abbymc at any time. (Bonnell Decl., dated Jan. 30, 2026, at ¶¶ 10-11 & Ex. E.) These logs capture every media file Bonnell ever sent to Abbymc. They reflect that he never transmitted the Video. (*Id.* ¶ 11 & Ex. E.) The original filename of the Video, "VID_240100707_144752_318-1.mp4," was revealed when Solo uploaded it to the KiwiFarms website without authorization. (*Id.* ¶ 9 &

Ex. D.) By contrast, the files Bonnell sent to Abbymc bear entirely different filenames, none of which correspond to the filename of Plaintiff's Video. (*See id.* ¶ 11 & Ex. E.)

Further, each of the media files Bonnell sent to Abbymc display the creation date of the file within the file name. For example, one file is titled "SPOILER_PXL_**20230310**_151548695.TS.mp4," which indicates a creation date on March 10, 2023. (*See id.* (emphasis added).) All of the files Bonnell sent to Abbymc reflect creation dates in 2023. (*See id.*) Had Bonnell sent Abbymc the Video, the file name would reflect a creation date in 2020, as the Video was created years earlier in September 2020. (*Id.*; Pl.'s Decl., dated Apr. 3, 2025 [ECF No. 20-1], ¶ 5.) Accordingly, the record conclusively establishes that Bonnell did not transmit the Video to Abbymc in any form.

The evidence also establishes that Bonnell did not transmit the Video to Abbymc via Google Drive. Bonnell sent Abbymc only two Google Drive links on November 3, 2023. (Bonnell Decl., dated Jan. 30, 2026, ¶ 12 & Ex. E.) The contents of those links contain videos of Bonnell with another woman who uses the screenname "Peach," and they do not depict Plaintiff. (*Id.* ¶ 12 & Ex. F.) In fact, Peach herself confirmed that these same files, bearing the same unique Google Drive URLs that Bonnell sent to Abbymc, depicted her, and not Plaintiff, exclaiming, "Omg aww that's me!," in contemporaneous communications with Bonnell. (*Id.* Ex. F.) In those same communications, Peach consented to and even encouraged further sharing of her video. (*Id.*) ("You can also add [the video] to my resume if you have any single friends.").)

The entirety of Bonnell's relevant communication logs with Abbymc have been filed with the Court. The Video appears nowhere in those logs, and for good reason—Bonnell never transmitted the Video to Abbymc at any time. Plaintiff has not and cannot proffer admissible evidence to dispute that fact, and the Motion should be granted accordingly. *See* UMF ¶¶ 15-18.

13

B.     __Abbymc Failed To Support the Claims in Her Declaration__.

Plaintiff's anticipated reliance on the Abbymc declaration to defeat summary judgment is improper. Although as part of her Rule 26 initial disclosures, Plaintiff identified Abbymc as a potential witness and submitted a declaration, Plaintiff's counsel made it exceedingly difficult for Bonnell to test the statements contained in Abbymc's declaration. Over the course of several months, Plaintiff's attorneys first refused to provide contact information, then provided a fake address and obstructed Bonnell's efforts to serve Abbymc with a subpoena.[4] Bonnell was prevented from testing the veracity of Abbymc's declaration, even though the declaration concerns a central and dispositive issue—whether a post–October 2022 transmission of the Video occurred. Under well-settled Eleventh Circuit authority, such conduct warrants exclusion of Abbymc's declaration.

The Federal Rules of Civil Procedure provide that "a party must, without awaiting a discovery request, provide to the other parties the name and, if known, the address and telephone number of each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i). "Parties also must supplement their Rule 26 disclosures at appropriate intervals." *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005). The requirements of Rule 26(a) are "mandatory." *Altheim v. GEICO Gen. Ins. Co.*, No. 10-CV-156-T-24TBM, 2010 WL 11508155, at *1 (M.D. Fla. May 17, 2010). "Parties who fail to satisfy these disclosure and supplementation requirements are prohibited, pursuant to Fed. R. Civ. P. 37(c)(1), from using the undisclosed

---

[4] Plaintiff asserted the attorney–client privilege and work-product doctrine as grounds for refusing to produce requested communications with Abbymc. (Brettler Decl., dated Jan. 30, 2025, Ex. O.) However, a witness's location, contact information, and counsel's communications regarding compliance with a subpoena are not protected from disclosure. *Treminio v. Crowley Mar. Corp.*, No. 22-CV-00174-CRK, 2023 WL 8114403, at *5, n.6 (M.D. Fla. Nov. 22, 2023).

evidence at trial, at a hearing, or on a motion, unless the failure is harmless." *Cooley*, 138 F. App'x at 161.

Indeed, courts routinely exclude evidence submitted in connection with a summary judgment motion due to a party's violation of Rule 26. *See Cooley*, 138 F. App'x at 160-61 (affirming the district court's striking of third-party affidavits submitted in connection with a summary judgment motion for failure to disclose or supplement disclosure under Rule 26(a)); *Music Specialist, Inc. v. Atl. Recording Corp.*, No. 18-cv-25474-RAR, 2021 WL 2905410, at *3 - 8 (S.D. Fla. Mar. 8, 2021) (striking affidavits submitted in opposition to summary judgment under Rule 37(c)(1) where plaintiffs failed to comply with Rule 26(a) and (e) disclosure and supplementation obligations, "depriv[ing] the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question"); *Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1142 (S.D. Fla. 2016) ("Plaintiff's failure to comply with Rule 26(a) and (e) is grounds for exclusion under Rule 37(c)").

*Treminio* is particularly instructive. There, plaintiff sought to rely on the sworn testimony of a third-party witness to defeat a summary judgment motion filed by defendants. 2023 WL 8114403 at *1. However, and despite repeated requests by defendants, plaintiff failed to supplement her Rule 26 disclosure "to include the address of or information on where to contact [the third-party witness]." *Id.* at *3. In excluding the third-party declaration, the court held:

> Despite her ongoing obligation to supplement her Rule 26(a) disclosures . . . Plaintiff did not provide [the witness's] contact information until . . . over a month after the discovery period had ended . . . . [Plaintiff's] failure to alert defendants to [the witness's] whereabouts or a means of contacting him—even if that was only an email address or phone number—is not substantially justified . . . . *[The witness's] location, contact information, and testimony would have been important for defendant to access during discovery, and defendant has been prejudiced by not having that information . . . . Plaintiff's use of [the witness's] testimony as*

15

> evidence in response to summary judgment . . . left defendant
> without any opportunity to prepare for, or respond to, his testimony
> in its motion for summary judgment . . . . Rule 37 requires the
> exclusion of [the witness's] testimony from summary judgment
> arguments, at trial, or for any further proceedings in this case.

*Id.* at *5-6 (emphasis added).

Similarly, courts in this district have consistently held that it is improper to permit a party to rely on a non-party declaration to oppose summary judgment where the opposing party obstructed access to the witness, particularly where the declaration is critical to the nonmovant's case. *See Henriquez v. Total Bike, LLC*, No. 13-20417-CIV, 2013 WL 6834656, at *6 (S.D. Fla. Dec. 23, 2013) (granting summary judgment and refusing to consider affidavits of non-party witnesses, noting that "courts have consistently held that the affidavit of a witness cannot be used to support or oppose summary judgment where the other party did not have the ability to depose the witness"); *Inmuno Vital, Inc. v. Telemundo Grp.*, 203 F.R.D. 561, 565-66 (S.D. Fla. 2001) (excluding affidavit testimony where defendants obstructed access to the witness during discovery and holding that "defendants will not be permitted to glean an unfair advantage over plaintiff by relying on this witness to whom plaintiff did not have access during discovery"); *Crawford v. NCB, Inc.*, No. 00-6625-CIV, 2001 WL 833715, at *2 (S.D. Fla. May 17, 2001) (striking affidavits submitted in opposition to summary judgment where defendant was unable to depose the witnesses due to "plaintiffs' failure to disclose new addresses or [contact] information," despite that plaintiff's counsel "readily was able to contact these witnesses himself to procure affidavits").

For over six months, Plaintiff and her counsel repeatedly violated their obligations under Rule 26, obstructed access to their purported star witness, and now seek to rely exclusively on the Abbymc declaration to establish subject matter jurisdiction in this case. Plaintiff cannot have it both ways. Worse, as Abbymc publicly admitted during a livestream on or about September 8, 2025, she claims that Plaintiff's counsel advised her to continue evading service of process while

continuing to "submit[] evidence." (*See* Brettler Decl., dated Sept. 19, 2025 [ECF No. 132-9] ¶ 12 & Ex. H [ECF No. 132-17].)

Due to Plaintiff and her counsel's obstruction, Bonnell has been deprived of the opportunity to test, challenge, or even access Abbymc during discovery. (*Id.* ¶¶ 3-12; Brettler Decl., dated Jan. 30, 2026, ¶¶ 4-12.) When Bonnell was finally able to serve Abbymc with a subpoena prior to the close of discovery, Abbymc failed to produce any documents responsive thereto. (Brettler Decl., dated Jan. 30, 2026 ¶¶ 13-16.) Under well-established Eleventh Circuit authority, the Abbymc declaration should be stricken and given no weight in connection with deciding this Motion. *See* UMF ¶¶ 8-14.

### C.   The Abbymc Declaration Does Not Establish a Genuine Dispute of Material Fact.

Even if the Court were to consider the Abbymc declaration, it fails to establish a genuine dispute of material fact, as a matter of law. Critically, Plaintiff has not and cannot submit any evidence that Bonnell transmitted the Video to Abbymc at any time. Indeed, had such a transmission occurred, it would appear in both Bonnell's and Abbymc's communication logs. Bonnell has filed with the Court each and every media file he transmitted to Abbymc. (*Id.* ¶¶ 10-12 & Exs. E-F.) Abbymc has refused. (*See* Brettler Decl., dated Jan. 30, 2026, ¶¶ 13-16 & Exs. I-J.)

Plaintiff argues that the Abbymc declaration establishes Bonnell sent her the Video, but it does no such thing. Indeed, even "merely colorable" or merely plausible evidence cannot establish a genuine dispute of material fact as a matter of law. *See Cargill Ltd. v. Jennings*, 308 F. App'x 385, 387-88 (11th Cir. 2009) (affirming summary judgment where the nonmovant relied on an affidavit asserting misconduct without evidentiary support, holding that such "merely colorable" assertions are insufficient to defeat summary judgment); *Hudson v. S. Ductile Casting Corp.*, 849

F.2d 1372, 1375–76 (11th Cir. 1988) (affirming summary judgment where the plaintiff relied on unsupported assertions of discrimination and retaliation that were contradicted by undisputed record evidence and deposition testimony); *Rayborn v. Auburn Univ.*, 350 F. Supp. 2d 954, 963 (M.D. Ala. 2004) (granting summary judgment where the nonmovant relied on conclusory deposition testimony and generalized allegations of discrimination but failed to identify any evidentiary materials or specific testimony to corroborate his claims)

Here, even if the Abbymc declaration is "merely colorable" (it is not), in light of the substantial evidence in the record, the Abbymc declaration is certainly not "significantly probative" as to establish a genuine dispute of material fact. *Anderson*, 477 U.S. at 249-50. Rather than provide probative evidence of the alleged transmission, e.g., a screenshot of a message in which Bonnell supposedly sent the Video to Abbymc, or proof of the Google drive link that Bonnell allegedly shared with Abbymc, Plaintiff relies on a single, self-serving, and unauthenticated text message purportedly from Abbymc to an unidentified third party, dated November 3, 2023, wherein Abbymc wrote: "I have videos of him f*cking cheiry and pxie like lmfao he just sent me another one haven't opened it." [ECF No. 86-1.] The message does not establish that Bonnell transmitted the Video to Abbymc, as it is unauthenticated, ambiguous as to the sender of the message, and as to the content allegedly received, and provides no evidence of any transmission method or timing. At most, it reflects Abbymc's own unsworn characterization of what she believed she possessed, not evidence that Bonnell actually transmitted the Video to her. Abbymc's declaration and unauthenticated exhibit does not come close to establishing that Bonnell transmitted the Video to her at all. Plaintiff could have submitted proof of such a transmission, yet she has not done so (and for good reason, it never happened).

Moreover, courts in this Circuit routinely hold that an unauthenticated exhibit cannot establish a genuine dispute of material fact. *See, e.g.*, *Hernandez v. J.P. Morgan Chase Bank N.A.*, No. 14-24254-CIV, 2016 WL 3647883, at *2 (S.D. Fla. June 30, 2016) ("the documents are not properly authenticated and will not be considered by this Court when assessing the summary judgment motion."); *Hill v. Lazarou Enters., Inc.*, No. 10-61479-CIV, 2011 WL 124630, at *2-3 (S.D. Fla. Jan. 14, 2011) ("Authentication is a condition precedent to admissibility . . . because the defendant has failed to authenticate the [exhibit], it cannot properly support the defendant's motion for summary judgment"); *see also Snover v. City of Starke, Fla.*, 398 F. App'x 445, 449 (11th Cir. 2010) (holding that because the party "merely filed the [exhibit] with the court and did not authenticate it, the district court did not abuse its discretion in declining to consider the [exhibit]").

Nowhere in Abbymc's declaration does she authenticate or even attach the text message she purportedly sent to an unknown third party. (*See* Abbymc Decl., dated May 3, 2025 [ECF No. 49-2], ¶¶ 1-10.) Rather, it was *Plaintiff* who "merely filed" the exhibit with the Court a month later on June 2, 2025. (*See* Pl. Mot. To File Redacted Evid. in Supp. of Abbymc Decl., dated June 2, 2025 [ECF No. 86]); *Snover*, 398 F. App'x at 449 (declining to consider unauthenticated exhibit).

Accordingly, pursuant to well-established Eleventh Circuit authority, Plaintiff's allegation that Bonnell transmitted Plaintiff's video to Abbymc is merely colorable and fails to establish a genuine dispute of material fact as a matter of law. In any event, at most, the proffered Abbymc declaration and later-accompanying exhibit constitutes inadmissible hearsay, i.e. an out of court statement offered to prove that Bonnell transmitted a video of Plaintiff after the CARDII statute went into effect. Fed. R. Civ. P. 801. The Court should disregard the declaration and the later-amended exhibit thereto.

## VI.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS.

The remainder of Plaintiff's claims (Counts II-IV) are state law claims only. Federal law is clear that if the root federal claims are dismissed before trial, a court should decline to exercise supplemental jurisdiction over the remaining state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see also* 28 U.S.C. 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction"); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well"). Indeed, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

*Taggart v. Colonial Hotel, Inc.*, No. 06-80018-CIV-WJZ, 2007 WL 9702259 (S.D. Fla. Oct. 29, 2007) is instructive. There, the Court granted defendant's motion for summary judgment for lack of subject matter jurisdiction, dismissing Count 1 of the complaint for violation of the Americans with Disabilities Act of 1990. *Id.* at *3. In declining to exercise supplemental jurisdiction over plaintiffs' remaining state law claims, the court held:

> By granting the instant Motion as to Count I of Plaintiffs' Complaint, Plaintiffs' sole federal claim no longer exists. The Court notes that Plaintiffs' remaining claims in Counts II and III of the Complaint are brought under Florida state law. . . . In the interests of comity, the Court declines to exercise jurisdiction over the state law claims contained in counts II and III of Plaintiffs' Complaint.

*Id.*

Here, as in *Taggart*, Plaintiff's remaining claims raise no federal question, and no diversity jurisdiction exists between the Parties. Counts II-IV arise exclusively under Florida statutory

and/or common law and should be dismissed accordingly.[5]

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Steven K. Bonnell respectfully requests that the Court grant the Motion for Summary Judgment in its entirety.

Dated: January 30, 2026                              Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

By: <u>/s/ *Michael S. Morgan*</u>
Michael S. Morgan
Florida Bar No.: 1061173
mmorgan@bilzin.com

and

**BERK BRETTLER LLP**
9119 West Sunset Blvd.
West Hollywood, CA 90069-3106
Tel: (310) 278-2111

By: <u>/s/ *Andrew B. Brettler*</u>
Andrew Brad Brettler
California Bar No.: 262928
abrettler@berkbrettler.com
Jake A. Camara
California Bar No.: 305780
jcamara@berkbrettler.com
Joel Sichel
California Bar No: 361148
jsichel@berkbrettler.com
(admitted *pro hac vice*)

*Counsel for Steven K. Bonnell I*

---

[5] Notably, Plaintiff is no longer a resident of Florida. Since the filing of her Complaint, Plaintiff moved out of state to attend school. (*See* Doe Decl., dated Nov. 12, 2025, [ECF No. 177-3] ¶ 3.)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 30, 2026, a true and correct copy of the foregoing

was served on all parties via electronic transmission to counsel of record for these parties.


By: /s/ *Michael S. Morgan*
Michael S. Morgan


## SERVICE LIST
*Jane Doe v. Steven K. Bonnell II*
*Case No.: 1:25-cv-20757-JB*

| | |
|---|---|
| Carlos A. Garcia Perez, Esq. Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado, LLP 201 Alhambra Circle, Suite 1205 Coral Gables, Florida, 33134 Email: cgarciaperez@smgqlaw.com | *Counsel for Jane Doe* |

Joan Schlump Peters, Esq.
JSP LAW, LLC
838 Neapolitan Way, #91, Naples, FL 34103
Email: petersjoan@bellsouth.net