UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

(MIAMI DIVISION)

**JANE DOE,**

Plaintiff,

v.

**STEVEN K. BONNELL II,**

Defendant.

_____/

CASE NO: 1:25-cv-20757-JB/Torres

## DECLARATION OF JOAN S. PETERS

I, Joan S. Peters, declare as follows:

1. I am an attorney admitted to practice *pro hac vice* in the above captioned action. I have personal knowledge of the matters contained herein and if called upon to testify could offer competent testimony thereto.

2. I am submitting this declaration in support of Plaintiff's Rule 56(d) Motion to Deny or Defer Motion for Summary Judgment.

3. As detailed in the Rule 56(d) Motion, given the attendant circumstances, and despite diligence in prosecuting the case, Plaintiff is unable to respond to Defendant's Motion for Summary Judgment (DE 210), the supporting statement of material facts (DE 211), and the supporting affidavits (DE 212, 213) (together, the "MSJ") as Plaintiff has not been able to depose the Defendant or non-party witness Melina Goransson; has not received full responses to her discovery requests, and needs to seek the Court's intervention to compel complete responses; and needs to move for spoliation sanctions after deposing Defendant.

1

4. Plaintiff has been diligent in prosecuting this case since it was filed. However, Defendant has repeatedly thwarted Plaintiff's efforts at every step, opposing even the obvious need for a protective order governing discovery in a case involving intimate images and information of Plaintiff and non-party witnesses. On May 23, 2025, after Defendant refused to agree to the terms of a proposed protective order seeking to protect the confidential and intimate information of the Plaintiff and non-party witnesses, Plaintiff was compelled to file a Motion for a Protective Order Governing Discovery (DE82), which the Court granted on September 2, 2025. DE116 ("Protective Order").

5. Discovery could not commence until the Protective Order was entered, thus the discovery period was only three-and-a-half months. This was further shortened by the Stay Order, see *infra*.

6. Since the Protective Order was issued, Plaintiff diligently conducted and participated in discovery, including i) serving three requests for production of documents, a request for admissions, and interrogatories; ii) responding to Defendant's two sets of interrogatories, five requests for production of documents and producing over 3,650 documents; iii) serving multiple objection letters regarding Defendant's deficient responses to request for admissions, interrogatories and document productions and attempting to resolve discovery disputes (see *infra*); iv) three non-party witness depositions; v) representing a non-party witness' response to a subpoena duces tecum and producing over 400 documents; vi) serving six subpoena duces tecum on various entities including Kiwi Farms, Discord, Google, Instagram and also a non-party witness; vii) extensive on-going efforts to depose non-party witness Melina Goransson in Sweden; and viii) extensive efforts to coordinate party depositions.

~*Defendant's Deficient Document Productions and Plaintiff's Thwarted Motion to Compel*

7. Defendant has refused to produce relevant documents, including documents that he had attested were in his possession in his Initial Disclosures.[1] Defendant dragged his feet and failed to adequately respond to multiple objection letters. Additionally, Defendant failed to produce attachments or embedded links sent by him in chat threads, including the chat thread between Defendant and Abbymc. Instead, Defendant produced only attachments sent by Abbymc. The missing attachments are directly relevant to rebutting Defendant's purportedly undisputed facts and are material to the issues raised in the MSJ.

8. On November 19, 2025, Plaintiff held a meet and confer with Defendant regarding his deficient document production and Plaintiff's intended motion to compel. DE 184, 190, 190-1. Defendant made his first production on September 12 (7 days late), Plaintiff objected via letters on September 18, October 17 and October 24, and Defendant responded with a second production on November 12, to which Plaintiff also objected on November 18. Id. Defendant agreed to make an additional production allegedly to cure the deficiencies. Defendant also agreed that if the additional production did not cure the deficiencies, defense counsel were available on December 11 or December 18, the last two dates available for discovery hearings on Magistrate Judge Torres' calendar at that time. Id.

9. On November 25, Defendant made an additional production which did not cure the noted deficiencies. Plaintiff had exhausted her efforts to resolve the deficiencies without resorting to the Court.

---

[1] According to Defendant's Initial Disclosures, these documents included, inter alia, communications between Plaintiff and third parties concerning Defendant; Plaintiff's social media posts concerning Defendant; Plaintiff's Substack statements concerning Defendant; KiwiFarms data concerning Plaintiff and Defendant; YouTube videos; Twitter posts regarding Plaintiff and/or Defendant; and messages exchanged via Instagram, Snapchat, Telegram, WhatsApp, and Signal regarding Plaintiff and/or Defendant.

10. On December 3, Plaintiff contacted Magistrate Judge Torres' chambers pursuant to his Order Setting Discovery Procedures, and was informed that December 18 was the only remaining discovery-calendar date available in December. DE 184, 190. On December 4, Plaintiff advised defense counsel in writing that the supplemental production did not cure the deficiencies identified in Plaintiff's four deficiency letters, and that Plaintiff was moving forward with a motion to compel via hearing on the 18th. DE 190, 190-1, 3. Defendant's counsel, despite having previously confirmed availability, claimed that none of the four attorneys were available on the 18th. Id.

11. Defense counsels' sudden unavailability for December 18 effectively prevented Plaintiff from obtaining judicial resolution of Defendant's discovery deficiencies, despite Plaintiff's diligence.

~*The Party Depositions and the Stay Order*

12. Defendant also thwarted Plaintiff's efforts to depose Defendant. On September 17, 2025, Plaintiff's counsel requested Defendant's available dates for deposition. DEs 163-2, 163-3. On September 26, 2025, the deposition of Defendant was confirmed for November 6, 2025. DE 163-5.

13. After Defendant's deposition date was confirmed, his counsel requested dates for Plaintiff's deposition. DE 163-5. Plaintiff offered multiple dates in Miami and in Illinois where she is currently attending school, but all were arbitrarily rejected by Defendant due to a purported inconvenience to his out-of-state counsel. DE 177, at 3-5, and DEs 163-5, 6, 7, 8, 9, 10.

14. On October 7, 2025, counsel met and conferred regarding the scheduling dispute but were unable to reach an agreement, as Defendant's counsel insisted on prioritizing his own convenience over the availability of Plaintiff. DE 177, at 6. Defendant then unilaterally noticed

Plaintiff's deposition for November 3, 2025, despite having been informed that she was unavailable that day, and despite her other available dates. Id. Thereafter, Plaintiff repeatedly informed Defendant that she could not and would not appear on November 3. Id. On November 4, 2025, Defendant filed a Motion for Protective Order to Coordinate Deposition Scheduling (DE 163), thereby preventing Plaintiff from taking the agreed to and scheduled deposition of Defendant.

15. On November 5, 2025, Magistrate Judge Torres entered an order staying the November 6 deposition of Defendant pending resolution of Defendant's motion for protective order. DE 167 ("Stay Order"). Defendant's motion was fully briefed and submitted to the Court on November 17, 2025. DEs 177, 179. The motion for protective order is still pending, and thus Plaintiff was precluded from taking Defendant's deposition prior to the December 16th discovery deadline.

*~Expert Reports and Evidence of Spoliation*

16. On October 16, 2025, Plaintiff timely submitted to Defendant the expert reports of her forensic and medical experts, Mr. Jesus Pena, and Dr. Robert Gordon. Defendant noticed the deposition of Mr. Pena for December 16, 2025, but cancelled the deposition two days prior. Defendant never sought to depose Dr. Gordon.

17. Mr. Pena's expert report opined that the Defendant failed to use forensically sound data preservation, and omitted the essential step of generating cryptographic hash values at the time of collection. DE 139, at 3; 139-1. Moreover, Mr. Pena opined that the documents produced by Defendant (and relied on by Defendant in his Motion to Dismiss and now in his Motion for Summary Judgment) bear indicia of alteration and tampering. Id.

18. The issues relating to deficient preservation and possible tampering of evidence must be explored at Defendant's deposition. Should Defendant fail to provide a credible explanation of his preservation methods and the indicia of alteration, Plaintiff will need to seek appropriate judicial relief, including spoliation sanctions. A finding of spoliation could result in an adverse inference regarding Defendant's disclosure of the Video to Abbymc, which would not only defeat summary judgment, but also support Plaintiff's punitive damages claim.

*~Motion to Modify the Scheduling Order and Other Pending Motions*

19. On December 4, 2025, twelve days before the cut off for discovery, with unresolved deficiencies in Defendant's document production, and the Stay Order still in place preventing the taking of Defendant's deposition, Plaintiff filed a Motion to Modify the Scheduling Order. DE 184. The Motion to Modify is still pending.

20. On November 5, 2025, this Court granted Plaintiff's Motion for Issuance of Letter of Request to depose a witness in Sweden. DE166. The letter of request was sent to the US Department of State and was then submitted to the Ministry of Justice in Sweden in mid-December. The Ministry of Justice has confirmed that the request is being processed, however the deposition has not yet been scheduled.

*~ Discovery Necessary to Rebut Defendant's Allegedly Undisputed Facts*

21. Defendant's MSJ rests on two central assertions: (i) that Defendant's disclosure of the Video to Rose occurred prior to the October 1, 2022 effective date of CARDII; and (ii) that Defendant did not disclose the Video to Abbymc. To prevail on summary judgment, Defendant must establish that both propositions are undisputed. The MSJ relies primarily on Defendant Bonnell's declaration and documents he produced and attached as exhibits to establish these allegedly uncontested facts. See DE 213; DEs 213-1–213-6.

22. Even assuming, *arguendo*, that Defendant disclosed the Video to Rose prior to the October 1, 2022 effective date of CARDII, Plaintiff contends that the manner of that disclosure rendered the Video accessible after that date. See DE 136 at 9–11. Plaintiff must depose Defendant to determine how the Video was transmitted, whether and when Defendant deleted the Video attachment from the Discord chat thread, and Defendant's knowledge of Discord's well-documented security vulnerabilities relating to the exposure of user attachments.

23. Answers to these questions are directly relevant to Plaintiff's continuous accessibility theory and may yield additional evidence supporting her claims. Without Defendant's deposition testimony, Plaintiff cannot adequately address or rebut Defendant's assertions on summary judgment.

24. The MSJ and SUMF rely heavily on Defendant Bonnell's declaration and Exhibits E and F thereto to support the contention that it is an undisputed fact that he did not transmit the Video to Abbymc. See DE 210 at 12–13; DE 211 ¶¶ 15–18; DE 213 ¶¶ 9–12.

25. The authenticity and provenance of Exhibits E and F must be examined through Defendant's deposition. Numerous material questions remain unanswered, including but not limited to: the steps Defendant took to preserve evidence[2]; what evidence, if any, was deleted; whether Defendant obtained or retained hash values or metadata; why his production lacks such metadata; why attachments, links, and embedded files are missing; whether Defendant used a reliable e-discovery platform; whether he used Redact to delete Discord messages; and whether communications were archived.

---

[2] Bonnell has provided conflicting accounts of his preservation of evidence methods. During the preliminary injunction hearing he testified that he used "online platforms" to request a copy of all chat threads, DE___, p. 70, but in a declaration submitted to the Court he used a third-party app "called Discord Log Exporter to export all relevant messages into an HTML file." DE 42-1.

26. Particularly concerning is Exhibit E, an Excel spreadsheet that appears to have been artificially created by Defendant for purposes of supporting the Motion for Summary Judgment. Id. Plaintiff must question Defendant regarding when, how, and why Exhibit E was created, as well as inconsistencies between Exhibit E and Exhibit F. Id. For example, Exhibit E purports to list MP4 files transmitted to Abbymc, including file names, creation dates, and transmission dates; yet the file names reflect creation timestamps that postdate the alleged transmission dates.

27. And a comparison of the time stamps and Google Drive file identifiers in the two URLs from the chat thread in Exhibit F do not match the same from the spreadsheet list the Defendant prepared of media files sent to Abbymc in Exhibit E. See Decl. J. Peña, DE 139-1, ¶19. These inconsistencies require explanation and cannot be resolved without Defendant's testimony.

28. Defendant's assertion that he "preserved the entirety" of his communications with Abbymc further necessitates inquiry into what Defendant considers preserved communications, how those records were generated, and the role of Redact or other tools in producing Exhibits E and F. If Defendant cannot authenticate these exhibits and establish their reliability—which is presently in serious doubt—he cannot rely on them to support summary judgment on the issue of disclosure to Abbymc.

29. Plaintiff has been denied the opportunity to examine Defendant regarding the exhibits that form the crux of the Motion for Summary Judgment. Allowing Plaintiff to obtain Defendant's deposition testimony is essential to developing the factual record necessary to oppose summary judgment. Precluding Plaintiff from doing so would substantially prejudice her ability to oppose the Motion for Summary Judgment and would impair her ability to fully prosecute her claims, including her claim for punitive damages.

30.     As detailed, *ante*, Defendant's document production remains incomplete and deficient. The missing discovery bears directly on Plaintiff's ability to rebut Defendant's assertion that no genuine disputes of material fact exist. Defendant should not be permitted to seek summary judgment while failing to comply with his discovery obligations.

31.     Moreover, Plaintiff has uncovered substantial grounds for a potential spoliation claim based on her forensic expert's findings concerning Defendant's document production. These findings necessitate additional discovery—most notably, the deposition of Defendant—and potentially related motions. Plaintiff's inability to pursue this discovery earlier is through no fault of her own, but rather stems from Defendant's apparent misconduct.

32.     Defendant failed to employ forensically sound data preservation practices and omitted the critical step of generating cryptographic hash values at the time of collection. DE 139 at 3; DE 139-1. Moreover, the documents Defendant produced—and upon which he relied both in his Motion to Dismiss and now in his Motion for Summary Judgment—bear indicia of alteration and tampering. Id. The issues relating to deficient preservation and potential evidence manipulation must be explored through Defendant's deposition.

33.     Inquiry into Defendant's preservation methods, tools, collection dates, sources of electronically stored information, digital fingerprints, metadata, and hash values is necessary to assess the scope and impact of the spoliation issues, which may materially prejudice Plaintiff's claims and potential damages. Should Defendant fail to provide a credible explanation for his preservation practices and the apparent indicia of alteration, Plaintiff will be required to seek appropriate judicial relief, including spoliation sanctions.

34.     Here, unresolved factual questions required Defendant's deposition before Plaintiff could responsibly pursue spoliation sanctions. Following that deposition, Plaintiff anticipates

being able to establish Defendant's bad-faith spoliation of evidence that underlies his Motion for Summary Judgment and to seek an adverse inference that Defendant disclosed the Video to Abbymc—an inference that would preclude summary judgment, and support Plaintiff's claims at trial. A finding of spoliation would also provide independent support for Plaintiff's claim for punitive damages.

35. In sum, it is my opinion that Plaintiff cannot respond to the MSJ in a meaningful way without taking the deposition of Defendant, without obtaining the missing documents from Defendant via a motion to compel, and without pursuing a motion for spoliation sanctions.

36. Without the above discovery and relief, Plaintiff will suffer unfair prejudice by having to prematurely respond to Defendant's MSJ without having the opportunity to complete discovery. There should be no prejudice to Defendant since he can refile his MSJ after the discovery is complete.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and understanding, the foregoing is true and correct.

Executed in Naples, Florida, on February 13, 2026.

*s/ Joan Schlump Peters*
Joan Schlump Peters