**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-20757-CIV-BECERRA/TORRES

JANE DOE,

      *Plaintiff,*

v.

STEVEN K. BONNELL II,

      *Defendant.*

_____/

**ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE**
**ORDER GOVERNING PUBLIC COMMENTARY BY TRIAL PARTICIPANTS**

This matter is before the Court on Plaintiff Jane Doe's motion for protective order governing public commentary by trial participants. [D.E. 84]. Defendant timely responded [D.E. 99], to which Plaintiff timely replied [D.E. 104]. Accordingly, Plaintiff's motion is ripe for disposition. The dispute boils down to whether this federal court presiding over this civil action should impose a prior restraint on the extrajudicial speech of the case participants under the guise of a Rule 26(c) protective order. Because the Court cannot do so here, Plaintiff's motion is **DENIED**.

### I. BACKGROUND

This case stems from what Plaintiff alleges is Defendant's wrongful dissemination of a video of a sexual nature (the "Video") involving both Ms. Doe and Mr. Bonnell. Both Plaintiff and Defendant are live streamers. [D.E. 42 at 8]; [D.E. 120 at 2]. Plaintiff and Defendant met online on or before "late-2019." [D.E. 42 at 8

1

(citing "late-2019" and "October 23, 2019" as key points)]; [D.E. 120 at 3 ("[a]pproximately two years" before September 12, 2020)]. Their online friendship eventually yielded discussions of a more intimate and, ultimately, sexual nature. [D.E. 42 at 8]; [D.E. 120 at 3]. These discussions included each sending the other videos of them engaging in sexual acts with others. [D.E. 42 at 8–9]; [D.E. 49-1 ¶ 6]; [D.E. 120 at 3]. The Parties then met in person on September 12, 2020, and had a sexual encounter, which was consensually recorded. [D.E. 42 at 8–9]; [D.E. 120 at 3]. It is here that the Parties' allegations as to what became of the Video steeply diverge.

At some point in 2022, Defendant transmitted the Video to a friend of his on Discord, "Rose." [D.E. 42 at 9]; [D.E. 120 at 3]. Defendant alleges that "since that date, [he] has not shared, or otherwise transmitted the video to any other third party and *will not do so*." [D.E. 42 at 9 (emphasis in original)]. Plaintiff alleges that Defendant has shared the Video with at least one other individual beyond Rose, Abbymc. [D.E. 120 at 4]. Plaintiff further alleges that Defendant's practice of hosting sexually explicit material on a Google Drive and sharing a link or links to that Google Drive constitutes "ongoing dissemination." *Id.*

In any event, the Video was uploaded to the website Kiwi Farms on November 29, 2024. [D.E. 42 at 9]; [D.E. 120 at 4]. The Video was uploaded under the screen name Solotinyleaks. [D.E. 120 at 4]. Both parties allege that they did not consent to the uploading of the Video onto Kiwi Farms. [D.E. 42 at 9]; [D.E. 120 at 4]. Defendant, for his part, alleges that he was the "victim of revenge pornography" and "suspects it was someone with access . . . to Rose's Discord chats." [D.E. 42 at 9]. The

2

Video was one among many involving Defendant that were uploaded to Kiwi Farms. *Id.* Further, the Video did not remain only on Kiwi Farms and has been found on other sites that similarly host material of a sexual nature. [D.E. 120 at 5]. Plaintiff and Defendant both allege that they made overtures to have the Video removed from various sites. [D.E. 21 at 10]; [D.E. 49-1 ¶ 17].

On February 18, 2025, and after some discussion between Plaintiff and Defendant as to the implications of the Video and possible remedies, Plaintiff filed suit in this District. [D.E. 1]; [D.E. 42-1 at 4–5]; [D.E. 42-6]. As sometimes happens, however, the parties' respective expressions of their various disagreements have not stayed within the four corners of their briefing or paused at the courthouse steps. Accordingly, Plaintiff now asks us to impose a gag order on the extrajudicial speech of "all trial participants, including the Defendant." [D.E. 84 at 1]. For the reasons enumerated below, we cannot do so on this record.

## II.   ANALYSIS

Plaintiff seeks "a protective order restricting all trial participants, including the Defendant, from making harassing, intimidating and derogatory public extrajudicial statements about the parties, the witnesses, and counsel, and from publicizing confidential attorney communications." [D.E. 84 at 1]. While the motion and proposed order are said to "apply equally to all trial participants," it is clear this request is aimed squarely at Defendant: "Without a protective order, Defendant's continuous extrajudicial comments on his streaming platforms to over 840,000 followers has a substantial likelihood of materially prejudicing this proceeding." *Id.*

3

at 2. Also, the relevant facts Plaintiff provides as to why such an order is necessary exclusively concern either actions attributed to Defendant or allegations of as to the effects of those actions. *Id.* at 2–5.

As to specific terms requested, the proposed protective order attached at [D.E. 84-5] includes the following:

> This Order applies to all trial participants, including parties, attorneys, representatives, consultants, agents, witnesses, and any individual acting in concert with or under the direction of the parties or their counsel.
> . . .
> No person covered by this Order shall make or cause to be made any public statement—including on livestreams, podcasts, social media platforms, blogs, or to the press—that:
> - Disparages, harasses, threatens, or intimidates the parties, witnesses, potential witnesses or either party's counsel;
> - Publicizes or repeats any sensitive personal allegations or private details underlying the claims in this action;
> - Publicizes or repeats any confidential settlement discussions or communications which are protected under [Federal Rule of Civil Procedure] 408, or any meet and confer communications between counsel;
> - Publicly identifies the Plaintiff or witnesses whose declarations have been filed under seal or speculates about the identity of witnesses or potential witnesses, particularly in derogatory, demeaning, or inflammatory terms;
> - Misrepresents or mischaracterizes the content of legal filings, discovery, court orders, or the positions of any party or attorney in this litigation.

[D.E. 84-5 at 2–3].

This is a blanket gag order, says Defendant in response—"an unconstitutional prior restraint of [Defendant's] First Amendment rights." [D.E. 99 at 4] (modified for sentence case). Not so, says Plaintiff, because Federal Rule of Civil Procedure 26(c) "specifically authorizes the Court 'for good cause' to 'issue an order to protect a party

4

or person from annoyance, embarrassment, oppression, or undue burden or expense' upon motion." [D.E. 84 at 5]. And because "[t]he Supreme Court has 'expressly contemplated that the speech of *those participating before the courts* could be limited.'" *Id.* (citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1073 (1991)) (emphasis in original).

> But Plaintiff's request is indeed one for prior restraint—inescapably so:
>
> In his work on the Constitution (5th Ed.) Justice Story, expounding the First Amendment, which declares: ["]Congress shall make no law abridging the freedom of speech, or of the press["] said (section 1880): . . . ["]It is plain[] that the language of this amendment imports no more than that every man shall have a right to speak, write, and print his opinions upon any subject whatsoever, without any prior restraint, so always that he does not injure any other person in his rights, person, property, or reputation; and so always that he does not thereby disturb the public peace, or attempt to subvert the government.["]

*Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 732–33 (1931). "The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal citation omitted and emphasis in original). "[C]ourt orders that actually forbid speech activities[] are classic examples of prior restraints." *Id.* So, yes, in asking us to impose an order "issued in advance of that time that [certain] communications are to occur" and "*forbidding* [those] certain communications," *Alexander*, 509 U.S. at 500, Plaintiff is asking this Court to prior restrain the speech of "all trial participants." [D.E. 104 at 1]. This is definitional and, thus, puts Plaintiff's request squarely in the crosshairs of First Amendment scrutiny.

5

Yet, Plaintiff's motion and reply make remarkably scant reference to the First Amendment—raising it by name only once in the motion and three times in the reply (one of which is a just footnote pointing out that Defendant did not put a citation on the closing sentence of a paragraph).  [D.E. 84 at 7]; [D.E. 104 at 3, 5 n.3, 7].  And Plaintiff, in her reply, even goes as far as to castigate Defendant's response, saying that he "*grossly* mischaracterizes the nature of the relief sought, the applicable legal standards, and the facts" in arguing that Plaintiff's ask would be an unconstitutional prior restraint of Defendant's First Amendment rights.  [D.E. 104 at 1] (emphasis in original).  This is curious because of either party, it is Plaintiff who, in barely acknowledging the constitutional gravity of her request, either misunderstands or mischaracterizes the circumstances of the relief sought.

Plaintiff's motion, essentially, casts her request as one for a mere protective order under Federal Rule of Civil Procedure 26(c): "Federal Rule of Civil Procedure 26(c) specifically authorizes the Court 'for good cause' to 'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' upon motion."  [D.E. 84 at 5].  Plaintiff then cites, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), in support of this proposition, because, "[t]he Court 'has broad discretion …[ ]to decide when a protective order is appropriate and what degree of protection is required.'"  [D.E. 84 at 5].

This reference to Rule 26[1] serves as the predicate to Plaintiff's argument that "[t]he Supreme Court has 'expressly contemplated that the speech of *those*

---

[1] The designated argument section in Plaintiff's motion is roughly one-and-one-half pages, including space for subheadings, and contains relatively few citations for

*participating before the courts* could be limited.'" [D.E. 84 at 5 (citing *Gentile*, 501 U.S. at 1075) (emphasis in original)].   Plaintiff relies on a litany of criminal or criminal-adjacent cases concerning First Amendment issues, even though (1) those cases are inapposite for the reasons discussed below and (2) Plaintiff never actually acknowledges their First Amendment implications.   *Id.* at 5–7.   In other words, Plaintiff argues that because "all trial participants" are before the Court subject to this proceeding, and because Rule 26 allows us to impose protective orders, we must be able to do so here, the constitutional implications notwithstanding.

And when Plaintiff does, finally, get to the First Amendment in her motion, it is only to say the following: "The First Amendment does not protect speech that interferes with the fair administration of justice." [D.E. 84 at 7].   For this proposition, Plaintiff again cites to, *Gentile*, 501 U.S. at 1075, which contains three mentions of the "fair administration of justice" in various contexts, but none on page 1075.   [D.E. 104 at 7 (same text, same citation)].   In short, prior restraint of speech—of anyone's speech—is not nearly as simple an issue as Plaintiff cavalierly paints it to be.   And for the reasons set out below, we disagree that such prior restraint is appropriate here.

### A. *Federal Rule of Civil Procedure 26*

We acknowledge at the outset that this motion was filed before a protective order governing discovery was entered in this case.   That protective order has since been entered, and covers, e.g., confidentiality designations and procedures for "[t]he

---

support.   [D.E. 84 at 7–8].   For the purposes of this Order, we will consider the legal standard section as part of the overall argument.

legal name or private identifying information of any non-party witness whose testimony the Court has allowed to be filed under seal." [D.E. 116 at 7]. *Compare id. with* [D.E 84-5 at 2 (listing as proposed prohibited conduct "[p]ublicly identif[ying] the Plaintiff or witnesses whose declarations have been filed under seal")]. So, any argument as to information obtained during discovery is moot as having been otherwise addressed in [D.E. 116].

But Rule 26 and case law addressing protective orders issued under Rule 26 very specifically regard *discovery*. The title of Rule 26 is, in fact, "Duty to Disclose; General Provisions Governing Discovery." Fed. R. Civ. P. 26. And in full, the section of *Seattle Times* that Plaintiff quotes is:

> We also find that the provision for protective orders in the Washington Rules requires, in itself, no heightened First Amendment scrutiny. To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. The Legislature of the State of Washington, following the example of the Congress in its approval of the Federal Rules of Civil Procedure, has determined that such discretion is necessary, and we find no reason to disagree. The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Seattle Times*, 467 U.S. at 36. Hence, the holding in *Seattle Times* is quite pointedly cabined to the realm of discovery: "We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37. This is because "[t]he government clearly has a

substantial interest in preventing [the] abuse of its [discovery] processes," and it is an interest "unrelated to the suppression of expression." *Id.* at 34–35.

Again, Plaintiff's motion asks us to impose a gag order for a wide swath of "prohibited conduct." [D.E. 84]; [D.E. 84-5].  Her request and resulting proposed order are not limited to information gained from discovery—and nor would they be, as that would be duplicative of her motion for protective order governing discovery [D.E. 82].  So, given that neither Rule 26 nor the holding of *Seattle Times* extend beyond civil discovery, and that a protective order governing civil discovery has now been entered in this case, Rule 26 cannot possibly be the basis for this Court to issue an order prior restraining expression not related to discovery.

### B. *The First Amendment*

Plaintiff's citation to *Gentile* regarding limitations placed on the speech of those participating in litigation tees off the remainder of her argument, which cites exclusively to case law involving criminal matters.[2]  And while each of these cases involves First Amendment issues (although Plaintiff does not outright acknowledge as much), they are inapposite here, because this is a civil case.

The First Amendment does not exist in a vacuum, as is true of any Amendment to the Constitution.  Each Amendment exists in a living tapestry of rights, with the threads pulled tighter towards one end or the other if the circumstances at-issue call

---

[2] To the exception of one case in the last paragraph of Plaintiff's "legal standard" section, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), which regards a district court's inherent power to impose sanctions and is substantively unrelated to this issue.

for certain rights to be subordinated to others.   Take, for example, the Sixth Amendment:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. CONST. amend. VI.

Criminal cases often, and for the protection of the accused as innocent until proven guilty, have different standards than civil cases.   As for challenged speech in the context of a criminal case, the rights guaranteed by the First and Sixth Amendments may push and pull depending on the circumstances of the speech relative to the right of the accused to have an impartial jury:

> The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other.   In this case, the petitioners would have us declare the right of an accused subordinate to their right to publish in all circumstances.   But if the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do. . . . [I]t is nonetheless clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it.   The history of even wartime suspension of categorial guarantees, such as habeas corpus or the right to trial by civilian courts . . . cautions against suspending explicit guarantees.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976) (internal citation omitted); *see also id.* at 560 ("It is not asking too much to suggest that those who exercise First

Amendment rights in newspapers or broadcasting enterprises direct some effort to protect the rights of an accused to a fair trial by unbiased jurors.").

But, again, the case before us now is not a criminal one. This case, instead, falls within the ambit of the Seventh Amendment, which understandably does not confer the same protections:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII.

We say all of this because Plaintiff's litany of citations to cases involving criminal matters for use in this civil case suggests a misunderstanding of First Amendment case law. The cases to which Plaintiff cites, as analyzed below, largely discuss speech of those party to or reporting on a case relative to the right of the accused to have a "trial[] by an impartial jury," U.S. CONST. amend. VI. This right is a variable not found in this case—and that very much matters.

For example, Plaintiff cites to, *Sheppard v. Maxwell*, for the proposition that: "'The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function.'" [D.E. 84 at 5 (citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966))]. Plaintiff concludes that *Sheppard* "urge[s] lower courts handling publicized cases to 'censure' trial participants." *Id.* Except the line Plaintiff is referencing at 384 U.S. at 363 is

11

actually: "Collaboration between counsel and the press as to information *affecting the fairness of a criminal trial* is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." *Sheppard*, 384 U.S. at 363 (emphasis added). In fact, *Sheppard* dedicates a great deal of dicta to the role of the press *in a criminal trial*, e.g.:

> A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. . . . The press does not simply publish information about trials but guards against the miscarriage of justice by subjective the police, prosecutors, and judicial processes to extensive public scrutiny and criticism. The Court has, therefore, been unwilling to place any direct limitations on the freedom traditionally exercised by the news media for ["[w]]hat transpires in the court room is public property.[" *Craig v. Harney*, 331 U.S. 367, 374 (1947).] . . . And the Court has insisted that no one be punished for a crime without ["]a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power.[" *Chambers v. State of Florida*,309 U.S. 227, 236–37 (1940)]. . . . But [freedom of discussion] must not be allowed to divert the trial from the ["]very purpose of a court system to adjudicate controversies, both civil and criminal, in the calmness and solemnity of the courtroom according to legal procedures.[" *Cox v. State of Louisiana*, 379 U.S. 559, 583 (1965).] Among these ["]legal procedures["] is the requirement that the jury's verdict be based on evidence received in open court, not from outside sources.

384 U.S. at 350–51.

And, for that matter, *Sheppard* also focuses on the role of criminal counsel. *Id.* at 360, 363.[3] To our earlier point, that "the jury's verdict be based on evidence

---

[3] *See also Gentile*, 501 U.S. at 1056–57 ("Because attorneys participate in the criminal justice system and are trained in its complexities, they hold unique qualifications as a source of information about pending cases. . . . To the extent the press and public rely upon attorneys for information because attorneys are well informed, this may prove the value to the public of speech by members of the bar. If the dangers of their speech arise from its persuasiveness, from their ability to explain judicial proceedings, or from the likelihood the speech will be believed, these are not the sort of dangers that can validate restrictions. The First Amendment does not permit

received in open court, not from outside sources," is, inherently, where the interplay between the First and Sixth Amendments lies. *Sheppard*, 384 U.S. at 351; *Nebraska Press Ass'n*, 427 U.S. at 561. But, again, this civil case is not covered by the Sixth Amendment.

Plaintiff's next citation, *The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1516 (11th Cir. 1991), is similarly unconvincing because *News-Journal*, too, regards the Sixth Amendment rights of the criminally accused: "The News-Journal particularly has been deficient in demonstrating its claimed First Amendment deprivation, when it has been accorded its constitutional attendance and reporting rights and has not been directly limited in any manner by Judge Foxman's restrictive order, designed to preserve the overriding Sixth Amendment right of the criminal defendants in this case to an impartial jury."[4] And, in fact, it is an internal citation to *News-Journal* that also fells Plaintiff's reliance on, *United States of America v. Hernandez*, No. 98-CR-00721-JAL, 2001 WL 37126807 (S.D. Fla. Feb. 16, 2001).

---

suppression of speech because of its power to command assent. One may concede the proposition that an attorney's speech about pending cases may present dangers that could not arise from statements by a nonparticipant, and that an attorney's duty to cooperate in the judicial process may prevent him or her from taking actions with an intent to frustrate that process.")

[4] Plaintiff also cites to, *In re Subpoena to Testify Before Grand Jury*, 864 F.2d 1559 (11th Cir. 1989). But, again, this is not a criminal matter, and a case involving the protection of grand jury testimony is entirely inapposite: "Grand jury proceedings, both state and federal, have long been protected by the veil of secrecy. The secrecy of the grand jury is sacrosanct." *Phillips v. United States*, 843 F.2d 438, 441 (11th Cir. 1988). "That secrecy has been codified in Fed. R. Crim. P. 6(e), which limits disclosure of grand jury proceedings and materials. [And,] secrecy of grand jury proceedings is essential to maintaining the effectiveness of the grand jury." *In re Subpoena*, 864 F.2d at 1562.

In *Hernandez,* a Court in this District initially imposed a gag order that "directed the parties and their counsel to adhere to Southern District of Florida Local Rule 77.2." 2001 WL 37126807, at *2. "[T]he Court [also] modified [a] sequestration order to preclude witnesses from speaking with each other and with the media about the case." *Id.* Despite this order and following apparent comments made to the media by at least one witness, the Court agreed to impose a gag order on the witnesses, and "added that this Order 'will be specific in nature, but will extend to the statements or information which is intended to influence public opinion or the jury regarding the merits of this case.'" *Id.* at *3. In doing so, the Court engaged in a lengthy analysis under the First and Sixth Amendments, citing *News-Journal,* to state that: "The imposition of a gag order demands that the Court balance two competing constitutional rights, specifically a trial participant's right to free speech under the Frist Amendment and a criminal defendant's right to a fair trial under the Sixth Amendment." *Id.* at *4 (citing 939 F.2d at 1512). The Court then imposed a test analyzing (1) whether there existed a substantial likelihood of prejudice to the Court's ability to conduct a fair trial; (2) whether the proposed order was narrow in scope; and (3) whether the gag order was the least restrictive alternative for guarding against potential prejudice. *Id.* at *5–7.

One can readily conclude from this analysis that the Sixth Amendment is very specific in guaranteeing a criminal defendant the right to an impartial jury that a presiding Court must enforce. Thus, the interplay between the First and Sixth Amendments will often cause one's First Amendment rights to be subordinated

because "[t]here can be no question that a criminal defendant's right to a fair trial may not be compromised by commentary, from any lawyer or party, offered up for media consumption on the courthouse steps." *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000). But no matter how sensitive the subject matter here, this case does not involve any sort of criminal prosecution.

By its text, the Seventh Amendment guarantees a civil litigant's right to a jury trial—not an impartial one. U.S. CONST. amend. VII. Now, this is by no means to suggest that civil litigants should be subject to rancorous juries. But the "authors of these guarantees," *Nebraska Press*, 427 U.S. at 561, could have chosen to include the same right to an "impartial jury" in both the Sixth and Seventh Amendments and they did not, because the equities of a criminal prosecution demand this exacting standard. Hence, Plaintiff's reliance on this Sixth Amendment line of caselaw is quite misplaced.

In short, the First Amendment does not exist as an absolute; rights push and pull against each other depending on the constitutional terrain. In criminal cases, that terrain includes the Sixth Amendment's guarantee of an impartial jury, and the competing pull of that right has long been understood to justify limits on extrajudicial speech by trial participants. But the Seventh Amendment that governs here is silent on impartiality. The authors of the Constitution chose that word carefully in the Sixth Amendment and omitted it from the Seventh, not because an impartial jury is not important in a civil case, which it is, but because the lengths a court must engage in

to protect it are less heightened in a civil context. That omission is meaningful in a case like this.

Even if, purely for the sake of argument, we were to try and apply the test for prior restraint under this line of cases involving criminal matters, because "[t]he Supreme Court and other Courts of Appeals have recognized a 'distinction between participants to the litigation and strangers to it,' pursuant to which gag orders on trial participants are evaluated under a less stringent standard than gag orders on the press," Plaintiff still cannot show an entitlement to a gag order under these circumstances. *See Brown*, 218 F.3d at 425 (citing *Gentile*, 501 U.S. at 1072–73). A gag order would, irrespective of any other element, need to be the least restrictive means of "safeguarding the defendant['s] Sixth Amendment rights." *News-Journal Corp.*, 939 F.2d at 1515 (referencing the district court's conclusion that a restrictive order was necessary because there was no other means of guarding against potential prejudice); *Brown*, 218 F.3d at 428 ("If the district court determines that there is a 'substantial likelihood' (or perhaps even merely a 'reasonable likelihood,' a matter we do not reach) that extrajudicial commentary by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available."); *Hernandez*, 2001 WL 37126807, at *6 (collecting cases). As discussed above in relation to Plaintiff's Rule 26 argument, this is obviously not the case of Plaintiff's request here (and resulting proposed order).

16

Again, Plaintiff is asking us to impose a restrictive order on "all trial participants" that does the following:

> No person covered by this Order shall make or cause to be made any public statement—including on livestreams, podcasts, social media platforms, blogs, or to the press—that:
> - Disparages, harasses, threatens, or intimidates the parties, witnesses, potential witnesses or either party's counsel;
> - Publicizes or repeats any sensitive personal allegations or private details underlying the claims in this action;
> - Publicizes or repeats any confidential settlement discussions or communications which are protected under [Federal Rule of Civil Procedure] 408, or any meet and confer communications between counsel;
> - Publicly identifies the Plaintiff or witnesses whose declarations have been filed under seal or speculates about the identity of witnesses or potential witnesses, particularly in derogatory, demeaning, or inflammatory terms;
> - Misrepresents or mischaracterizes the content of legal filings, discovery, court orders, or the positions of any party or attorney in this litigation.

[D.E. 84-5 at 2–3]. And while we do understand, as indicated above, that the protective order governing discovery was not yet entered in this case when this motion was filed, this motion was also filed shortly after Plaintiff's other motion requesting a protective order governing discovery. [D.E. 82]; [D.E. 84]. So, Plaintiff could have, for example, written a proposed gag order that did not overlap with what would be covered by a protective order governing discovery, but she did not. The now-entered protective order governing discovery, under Rule 26, addresses at least certain elements of her proposed gag order. *See supra* II.A. (comparing [D.E. 116 at 7] (protective order governing discovery) with [D.E. 84-5 at 2–3] (prohibited conduct in proposed order)).

And, for that matter, the language Plaintiff chose in her proposed gag order is quite up for interpretation. For example, in an adversarial setting such as a civil litigation, it is not beyond the pale that one party takes exception to the writing of another and has a different view of what it would mean to "mischaracterize[] the content of legal filings." [D.E. 84-5 at 3]. Albeit in a filing and thus would not be subject to the proposed gag order[5], Plaintiff has accused Defendant of exactly such mischaracterization in her reply here—which is nonetheless a public document. [D.E. 104 at 1]. Even looking at the broad-strokes terms of the request in her motion, to "restrict all trial participants . . . from making harassing, intimidating[,] and derogatory public extrajudicial statements about the parties, the witnesses, and counsel, and from publicizing confidential attorney communications" [D.E. 84 at 1], that, too, is up for interpretation. In an adversarial setting, who is to say what one party or individual would view as, for example, "derogatory" without any further definition?

This is also to say nothing of the "limitation" that the gag order apply to "extrajudicial statements," generally—without any real definition other than it be a "public statement" (which could itself technically mean any statement made in a public forum of any kind—even if not to, e.g., the press or via social media). For example, under one reading of the proposed order, a statement made by a "trial participant" to another "trial participant" in a public setting that they did not like the

---

[5] [D.E. 84 at 1] (asking for the imposition of "a protective order restricting all trial participants, including the Defendant, from making harassing, intimidating[,] and derogatory public extrajudicial statements").

tie or shoes opposing counsel was wearing could be a violation of the gag order as being a disparaging public statement.

In short, Plaintiff's proposed gag order presents far too many variables to be the least restrictive means of avoiding prejudice.  Thus, even if we could apply the same test as in, e.g., *Hernandez* or *Brown* (again, both criminal cases not actually applicable here), Plaintiff's request and proposed restrictive order are not the least restrictive means available to safeguard against prejudice (or, for that matter, narrowly-tailored).

In short, Plaintiff's theory has no limiting principle. If Rule 26 and the court's inherent authority to ensure "fair administration of justice" together justify a prior restraint on extrajudicial speech in civil litigation, then every civil litigant with a public platform is subject to speech regulation the moment opposing counsel files the right motion. There is no constitutional backstop on that reading; no impartial-jury right to provide the anchor nor any threshold of prejudice necessary to juxtapose against an identifiable constitutional guarantee. That is precisely why courts have generally looked to the Sixth Amendment's weight before imposing such orders, and one that cannot shoulder the burden sought here.

Accordingly, as Plaintiff's proposed restrictive order would be an unconstitutional prior restraint on the First Amendment rights of "all trial participants," her motion for protective order governing trial participants [D.E. 84] is hereby **DENIED**.

19

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a protective order governing trial participants is **DENIED**.  [D.E. 84].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of March, 2026.


/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

20