**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MIAMI DIVISION

JANE DOE,                                           CASE NO: 1:25-cv-20757-JB/Torres

       Plaintiff,

v.

STEVEN K. BONNELL II,

      Defendant.

_____/

## PLAINTIFF JANE DOE'S REPLY IN SUPPORT OF OMNIBUS MOTION *IN LIMINE*

Plaintiff Jane Doe, by and through undersigned counsel, respectfully submits this Reply in support of her Omnibus Motion *in Limine* ("Motion") [ECF 224]:

## INTRODUCTION

Defendant's Opposition [ECF 230] confirms the need for pretrial exclusion. Rather than identifying legitimate evidentiary disputes requiring trial context, Defendant advances arguments that misstate governing law, rely on inadmissible character evidence, and seek to introduce unreliable materials under the guise of defense evidence. Plaintiff's Motion targets discrete categories of evidence that are inadmissible as a matter of law—precisely the function of a motion in limine.

## ARGUMENT

### A.   DEFENDANT'S "IMPLIED CONSENT" THEORY IS LEGALLY INVALID

Defendant's Opposition confirms—not cures—the fundamental flaw in his position: he seeks to replace the statute's requirement of *explicit consent* with a theory of "implied consent"

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 2

derived from Plaintiff's alleged conduct, communications, or community norms. That theory is foreclosed by the plain language of the CARDII statute, and by the requisite elements of Plaintiff's three other claims under Florida law.

The CARDII statute requires two distinct inquiries: (1) whether explicit consent existed (15 U.S.C.S. §6851(a)(2)); and (2) whether Defendant knew or recklessly disregarded its absence. (15 U.S.C.S. §6851(b)(1)(A)). Defendant improperly collapses these elements. The second requirement addresses only the defendant's mental state—*not* what qualifies as consent in the first instance. Defendant's argument improperly conflates these two distinct elements.

Courts interpreting the statute have rejected similar attempts to expand consent beyond its narrow definition. In *Aaron v. Ferrell*, No. 2:23-cv-374-MHT-CWB, 2025 U.S. Dist. LEXIS 139789 (M.D. Ala. July 21, 2025), the defendant argued—just as Defendant does here—that consent could be inferred from the fact that plaintiff had voluntarily sent the video at issue to another person without restriction. The court rejected that argument outright, holding that it would not "**imply consent from silence**," and that prior disclosure to one person does not establish consent to further dissemination and that such reasoning is "**directly contrary to the plain language**" of the statute. *Id*. at \*6 -7, citing 15 U.S.C. § 6851(b)(2)(B)(emphasis added). The defendant also argued- just as Defendant does here- that consent could be inferred because plaintiff had posted other sexually themed photos and videos online. The *Aaron* court rejected this argument also: "[a]lthough it may be true that [plaintiff] posted other sexually themed photos and videos online, the reality remains that she did not choose to make public the particular video that she sent to [defendant] privately. *Id*. at \*7.

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 3

Defendant's attempt to distinguish *Aaron* based on the procedural posture of the respective cases misses the point. Its relevance lies in its statutory interpretation, not the fact that it followed a bench trial. Indeed, even after considering the evidence of "implied consent" the court rejected that theory as a matter of law- confirming that such evidence is not admissible to support a legally invalid theory.

Defendant's reliance on *Doe v. Stevenson*, No. 24-CV-02778, 2025 WL 1165660 (N.D. Ill. Apr. 3, 2025), is likewise misplaced. *Stevenson* addressed pleading sufficiency as to mental state; not consent.

Defendant also mischaracterizes the preliminary injunction hearing by quoting a hypothetical posed by the Court while omitting the critical clarification that followed. (Opp. at 4). As Plaintiff's counsel explained, the testimony was that Plaintiff's former boyfriend consented to dissemination, whereas Plaintiff did not consent to Defendant's disclosure of the Video. The Court expressly acknowledged that distinction, noting that "if in fact she didn't consent, then it makes a difference." (ECF 90, Prelim. Inj. Hr'g Tr. at 117).

Defendant's assertion that § 6851(b)(2)(B) "does not even apply" is likewise incorrect and rests on the same mischaracterization of the facts. Instead, the evidence reflects that Plaintiff did not engage in any nonconsensual dissemination.

Nor is Defendant's attempt to draw a false equivalence persuasive. Plaintiff's disclosure involved a single, consented-to transmission in which she was the *only* identifiable person. Defendant's conduct, by contrast, involved dissemination without Plaintiff's consent—the precise

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 4

harm the statute is designed to prevent. Thus Defendant's claim that Plaintiff did "the exact same thing" is baseless and frivolous. (Opp. at 6).

Finally, Defendant's suggestion that the jury must hear this evidence ignores the governing legal framework. Where the statute expressly forecloses an inference, evidence offered solely to support that inference is properly excluded. Defendant cannot circumvent the requisite of explicit consent by repackaging the same as "state of mind."

**B. RULE 412 AND RULE 403 BAR DEFENDANT'S ATTEMPT TO INTRODUCE SEXUAL HISTORY EVIDENCE**

Defendant's argument that Rule 412 does not apply is incorrect. He relies on *Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997), to contend the Rule is limited to rape or sexual harassment cases. (Mot. at 7). But even under Defendant's own framing, this case qualifies. Plaintiff asserts a claim under Florida's sexual cyberharassment statute, Fla. Stat. § 784.049—*i.e.*, a sexual harassment claim.

In any event, *Judd* confirms that Rule 412 applies broadly to "any civil proceeding involving alleged sexual misconduct," not just traditional rape cases. The evidence Defendant seeks to introduce falls squarely within Rule 412(a), which bars evidence offered to prove a victim's "other sexual behavior" or "sexual predisposition." Fed. R. Evid. 412(a). As the Advisory Committee explains, the Rule is designed to protect victims from invasion of privacy, embarrassment, and sexual stereotyping, and excludes such evidence—whether offered substantively or for impeachment—absent narrow exceptions not applicable here. Fed. R. Evid. 412 advisory committee's note (1994).

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 5

Even independent of Rule 412, the evidence Defendant seeks to introduce is inadmissible under Rules 401 and 403. Defendant does not identify any permissible purpose for this evidence other than to argue that Plaintiff's alleged prior conduct makes it more likely she consented or is less deserving of protection. That is precisely the type of character-based reasoning Rules 403 and 412 prohibit. Defendant's claim that Plaintiff "placed her sexual history at issue" by describing her relationship context does not open the door to wholesale inquiry into her private sexual conduct, both before and after her only intimate encounter with the Defendant.

The evidence Defendant identifies—Plaintiff's alleged prior sexual communications, her alleged solicitation of explicit material, and her prior relationships—falls squarely within Rule 412's prohibition. These are quintessential examples of "other sexual behavior" and alleged "predisposition," and Defendant identifies no applicable exception under Rule 412(b).

Defendant's argument also fails as a matter of substantive law. The CARDII statute expressly provides that "consent to the creation of a depiction does not constitute consent to its distribution." 15 U.S.C. § 6851(b)(2)(A). Thus, even if Plaintiff engaged in consensual sexual conduct with Defendant, or agreed to or even suggested the creation of the Video, that fact has no bearing on whether she consented to its later dissemination. Defendant's reliance on such evidence therefore serves no permissible purpose and only underscores its inadmissibility.

Defendant's reliance on Plaintiff's preliminary injunction testimony is likewise misplaced. That proceeding was not before a jury and was governed by different evidentiary considerations. Courts routinely consider a broader range of evidence at the preliminary injunction stage, including material that would be inadmissible at trial. The question here is what the jury may properly

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 6

consider under Rules 412, 402, and 403—not what was elicited in a non-jury preliminary proceeding.

### C. DEFENDANT'S SELF-GENERATED MATERIALS ARE NOT ADMISSIBLE EVIDENCE AND CANNOT BE SHIELDED BY PROCEDURAL MISCHARACTERIZATIONS

Defendant's Opposition confirms the unreliability of his proffered materials.

*First*, Defendant misstates the governing standard. While Rule 901 requires only a prima facie showing, that showing still requires reliable evidence that the item is what it purports to be. The "prima facie" threshold is not a formality—it requires sufficient indicia of authenticity such that a reasonable juror could find the evidence genuine. Defendant cannot meet even that threshold where the materials are admittedly reconstructed, incomplete, and derived from unverifiable sources.

Defendant's reliance on his own declarations is insufficient. Courts permitting authentication through testimony do so where a witness identifies existing, contemporaneous records—**not litigation-created reconstructions where the underlying data is missing or was never preserved.** Defendant's reliance on *Carroll v. ATA Retail Servs., Inc.*, 747 F. App'x 762 (11th Cir. 2018), is therefore misplaced. In *Carroll*, the court conducted an evidentiary hearing, found no spoliation or bad faith, and only then permitted authentication through testimony. *Id*. at 764. Here, no such hearing has occurred, no findings have been made, and spoliation and data integrity issues remain disputed. Defendant admits there is "no original file" and that the materials were reconstructed—facts not present in *Carroll*. Thus, unlike *Carroll*, this case presents not missing originals, but manufactured substitutes whose accuracy has never been established.

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 7

Defendant's argument also ignores the critical distinction between authenticating existing evidence and manufacturing evidence *post hoc*. Plaintiff's expert identified unrebutted deficiencies—including absence of hash verification, missing metadata, broken chain of custody, and inconsistencies in timestamps and identifiers. These defects go to admissibility, not weight.

*Second*, Defendant's own admissions independently defeat admissibility. He concedes that "there is no original file" and that he "artificially creat[ed] a file by reconstructing a log," including through the use of artificial intelligence. (ECF 139 at 13; 181 (audio file)). A reconstructed, AI-assisted exhibit is not a native record and is not independently reliable evidence. Presenting such materials to a jury creates a substantial risk that manufactured content will be mistaken for authentic evidence—precisely the prejudice Rule 403 is designed to prevent.

*Third*, Defendant's attempt to recast these issues as an untimely "spoliation" argument—and to claim waiver—is a red herring. Plaintiff does not seek sanctions here; she seeks exclusion of unreliable evidence under Rules 401, 403, and 901, which is the proper function of a motion *in limine*.

In any event, the record forecloses any claim of waiver. Plaintiff could not move for spoliation earlier because the factual record—particularly Defendant's deposition—has not been developed. As reflected in Plaintiff's Rule 56(d) motion and supporting declaration, discovery was constrained by the delayed protective order, Defendant's deficient productions, his obstruction of a motion to compel, and the stay of his deposition—all of which prevented Plaintiff from developing the necessary record. (*See* ECF 216, 216-1). A spoliation motion filed earlier would have been premature.

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 8

Courts recognize that spoliation determinations should follow—not precede—factual development regarding preservation and collection. *See, e.g., Ward v. Copenhaver*, No. 3:22-cv-00250-LPR-BBM, 2025 U.S. Dist. LEXIS 205719, at *27–30 (E.D. Ark. Oct. 20, 2025). Defendant's waiver argument improperly seeks to penalize Plaintiff for declining to file a premature motion while simultaneously relying on an undeveloped record of his own making. Defendant cannot create the very conditions that prevent factual development and then claim waiver based on that absence.

Moreover, Defendant cannot benefit from his own misconduct: failing to properly preserve evidence, obstructing document production and deposition discovery, and then attempting to rely on self-created reconstructions as definitive proof.  Because Defendant's materials lack verifiable authenticity, are internally inconsistent, and would improperly invite the jury to treat speculative reconstructions as conclusive proof, they should be excluded. At a minimum, Defendant must be precluded from characterizing them as complete, definitive, or dispositive evidence of non-disclosure.

### D.  DEFENDANT'S "CATFISHING" AND THIRD-PARTY ARGUMENTS REMAIN IRRELEVANT

Defendant's Opposition confirms that his "catfishing" theory is a legal distraction. He does not dispute that he transmitted the Video to an account he believed belonged to the intended recipient. Under the statute, that is sufficient. Defendant instead argues that the identity of the person behind the account and the timing of the transmission are "critical." They are not. Whether a third party accessed the account does not negate disclosure, and Defendant's attempt to relitigate

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 9

timing and jurisdictional issues through evidentiary arguments only underscores why these issues should not be presented to the jury in a misleading manner.

*First*, the premise itself is disputed. Defendant's asserted April 2022 transmission date rests on the same unreliable and inconsistent Discord materials addressed above. Plaintiff's forensic expert identified indicia of tampering and logical inconsistencies within those records, undermining any claim that they conclusively establish timing.

*Second*, even accepting Defendant's timeline arguendo, his argument fails as a matter of law. Liability does not turn solely on the initial transmission date. The evidence shows that the Video remained continuously accessible on Discord's CDN infrastructure—and publicly accessible via persistent URLs and search indexing—well after October 1, 2022, when CARDII took effect. Thus, Defendant's conduct resulted in post-enactment dissemination regardless of when the Video was first sent.

*Third*, Defendant's focus on "Solo" ignores independent evidence that Defendant transmitted the Video to Abbymc. Defendant attempts to negate that evidence through self-generated logs that are incomplete, inconsistent, and incapable of reliable authentication. As Plaintiff's expert explains, those materials cannot establish that no such transmission occurred. (ECF 139-1).

Finally, Defendant's attempt to inject accusations regarding Plaintiff's prior filings is irrelevant to admissibility and serves only to inflame and distract. The issue before the Court is whether Defendant's proffered evidence is reliable and admissible—not whether Defendant disputes Plaintiff's characterization of prior events.

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 10

In short, evidence concerning "Solo" is not dispositive, and Defendant's argument rests on both disputed facts and an incorrect legal premise. At a minimum, Defendant should be precluded from presenting such evidence as establishing any conclusive or jurisdictional bar.

## CONCLUSION

For these reasons, and those set forth in Plaintiff's Motion, the Court should grant Plaintiff's Omnibus Motion *in Limine* in full.

Date: April 20, 2026

| | |
|---|---|
| **JSP LAW, LLC** | **SANCHEZ-MEDINA GONZALEZ** |
| Joan Schlump Peters | **LAGE GOMEZ & MACHADO, LLP** |
| (admitted *pro hac vice)* | CARLOS A. GARCIA PEREZ |
| 838 Neapolitan Way, #91 | Florida Bar No. 106895 |
| Naples, FL 34103 | GUSTAVO D. LAGE |
| Tel. 305-299-4759 | Florida Bar No.  972551 |
| Email: petersjoan@bellsouth.net | 201 Alhambra Circle, Suite 1205 |
| | Coral Gables, Florida, 33134 |
| | Tel.: (305) 377-1000 |
| | Primary E-Mail: cgarciaperez@smgqlaw.com |
| | Primary E-Mail: glage@smgqlaw.com |
| | Counsels for Plaintiff |

        */s/ Gustavo D. Lage*

By:_____
    GUSTAVO D. LAGE
    CARLOS A. GARCIA PEREZ
    Attorneys for Plaintiff

DOE v BONNELL
CASE NO: 1:25-cv-20757-JB/Torres
Page 11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 20, 2026 a true and correct copy of the foregoing was

served on all parties via the CM/ECF filing portal to all counsel of record.


By: */s/ Gustavo D. Lage*

GUSTAVO D. LAGE
Attorney for Plaintiff