**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(MIAMI DIVISION)**

JANE DOE,

       Plaintiff,

v.

STEVEN K. BONNELL II,

       Defendant.

_____/

CASE NO: 1:25-cv-20757-JB/Torres

**PLAINTIFF JANE DOE'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jane Doe, by and through the undersigned counsel, hereby opposes Defendant's

Motion for Summary Judgment (ECF 210) ("Motion" or "MSJ"), and respectfully states as follows:

**MEMORANDUM OF LAW**

**II.     INTRODUCTION**

Defendant's Motion is little more than a recycled version of his Motion to Dismiss for Lack

of Subject Matter Jurisdiction (ECF 132), now repackaged under Rule 56. The Motion fails for the

same reasons cited in Plaintiff's Opposition to the Motion to Dismiss (ECF 139), and for additional

reasons that have crystallized during discovery. Tellingly, Defendant does not move for summary

judgment on the merits of the disclosure itself as it is impossible to dispute that he non-

consensually shared Plaintiff's Video. Instead, he seeks judgment solely on his argument that the

Court lacks subject matter jurisdiction under CARDII. That argument fails twice over: because (i)

Defendant transmitted the Video to Abbymc at least thirteen months after CARDII's October 1,

2022 effective date; and (ii) although Defendant's transmission to "Rose" occurred on April 9,

2022, the Video remained continuously accessible on Discord's CDN servers and on Rose's

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

Discord account — and was thus made accessible by Defendant within the meaning of 15 U.S.C. § 6851(a)(4) — well past CARDII's effective date.

On the first jurisdictional ground, Defendant's own evidence — including the timing of his November 3, 2023 communications with Abbymc, his deposition testimony, and Abbymc's corroborating text message — creates an unmistakable factual dispute as to whether Defendant transmitted the Video to Abbymc. The exhibits Defendant relies on to argue otherwise — including the Excel spreadsheet he characterizes as a "communication log" — are the subject of unrebutted forensic analysis by Plaintiff's expert, Jesus Peña, demonstrating that they were artificially created after this litigation began and that Defendant's underlying production cannot be authenticated. Defendant has not retained a rebuttal expert, deposed Peña, or moved to exclude him under Daubert; the deadlines for all three have expired. Peña's findings therefore stand as the only expert evidence in the summary-judgment record.

On the second jurisdictional ground, CARDII defines "disclose" to include "mak[ing] accessible." 15 U.S.C. § 6851(a)(4). Peña has established that Defendant's transmission to Rose placed the Video on Discord's CDN, where it remained continuously accessible — to Rose's account and (until December 2023) to the public via permanent URL — *until Defendant deleted it in November 2024, more than two years after CARDII's effective date.*

The Court has already found that "the evidence establishing a definitive timeline as to what Defendant did or did not do and when is murky at best." (ECF 119, p. 8.) The forensic record has only grown murkier since. Viewed in the light most favorable to Plaintiff, the evidence establishes — or at minimum places in genuine dispute — that Defendant transmitted the Video to Abbymc

2

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

after CARDII's effective date and that his disclosure to Rose remained continuously accessible thereafter, precluding summary judgment.[1]

## II.   STATEMENT OF FACTS

The Parties met online and began communicating in 2019. On or about September 12, 2020, they met at a hotel in Miami, where Defendant recorded videos of their sexual encounter (the "Video"). Doe Decl., dated Apr. 3, 2025, ECF 21-1, ¶ 5.[2]

On April 9, 2022, Defendant transmitted the Video as a Discord attachment to a Discord user with the screen name "Rose" — without Plaintiff's knowledge or consent. Peña Report dated Oct. 16, 2025, Concl. 1, Ex. B to Peters Decl[3].; Bonnell Decl., ECF 42-1, ¶ 9. Plaintiff's expert, Jesus Peña, has concluded under FRCP 26(a)(2)(B) that, after the April 9, 2022 transmission, the Video remained continuously stored on Discord's core and Content Delivery Network ("CDN") servers and accessible to anyone with access to Rose's Discord account, until Defendant deleted it in November 2024 — over two years after CARDII's October 1, 2022 effective date. Peña Report, Concl. 3, 7. From April 2022 through approximately December 2023, the Video was also publicly accessible via a permanent URL on Discord's CDN and was reachable through search-engine

---

[1] Plaintiff will separately file, by May 18, 2026, a motion for spoliation sanctions seeking, among other relief, an adverse-inference instruction and preclusion of Defendant's Exhibits A, B, C, E, and F to ECF 213. Because each of those exhibits is essential to Defendant's showing on this Motion, granting any such relief would materially alter the summary-judgment analysis. Plaintiff respectfully requests that the Court deny the Motion or, in the alternative, defer ruling pending resolution of the forthcoming spoliation motion

[2] Defendant's Motion attempts to falsely impugn Plaintiff by representing that Plaintiff had multiple prior intimate partners with whom she recorded videos and then shared them with Defendant. Mot. at 3. The record establishes the opposite. Plaintiff has affirmatively pleaded, and testified at deposition, that she had a *single* prior sexual partner — her then-boyfriend — before the September 12, 2020 encounter with Defendant, and only shared content including the boyfriend with his consent. Doe Decl., dated Apr. 3, 2025, ECF No. 20-1, ¶ 5; Doe Decl., dated May 2, 2025, ECF No. 49-1, ¶¶ 5, 7; TR PI Hearing, ECF No. 90 pp. 11, 13.

[3] All references to "Peters Decl." that are not accompanied by an ECF number refer to the Declaration of J. Peters dated May 8, 2026, filed separately on this same date in support of this Opposition.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

indexing. *Id.* Concl. 4, 7, 8. Defendant did not delete the Video until November 2024, after the KiwiFarms leak described below. *Id.* Concl. 3; Bonnell Decl., ECF 42-1, ¶ 13.

On November 3, 2023 — over thirteen months after CARDII's effective date — Defendant transmitted the Video to a third party with the screen name "Abbymc." Abbymc Decl., ECF 49-2, ¶¶ 6-7; Abbymc Decl. dated Apr. 30, 2026, ¶¶ 6-7, Ex. A to Peters Decl. At 10:41 a.m. that morning, Abbymc sent a text message to a friend confirming that Defendant had sent her sexually explicit videos of "cheiry and pxie" (Plaintiff's screen name). ECF 86-1; Abbymc Apr. 30, 2026 Decl., Ex. A. After this lawsuit was commenced, Defendant deleted all his Discord direct messages with Abbymc, including the transmission of the Video. Abbymc Decl., ECF 49-2, ¶ 9.

On November 29, 2024, twenty-nine of Defendant's files — including the Video — were posted on KiwiFarms.com by an account named "SoloTinyLeaks." Peña Report, Concl. 2, Ex. B to Peters Decl.; Doe Decl., ECF 21-1, ¶ 7. The leaked Video spread to additional pornography websites with captions identifying both Defendant and Plaintiff. *Id.*[4]

## LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The court must view the evidence "in the light most favorable to the nonmoving party," and "[c]redibility determinations, the weighing of the evidence, and the

---

[4] Defendant's Motion for Summary Judgment includes, at pages 3 - 9, an extensive narrative of factual assertions concerning Plaintiff's prior intimate communications and conduct — including her alleged suggestion that the Video be recorded, her alleged sharing of explicit content with Defendant prior to September 12, 2020, and her subsequent transmission of the Video to her then-boyfriend. These assertions are immaterial to the elements of Plaintiff's CARDII claim as a matter of statutory text. See 15 U.S.C. § 6851(b)(2)(A) (consent to creation of a depiction "shall not establish that the person consented to its distribution"); § 6851(b)(2)(B) (prior disclosure "to someone else shall not establish that the person consented to the further disclosure" by the alleged violator). They are also the subject of Plaintiff's pending Omnibus Motion in Limine (ECF 224), which seeks their exclusion under FRE 412 and 403. Plaintiff does not respond to those factual assertions on the merits in this Opposition, since they are not relevant to the sole issue of jurisdiction, without waiver of her objections to their admissibility.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Critically, summary judgment cannot be granted on the basis of unauthenticated evidence, evidence that is the subject of credible spoliation allegations, or evidence whose authenticity is in genuine dispute. *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) ("At the summary judgment stage, the spoliation doctrine provides a basis for denying a motion for summary judgment where there is sufficient probative evidence for a jury to find an act of spoliation and to draw the inference derived from such an act. A factual finding of spoliation is necessary only where the court seeks to impose a particular sanction beyond submitting the issue to the jury."). Where the authenticity, accuracy, or chain of custody of a movant's exhibits is contested, the dispute is for the jury. *Anderson*, 477 U.S. at 255.

## ARGUMENT

### III.   DEFENDANT'S DISCLOSURE OF THE VIDEO TO ABBYMC IS A DISPUTED ISSUE OF FACT PRECLUDING  SUMMARY JUDGMENT

Viewing the facts and evidence in the light most favorable to Plaintiff, the evidence establishes that Bonnell transmitted the Video to Abbymc after the effective date of CARDII, or at the very least, that this is a disputed issue of a material fact precluding summary judgment. Moreover, Bonnell's assertion that he never sent the Video to Abbymc is in dispute,  not supported, and the evidence he submitted and relied on is internally inconsistent and appears to have been tampered with, and is thus unreliable and inadmissible.

A declaration from Abbymc, dated May 1, 2025, was submitted to the Court in support of Plaintiff's Motion for Preliminary Injunction. ECF 49-2. Abbymc's declaration asserts that "[o]n or about November 3, 2023, Destiny shared through a Google drive link a sexually explicit video

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

that included himself and another streamer, Pxie (the Plaintiff in this action). I recognized Pxie in the video because I had seen her posts on Instagram and had seen her on Destiny's live streams and on her own live streams." Id. ¶6. Abbymc's declaration also stated "[o]n or about November 3, 2023, I messaged a friend of mine and told him that Destiny had sent me the above mentioned sexually explicit video of himself and another woman, and that I had recognized the woman as the streamer Pxie." Id. ¶7. Abbymc sent the message to her friend at **10:41 a.m. on November 3, 2023**: "*btw destiny sends me sex tapes all the time and he thinks idk the girls in them but I have videos of him fucking cheiry and pxie like lmfao he just sent me another one haven't opened it let's see who he's fucking this time.*" (ECF 86-1 (emphasis added).) The 10:41 a.m. timestamp is visible on the face of the screenshot of the message, has been in the record since June 2, 2025 (ECF 86), and is now authenticated by Abbymc's April 30, 2026 declaration. See Ex. A to Decl. Peters.

Defendant asks the Court to find as an undisputed fact that the only two Google Drive links Defendant sent Abbymc were videos of "Peach," not Plaintiff. Mot. pp. 12-13. But the chat thread between Abbymc (inbloom1991) and Defendant (omnidestiny) on which Defendant relies shows those two Google Drive links being transmitted at **14:39** — that is, **2:39 p.m. on November 3, 2023**. (ECF 213-5, p. 3). Bonnell's deposition testimony confirmed that the alleged videos of Peach were sent to Abbymc at 2:39 p.m. on November 3, 2023. Bonnell Dep. Tr., p. 220, lines 24-25, p. 221, lines 1-3, Ex. C to Peters Decl.

This timing inconsistency is dispositive. Abbymc's text message at **10:41 a.m.** cannot, as a matter of basic chronology, be referring to the Peach Google Drive links Defendant claims he sent at **2:39 p.m.** — nearly four hours later. When Abbymc told her friend at 10:41 a.m. that Defendant had sent her a video of Pxie she was necessarily describing a different transmission that

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

occurred earlier than 10:41 a.m. That earlier transmission is the one Plaintiff alleges, and the one that gives rise to CARDII jurisdiction.

The timing inconsistency, standing alone, creates a genuine dispute of material fact and defeats summary judgment. *Anderson*, 477 U.S. at 255 (credibility, weight, and inferences are jury functions). At a minimum, a reasonable jury could find that: (a) Defendant transmitted a sexually explicit video of Plaintiff to Abbymc before 10:41 a.m. on November 3, 2023; (b) that earlier transmission is the one Abbymc references in her 10:41 a.m. message to her friend; and (c) Defendant's two later Peach links at 2:39 p.m. (assuming *arguendo* they were Peach videos) — were separate, additional transmissions.

In addition to the timing inconsistency, Bonnell's Motion contains additional short-comings. Bonnell contends that because the original filename of the Video, as revealed by SoloTinyleaks (see ECF 213-4), is not the same as any of the filenames that he sent to Abbymc (see ECF 213-5), that proves that he never sent the Video to Abbymc. (Mot. pp. 12-13). But Bonnell is comparing apples to oranges, because the two "filenames" in ECF 213-5 (see also ECF 132-6) that he purportedly sent to Abbymc on November 3, 2023 are NOT filenames. Instead, they are Google Drive links which merely point to *unknown* file names. See Decl. J. Peña, ¶22, ECF 139-1. Thus this evidence does not support Bonnell's contention that he did not send the Video to Abbymc.

Defendant also claims that his spreadsheet (ECF 213-5) displays the creation date of each file that he sent to Abbymc, and since all of the files reflect creation dates in 2023, they cannot be the Video of Plaintiff, which was created in 2020. Mot. p. 13. That argument is forensically incorrect. A filename is *not* a reliable indicator of when underlying media content was originally recorded. Peña Decl., dated May 7, 2026, ¶¶ 7-10 (filed separately in support of this Motion). The

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

2023 date strings in Defendant's filenames reflect two distinct file-handling artifacts — the default naming structure of a Google Pixel device (a mutable attribute that can be rewritten on export, copying, or transfer) and the "SPOILER_" prefix added by Discord at the time an attachment is flagged for transmission — neither of which establishes when the underlying content was originally recorded. *Id.* ¶ 9. The actual creation date is determined by metadata embedded within the MP4 file itself, which Defendant failed to produce. *Id.* ¶¶ 8, 10. Thus, the filenames in Bonnell's spreadsheet tell *nothing* about when the underlying content was recorded. *Id.*¶ 9.

**IV.     DEFENDANT'S "COMMUNICATION LOGS" ARE UNAUTHENTICATED, SELF-CREATED, AND THE SUBJECT OF UNREBUTTED FORENSIC EVIDENCE OF SPOLIATION.**

Even setting aside the timing inconsistency and other short-comings, Defendant cannot obtain summary judgment on the basis of evidence that is unauthenticated, self-created, forensically incomplete, and bearing documented signs of post-export manipulation in the Abbymc/Peach exhibits. *See, e.g., Anderson*, 477 U.S. at 255; *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343. Jesus Peña — a forensic specialist with over twenty-four years of experience and who has testified more than fifty times — has identified concrete and unrebutted indicia of unreliability in the very exhibits Defendant submits in support of the Motion.

**A.     The Excel Spreadsheet Is Self-Created and Has No Authenticated Source.**

Bonnell claims that his communication logs with Abbymc conclusively establish that he never transmitted the Video to her at any time. (Mot. p. 12). But these communication logs, which purportedly "capture every media file Bonnell ever sent to Abbymc" (id.), are nothing other than an Excel spreadsheet, self-servedly *created by Defendant*. See ECF 213-5, p. 2. Exhibit E to Defendant's MSJ Declaration (ECF 213-5, formerly ECF 132-6) is not a Discord export. It is an Excel spreadsheet that Defendant prepared after this litigation began. Communication logs would

8

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

have consisted of a copy of his Discord exports in HTML; instead, this exhibit is evidence *artificially created* by Bonnell himself. There is *no way* to verify whether the list of media files purportedly sent to Abbymc is complete or accurate; the evidence therefore should be disregarded.[5]

Defendant has admitted on a public livestream that he "artificially creat[ed]" the file: "*Information is lost! There is no original file! I'm trying to reconstruct a file! I'm artificially creating a file by reconstructing a log of stuff, that's what I'm trying to do…*" See ECF 150 (audio file). Defendant also admitted to using artificial intelligence to format data into the spreadsheet. Id. A self-created spreadsheet, prepared after litigation, generated in part by AI, does not satisfy Federal Rule of Evidence 901's authentication requirement and cannot, as a matter of law, support summary judgment. *See, e.g., Anderson*, 477 U.S. at 255; *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343.

**B.**     **The URLs in Defendant's Spreadsheet Do Not Match the URLs in His Underlying Chat Threads.**

Peña has documented multiple character-level differences between the two Google Drive URLs Defendant claims he sent to Abbymc on November 3, 2023 (ECF 213-5) and the URLs in his alleged chat thread with Peach (ECF 213-6). See Peña Decl., ECF 139-1, ¶ 20; Peña Report dated Oct. 16, 2025, Concl. 11, Ex. B to Peters Decl. (this URL discrepancy reflects a "misrepresentation of material evidence which gave appearance of spoliation"). These are not transcription errors. Peña has identified, among other things, a lowercase "l" versus a numeral "1";

---

[5] Moreover, Bonnell's assertion that "[t]he entirety of Bonnell's relevant communication logs have been filed with the Court," is simply not true. Mot. p. 13 (emphasis added). Bonnell filed only *one* page of his communication logs with Abbymc (ECF 213-5, p. 3)– but they communicated extensively between March 2023 and May 2025, as evidenced by the documents produced by Defendant during the course of discovery. See Peters Decl., ¶ 4. Indeed, Defendant produced over 400 pages of his communications with Abbymc (in PDF format without any hash tags, metadata or other essential forensic data), none of which were filed with the Court. Id.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

a capital "V" versus a lowercase "t"; and a space versus an underscore in otherwise identical-looking URLs. Id. Defendant's claim that he sent "the exact same Google Drive links" to both Abbymc and Peach (Bonnell Decl., ECF 213, ¶ 12) is therefore false on the face of his own exhibits — and his contention that the videos he sent to Abbymc were the same videos he sent to Peach (and were therefore videos of Peach, not Plaintiff) is unsupported.

### C.      The Timestamps Contain a Documented 10-Hour Anomaly.

The two Google Drive links at the bottom of  Defendant's self-created spreadsheet (ECF 213-5, p. 2) bear timestamps of "4:39," while the same entries on the chat thread on the next page show "14:39" — a 10-hour discrepancy that does not correspond to any standard time-zone conversion (Eastern to UTC is 4 or 5 hours). See Peña Decl., ECF 139-1, ¶ 19; Peña Report dated Oct. 16, 2025, Concl. 11, Ex. B to Peters Decl. This anomaly is not merely cosmetic, rather it is an indicator of post-export manipulation.

### D.      Defendant's Production Was Not Forensically Preserved and Is Missing Critical Timestamp Metadata.

Defendant's entire document production, including the exhibits he relied on for his MSJ are forensically incomplete in a way that defeats the very chronological certainty Defendant claims it establishes. Defendant produced his Discord chats by exporting them through a third-party tool (Discord Chat Exporter) to HTML, then converting the HTML to a single approximately 2,400-page Bates-stamped PDF without the standard e-discovery load file (DAT/OPT) that would have preserved the underlying images, natives, extracted text, and metadata. See Peña Am. Decl., ECF 147-1, ¶ 4. The conversion process stripped the "child message timestamps" — the precise, message-by-message time stamps that Discord groups visually but stores as metadata — leaving Plaintiff (and the Court) with only a partial chronology. Id.; Peña Report, Oct. 16, 2025, Concl.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

10, Ex. B to Peters Decl. The result, in Peña's words, is a "failed production which cannot be relied upon and/or remedied," and which "presents an ongoing issue with respect to further discovery reliant on any data from what the Defendant 'preserved.'" Id. ¶ 5.

These forensic problems are not peripheral — they are central to this case. Defendant's Rule 56 evidence consists of (i) a self-created, AI-formatted Excel spreadsheet (Ex. E to ECF 213); (ii) chat-thread exhibits whose URLs do not match across Defendant's own productions (Exs. E and F to ECF 213); and (iii) a Discord production that has been stripped of its critical chronological metadata and was never authenticated by cryptographic hash. Peña Report, Oct. 16, 2025, Ex. B to Peters Decl. Thus, the documents cannot be properly authenticated under Federal Rule of Evidence 901, and where the authenticity, accuracy, or chain of custody of a movant's exhibits is genuinely disputed, summary judgment is improper. *Anderson*, 477 U.S. at 255 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions").

#### E.    Defendant's Forensic Challenge to Plaintiff's Evidence Is Both Absent from the Motion and Forfeited.

Defendant's Motion does not address — much less contest — Peña's three forensic submissions. Defendant cannot cure these gaps on reply. The deadlines for retaining a rebuttal expert under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), for deposing Peña, and for moving to exclude Peña under *Daubert* have all expired under the Court's scheduling orders. Defendant himself successfully opposed Plaintiff's motion to extend the discovery deadline (ECF 196), and cannot now be heard to complain about the expiration of those deadlines. Defendant therefore cannot introduce a competing expert opinion or new affidavit testimony in reply.

11

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

The legal consequence is straightforward. On a Rule 56 record, the non-movant's unrebutted expert evidence — particularly on the contested question of whether the movant's own exhibits are authentic and reliable — creates a genuine dispute of material fact that defeats summary judgment. The movant cannot prevail by ignoring the non-movant's expert; the movant must put forward contrary evidence or accept the non-movant's evidence as true for purposes of the motion. *Anderson*, 477 U.S. at 255. Whatever argument Defendant offers in reply about the forensic record will remain just that — argument unsupported by competing expert opinion — and on this record, the only expert evidence on Peña's contested forensic findings is Peña's own.

**V.      ABBYMC'S TESTIMONY AND THE NOVEMBER 3, 2023 TEXT MESSAGE ARE PROPERLY CONSIDERED ON SUMMARY JUDGMENT.**

Defendant asks the Court to disregard Abbymc's declaration (ECF 49-2) and the November 3, 2023 text message (ECF 86-1) on three grounds: (i) Plaintiff's counsel allegedly obstructed his ability to subpoena Abbymc; (ii) the text message is unauthenticated; and (iii) the message is hearsay. None of these arguments has merit.

**A.      Defendant Was Not Obstructed; He Failed To Pursue Available Enforcement Mechanisms.**

Plaintiff has fully addressed Defendant's "obstruction" argument in her Opposition to Defendant's Motion *in Limine* (ECF 231) and the supporting Declaration of J. Peters (ECF 231-1), and incorporates those filings by reference here. The argument fails for two dispositive reasons.

*First*, the factual premise is incorrect. Plaintiff identified Abbymc in her initial disclosures on April 4, 2025, submitted Abbymc's declaration on May 2, 2025 (ECF 49-2), and submitted the supporting screenshot on June 2, 2025 (ECF 86) — all of which placed Defendant on notice of Abbymc's identity and the substance of her testimony. Defendant himself had a personal

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

relationship with Abbymc beginning in early 2023 and continued communicating with her well after this litigation began and as recently as May 2025. *See* Peters Decl., ECF 231-1, ¶ 7. Plaintiff's counsel does not represent Abbymc, was not authorized to accept service on her behalf, and never advised her to evade service. *Id.* ¶¶ 8, 10–11; Abbymc Decl. ¶ 10, Ex. A to Peters Decl. Plaintiff's counsel provided Abbymc's contact information as it became available — including by clarifying when, due to a period of homelessness, she did not have a stable residential address. ECF 231-1, ¶ 7. Plaintiff never provided a "fake" address. *Id.* ¶¶ 10–11.

*Second,* and dispositively, <u>Defendant successfully served Abbymc with a subpoena duces tecum on November 21, 2025 — almost a full month before the discovery deadline</u>. (ECF 212-10.) When Abbymc did not produce documents, the Federal Rules provided Defendant with specific remedies: a motion to compel under Rule 45(d)(2)(B)(i) or contempt under Rule 45(g). Defendant pursued neither. He also did not subpoena Abbymc for a deposition, and he aggressively opposed Plaintiff's motion to extend the discovery deadline (ECF 196). Having failed to enforce his own subpoena and having opposed any extension that would have allowed further pursuit, Defendant cannot now manufacture prejudice through his own inaction and use that purported prejudice to exclude otherwise admissible evidence. *See Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1306 (M.D. Fla. 2023) (rejecting attempts to raise discovery prejudice after discovery closed where the issue resulted from the moving party's own delay). The Federal Rules do not require Plaintiff or her counsel to ensure a non-party's compliance with Defendant's subpoena.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

### B.      The November 3, 2023 Text Message Is Authenticated.

The Eleventh Circuit makes clear that the burden to authenticate evidence is "*not high*" and requires only a *prima facie* showing that the evidence is what it purports to be. *United States v. Caldwell*, 776 F.2d 989, 1001 (11th Cir. 1985). That standard is satisfied through testimony of a witness with personal knowledge or through the item's distinctive characteristics. Fed. R. Evid. 901(b)(1), (4); *United States v. Lanzon*, 639 F.3d 1293, 1301–02 (11th Cir. 2011) (authentication satisfied by testimony and contextual indicia of online communications). Moreover, on a motion for summary judgement, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.

Here, Abbymc has now twice attested under penalty of perjury — in her May 2, 2025 declaration (ECF 49-2, ¶ 7) and in her April 30, 2026 declaration (¶ 7) (Ex. A to Peters Decl.) — that she personally sent the message reflected in the exhibit, retained a copy of the messages, and that the screenshot is a true and correct copy of those messages. Her declarations describe the same communication to a friend regarding Defendant's transmission of sexually explicit videos on or about November 3, 2023. The April 30, 2026 declaration attaches the screenshot[6] as Exhibit A to the Statement. The exhibit (ECF 86-1) corresponds directly to that sworn testimony and meets Rule 901's threshold many times over. Any remaining disputes go to weight, not admissibility.

To the extent Defendant argues that Plaintiff "merely filed" the exhibit and did not authenticate it (Mot. p. 19), that argument is foreclosed by the now-twice-sworn testimony of Abbymc — the actual author of the message — that she personally sent it and that the screenshot

---

[6] The screenshot that is attached as Exhibit A to Abbymc's declaration is the complete screenshot as redacted by her. That same screenshot was submitted at ECF 86-1, but was further redacted by counsel. *See* Decl. Peters, ¶3.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

is true and correct. That is precisely the personal-knowledge authentication required by Rule 901(b)(1).

### C.     The November 3, 2023 Message Is Not Inadmissible Hearsay.

Defendant argues that Abbymc's November 3, 2023 text message is inadmissible hearsay. The argument fails for two independent reasons.

*First*, the message is offered for a non-hearsay purpose: to corroborate Abbymc's sworn declarations and to demonstrate Bonnell's pattern of regularly transmitting intimate content to Abbymc, including videos depicting Plaintiff. Statements offered to show pattern, course of conduct, or to corroborate other testimony — rather than to prove the truth of any specific factual assertion — are not hearsay at all. Fed. R. Evid. 801(c); *see, e.g., United States v. Hawkins*, 905 F.2d 1489, 1495 (11th Cir. 1990). Abbymc's sworn declarations are the source of the evidence that Defendant transmitted the Video to her on or about November 3, 2023. The text message corroborates those declarations by establishing — in Abbymc's own words on November 3, 2023 — that Bonnell "sends [her] sex tapes all the time" and that she had received videos of "cheiry and pxie" from him. ECF 86-1.

*Second*, the entirety of the message is independently admissible at the summary-judgment stage under Federal Rule of Civil Procedure 56(c)(2), which permits a non-movant to rely on evidence that "could be presented in a form that would be admissible" at trial. FRCP 56(c)(2). *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (a non-movant's hearsay evidence can be considered at summary judgment "'if the statement could be reduced to admissible evidence at trial'"). Abbymc is available to authenticate the message and testify to its substance at trial. *See* Abbymc Decl., ECF 49-2; Abbymc Decl., April 30, 2026, Ex. A to Peters Decl. That alone defeats Defendant's hearsay objection on summary judgment.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

**D.      Defendant Cannot Obtain Summary Judgment by Demanding Evidence He Himself Destroyed.**

Defendant's argument that the Abbymc declaration must be disregarded because Abbymc has not produced "a screenshot of a message in which Bonnell supposedly sent the Video" (Mot. p. 18) is breathtaking in light of Defendant's own conduct: he *deleted* all of his Discord direct messages to Abbymc. Abbymc Decl., ECF 49-2, ¶ 9 ("*Destiny deleted all of his direct messages to me on the Discord platform, including the sharing of the video of Pxie*"); April 30, 2026 Decl., ¶ 9 (same). Multiple other women who received explicit content from Defendant have similarly attested that he deleted his side of their message threads after the November 29, 2024 KiwiFarms post by SoloTinyLeaks. *See, e.g.*, Brookes Decl., ECF 21-2, ¶ 11; Witness A Decl., ECF 49-4, ¶ 9; Witness B Decl., ECF 49-5, ¶ 9. Defendant has publicly conceded that "there is no original file" — **because he deleted it**. See ECF 150 (audio file).

A movant cannot delete the very evidence that would corroborate the non-movant's case and then demand summary judgment because the non-movant cannot produce that deleted evidence. This is the classic spoliation paradox, and it is one further reason that summary judgment must be denied.

**VI.      A REASONABLE JURY COULD ALSO FIND THAT THE ROSE TRANSMISSION REMAINED CONTINUOUSLY ACCESSIBLE AFTER THE EFFECTIVE DATE OF CARDII.**

Although the November 3, 2023 transmission to Abbymc independently establishes CARDII jurisdiction, the continuing accessibility of the Video on Discord's CDN servers after October 1, 2022 — and Defendant's failure to delete it for over two years thereafter — provides a separate and independent basis for CARDII liability that defeats summary judgment regardless of when the initial transmission to Rose occurred.

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

**A.    The Continuous-Accessibility of the Video Independently Supports Jurisdiction and Defeats Summary Judgment.**

Even assuming *arguendo* an April 9, 2022 transmission date, Peña has explained — and Defendant has not rebutted — that the Video remained continuously accessible on Discord's Content Delivery Network (CDN) servers, and was indexable by search engines, until Discord implemented "authentication enforcement" in December 2023. See Peña Decl., ECF 139-1, ¶¶ 9–14; Peña Report dated Oct. 16, 2025, Concl. 4–7, Ex. B to Peters Decl. By the time the Video became inaccessible to the public via the permanent CDN URL, CARDII had been in effect for thirteen months. Id.

Of critical importance, the Video also remained accessible to Rose's Discord account (and anyone with access to that account, including SoloTinyLeaks) because Defendant admittedly did not delete it until November 2024. Id. ¶ 15; Bonnell Dep. Tr., 99:13-20; 100: 1-9; 199:15-25, Ex. C to Peters Decl. Defendant further admitted that the Video remained accessible on either his own Discord account or Rose's Discord account until he deleted it in November 2024. Id., 200:1-11. If Defendant had deleted his Discord attachment of the Video immediately after he sent it to Rose, then it would not have remained continuously accessible on Discord's CDN or in Rose's Discord Account. But Defendant did not delete it until November 2024 and thus Defendant, by his own actions, made the Video accessible well past the CARDII effective date.

That continuing accessibility constitutes actionable "disclosure" follows from the statutory text. CARDII defines "disclose" to mean "to transfer, publish, distribute, or *make accessible*." 15 U.S.C. § 6851(a)(4) (emphasis added). "Make accessible" is in the present tense and is a continuing condition: a defendant who controls the file and allows it to remain reachable through a publicly

17

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

available URL is, at every moment of that accessibility, "mak[ing it] accessible" within the statutory meaning. The federal courts that have construed this language agree.

In *Doe v. Unknown Party*, the court — addressing the precise temporal question presented here — held that plaintiffs stated a colorable § 6851 claim where the defendant initially uploaded intimate recordings before the October 1, 2022 effective date, but continued to make those recordings available after the effective date. No. CV-24-00252-PHX-DLR, 2024 WL 492231 (D. Ariz. Feb. 7, 2024). The court reasoned that continued post-enactment accessibility is itself an act of "disclosure" within § 6851(a)(4), regardless of when the initial upload occurred. *Id. See also Doe v. Sultan*, No. 3:23-cv-00667-FDW-DCK, 2023 WL 7027976, *1 (W.D.N.C. Oct. 25, 2023)( the court held that "under CARDII, the transfer of an 'intimate visual depiction' qualifies as 'disclosure,' as does merely making such depictions 'accessible.'").

The reasoning of *Unknown Party* confirms that a defendant, such as Bonnell, who controls an accessible link to intimate visual depictions and allows it to remain active after October 1, 2022 is engaged in ongoing disclosure within the statute's scope. That ongoing disclosure independently satisfies CARDII's temporal element, and precludes summary judgment.[7]

---

[7] Although Bonnell did not address Plaintiff's continuing accessibility argument in his MSJ, he did address it in his Motion to Dismiss (ECF 132). But his argument was premised on two erroneous factual contentions: i) the Discord attachment was a "one-time file attachment," and ii) the attachment was not "publicly indexed nor searchable." (Id., pp. 11-12, and FN4). As set forth above, and further detailed in Mr. Peña's Declarations and Report, both of these contentions are erroneous. Moreover, the caselaw relied on by Defendant has already been fully distinguished by Plaintiff. See ECF 110, pp. 7-9. The arguments set forth by Plaintiff in ECF 110, pp. 7-9, are fully incorporated herein. *See Wray v. Greenburg*, 646 F. Supp. 3d 1084, 1115 (D. Ariz. 2022)("there are no facts that suggest the link…was placed in a location where anyone could access it); *Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, 2022 WL 2176499, at *2 (D. Ariz. June 16, 2022)("the Google Drive was not indexed by any search engines").

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

## VII.  PLAINTIFF'S JUNE 2025 PI HEARING TESTIMONY DOES NOT FORECLOSE HER CLAIM.

Defendant repeatedly relies on Plaintiff's June 3, 2025 testimony — that she had not personally "seen any transmission [her]self or record of a transmission" — as if it were a binding admission. (Mot. pp. 2, 5–6, 12, citing ECF 212-13 at 55:7-13.) It is not and it is irrelevant to the issue of whether Defendant violated CARDII.

*First*, CARDII does not require the plaintiff to have personally observed the disclosure; it requires only that the disclosure occurred. 15 U.S.C. § 6851(b). Indeed, the very premise of CARDII is that a transmission is made to a third party without the plaintiff's knowledge or consent. Here, Plaintiff was responding to a question that was specifically about whether *she personally* had seen a transmission. The question necessarily excluded transmissions Plaintiff had learned of through third parties — including the transmission to Rose and to Abbymc. Plaintiff's truthful answer that she had not *personally seen* the transmission is not an admission that *no transmission occurred*.

*Second*, Plaintiff's answer was given at the Preliminary Injunction stage, before discovery had opened. Plaintiff's discovery-stage and post-discovery evidence — including the November 3, 2023 text message screenshot Plaintiff filed under seal on June 2, 2025 (ECF 86), Abbymc's declaration (ECF 49-2), Abbymc's April 30, 2026 Statement, and Peña's three forensic reports — is what governs at the MSJ stage.

*Third*, Defendant's Supplemental Memorandum (ECF 244) doubles down on this same flawed logic, but compounds it with a material mischaracterization of Plaintiff's April 27, 2026 deposition testimony. The actual question Defendant's counsel posed at deposition asked whether Plaintiff was aware of any evidence regarding Defendant's transmission of the Video to third parties *that had not already been submitted to the Court*. (Suppl. Brettler Decl., Ex. P (Doe Dep.

19

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

Tr.) at 342:5-9 (emphasis added).) Plaintiff's answer of "No" therefore confirms only that she has not unilaterally generated new evidence beyond what has already been submitted to the Court — a body of evidence that includes Abbymc's declaration and corroborating exhibit (ECF 49-2; 86-1), Peña's three forensic submissions, and the documentary record of Defendant's continuing accessibility of the Video on Discord's CDN servers. Defendant's effort to recast that narrow deposition answer as an "admission" that the record contains no evidence of post-CARDII disclosure conflates two materially different questions and should be rejected.

## VIII. BECAUSE THE FEDERAL CLAIM SURVIVES, THE COURT SHOULD CONTINUE TO EXERCISE SUPPLEMENTAL JURISDICTION.

Defendant's request that the Court decline supplemental jurisdiction over Counts II–IV is contingent on dismissal of the federal claim. (Mot. pp. 20–21.) Because Plaintiff's CARDII claim survives summary judgment for the reasons set forth above, the predicate for declining supplemental jurisdiction is absent. The Court should retain jurisdiction over the entire case. Alternatively, even if the Court were to grant summary judgment, at this stage of the proceedings, where "discovery has closed, a summary judgment motion has been filed, and the case is in its final pre-trial stages, judicial economy and convenience militate in favor of retaining supplemental jurisdiction." *Alvarado v. Miami-Dade Cnty*, No. 15-22193, 2016 WL 9503810, *17 (S.D. Fla. Oct. 24, 2016), citing *Osburn v. Haley,* 549 U.S. 225, 245 (2007).

## CONCLUSION

Wherefore, for all of the above reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety, or, in the alternative, defer ruling pending resolution of Plaintiff's forthcoming motion for spoliation sanctions.

20

DOE v BONNELL
Case No: 1:25-cv-20757-JB/Torres

Dated: May 8, 2026.

**JSP LAW, LLC**
Joan Schlump Peters
(admitted *pro hac vice*)
838 Neapolitan Way, #91
Naples, FL 34103
Tel. 305-299-4759
Email: petersjoan@bellsouth.net

**SANCHEZ-MEDINA GONZALEZ
LAGE GOMEZ & MACHADO, LLP**
CARLOS A. GARCIA PEREZ
        Florida Bar No. 106895
GUSTAVO D. LAGE
Florida Bar No.  972551
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel.: (305) 377-1000
Primary E-Mail: cgarciaperez@smgqlaw.com
Primary E-Mail: glage@smgqlaw.com
Counsels for Plaintiff

                    */s/ Carlos A. Garcia Perez*
By:_____
          CARLOS A. GARCIA PEREZ
          Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2026 a true and correct copy of the foregoing was served on all parties via the CM/ECF filing portal to all counsel of record.

                    By: */s/ Carlos A. Garcia Perez*

                    CARLOS A. GARCIA PEREZ
                    Attorney for Plaintiff

21