**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

JANE DOE,                                      CASE NO.: 1:25-cv-20757-JB/Torres

      Plaintiff,

v.

STEVEN K. BONNELL II,

      Defendant.

_____/

### PLAINTIFF'S MOTION FOR SANCTIONS UNDER FRCP 37(e)(2) FOR DEFENDANT'S SPOLIATION OF EVIDENCE

Plaintiff moves for sanctions under FRCP 37(e)(2) for the spoliation of ESI central to her CARDII claim. After Defendant's duty to preserve attached, he deleted his communications with multiple witnesses and destroyed the Google Drive files and Discord attachments he transmitted to them. As to one witness (Abbymc), Defendant filed a sworn "true and correct log" of 22 outbound media files — and produced none of them. *See* ECF 213 ¶ 11; ECF 213-5. The log is demonstrably false: it omits two additional Google Drive links Defendant's own chat thread shows him sending.[1]

Defendant's spoliation strikes at the heart of the case. The destroyed evidence bears directly on the dispositive merits issue in Defendant's pending MSJ: whether Defendant transmitted intimate recordings of Plaintiff after CARDII's October 1, 2022 effective date. Defendant's own productions show that in 2023 he transmitted multiple Google Drive links and

---

[1] Remarkably, Defendant spent time and effort creating his false "true and correct" log, but no time or effort in getting the Video removed from Kiwi Farms or other sites.

1

other media to Abbymc, including a May 5, 2023 link sent with the message: "Did I ever send you the one of her blowing me?" The underlying files no longer exist.

Plaintiff's forensic expert, Jesús Peña, has confirmed that Defendant's preservation and production were forensically unreliable: Defendant used non-native third-party tools, generated no hash values or metadata, manually reconstructed parts of Exhibit E, and rendered the Google Drive files and Discord attachments unrecoverable. ECF 249-2. Defendant never moved to exclude Peña, never deposed him, and disclosed no rebuttal expert.

Rule 37(e)(2) applies where ESI that should have been preserved is lost because a party failed to take reasonable steps to preserve it and acted with intent to deprive another party of its use. Skanska USA Civil Southeast Inc. v. Bagelheads, Inc., 75 F.4th 1290, 1311 (11th Cir. 2023). Defendant's own deposition testimony, productions, sworn statements, and public admissions establish each element.

Plaintiff respectfully requests that the Court strike Defendant's defenses and enter judgment in Plaintiff's favor as to liability; or, alternatively, (i) find under Rule 37(e)(2) that Defendant intentionally spoliated evidence with intent to deprive Plaintiff of its use in this litigation; and (ii) presume — or instruct the jury that it must or may presume — that the destroyed Google Drive files Defendant transmitted to Abbymc in 2023 included one or more of the three intimate recordings of Plaintiff that Defendant admitted at deposition he made. Plaintiff also requests an award of reasonable attorneys' fees and costs incurred in bringing this Motion.

## I. **FACTS DEMONSTRATING SPOLIATION**

### A. **The Video and the Centrality of the Abbymc Transmissions.**

Defendant testified that he recorded three intimate videos of Plaintiff. Dep. Tr. Bonnell, 67:14-22, Ex. A to Peters Decl.[2] The Video publicly leaked on November 29, 2024 by an account associated with "SoloTinyLeaks" depicts Plaintiff performing oral sex on Defendant. Defendant has admitted transmitting that Video to a non-party witness, "Rose," in April 2022 — before CARDII's effective date.[3] The merits dispute is whether any of the three recordings of Plaintiff was transmitted, or were still accessible, on or after CARDII's October 1, 2022 effective date. Non-party witness Abbymc has submitted two sworn declarations attesting to Defendant's transmission of the Video to her, after CARDII's effective date. ECF 49-2; ECF 249-1.

### B. Defendant's Duty to Preserve.

Defendant's duty to preserve attached no later than November 29, 2024, when SoloTinyLeaks publicly posted intimate content of Plaintiff and others — putting Defendant on notice that litigation was reasonably foreseeable. *See Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). The duty was reinforced on January 23, 2025 by a hand and email served Demand for Preservation of Evidence (Ex. B, Peters Decl.), which directed Defendant to "immediately initiate a litigation hold for potentially relevant ESI." The Court itself reinforced the duty at the April 4, 2025 hearing: "You can't destroy evidence after you're on notice of the suit and the preservation letter has been sent." Hr'g Tr. Apr. 4, 2025, ECF 39-1 at 9:12-13.

### C. Defendant Deleted His Side of His Communications With Multiple Witnesses After His Duty to Preserve Attached.

---

[2] All citations to "Peters Decl." in this Motion that do not contain an ECF number refer to the Declaration of J. Peters, dated May 18, 2026, filed concurrently herewith.

[3] Even assuming the transmission to Rose occurred prior to CARDII's effective date, the Video remained continuously accessible on Discord's CDN servers and on Rose's Discord account – and was thus made accessible by Defendant within the meaning of 15 U.S.C. § 6851(a)(4) – well past CARDII's effective date. *See* ECF 247, pp. 16-18.

Defendant communicated with at least five women whose communications are relevant — Plaintiff, Abbymc, Hannah Brooke, Witness A, and Witness B — before and after the November 2024 leaks. Each attests that Defendant deleted his side:

**Abbymc.** Defendant admitted at deposition that he deleted his Discord messages with Abbymc "sometime maybe at the end of 2024," Dep. Tr. Bonnell, 243:25–244:3, Ex. A Peters Decl. He also admitted on a May 13, 2026 livestream that "after the leaks, in January or February [2025], I ran like a whole redact of my Discord," **thereby placing the deletion squarely after his preservation duty had attached**. *See* Peters Decl. ¶¶ 38-39. Abbymc separately attests that in April 2025, Defendant "deleted all of his direct messages to me on the Discord platform, including the sharing of the video of Pxie." ECF 49-2 ¶ 9. The destruction is critical: due to Defendant's deletions, Abbymc cannot produce the Video, and Defendant produced *none* of the media files he sent to Abbymc.

**Hannah Brooke.** Brooke attests that Defendant deleted his messages to her on Discord "[s]ometime in early February 2025." Brooke Decl. (ECF 21-2) ¶ 11. Defendant admitted communicating with Brooke on Discord and, when asked whether he deleted those communications, conceded "it's possible." Dep. 244:11–21, 246:22–24, Ex. A to Peters Decl. Plaintiff requested the Brooke communications, but Defendant produced none. Peters Decl., ¶¶13, 16.

**Witness A.** "Sometime after January 21, 2025," Defendant "deleted the messages between [Witness A] and him on Discord" and removed her access to the Google Drive containing the explicit content he had shared. Witness A Decl. (ECF 49-4) ¶ 9. Defendant produced no communications with Witness A. Peters Decl. ¶ 17.

**Witness B.** Defendant admitted to Witness B that he shared her video with Rose. Witness B Decl. (ECF 49-5) ¶ 7. "Sometime after the November 29, 2024 leaks," Witness B discovered Defendant had deleted messages between them. *Id.* ¶ 9. Defendant produced no communications with Witness B. Peters Decl. ¶ 18.

**Plaintiff.** Defendant deleted his side of his Discord communications with Plaintiff from her view, leaving her unable to access his messages. Doe Decl. ¶ 17 (ECF 21-1). Defendant produced a two-way Discord chat thread with Plaintiff at SB000551-001452, but Defendant's transmissions of intimate images are not visible in the thread itself, and he produced none of the underlying attachments. Peters Decl. ¶ 16.

**D. Defendant's Three Productions Concerning Abbymc Contradict Each Other and Establish Both Fabrication and Destruction.**

Defendant has made three distinct productions concerning his communications with Abbymc. Compared against one another, they establish both fabrication and destruction.

**1. The two-way Discord chat thread (SB000006-41).**

A 36-page chronological tabular export of Discord direct messages between Defendant ("omnidestiny") and Abbymc ("inbloom1991"), covering March 7, 2023 through May 7, 2025. *See* Ex. C, Peters Decl. Both sides are present. The thread contains four Google Drive URLs Defendant transmitted to Abbymc in 2023:

> • **April 24, 2023, 19:08:21 EDT (SB000016):**  Google Drive URL preceded by Defendant's message: "I've got a 5 minute video of me eating someone out, do you want it?"

> • **May 5, 2023, 23:26:20 EDT (SB000017):**  Google Drive URL preceded by Defendant's message: "Did I ever send you the one of *her blowing me*?"

- **November 3, 2023, 14:39:36 and 14:39:44 (SB000034):**   Two consecutive Google Drive URLs.

The thread also references numerous audio recordings, video files, and other media Defendant was sending or had sent to Abbymc — but the transmissions of those files are *not* visible in the thread itself, and the underlying files were *never* produced. Peters Decl. ¶ 26, and Ex. C thereto. Only the transmissions from Abbymc to Defendant are visible, and only those underlying files were produced. *Id*.

### 2.  The one-sided Discord export (SB000063-168).

Defendant produced a 106-page Discord export captioned for the username "I.C. Wiener" and rendered in the Discord visual interface. *See* Ex. D, Peters Decl., ¶ 29. The export covers the same time frame but contains *only* Abbymc's side; no responses from Defendant appear for more than two years  -- until May 1, 2025 (SB000160). The two productions display *different usernames* for the same person ("inbloom1991" vs. "I.C. Wiener") — confirming they were generated at different times and contradicting Defendant's sworn statement that he "preserved the entirety" of his Abbymc communications. ECF 213 ¶ 12. The thread in Exhibit D also references numerous audio recordings, video files, and other media Defendant was sending or had sent to Abbymc — but the transmissions of those files are *not* visible in the thread itself, and the underlying files were never produced. Peters Decl., ¶¶ 31-31.

### 3.  Defendant's self-prepared Exhibit E (ECF 213-5).

On January 30, 2026, Defendant filed in support of his MSJ a declaration averring: "Attached hereto as Exhibit E is a true and correct log of every media file and Google Drive link that I *ever* sent to Abbymc," and: "I have preserved the entirety of my communication logs with

Abbymc, including all media files." ECF 213 ¶¶ 11-12. Exhibit E lists 22 entries between March and November 2023; only two are Google Drive links, both November 3, 2023.

**Exhibit E is demonstrably *false* on the face of Defendant's own production**: *it omits both the April 24, 2023 and May 5, 2023 Google Drive links that Defendant's own produced chat thread shows him sending Abbymc. See* Ex. C to Peters Decl., SB00016-17. And Defendant has produced *none* of the 22 items Exhibit E identifies as having been sent — the underlying Google Drive files "are not existing anymore." Dep. 237:3-6, Ex. A Peters Decl. *See also,* Peters Decl., ¶ 32. Defendant has thus, in a single filing, sworn that 22 specific items of responsive ESI existed within his control and failed to produce any of them. The destruction is conclusively established by Defendant's own admissions.

**Defendant's deposition testimony confirms that he possessed the very record his productions lack**. To create Exhibit E, Defendant "sorted all the sent messages to AbbyMC's Discord account, and then [he] deleted every message that didn't contain a media file," and "put into a spreadsheet the timestamps for which [he] sent any media files." Dep. Tr. 305:25–306:6, Ex. A Peters Decl. The source he used was therefore a complete chat thread containing every outbound message Defendant sent Abbymc, with each attachment identifiable by name and timestamp. Defendant possessed that source on January 30, 2026. He has not produced it. Nor has he produced any of the underlying media files. Defendant produced — at separate Bates-stamp numbers — the attachment files Abbymc sent *to him* (Peters Decl., ¶ 33), but produced no attachment files he sent *to her*, in any form, under any Bates number. *Id*., ¶ 32. Either he still possesses them and has withheld them, or he destroyed them after January 30, 2026, or he modified the source to strip his outbound transmissions prior to production. Each scenario is destruction or non-production of ESI Defendant himself confirmed under oath having had in his possession.

Defendant has also admitted that Exhibit E was manually fabricated. On a public Foodshop livestream broadcast on September 8, 2025 — one week before he filed Exhibit E — Defendant told his audience: "Information is lost! There is no original file! I'm trying to reconstruct a file! I'm artificially creating a file by reconstructing a log." ECF 150. At deposition he testified that he was "merg[ing]" files with "different timestamps" — "Unix code" versus "universal time code" — "to make it line up." Dep. Tr. 306–07, Ex. A Peters Decl.

**The May 5, 2023 omission is independently dispositive.** At 23:23:59 Defendant sent Abbymc the message "Did I ever send you the one of *her blowing me*?" At 23:26:20 he sent the Google Drive URL. *See* Ex. C Peters Decl., at SB000017. The URL is now dead; the underlying file is destroyed; the link does not appear on Defendant's sworn "true and correct log." If the link depicted Plaintiff, Defendant made a post-CARDII transmission of intimate content of her — establishing the very transmission his MSJ denies. If it depicted any other individual, Defendant's sworn completeness statement is independently disproven. Either scenario establishes intentional spoliation. Abbymc's October 12, 2023 message in the produced thread — "I still watch the bj video" (*id*. at SB000032) — supports the inference that what Defendant sent on May 5, 2023 depicted Plaintiff: more than a year before the leak, Abbymc was openly referring to a "bj video" Defendant had sent her, and that video does not appear on Exhibit E.

### E.  Plaintiff's Forensic Expert Confirmed the Destruction and Fabrication; His Report Is Unrebutted.

Plaintiff provided the expert report of Jesús Peña to Defendant on October 16, 2025, in compliance with the Scheduling Order (ECF 23). Report, ECF 249-2. Peña's principal findings:

• **Exhibit E's timestamps are offset from the chat thread by ten hours** — an offset corresponding to no genuine timezone conversion and consistent only with manual reassembly. *Id.* at 22.

• **Defendant's preservation method** — a third-party tool called "Discord Log Exporter" producing an HTML file converted to PDF — stripped grouped-message timestamp metadata. *Id.* at 21-23.

• **No cryptographic hash values were generated** at the time of preservation or export, foreclosing forensic verification of authenticity. *Id.* Defendant conceded this at deposition. Dep. Tr. 297:16-20; 298:17-25, Ex. A Peters Decl.

• **The Google Drive files and Discord attachments Defendant transmitted to Abbymc are unrecoverable, by Defendant's own act.** Defendant testified that "by the time I produced anything for this case, those files are not existing anymore." *Id.* at 237:3-6. As to native Discord attachments, when a sender deletes an attachment, it "would delete it from the Discord core servers and then the CDN cache servers." Peña Report at 17 (Conclusion 6). Defendant admitted running "a whole redact of [his] Discord" after the January-February 2025 leaks. Peters Decl., ¶¶ 38, 39.

Defendant has not rebutted any of these findings. He served no *Daubert* motion within the Scheduling Order deadline, never deposed Peña, served no interrogatories or document requests directed to the Peña Report, and disclosed no rebuttal expert. Defendant had the Peña Report for 107 days before the January 30, 2026 *Daubert* deadline. His belated objection in a single footnote of his MSJ Reply, ECF 253 at 9 n.4, is procedurally barred and lacks a legal basis.

Peña has further declared that Discord's native "Data Package" is the best evidence a user can source for outgoing Discord direct-message communications. *See* Peña Decl., May 18, 2026, at ¶ 7, Ex. E to Peters Decl. The third-party tools Defendant has described using ("Discord Log Exporter," "Discord Chat Exporter," "Redact") may capture two-sided conversations but generate no cryptographic hash values. *Id.* Critically, a Data Package requested *after* deletion does not retrieve deleted messages, and Defendant admitted he requested his package only post-deletion.

9

*Id.* Defendant's claim that "there's not like an original Discord file — it's just a term they've made up" is forensically incorrect. *Id. See also*, Peters Decl. ¶ 41.

### F.  Defendant Refused a Neutral Forensic Examination.

On September 18, 2025, Plaintiff's counsel proposed a neutral third-party forensic expert to examine Defendant's preserved forensic images and data exports — with mutual candidate selection, a protocol narrowly limited to Google Drive, Gmail, and Discord artifacts, and costs shared equally. See Ex. F, Peters Decl. Defense counsel refused. *Id.,* Ex. G. Defendant's refusal of a neutral, narrowly scoped, cost-shared validation is itself probative.

## II.  ARGUMENT

### A.  Legal Standard.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff*, 310 F. App'x at 301. Because the evidence at issue is ESI, FRCP 37(e) controls. Rule 37(e) "creates a two-tiered sanctions regime — with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2)." *Skanska*, 75 F.4th at 1311. Both share two preconditions: that ESI "that should have been preserved in the anticipation or conduct of litigation" was "lost because a party failed to take reasonable steps to preserve it," and that the information "cannot be restored or replaced through additional discovery." *Id.* Rule 37(e)(2) sanctions "require a finding that the party acted with the intent to deprive another party of the information's use in the litigation" and "do not require any further finding of prejudice." *Id.* Intent equates to "bad faith" — "a purpose of hiding adverse evidence" — and may be inferred from circumstantial evidence. *Id.* at 1312-13.

### B.  The Three Preconditions for Rule 37(e) Relief Are Met.

### 1.  The ESI should have been preserved.

Litigation became reasonably foreseeable no later than November 29, 2024, when the leaks occurred. *Graff*, 310 F. App'x at 301; *see* § I.B, *supra*. The categories at issue — Defendant's communications with Plaintiff, Abbymc, Brooke, Witness A, and Witness B; his Twitter communications with Rose; his communications with SoloTinyLeaks and with the seven non-party witnesses Defendant himself identified in his Initial Disclosures; and the Google Drive files and Discord attachments he transmitted to Abbymc — are squarely within the scope of evidence Defendant was obligated to preserve.

### 2. The ESI was lost because Defendant failed to take reasonable steps.

Defendant testified that he was "not sure what a 'litigation hold' means." Dep. Tr. 292:10-17, Ex. A Peters Decl. Instead of investigating his obligations or requesting clarification he conveniently instituted no hold, issued no preservation instructions, made no forensic image, used no forensic collection tool, engaged no e-discovery platform, implemented no collection methodology, and generated no hash values or metadata. Dep. Tr. 295:18-23, 297:16-20, 298:3-6. He continued deleting Discord communications after his duty attached, *see* § I.C, *supra*, and his nominal preservation — a Discord Log Exporter HTML-to-PDF output — was forensically unsound on its face. ECF 42-1 ¶ 20; Peña Report at 21-23. Defendant also failed to preserve Google Drive activity logs that would have established when and by whom the Pxie video was accessed on his Google Drive; Google Drive's six-month retention window has now closed, and that evidence is unrecoverable. Peña Decl., ¶¶ 5-6, May 18, 2026, Ex. E to Peters Decl. That is the antithesis of "reasonable steps."

### 3. The ESI cannot be restored.

Defendant admitted at deposition that the Google Drive files "are not existing anymore." Dep. Tr. 237:3-6, Ex. A Peters Decl. The third-party witnesses cannot supply Defendant's deleted

messages; he deleted his side. Plaintiff has subpoenaed third-party platforms and pursued all available alternative avenues; no further discovery exists. Peters Decl. ¶ 42. Even if Defendant were now ordered to produce the source record he admitted having on January 30, 2026, the ESI lost to Plaintiff cannot be undone: fact discovery is closed; Defendant's deposition was conducted without it; expert reports were filed without it; and the trial-preparation work product Plaintiff would otherwise have generated has been irretrievably misdirected. Defendant has a continuing obligation to update discovery as it becomes available- but never did.

### C.  Defendant Acted With Intent to Deprive Plaintiff of the Use of the Evidence.

Under *Skanska*, intent to deprive may be inferred from circumstantial evidence and is established "[w]here the party's acts evince a purpose of hiding adverse evidence." 75 F.4th at 1312-13. The record here goes well beyond circumstantial proof.

**1.  Defendant has made six demonstrably false sworn statements.**

Each of the following sworn statements is provably false on the face of Defendant's own subsequent productions, deposition testimony, or livestream admissions:

**• Exhibit E is "a true and correct log of every media file and Google Drive link that I ever sent to Abbymc." ECF 213 ¶ 11.** Disproven by Defendant's own chat thread (Ex. C Peters Decl.), which shows him sending Abbymc Google Drive links on April 24, 2023 and May 5, 2023, neither of which appears on Exhibit E. *See §* I.D, *supra*.

**• "I have preserved the entirety of my communication logs with Abbymc, including all media files." ECF 213 ¶ 12.** Disproven by Defendant's own production: none of the 22 items Exhibit E identifies as having been sent to Abbymc was produced, and the underlying Google Drive files "are not existing anymore." Peters Decl., ¶ 34; Dep. Tr. 237:3-6, Ex. A Peters Decl..

• **"I have not permanently deleted or destroyed any evidence pertaining to this lawsuit." ECF 42-1 ¶ 21.**  Disproven by Defendant's own production and his repeated public concessions that the records have been destroyed and that Exhibit E is a reconstruction. ECF 150 ("There is no original file! I'm artificially creating a file by reconstructing a log.").

• **Defendant's denial of Plaintiff's RFA No. 12, which asked him to admit he had deleted his DMs with the Discord user "LiquidLaugh."**  Defendant denied the RFA and produced no LiquidLaugh messages in response to RFP No. 5 (First Set). Peters Decl. ¶ 14. Either his denial is false or the messages are spoliated.

• **Defendant's testimony that he "produced all the communications [he] had with [Dan Saltman]" and "ceased communications with people about anything related to the plaintiff,"** Dep. Tr. 248:12-13, 248:19–249:3, Ex. A Peters Decl.  Dan Saltman is founder and CEO of Redact.dev[4] — the tool Defendant claims he used to preserve evidence. ECF 42-1 ¶ 20. Defendant produced *no* communications with Saltman, despite confirming their business relationship and friendship (Dep. Tr. 247:19-25, Ex. A Peters Decl.), and notwithstanding his own filing of a January 2025 message from Plaintiff to Saltman as Exhibit 2 to his April 25, 2025 declaration — a screenshot Defendant could only have obtained from Saltman. *See* ECF 42-2 at 3.

• **Defendant's testimony that "I produced every communication I have ever had with Abby" and "I don't believe I have permanently deleted any messages with Abby at all,"** Dep. Tr. 369:21–370:7, Ex. A Peters Decl.  Disproven by the production

---

[4]*See* Daniel Saltman, LinkedIn, https://www.linkedin.com/in/daniel-saltman/ (last visited May 18, 2026) ("Dan is the CEO and Founder of Redact.dev"). Plaintiff respectfully requests that the Court take judicial notice of Saltman's public identification as Founder and CEO of Redact.dev pursuant to Fed. R. Evid. 201(b)(2).

itself: the two-way Abbymc thread (*Id.*, Ex. C, SB000006-41) shows Abbymc's transmissions but none of the 22 outbound items Defendant's own Exhibit E identifies. A Discord thread cannot be both "complete" and missing one party's transmissions. Defendant either deleted his outbound transmissions (contrary to his 369:21–370:7 deposition testimony) or fabricated a "complete" production by stripping his outbound transmissions from a more comprehensive source. Both establish intent to deprive.

A pattern of six demonstrably false sworn statements is direct evidence of "a purpose of hiding adverse evidence." *Skanska*, 75 F.4th at 1312.

**2. Defendant selectively preserved evidence that helped him and destroyed what did not.**

Defendant has admitted his deletion practice is selective and account-dependent. Asked at deposition whether it was his "custom to delete messages when [he] stopped communicating with people," Defendant answered: "Sometimes. It depends on the account." Dep. Tr. 215:9-12, Ex. A Peters Decl. He did not delete his messages with Rose; *id.* 215:13-15. As to Abby, he did not deny deleting, stating only that there are "plenty of other people I've deleted messages with." *Id.* 216:4-9.

The production confirms the selectivity. Defendant retained the full two-sided Rose Discord thread (SB001618-1919) — which was *not* publicly available; SoloTinyLeaks leaked only excerpts — but deleted his Abbymc side and produced two inconsistent versions of the thread. The only outbound intimate-content attachment Defendant produced anywhere in his production is the Video of Plaintiff transmitted to Rose on April 9, 2022 (SB002479) — the one video SoloTinyLeaks had publicly leaked, after which denial was no longer realistic. Every other outbound attachment is missing. Defendant produced his received attachments at separate Bates-

14

stamps; he produced no sent attachments in any form. The asymmetry is not preservation failure — it is selection.

Defendant has twice admitted the destruction of his Abbymc communications was an intentional carve-out. On redirect by his own counsel: "I produced every communication I have ever had with Abby. I don't believe anything has been deleted with the Abby stuff *even though I'm pretty sure the request for the preservation of evidence wouldn't have even initially covered Abby*." Dep. Tr. 369:21–370:7, Ex. A Peters Decl. Two weeks after his deposition he stated on livestream: "Abby was not a part of the court case at the time though. So technically I could have just said I have nothing from Abby and I would have been fully within my right to wipe all of it." Peters Decl., ¶¶ 38, 40. The point is not that Defendant wiped *all* of the Abbymc material — he produced chat threads (with critical content and metadata missing); see § I.D, *supra*. The point is that Defendant has admitted, twice and under oath, that he believed the Abbymc communications were outside the scope of his preservation obligation. That admitted state of mind is direct evidence of intent to deprive. A litigant who believes responsive material falls outside his preservation duty has the requisite mental state to destroy that material selectively. Defendant did exactly that: he kept the messages while destroying the attachments — the items that would have directly evidenced the CARDII transmissions at the heart of this case.

**3. Defendant produced nothing for the categories of documents and individuals he himself identified as relevant.**

On April 4, 2025, Defendant served Rule 26(a)(1) Initial Disclosures identifying twelve categories of relevant documents in his possession and seven non-party individuals (Chaeiry, Lav, LaurendeLaguna, Matt Hurdle, Jared (".Iycan"), Brianna Wu, and Adam Ali). Peters Decl., ¶ 22. Plaintiff's RFP No. 9 (First Set) and RFP No. 1 (Second Set) sought those documents and communications. *Id.,* ¶¶ 12-13, and Exs. K and L. Defendant produced nothing in nine of the

15

twelve categories. *Id.* ¶¶ 23. He produced *zero* communications with the seven non-party witnesses he himself identified — including Chaeiry and LaurendeLaguna, with whom he acknowledged intimate relationships. *Id.* ¶ 22. He produced zero Twitter communications with Rose despite producing the Discord side, and zero communications with SoloTinyLeaks. *Id.* ¶¶ 19-20. A litigant cannot identify witnesses as having "discoverable information" under Rule 26(a)(1) and then produce not a single communication in response. Either his Initial Disclosures were false, or he destroyed (or withholds) what he himself swore was relevant. Both support intent.

Plaintiff served a Third Set of RFPs on November 16, 2025 specifically reaching communications with four named individuals about Plaintiff (JSTLK, Willymac, Foodshops, DariusIRL), Rose-related call logs since April 2022, and ESI "concerning [Defendant's] use of Redact.dev, or any similar application, program, or service used to delete, conceal, modify, or archive data." Peters Decl. ¶ 15, and Ex. M. Defendant produced nothing. *Id.* ¶ 21. As to RFP No. 6, Defendant objected that "concerning [Defendant's] use of Redact.dev" is "vague and ambiguous" and "assumes facts not in evidence" — irreconcilable with his own April 25, 2025 declaration that he used Redact to archive his Discord communications, ECF 42-1 ¶ 20. Defendant cannot make Redact the foundation of his preservation defense and refuse to produce anything about it.

### D.  This Motion Is Timely.

The standard is "as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009) (Grimm, J.); *see also Eller v. Prince George's Cty. Pub. Schs.,* No. TDC-18-3649, 2020 WL 7336730 (D. Md. Dec. 14, 2020) (pursuing "discovery about discovery" tolls the spoliation-filing obligation). The Rule 37(e)(2) intent-to-deprive element typically cannot be established without the spoliator's

16

own deposition testimony, and the Advisory Committee Note expressly contemplates that the intent finding may be made by the court on a pretrial motion. FRCP 37(e)(2) advisory committee's note to 2015 amendment. Courts in this District also apply the multi-factor test in *Sosa v. Carnival Corp.,* No. 18-cv-20957, 2018 WL 6335178, at \*13 (S.D. Fla. Dec. 4, 2018) (timing of motion, prejudice, reasonable explanation, closeness to trial). Each factor supports timeliness here.

Plaintiff could not have filed this Motion before Defendant's April 30, 2026 deposition, and could not have taken that deposition until the Court's April 21, 2026 order. The original Scheduling Order set fact discovery to close December 16, 2025; the Rule 37(e) motion deadline at March 30, 2026; and trial for May 18, 2026. ECF 23. On November 5, 2025, the Court stayed proceedings, ECF 167, deferring Defendant's deposition for over five months. During the stay, Plaintiff repeatedly sought to restore the schedule (ECF 184, 190), filed a Rule 56(d) motion (ECF 216), and moved for a continuance (ECF 227). The Court resolved everything at the April 21, 2026 status conference, vacated the trial date, reset trial to August 10, 2026, and authorized a ten-day deposition window. ECF 239-240. Defendant was deposed nine days later, and the deposition produced the admissions central to the intent-to-deprive showing. Plaintiff filed this Motion within three weeks of that deposition, which adduced the admissions central to the intent-to-deprive showing. Plaintiff did not delay; she could not move forward sooner.

Defendant has been on notice throughout — beginning with the April 4, 2025 hearing (*see* ECF 38), then four written deficiency letters, then Plaintiff's proposed neutral forensic examination (which Defendant refused), then her express notification of this Motion in her summary-judgment opposition, ECF 247 at 1 n.1. Any delay caused by waiting for Defendant's deposition has not prejudiced Defendant; he has known of the spoliation claim for many months.

**E.    The Adverse Inference Plaintiff Seeks Directly Supplies the Post-CARDII Transmission Evidence.**

17

Defendant argues in his MSJ Reply that Plaintiff "cannot convert unsupported allegations of spoliation into evidence of a post-CARDII disclosure." ECF 253 at 9. That misunderstands Rule 37(e)(2). The presumption that destroyed evidence was unfavorable to the spoliator *is itself* the evidence on which the merits dispute is resolved. *Skanska*, 75 F.4th at 1312. Applied here: the Court is authorized to establish as a matter of fact — or to instruct the jury — that the destroyed Google Drive files Defendant transmitted to Abbymc on April 24, May 5, and November 3, 2023 contained one or more of the three intimate recordings of Plaintiff Defendant admitted at deposition he made. With that presumption in place, two undisputed facts complete the merits analysis: those transmissions occurred after October 1, 2022 (CARDII's effective date), and Plaintiff did not consent. The result is a post-CARDII transmission as a matter of law, or at minimum a triable issue precluding summary judgment.

Defendant's *Daubert* challenge to Peña, raised for the first time in footnote 4 of his MSJ Reply, ECF 253 at 9 n.4, is procedurally barred for the reasons set out in § I.E, *supra*. In any event, this Motion does not rise or fall on Peña: the spoliation findings are supported directly by Defendant's own sworn admissions, productions, and livestream confessions. Peña corroborates the documentary record; he is not the source of it.

### F.  Appropriate Sanctions Should Be Imposed.

Plaintiff respectfully requests that the Court strike Defendant's defenses and enter judgment in Plaintiff's favor as to liability; or, alternatively, (i) find under Rule 37(e)(2) that Defendant intentionally spoliated evidence with intent to deprive Plaintiff of its use in this litigation; and (ii) presume — or instruct the jury that it must or may presume — that the destroyed Google Drive files Defendant transmitted to Abbymc in 2023 included one or more of the three intimate recordings of Plaintiff that Defendant admitted at deposition he made. Plaintiff also

requests an award of reasonable attorneys' fees and costs incurred in bringing this Motion. *See Skanska,* 75 F.4th at 1311 n.6 (court has "considerable inherent" sanctions power, including fees).

## CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that the Court grant the relief set forth in § II.F, *supra*.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF CONFERRAL

Counsel for Plaintiff conferred with counsel for Defendant by email regarding the relief requested in this Motion. Defendant opposes the relief requested. The parties were unable to resolve the dispute, and Plaintiff therefore proceeds by motion.

Dated: May 18, 2026

| | |
|---|---|
| **JSP LAW, LLC** | **SANCHEZ-MEDINA GONZALEZ** |
| Joan Schlump Peters | **LAGE GOMEZ & MACHADO, LLP** |
| (admitted *pro hac vice*) | CARLOS A. GARCIA PEREZ |
| 838 Neapolitan Way, #91 |     Florida Bar No. 106895 |
| Naples, FL 34103 | GUSTAVO D. LAGE |
| Tel. 305-299-4759 | Florida Bar No.  972551 |
| Email: petersjoan@bellsouth.net | 201 Alhambra Circle, Suite 1205 |
| | Coral Gables, Florida, 33134 |
| | Tel.: (305) 377-1000 |
| | Primary E-Mail: cgarciaperez@smgqlaw.com |
| | Primary E-Mail: glage@smgqlaw.com |
| | Counsels for Plaintiff |

By: */s/ Carlos A. Garcia Perez*
CARLOS A. GARCIA PEREZ
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2026 a true and correct copy of the foregoing was served on all parties via the CM/ECF filing portal to all counsel of record.

19

By: */s/ Carlos A. Garcia Perez*
CARLOS A. GARCIA PEREZ
Attorney for Plaintiff