EXHIBIT "A"
New Exhibit A to DE 263-1

Excerpts of Defendant's Bonnell Deposition
Transcript Taken 4-30-2026

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 67

THE VIDEOGRAPHER:  We're back on
the record.  The time is 11:26 a.m.
BY MS. SCHLUMP PETERS:

Q.   Before the break, Mr. Bonnell, we were talking about September 12, 2020, and you're at the hotel with the plaintiff.  Do you recall whether at the hotel you said to her is it okay if I share any of the videos we record?

A.   No.

Q.   You don't recall?

A.   Not specifically, no.  I'm sure we had a conversation about it, but I don't recall the specifics of the conversation.

Q.   And at the hotel, you video recorded the sexual interactions?

A.   Yes.  Not all of them, but some of them, yes.

Q.   Some of them.  How many videos did you record?

A.   I believe three.

Q.   And how did you record them?

A.   With my phone.

Q.   And you were holding the phone while you recorded?

A.   Yes.

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 215

THE WITNESS:  I can't honestly say what day I did, but it was definitely prior to any litigation with plaintiff.

BY MS. SCHLUMP PETERS:

Q.    But your messages in May of 2025 are not deleted?

A.    Correct, because those would be after litigation, yeah.

Q.    And then was that your custom to delete messages when you stopped communicating with people?

A.    Sometimes.  It depends on the account.

Q.    You didn't delete your side of the messages with Rose, did you?

A.    No.

Q.    And you weren't in communication with her anymore; right?

A.    Kind of.

Q.    Up until the time of the leak you were in communication with her?

A.    I think we traded a message, maybe almost a year prior just checking on each other.

Q.    The year prior?

A.    Uh-huh.

Q.    But you didn't delete those -- your

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 237

THE WITNESS: I mean, a URL is a uniform resource locator, would have pointed to a file online. By the time I produced anything for this case, those files are not existing anymore. No URL is pointing to any of these things. It seems that the machine made a slight error in translating between the top and the bottom link, but I mean, from my production it seems pretty obvious that both links are identical that were produced, yes.

BY MS. SCHLUMP PETERS:

Q. You're saying the machine. You just said -- can you repeat the last part?

A. So whatever scanned the URL and transferred it to another page, looks like it made an error in translation.

Q. And in your experience, does that happen often?

A. Yeah, it can with certain technologies.

Q. But if there was no error in the translation, URLs have to be identical, right, to be the same file?

MR. BRETTLER: Objection.

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 243

Redact.  Other archives have been created by Discord.  Like you can request an export from Discord.  And other archives have been screenshots of messages.  I can speak with specificity to a particular message if you show me one.

BY MS. SCHLUMP PETERS:

Q.   Okay.  We'll get into that.

So Abby's declaration that she submitted to the court stated that sometime in February 2025 she reviewed her Discord messages and discovered you had deleted her messages to her including the message in which you sent her the video of Pxie; is that correct?

MR. BRETTLER:  Objection to the extent that it calls for speculation or if you remember.

THE WITNESS:  It's correct insofar as that's what she put in her declaration, yes.

BY MS. SCHLUMP PETERS:

Q.   Is that correct that that is what you did?  You deleted the messages?

A.   I deleted my messages with Abby sometime

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 244

after our last communication before May of 2025, so sometime maybe at the end of 2024 based on what I saw earlier.

Q.   You deleted your messages with Abby sometime --

A.   I used Redact to archive my messages with Abby at the end of 2024, I believe.

Q.   And you still have those archives?

A.   Yeah, I have produced them for this case, yes.

Q.   How do you know Hannah Brooks?

A.   I don't really know Hannah Brooks.

Q.   But you have communicated with her; correct?

A.   I have communicated with a Discord account that I think went by the name Hannah.  I didn't know the name was Hannah Brooks until they submitted an affidavit to the court.

Q.   And this was on Discord that you communicated?

A.   Yes.

Q.   Did you produce those communications with Hannah in this litigation?

A.   If I had it, I produced it.

Q.   Well, I'm going to represent to you

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 246

this case, I have produced.  Anything that I've possessed, I have produced, yeah.

Q.    But you didn't produce any of your communications that you just testified you had with Hannah Brooks?

MR. BRETTLER:  Objection.  That misstates the witness's testimony.

THE WITNESS:  I would have to go through my Bates stamps.  I think I have produced thousands of documents in this case.  I don't remember, but if I had conversations with Hannah, I certainly produced them.

BY MS. SCHLUMP PETERS:

Q.    Well, I'm going to represent to you today that you did not because we did not receive them.  Is there a possibility you archived them?

MR. BRETTLER:  Objection to the extent that it calls for speculation.

Anything is possible, but you can answer.

THE WITNESS:  I mean, if they are gone, I would imagine I could have, yeah, it's possible.

BY MS. SCHLUMP PETERS:

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 247

Q.   Who is Liquidlaugh?

A.   I'm not sure.

Q.   So one of plaintiff's request for admissions had asked if you had deleted your DMs with Liquidlaugh and you said no, you had not?

MR. BRETTLER:  Is that a question?

BY MS. SCHLUMP PETERS:

Q.   Is that correct?

MR. BRETTLER:  If you remember, you can answer.

THE WITNESS:  I don't recall.  If you have my answers to interrogatories, I can review them, but I don't recall the specific answer to that.

MS. SCHLUMP PETERS:  We will pull it up.  That was Request for Admission Number 12.

BY MS. SCHLUMP PETERS:

Q.   Who is Dan Saltman?

A.   A friend of mine.

Q.   Is he also a professional partner of yours in any way?

A.   I would say so, sure.

Q.   In what way?

A.   He's appeared on stream with me a number

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 248

of times.  He kind of streams with a friend of mine, sometimes now.  We had a podcast together for maybe about a year.

Q.   When was that?

A.   Maybe throughout 2024, maybe, yeah.

Q.   **And plaintiff requested that you produce all your communications between you and Dan Saltman pertaining to plaintiff and/or the allegations of the amended complaint and you did not produce any communications from Dan Saltman, did you?**

A.   I produced all the communications I had with him that were relevant to the complaint.

Q.   **So you never discussed the plaintiff with Dan Saltman?**

MR. BRETTLER:  Objection.  It misstates the witness's prior testimony, but you can answer.

THE WITNESS:  I very explicitly with a lot of people in my life said that once the plaintiff had kind of assumed a more, I'll say, aggressive posture, when she started threatening suicide that I ceased communications with people about anything related to

Steven Bonnell, II
April 30, 2026

CONFIDENTIAL

Page 249

the plaintiff because I was uncomfortable carrying on those communications.

BY MS. SCHLUMP PETERS:

Q.   **But you received from Dan Saltman a screenshot of a message that plaintiff sent to Dan, didn't you?**

A.   I don't remember that.

Q.   **Well, you live streamed about it.**

A.   On the live stream did I say that I -- I'm sorry, what was the question?

MR. BRETTLER:  There was none.

BY MS. SCHLUMP PETERS:

Q.   **I said you received from Dan Saltman a screenshot of a message that plaintiff had sent to Dan?**

MR. BRETTLER:  Still not a question.

BY MS. SCHLUMP PETERS:

Q.   **Is that right?**

A.   I don't remember if I received a screenshot from Dan or Dan posted it publicly somewhere.  He could have posted it on Twitter. I don't recall 100 percent.

Q.   **Who is Kyla Turner?**

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 292

Q.    But you still have them?

A.    Probably still backed up, yes.

Q.    So they are removed from public access; correct?

A.    Yes.

Q.    Were some of the videos, YouTube videos that you removed from public access, did they reference the plaintiff?

A.    I have no idea.

Q.    Did you, after you received the preservation letter, did you place a litigation hold on your DGG Chat logs?

MR. BRETTLER:  Objection to the extent it calls for a legal conclusion, but you can answer.

THE WITNESS:  I'm not sure what a "litigation hold" means.

BY MS. SCHLUMP PETERS:

Q.    Did you instruct anyone with access to the DGG Chat logs to preserve them, the logs?

MR. BRETTLER:  Objection.  Vague and ambiguous.

BY MS. SCHLUMP PETERS:

Q.    That might be relevant to this case?

A.    I'm not sure.  It's a chat room.  I

Steven Bonnell, II
April 30, 2026

CONFIDENTIAL

Page 295

sometime in January 2025?

A.   No.

Q.   Okay.  Plaintiff asked for the Google Drive in her document production request.  And you did not produce it.

A.   I'm not sure what that means.

Q.   The contents of the Google Drive.

MR. BRETTLER:  The contents of the entire Google Drive?

MS. SCHLUMP PETERS:  The link.

MR. BRETTLER:  Well, that's a different question.

THE WITNESS:  The link to?

BY MS. SCHLUMP PETERS:

Q.   The videos.

A.   Those would have been deleted five years ago.

Q.   Did you use a forensic collection tool such as a Discord-specific scraper or forensic imaging capturing software to capture the ESI from the Discord messages that are relevant to this case?

A.   Not that I am aware of, no.

Q.   So did you rely on manual methods like copy-pasting screenshots?

Steven Bonnell, II                 CONFIDENTIAL
April 30, 2026

Page 297

BY MS. SCHLUMP PETERS:

Q.   So in one of your -- your first declaration to this Court you stated that you used a program called "Discord Log Exporter" to export all relevant messages into an HTML file; is that -- you stated that in your declaration?

A.   I believe I remember it, yeah.

Q.   And Discord Log Exporter is a third-party tool, right, not affiliated with Discord?

MR. BRETTLER:  Objection.  Calls for speculation.

If you know, you can answer.

THE WITNESS:  Correct.

BY MS. SCHLUMP PETERS:

Q.   Did you generate or receive cryptographic hash values or metadata from Discord Log Exporter at the time of the export?

A.   No, I don't think there would be a meaningful way to do that.

Q.   Are you aware that Discord itself provides an official avenue to request a copy of all your messages, a Discord data package?

A.   Yes, that was one of the things I referenced earlier; however, that data package

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 298

only contains your side of the messages and not
the other side's.

Q.   Did you use Relativity or any other
recognized e-discovery platform to preserve
evidence from your laptop, computer, phone?

A.   No.

Q.   Did you prepare any acquisition log
describing the method, tool, collection date, ESI
source, digital fingerprint of your Discord
exports?

MR. BRETTLER:  Objection.  It's
compound, vague and ambiguous.

You can answer.

THE WITNESS:  No, I don't think it
would be meaningful.

BY MS. SCHLUMP PETERS:

Q.   So when you collected your -- the
materials in your production that you produced,
from Discord, you did not generate cryptographic
hash values at the time of the collection;
correct?

MR. BRETTLER:  Objection.  It's
been asked and answered.

THE WITNESS:  No, but it would be
meaningless to do so.

Steven Bonnell, II
April 30, 2026

CONFIDENTIAL

Page 305

Q.   On the Foodshops live stream.  Okay.

Now which Excel spreadsheet were you referring to in that discussion with -- on Foodshops's live stream?

MR. BRETTLER:  Objection to the extent it's a hypothetical, but you can answer if you know.

THE WITNESS:  I don't remember which one exactly or if it was one I even ended up submitting.

BY MS. SCHLUMP PETERS:

Q.   But it was specifically about an Excel spreadsheet; right?

A.   It was about creating a hypothetical Excel spreadsheet, but I don't know if I ended up using that or even submitting that as part of discovery or if I used it.  There were several methods I used to export data.

Q.   So what method did you use to create the Excel spreadsheet that we looked at earlier today, ECF132-6?

A.   On page 2?

Q.   Yes.  Is that the Excel spreadsheet? Yes.

A.   It looks to me like I have sorted all

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 306

the sent messages to AbbyMC's Discord account,
and then I deleted every message that didn't
contain a media file and then I sent the -- or I
put into a spreadsheet the timestamps for which I
sent any media files to the AbbyMC Discord
account.

Q.   And did you use an AI tool to help you
do that?

A.   Probably not for this.  I don't think I
needed to, no.

Q.   So what Excel spreadsheet do you think
you were referring to in that Foodshops live
stream?

MR. BRETTLER:  Objection.  Calls
for a hypothetical.

THE WITNESS:  It was a long time
ago.  I don't even remember exactly
what -- if I was even successful in
that.

The audio was just me trying to
merge my side of a conversation and
another conversation but both of them
had different timestamps, so to make it
line up.  I think one was written in
like Unix code and the other was written

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 307

in universal time code, so I needed to merge both files so that the conversation would be readable.

BY MS. SCHLUMP PETERS:

**Q.   Okay.  And that Foodshops live stream audio that we just listened to was September 2025.  And your motion to dismiss came out shortly after that with that Excel spreadsheet?**

A.   Well, I don't know if it was that -- wait.  When you say that Excel spreadsheet --

**Q.   The one you're looking at.**

A.   Okay.  So there would be no reason to use AI to generate this particular spreadsheet, though.  It looks like I did a simple search of a conversation history and deleted every non-media file message and then put those media messages in the spreadsheet.  I don't know why I would have to use AI for that.

MS. SCHLUMP PETERS:  Okay.  Let's -- I want to just play a video now.

(Video recording begins playing.)

"If I ask an AI to do something for me, if I give it a file and say, 'can

Steven Bonnell, II                    CONFIDENTIAL
April 30, 2026

Page 369

but you can answer.

THE WITNESS:  Insofar as those documents exist and I have them in my possession, yes, I would be able to produce those.

BY MS. SCHLUMP PETERS:

**Q.   And we've talked repeatedly today about communications you had with various individuals; right?**

A.   Yes.

**Q.   And you deleted some of the documents but not others; right?**

MR. BRETTLER:  Objection. Misstates prior testimony.

MS. SCHLUMP PETERS:  Abby's documents?

MR. BRETTLER:  Excuse me. Misstates the witness's prior testimony. It misstates the record and the production in this case.

THE WITNESS:  I produced every communication I have ever had with Abby. I don't believe anything has been deleted with the Abby stuff even though I'm pretty sure the request for the

Steven Bonnell, II                   CONFIDENTIAL
April 30, 2026

Page 370

preservation of evidence wouldn't have even initially covered Abby. I've produced every single thing related to my communications with her. I've archived stuff with Redact. I don't believe I have permanently deleted any messages with Abby at all.

BY MS. SCHLUMP PETERS:

Q. **So you have all your evidence archived on Redact?**

MR. BRETTLER: Objection.

MS. SCHLUMP PETERS: Yes?

MR. BRETTLER: Objection. Misstates the witness's prior testimony. You have all of the documents that are responsive to your discovery requests.

MS. SCHLUMP PETERS: We haven't received all the documents that we requested.

MR. BRETTLER: That's your position.

MS. SCHLUMP PETERS: That's why I'm asking.

BY MS. SCHLUMP PETERS:

Q. **So they would be archived on redact; is**